Honorable Thomas S. Zilly

# U.S. DISTRICT COURT

## FOR THE WESTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| STRIKE 3 HOLDINGS, LLC, | ) | Case No.: 2:17-cv-01731-TSZ |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | **COUNTERCLAIMS OF DEFENDANT JOHN DOE subscriber assigned IP address 76.247.176.87** |
| JOHN DOE subscriber assigned IP address 76.247.176.87, | ) ) ) | |
| Defendant. | ) ) ) | I) **DECLARATION OF NON-INFRINGEMENT OF** |
| | ) ) | II) **DECLARATION OF UNENFORCEABILITY OF THE COPYRIGHTS UNDER THE DOCTRINE OF COPYRIGHT MISUSE** |
| JOHN DOE subscriber assigned IP address 76.247.176.87, | ) ) ) | |
| Counterclaimant, | ) ) | III) **ABUSE OF PROCESS** |
| vs. | ) ) | |
| STRIKE 3 HOLDINGS, LLC, | ) ) | **DEMAND FOR JURY TRIAL** |
| Counterdefendant. | ) ) ) ) ) ) | |

COMES NOW, the Defendant/Counterclaimant, JOHN DOE subscriber assigned IP address 76.247.176.87 ("DOE") pursuant to Fed. R. Civ. P. 13 and 15, by and through its counsel of record, and hereby counterclaims against Plaintiff, STRIKE 3 HOLDINGS, LLC, ("S3H") on the grounds described herein, and praying for the relief hereinafter set forth as follows:

## COUNTERCLAIMS OF THE DEFENDANT
By JOHN DOE subscriber assigned IP address 76.247.176.87

## NATURE OF THIS ACTION

1. Strike 3 Holdings, LLC has begun a perverse litigation campaign ostensibly to "protect" its copyrights from infringement. John Doe is one such defendant in this campaign against over 700 other defendants in numerous districts. John Doe, an ex-cop, seeks affirmative relief that he did not infringe the works at issue, that the works are unenforceable under the doctrine of copyright misuse, and that litigation model itself is actionable under the common law of abuse of process. What is clear is that the S3H litigation model is not what it claims, to protect itself from copyright infringement, rather S#H has a business model to use the court system to extract income using "sue and settle" without resorting to the far less costly provisions provided under the DMCA.

## JURISDICTION AND VENUE

2. The First and Second counterclaims are brought pursuant to 28 U.S.C. § 2201. This Court is thereby vested with subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this case presents a federal question under the United States Copyright Act. These counterclaims are brought in accordance with Federal Rule of Civil Procedure 13(a)(1). The aforementioned causes of action arise out of the transactions or occurrences that are the subject matter of S3H's Complaint and do not require adding another party over which the Court cannot acquire jurisdiction. The Third Amended Counterclaim is a counterclaim that arises out of the transactions or occurrences that are the subject matter of S3H's Complaint and invokes the pendent jurisdiction of this Court.

3. Venue is proper in that the tort of allege infringement occurred in this jurisdiction.

**GENERAL ALLEGATIONS**

4. John Doe is a retired police officer in his 70's. He has been married for over 40 years. Until he was sued by S3H, John Doe had never heard of the pornographic websites: "Blacked", "Vixen", or "Tushy". John Doe does not know who downloaded these movies.

**BACKGROUND**
**Broadband, DMCA, and Internet Infringement**

5. The rise of DSL and Cable broadband in the United States created a blessing and a curse for content owners (CO). The blessing is that CO's could distribute their works to a much larger audience. The curse for the CO's was that it was easier for people to infringe their copyrights.

6. The 1998 enactment of the DMCA struck a balance between internet service providers (ISP), (CO), and the distribution of copyrighted works. Congress provided a mechanism for CO's to provide notice to ISP's (a DMCA notice) of alleged infringements of their copyrights. This system has worked fairly well. In cases where ISP's have failed to properly "police" the DMCA notices, lawsuits have been file against ISP's that they have not followed the DMCA, and large jury awards have been entered against the ISP's. (See *BMG Rights Management, LLC, et. al v. Cox Enterprises, Inc*., 4th Cir., 16-1972 (2018)).

7. To avoid infringement liability, every ISP, including the ISP in this case, COMCAST, has a policy of terminating subscribers when they receive a large number of DMCA notices. For example, COMCAST has such a policy entitled: "Comcast's DMCA Repeat Infringer Policy for Xfinity Internet Service" found at https://www.xfinity.com/support/articles/comcast-dmca-compliance-policy. The policy is not complicated – if COMCAST gets too many DMCA notices, they cut off their customer.

8. The cost of sending a DMCA notice is negligible. The CO simply sends an email (which costs almost nothing) to the ISP.

**The IP Address, ISP Wifi Routers, and the Risk of False Positives**

9. ISP's, in effort to attract more subscribers and make more money, have marketed broadband to residential customers. Residential customers are then supplied with DSL or cable modems or routers. These modems and routers are configured in such a way that any computer in

a household can use any number of computers to access the internet which is mapped to a single IP address.

## THE ECONOMICS OF PORNO-TROLLING

10. The porn industry, like the rest of the media industry, has benefitted from the roll-out of broadband. See *The Hidden Economics of Porn* https://www.theatlantic.com/business/archive/2016/04/ pornography- industry-economics-tarrant/476580/.

11. Numerous porn studios produce and distribute copyrighted video works. These include such well known names as Playboy, Penthouse, and Hustler who have migrated from the print magazine format to the Internet. None of these studios have launched large scale "Doe" campaigns of copyright infringement. In 2011, porn studios found that bittorrent litigation was a profitable adjunct to their regular media distribution.

### Ingenuity 13,LLC (Prenda Law), Malibu Media, and Strike 3 Holdings

12. In the decision of Honorable Otis Wright in the Central District of California, Judge Wright characterized "Porno-trolling" as:

> …They've discovered then nexus of antiquated copyright laws, paralyzing social stigma, and unaffordable defense costs. And they exploit this anomaly by accusing individuals of illegally downloading a single pornographic video. Then they offer to settle—for a sum calculated to be just below the cost of a bare-bones defense. For these individuals, resistance is futile; most reluctantly pay rather than have their names associated with illegally downloading porn. So now, copyright laws originally designed to compensate starving artists allow, starving attorneys in this electronic-media era to plunder the citizenry.
>
> *Ingenuity 13, LLC v. John Doe,* 2:12-cv-08333-ODW-JC Document 130 Filed 05/06/13

13. As Judge Wright noted, Porno-trolling as a business model works because the cost to initiate a lawsuit is extremely low in federal court ($400.00) and the cost to hire a copyright lawyer for the defendant can be very high ($ 300.00- $400.00 per hour). Retainers requested by prospective defense counsel frequently far exceed the cost to settle. When plaintiffs get any push back, they simply dismiss under Rule 41 and just incur the nominal filing cost of $ 400.00. Defendants meanwhile have had to be involved in the legal system – find defense counsel and pay defense counsel a relatively large retainer.

### Ingenuity 13, LLC

14. Ingenuity 13, LLC aka Prenda Law, the subject of the aforementioned order successfully exploited this model until they were sanctioned by the Central District of California. This sanction was upheld by the Ninth Circuit Court of Appeals. See Memorandum Opinion *Ingenuity 13, LLC et. al vs. John Doe*, 13-55859 (9th Cir  6/102016).

15. The lawyers involved were then indicted by the U.S. Attorney's office in the District of Minnesota.  On March 16, 2017, John L. Steele reached a plea agreement in the matter of the *United States vs. Steele*, et. al 16-cr-00334 (D MN  Dckt 43  3//6/2017).

16. John Steele stipulated that from 2010 to 2014 that Prenda Law and the related entities received $ 6,000,000.00 in copyright infringement settlement payments and caused losses totaling at least $ 3,000,000.00.  A search of PACER shows that less than 500 cases were filed by the entities related to Prenda Law during that short four year period.

### Malibu Media,  LLC

17. Malibu Media, LLC dba x-art.com, is a pornography production studio.

18. Malibu Media adopted the porno-trolling business model. From 2012 to 2016, over 5,000 lawsuits filed. This was managed by the law firm of *Lipscomb Eisenberg & Baker PL* ("Lipscomb Law") ran the Malibu Media lawsuits.   If  a case became difficult (e.g. unwinnable), Malibu Media would "cut and run", by filing a Rule 41 dismissal with prejudice.

19. Attorney Emilie Kennedy worked at Lipscomb Law from 2012 to 2016 and was primarily responsible for filing all of the copyrights for Malibu Media with the Copyright Office (over 500+ copyright applications). In 2016, Emilie Kennedy, left Lipscomb and took her Malibu Media client with her to California, where it was then managed by the Pillar Law Group.

20. The key to Malibu's litigation strategy was and is the "*Ex Parte*" motion to get early discovery from the ISP.  This involves: a) a torrent monitoring company – to say they monitored the torrents; b) an "investigator" who testifies the monitoring torrents worked; c) a business owner who testified that they had done everything in their power to control infringement and their company would go out of business unless the infringement was stopped; d) selection of high value judicial districts and exiting those districts when decisions became adversarial;  e) use of "infringement stacking" to "infringement delay" to amplify damages rather than to try and mitigate damages; f) the wide distribution of "free" versions of their movies on such sites as "Pornhub".

a. Malibu Media used a torrent monitoring company from Germany marketed under various names: Maverickeye, IPP, and Excipio ("Germans"). In many cases, the Germans had Tobias Fieser sign declarations that he "compared" each Malibu Work to each "Depository Copy" to verify infringement.

b. Malibu Media also employed a "forensic investigator" of the alleged infringements, Patrick Paige signed thousands of pro form declarations for Malibu Media to get early discovery.  Patrick Paige also signed numerous declarations that he "tested" the software for monitoring torrents in 2013, when in fact, he never tested the software.

c. Malibu Media also used Collette Pelissier, the "owner" of Malibu Media to attest that her company was in dire straits due to infringement.  Despite over 5 years of infringements, there is no evidence that Malibu Media ever sent a DMCA notice to a single IP address of a "John Doe" IP address.

d. Malibu Media only sued in a small number of targeted judicial districts where the income of the defendants had high net worth.  Even within those districts, defendants were isolated based on the high net worth of the districts.

e. Malibu Media used "infringement stacking" and "infringement delay" to amplify damages rather than to try and mitigate damages.

f. Malibu Media widely distributed almost full length "clips" of their movies on such sites as "Pornhub" which market and promote "free porn".

### Strike 3 Holdings Torrent Monitoring and 700+ Lawsuits

21. S3H is a pornography production studio with several related entities located in the Los Angeles area of California. S3H operates three website brands: *Blacked, Tushy, and Vixen*.

22. S3H has adopted the porno-trolling business model. From late 2017 to date over 700 lawsuits have been filed.

23. The key to S3H's litigation strategy, is the "*Ex Parte*" motion to get early discovery from the ISP. This involves:  a) a torrent monitoring company – to say they monitored the torrents; b) an "investigator" who testifies the monitoring torrents worked; c) a business owner who testifies that they had done everything in their power to control infringement and their company would go out of business unless the infringement was stopped; d) selection of high value judicial districts and exiting those districts when decisions became adversarial;  e) use of "infringement stacking" to "infringement delay" to amplify damages rather than to try and mitigate damages

a. These infringements are detected by torrent monitoring firm based in either Karlsruhe or Hamburg Germany, using the same "IPP" software used by Malibu. The same individual, Tobias Fieser, apparently "checked" the thousands of infringements. Despite the fact that the Germans self-labelled their software as "forensic software", it is in fact untested, unvalidated open source code.

b. S3H's also used a "forensic investigator" of the alleged infringements by looking at a single PCAP, whose name is John Pasquale. Mr. Pasquale, according to his Linkedin profile, works as a consultant to PNB Paribas, not at 7 River Systems, an investigation firm run out of a suburban tract home in Maryland by his son. S3H's also engaged Susan Stalzer to "compare" infringements. Ms. Stalzer has no experience in either the forensics industry or has never served as an expert witness.

c. S3H's Greg Lansky attests that his company is in dire straits due to infringement despite never complaining of such when he released works from 2014 to 2016.

d. S3H only sues in small number of targeted judicial districts where the income of the defendants had high net worth. Even within those districts, defendants were isolated based on the high net worth of the districts.

e. S3H also uses "infringement stacking" to "infringement delay" to amplify damages rather than to try and mitigate damages. S3H has never sent a DMCA notice to the IP address of a purported infringing defendant.

f. S3H, like Malibu Media, also promotes the wide distribution of "free" versions of their movies on such sites as "Pornhub" whose marketing model is that the consumer can watch "free porn".

24. S3H also distributes DVD's. These DVD's are compilations of the shorter clips that are at issue in these infringements. These DVD's oddly enough do not indicate the owner of the films is "Strike 3 Holdings". These DVD's also have the "copyright warning notice" at the beginning of the films, which, oddly enough, is not present on the videos on the website of *Vixen, Blacked, and Tushy.*

**Malibu Media, Strike 3 Holdings, and Voltage Pictures**

25. There is commonality between Malibu Media, S3H, and the non-porn lawsuits filed against the DOE defendants.

26. From 2013 to 2017 over 100 cases naming multiple Doe defendats have been filed by a small IP boutique located in Seattle.  It is estimated that over 2000 individual Doe defendants were sued/   These cases have been largely managed by the movie distribution company, Voltage Pictures.

27. The key to Voltage Pictures litigation strategy was the same "*ex parte*" motion to get early discovery from the ISP.  Voltages ex-parte motion's  shared this commonality with Malibu and S3H*:* use of the same German "investigators" (Tobias Fieser, etc.)  and the same untested German software (Maverickmonitor, etc.).

## COUNT I

## DECLARATION OF NON-INFRINGEMENT

28. DOE realleges paragraphs 1-27 above as fully set forth herein.

29. A case and controversy exists between S3H and DOE regarding the alleged infringement of the works that S3H allegedly owns.

30. S3H alleges that DOE has infringed 80 copyrighted works as attached to their complaint as Exhibit A.  These works are all approximately 30-40 minutes in length and involved graphic pornography that is marketed under the *Vixen, Tushy*, and *Blacked* website brands.

31. DOE's did not infringe the 80 allegations of infringement, or any works marketed under the *Vixen*, *Tushy*, and *Blacked* websites.   DOE has not infringed any of S3H's rights under 17 U.S.C. § 106 nor has DOE has not infringed any of S3H's rights under 17 U.S.C. § 501.

32. DOE requests that the Court entered a judgment of non-infringement as to the works that S3H alleges DOE to have infringed.

33. Absent a declaration of non-infringement DOE has an objectively reasonable apprehension of becoming the target of another lawsuit on the claims alleged here, or similar claims by this Plaintiff.

34. Dismissal of this lawsuit without prejudice is inadequate to vindicate DOE's rights.

35. DOE is entitled to a declaratory judgment of non-infringement, to his costs and attorneys' fees as a prevailing party pursuant to 17 U.S.C. § 505 and to such other and further relief as may be appropriate.

# COUNT II

## DECLARATION OF UNENFORCEABILITY OF THE COPYRIGHTS

## UNDER THE DOCTRINE OF COPYRIGHT MISUSE

36. DOE realleges paragraphs 1-35 above as fully set forth herein.

37. A case and controversy now exists between S3H and DOE regarding the enforceability of the 80 copyrights alleged.

38. The copyright monopoly granted to S3H is not without limitations. Once of those limitations is that copyrights were not granted to vexatiously abuse, annoy, and coerce parties into making *deminimus* settlement payments over allegations of copyright infringement.

39. Despite the claims of this harm, S3H fails to do the following to protect their copyrighted works, namely:

   a. S3H distributes part of all of the copyrighted works for free on sites such as Pornhub.com, but does not put insert a notice or warning that the work should not be redistributed nor is there a notice that the work is owned by S3H.

   b. S3H does not send out a DMCA notice to the IP address of the alleged infringer being sued. S3H knows that sending a DMCA notice to the IP address would result in communications from the ISP to the ISP's account holder that would lead to either 1) the account holder resolving the problem, or 2) the ISP restricting or terminating the account. Instead, S3H waits months and queues up infringements to gain economic leverage on the purported infringer in the form of alleged statutory damages.

   c. S3H is aware that and contracts for the use of software for bittorrent monitoring provided by the German firm IPP. The IPP software bittorrent monitoring has never been designed, developed, and validated to any credible software standard. Strike 3 Holdings, LLC was aware that IPP had never tested or recorded the accuracy rate of the software. Further, S3H was aware that an IP address alone cannot identify a "person", but can only identify an IP address. S3H has contracted with an unlicensed investigator.

40. DOE requests that the Court entered a judgment of Non-Infringement as to the works that S3H alleges DOE to have infringed.

41. Absent a declaration of non-infringement DOE has an objectively reasonable apprehension of becoming the target of another lawsuit on the claims alleged here, or similar claims by this Plaintiff.

42. Dismissal of this lawsuit without prejudice is inadequate to vindicate DOE's rights.

43. DOE is entitled to a declaratory judgment of non-infringement, to his costs and attorneys' fees as a prevailing party pursuant to 17 U.S.C. § 505 and to such other and further relief as may be appropriate, including sanctions against Plaintiff and its attorneys.

## COUNT III
## COMMON LAW ABUSE OF PROCESS

44. DOE realleges paragraphs 1-43 above as fully set forth herein.

45. Abuse of process requires: (1) an ulterior purpose to accomplish an object not within the proper scope of the process, (2) an act not proper in the regular prosecution of proceedings, and (3) harm caused by the abuse of process.

46. Since October 17, 2017, S3H has filed over 700 cases that allege over 25,000 individual infringements against various IP addresses in select judicial districts.

47. S3H's Complaint – indeed all of S3H's complaints filed across the country – are not filed to resolve a legal dispute.

48. S3H is not using the court and its authority to accomplish a proper object –i.e. resolution of a legal dispute. There is no legal dispute, only a scheme to extort.

49. S3H seeks to extract "sue and settle" damages in an unfair and inequitable manner. Congress, intended, when it passed the DMCA, that S3H would use the easy and low cost DMCA process to give notice to the allegedly infringing IP addresses.

50. The custom and practice of a reasonable copyright holder with internet media works would be to send a DMCA notice to the alleged infringer prior to initiating federal court proceedings. S3H does not use the DMCA process as this would likely end or at least significantly curtail any infringements, thus eliminating the targets of this sham litigation.

51. Instead of exercising the rights afforded to them under the Digital Millenium Copyright Act – a simple and low-cost mechanism to address infringement – S3H stockpiles alleged misdeeds and misuse the judicial process through the sham litigation described herein.

52. S3H's intentional failure to send DMCA notices to the ISP addresses of alleged John Doe defendants evidences an ulterior purpose to accomplish an object not within the proper scope of the process: extortion through sham litigation.

53. S3H's intentional failure to send DMCA notices to the ISP addresses of alleged John Doe defendants is an act not proper in the regular prosecution of proceedings.

54. S3H's intentional failure to send DMCA notices to the ISP addresses of alleged John Doe defendants has caused DOE and other defendants actual damages.

55. S3H's reliance on form complaints, form declarations and form expert reports evidence an ulterior purpose to accomplish an objection not within the proper scope of the process: extortion through sham litigation.

56. S3H's reliance on form complaints, form declarations and form expert reports is an act not proper in the regular prosecution of proceedings.

57. S3H's reliance on form complaints, form declarations and form expert reports has caused DOE and other defendants actual damages.

58. Filing a lawsuit with no intention of litigating evidences an ulterior purpose to accomplish an object not within the proper scope of process: extortion through sham litigation.

59. Filing a lawsuit with no intention of litigating constitutes an act not proper in the regular prosecution of proceedings.

60. Filing a lawsuit with no intention of litigating has caused DOE and other defendants actual damages.

61. Filing a complaint that makes no specific allegation of copyright infringement against any defendant evidences an ulterior purpose to accomplish an object not within the proper scope of process: extortion through sham litigation.

62. Filing a complaint that makes no specific allegations of copyright infringement against any defendant constitutes an act not proper in the regular prosecution of proceedings.

63. Filing a complaint that makes no specific allegations of copyright infringement against a particular defendant has caused DOE and other defendants actual damages.

64. Failing to disclose the actual parties in interest evidences an ulterior purpose to accomplish an object not within the proper scope of process: extortion through sham litigation.

65. Failing to disclose the actual parties in interest constitutes a willful act in the use of process not proper in the regular conduct of this proceeding.

66. Failing to disclose the actual parties in interest has caused DOE and other defendants actual damages.

67. Relying on mass-produced form declarations from declarants who are not available to be questioned or have their representations verified evidences an ulterior purpose to accomplish an object not within the proper scope of process: extortion through sham litigation.

68. Relying on mass-produced form declarations from declarants who are not available to be questioned or have their representations verified is an act not proper in the regular prosecution of proceedings.

69. Relying on mass-produced form declarations has caused DOE and other defendants actual damages.

70. Sending demand letters threatening exaggerated and unsupportable damages when Plaintiff has no evidence of infringement evidences an ulterior purpose to accomplish an object not within the proper scope of process: extortion through sham litigation.

71. Sending demand letters threatening exaggerated and unsupportable damages when Plaintiff has no evidence of infringement is an act not proper in the regular prosecution of proceedings.

72. Sending demand letters threatening exaggerated and unsupportable damages has caused DOE and other defendants actual damages.

73. S3H herein has committed and continues to commit an abuse of process every time it files another form Complaint it has no intention of litigating.

74. S3H's conduct, outlined herein, has been for the ulterior purpose of improperly extorting settlements.

75. DOE and other defendants have been damaged as a result of S3H's abuse of process.

//
//
//

## DOE'S PRAYER FOR RELIEF

DOE respectfully prays and judgment entered as follows:

### COUNT I – Declaratory Judgment of Non Infringement

A. A declaration and entry of judgment that S3H claim for infringement be denied in their entirety and take nothing;

B. DOE is the prevailing party under the Copyright Act;

C. DOE be entitled to statutory attorney fees under the Copyright Act;

D. DOE be entitled to costs of suit; and

E. DOE be entitled to any other relief that this Court may allow.

### COUNT II – Declaratory Judgment of Unenforceability of Copyrights

A. A declaration that S3H manner of enforcing its copyrights are inequitable and unfair in view of the intent of the Copyright Act, and that such enforcement constitutes misuse of the grant of the copyright.

B. An order that the eighty (80) works be declared unenforceable during the period that such inequitable and unfair enforcement occurs;

C. DOE be entitled to any other relief that this Court may allow.

### COUNT III – Abuse of Process

A. A finding that S3H abused this legal process by filing this case and other cases solely to extract statutory damages, while at the same time not sending a DMCA notice to the IP Address of the alleged infringer.

B. A finding that S3H use of unverified and untested infringement detection software generated false positives leading to false claims of infringement.

C. A finding that this litigation abuse resulted in claims that would far exceed any damage if S3H had given proper notice under the DMCA.

D. An entry of damages for attorney fees and costs that is either: 1) the cost of defense for the improper suit and/or, 2) the difference in damages if S3H had given timely notice to the Defendant after the first infringement.

Respectfully submitted,

Dated: 5/1/2018         /s/ J. Curtis Edmondson
                        Attorney for JOHN DOE

## CERTIFICATE OF SERVICE

I, J. Curtis Edmondson, hereby certify that on May 1, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

>Bryan J. Case, WSBA #41781
>Email: bcase@foxrothschild.com
>FOX ROTHSCHILD LLP (SEATTLE)
>1001 Fourth Avenue, suite 4500
>Seattle, Washington 98154
>Telephone: (206) 624-3600
>
>Lincoln D. Bandlow, *Admitted Pro Hac Vice*
>Email: lbandlow@foxrothschild.com
>FOX ROTHSCHILD LLP (LOS ANGELES)
>10250 Constellation Blvd., Suite 900
>Los Angeles, California 90067
>Telephone: (310) 598-4150
>
>*Attorneys for Plaintiff Strike 3 Holdings LLC*

DATED this 1st day of May, 2018.

>By:  /s/ J. Curtis Edmondson
>J. Curtis Edmondson