The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC, a Delaware corporation,<br><br>                                    Plaintiff,<br><br>          v.<br><br>JOHN DOE, subscriber assigned IP address 73.225.38.130,<br><br>                                    Defendant. | Case No. 2:17-cv-01731-TSZ<br><br>**STRIKE 3 HOLDINGS, LLC'S MOTION TO DISMISS DEFENDANT JOHN DOE'S FIRST AMENDED COUNTERCLAIMS**<br><br>NOTE ON MOTION CALENDAR:<br>JUNE 22, 2018 |

I.      **INTRODUCTION**

Plaintiff Strike 3 Holdings, LLC ("Strike 3") requests the Court dismiss the First Amended Counterclaims of John Doe subscriber assigned IP address 73.225.38.130 ("Defendant") with prejudice.  Despite two chances to plead facially plausible claims against Strike 3, Defendant has failed to do so, instead merely grasping at straws.  Defendant's alleged counterclaims have no merit and are not actionable.

First, Defendant's claim for a declaration of non-infringement is entirely redundant and unnecessary as it mirrors Strike 3's claim for copyright infringement and involves identical factual and legal issues.  Second, Defendant's claim for copyright misuse fails to allege any facts indicating Strike 3 is abusing its copyrights to gain an unfair competitive advantage in the

PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S FIRST AMENDED COUNTERCLAIMS - (2:17-CV-01731-TSZ) - 1

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

57138018.v1

industry or violating public policy. Third, Defendant's claim for abuse of process fails to allege any facts indicating Strike 3 is exploiting this lawsuit to obtain relief beyond that expressly authorized by the Copyright Act upon a showing of infringement.

This is a straightforward copyright infringement lawsuit. Either Defendant or someone connected to Defendant infringed multiple motion pictures owned by Plaintiff or not. That is all that will and must be determined in this lawsuit. Defendant's numerous attempts to assert legally meritless "I'm unhappy about being sued" claims have failed and will always fail. Accordingly, the Court should dismiss Defendant's FAC in full, without prejudice, and without leave to amend.

## II. <u>LEGAL STANDARD</u>

On a motion to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) for failure to state a claim, the well-plead allegations of the complaint must be accepted as true and construed in the light most favorable to the nonmoving party. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Golden v. Wash. State Dep't of Transp.*, No. C17-1877-RSL, 2018 WL 784480, at *1 (W.D. Wash. Feb. 8, 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (internal quotation omitted)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation omitted). "A complaint may be lacking for one of two reasons: (1) the absence of a cognizable legal theory, or (2) insufficient facts under a cognizable legal claim." *Mason v. Wash. State*, No. C17-186-TSZ, 2017 WL 2559621, at *2 (W.D. Wash. June 13, 2017).

PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S FIRST
AMENDED COUNTERCLAIMS - (2:17-CV-01731-TSZ) - 2

F<small>OX</small> R<small>OTHSCHILD</small> LLP
1001 F<small>OURTH</small> A<small>VENUE</small>, S<small>UITE</small> 4500
S<small>EATTLE</small>, WA 98154
206.624.3600

57138018.v1

III. **AUTHORITY & ARGUMENT**

A. **Defendant Fails to State a Claim for Declaration of Non-Infringement**

Defendant's claim for a declaration of non-infringement pursuant to 28 U.S.C. § 2201 (the Declaratory Judgment Act) should be dismissed because it is unnecessary and redundant of Strike 3's copyright infringement claims. "Numerous courts have dismissed declaratory relief counterclaims in electronic copyright infringement actions where the question of whether defendant infringed plaintiff's rights will be decided by plaintiff's claim." *Atl. Recording Corp. v. Serrano*, No. 07-cv-1824, 2007 WL 4612921, at *4 (S.D. Cal. Dec. 28, 2007).

Defendant is not asserting a novel defense. His/her counterclaim is solely based on a denial of infringement. *See* Dkt. # 32, FAC at ¶¶ 30-31 ("S3H alleges that DOE has infringed 80 copyrighted works . . . [and] DOE did not infringe the 80 allegations of infringement, or any works marketed under the *Vixen*, *Tushy*, and *Blacked* websites."). This is not a counterclaim; it is a denial/defense of Strike 3's underlying infringement claim.

This alleged "counterclaim" serves no purpose when Defendant has already denied the allegations in Strike 3's Complaint. It is redundant and a mirror image of Plaintiff's infringement claim. Accordingly, this Court should dismiss Defendant's purported counterclaim. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) ("If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before … dismissing the action."); *see also Tenneco Inc. v. Saxony Bar & Tube, Inc.*, 776 F.2d 1375, 1379 (7th Cir. 1985) ("The label 'counterclaim' has no magic. What is really an answer or defense to a suit does not become an independent piece of litigation because of its label."); *Stickrath v. Globalstar, Inc.*, No. C07-1941-TEH, 2008 WL 2050990, at *3 (N.D. Cal. May 13, 2008) (finding numerous courts have dismissed counterclaims where they are "either the ***mirror image of claims in the complaint or redundant of affirmative defenses***." (quotations omitted) (emphasis added); *Pettrey v. Enter. Title Agency, Inc.*, No. 1:05-cv-1504, 2006 WL 3342633, at *3 (N.D. Ohio Nov. 17, 2006)

PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S FIRST AMENDED COUNTERCLAIMS - (2:17-CV-01731-TSZ) - 3

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

57138018.v1

(reasoning a declaratory counterclaim should be dismissed when "*it is clear that there is a complete identity of factual and legal issues between the complaint and the counterclaim*." (emphasis added).

These principles are founded upon sound policy—particularly here where Strike 3 has not yet learned the identity of Defendant. Upon learning Defendant's identity, Strike 3 may elect to dismiss its case and/or amend to name someone else in Defendant's household. Moreover, pursuant to Fed. R. Civ. P. 41(a)(2), Strike 3 will need to seek court approval to do so, "on terms that the court considers proper." Allowing Defendant to proceed on a redundant, unnecessary counterclaim will only enable Defendant to potentially extend the litigation process beyond what is necessary. Plus, if Strike 3 moves to dismiss without prejudice and the Court permits it, Defendant could file an action for declaratory relief at that time. *UMG Recordings, Inc. v. DivX, Inc.*, No. CV 07-06835, 2008 WL 11338802, at *4-5 (C.D. Cal. Aug. 22, 2008) (dismissing copyright defendant's counterclaim for a declaration of non-infringement because the assertions therein were "identical" to those in the answer and defendant could file an action for declaratory relief if plaintiff moves to dismiss without prejudice).

In sum, Defendant's claim for declaratory relief should be dismissed because it is entirely redundant with Strike 3's claim for copyright infringement, involves identical factual and legal issues, and serves no useful purpose aside from needlessly complicating this litigation.

### B. Defendant Fails to State a Claim for Copyright Misuse

A party claiming copyright misuse must show the holder of the copyright is using the monopoly of rights secured by 17 U.S.C. § 106 to "extend to areas not covered by the copyright itself." *Oldcaste Precast, Inc. v. Granite Precasting & Concrete, Inc.*, No. C10-322-MJP, 2011 WL 813759, at *9 (W.D. Wash. March 2, 2011). This occurs when the copyright is exploited to gain a "competitive advantage violat[ing] public policy embedded in the grant of a copyright." *Id.* at *10. *See also Apple Inc. v. Psystar Corp.*, 658 F. 3d 1150, 1159 (9th Cir. 2011) (finding

PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S FIRST AMENDED COUNTERCLAIMS - (2:17-CV-01731-TSZ) - 4

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

57138018.v1

copyright misuse prevents holders from using the conditions to "stifle competition" but not to control use of copyrighted material).

Here, Strike 3 merely seeks to protect its copyrights from widespread wholesale infringement by filing suit against the individuals who have committed this infringement. "It is certainly true that [Plaintiff] has filed a very large number of infringement suits in this district and in others. But that is what the holders of intellectual property rights do when they are faced with mass infringement." *Malibu Media, LLC v. Doe*, No. 13 C 3648, 2014 WL 2581168, at *2 (N.D. Ill. June 9, 2014) (finding that, for example, Coach, Inc. filing 57 lawsuits over four years naming hundreds of entities as defendants to be an undoubtedly appropriate means to combat mass infringement).[1] *See also UMG Recordings, Inc. v. Lindor*, 531 F. Supp. 2d 453, 459 (E.D.N.Y. 2007) ("Collectively bringing infringement suits, however, exhibits none of the hallmarks of anticompetitive copyright pooling, and cannot be classified as such.").

The series of lawsuits Defendant cites constitute nothing more than a collective attempt to control the reproduction and distribution of Strike 3's copyrighted works—which are exclusive rights of copyright holders. *See A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026-27 (9th Cir. 2001) citing 17 U.S.C. § 106; *see also UMG Recordings, Inc. v. MP3.Com, Inc.*, 92 F. Supp. 2d 349, 352 (S.D.N.Y. 2000) (holding "a [copyright holder's] exclusive rights, derived from the Constitution and the Copyright Act, include the right, within broad limits, to curb the development of such a derivative market by refusing to license a copyrighted work or by doing so only on terms the copyright owner finds acceptable.") (internal quotations omitted). Strike 3's litigation has been aimed at individual infringers, not industry competitors, and endeavors to preserve the rights Strike 3 lawfully possesses, not expanding them to overtake the

---

[1] There is no reason why Strike 3 should be villainized for waging high-volume litigation to protect its works from mass infringement while other companies in more mainstream industries can do so without issue. *See Malibu Media, LLC v. Doe*, *supra* at *2 ("The Court is hard-pressed to see why [Plaintiff's] large-volume litigation should be treated differently from that of Coach or other intellectual property rights holders simply because [Plaintiff's] intellectual property rights involve pornographic films."). Strike 3's high volume of litigation is a product of the widespread mass infringement that is occurring.

PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S FIRST
AMENDED COUNTERCLAIMS - (2:17-CV-01731-TSZ) - 5

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

57138018.v1

industry and charge the public exorbitant fees to access its works.[2] *See, e.g., Practice Mgmt. Info. Corp. v. Am. Med. Ass'n*, 121 F.3d 516, 521 (9th Cir. 1997) (finding copyright misuse where plaintiff in license agreement required defendant to exclusively use plaintiff's product and not the products of any competitors); *Lasercomb Am., Inc v. Reynolds*, 911 F.2d 970, 978 (4th Cir. 1990) (finding copyright misuse where plaintiff's license agreement with defendant contained non-compete clause whereby defendant's employees could not develop any kind of computer software that could compete with plaintiff's product).

In essence, Defendant accuses Strike 3 of misusing its copyrights by suing to protect those very copyrights against infringement—an action expressly authorized and squarely within the scope of 17 U.S.C. § 501. Indeed, the Ninth Circuit has repeatedly held that such action does not constitute copyright misuse. "To that end, while [the copyright misuse doctrine] 'does prevent copyright holders from using the conditions to stifle competition,' '[t]he copyright misuse doctrine does not prohibit using conditions to control use of copyrighted material." *Oracle USA, Inc. v. Rimini St., Inc.*, 879 F.3d 948, 957 (9th Cir. 2018) citing *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1159 (9th Cir. 2011). Nor does it constitute "porno-trolling" as Defendant nebulously contends.[3] *See* Dkt. # 32, FAC at ¶ 22. Defendant's counterclaim for copyright misuse is not legally actionable.

---

[2] Strike 3's election not to exercise its rights under the Digital Millennium Copyright Act ("DMCA") does not constitute misuse of its rights but rather is a choice in litigation strategy that Strike 3 believes will most effectively reduce piracy of its works. *See* fn. 2, *infra*. Likewise, Strike 3's release of small segments of its works (*i.e.*, teasers/trailers) to the public to consume and share for free in an effort to draw more interest in its full productions has no bearing on Strike 3's diligence in protecting its works. Strike 3 has registered all of the works at issue in this case and has ensured copyright notices have been placed on all its websites. Additionally, every promotional clip is purposefully designed to direct viewers to pay for a subscription to Plaintiff's websites with each video containing clear instructions on how to pay for Plaintiff's content.

[3] Strike 3 is not a copyright troll (i.e., "a plaintiff more focused on the business of litigation than on selling a product or service or licensing their copyrights to third parties to sell a product or service.") *Malibu Media, LLC v. Doe*, 2016 WL 2854420, at *3 (E.D. Cal. 2016). Strike 3 does not merely acquire the rights to bring lawsuits against alleged infringers. Rather, [Plaintiff] is an "**actual producer of adult films** and owns valid copyrights, registered with the United States Copyright Office, in its works." *Malibu Media, LLC v. John Does 1, 6, 13, 14*, 950 F. Supp. 2d 779, 780–81 (E.D. Pa. 2013) (emphasis added). Additionally, Strike 3 makes nearly all of its revenue from sales of subscriptions, DVDs, and licenses—*not from litigation*. Strike 3 reinvests this revenue into creating additional

PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S FIRST
AMENDED COUNTERCLAIMS - (2:17-CV-01731-TSZ) - 6

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

57138018.v1

### C.  Defendant Fails to State a Claim for Abuse of Process

Defendant's last swing at Strike 3's claims is the wildest and has no legal basis whatsoever. Strike 3 has experienced exponential, widespread, and torrent infringement of its works. Thus, it seeks to protect its copyrights by suing Defendant as well as hundreds of other individuals whose IP addresses have been linked to the mass-download and distribution of Strike 3's copyrighted materials. These lawsuits are based on information provided by experienced investigators employing reliable technology. If such infringing activities are permitted to continue, Strike 3 will suffer additional economic injury that it should not have to endure just because Defendant is unhappy he has been sued.

To state a claim for abuse of process, Defendant must show "the misuse or misapplication of the process, after the initiation of the legal proceeding, for an end other than what which the process was designed to accomplish." *Saldivar v. Momah*, 145 Wash. App. 365, 388, 186 P.3d 1117 (2008). In other words, "[t]here must be an act ***after filing suit*** using legal process empowered by that suit to accomplish an end not within the purview of the suit." *Id.* (Emphasis added). The "regularity or irregularity of the initial process is irrelevant." *Batten v. Abrams*, 28 Wash. App. 737, 748, 626 P.2d 984 (1981). *See also Saldivar*, 145 Wash. App. 388-389 (finding no abuse of process even if plaintiff fabricated claims and initiated a baseless and vexatious civil proceeding because plaintiff committed no act after the suit that leveraged a favorable adjudication to accomplish something beyond the purview of the suit). "The 'mere institution of a legal proceeding even with a malicious motive does not constitute an abuse of process.'" *Saldivar*, 145 Wash. App. 388-389 citing *Fite v. Lee*, 11 Wash. App. 21, 27–28, 521 P.2d 964 (1974).

---

works of higher quality, providing artists higher pay and better benefits, and contributing to the creative marketplace copyright law is supposed to foster. U.S. Const. Art. 1, § 8, cl. 8 (Congress shall have the power "[t]o promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries.").

PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S FIRST
AMENDED COUNTERCLAIMS - (2:17-CV-01731-TSZ) - 7

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

57138018.v1

Strike 3 has committed no act to leverage these proceedings into accomplishing something beyond the scope of a case for copyright infringement. Defendant fails to allege any conduct whatsoever that Strike 3 has undertaken which either occurred *after* this suit was filed or transcends the scope of this action so as to reveal an ulterior motive. For instance, Defendant fixates that Strike 3 filed over 700 cases that allege over 25,000 individual infringements against various IP addresses in select judicial districts to purportedly extort settlement payments. Dkt. # 32, FAC at ¶¶ 46-49. Yet, this conduct occurred before Strike 3 filed the instant action and merely reveals Strike 3's attempt to protect its work from widespread piracy. Defendant construes Strike 3's decision not to exercise its rights under the DMCA as bad faith, but Strike 3 has good reason to forgo the DMCA process.[4] Dkt. # 32, FAC at ¶¶ 50-54.

Defendant criticizes Strike 3 for relying on "form complaints, form declarations, and form expert reports," having "no intention of litigating" this case,[5] and sending "demand letters threatening exaggerated and unsupportable damages." Dkt. # 32, FAC at ¶¶ 55-60, 67-73. But putting aside the falsity of these assertions, even if true, they reference materials that squarely fall within the attorney work product privilege and/or constitute confidential settlement communications and do not indicate Strike 3 is pursuing this action with an objective other than to enjoin further infringement of its copyrighted works and collecting damages permitted by law.

---

[4] Defendant alleges Strike 3's failure to send DMCA notices to Defendant's ISP signals bad faith. Defendant ignores the fact that Strike 3 is not obligated to send such notices and elected not to do so given strong empirical evidence indicating the majority of users will not cease their infringing activities even after receiving multiple notices and warnings. *See* "'Six Strikes' Anti-Privacy Initiative Ends After Failing to Scare Off 'Hardcore' Pirates, *The Verge*, https://www.theverge.com/2017/1/30/14445596/six-strikes-piracy-system-failed-ending (reporting Copyright Alert System employed by copyright holders and internet providers where infringing users would receive up to six warning notices and increasing penalties failed to substantially decrease piracy).

[5] Strike 3 has every intention of litigating this action as evidenced by its multiple motions to dismiss (Dkt. # 24 and instant Motion), opposition to Defendant's Motion for More Definite Statement (Dkt. # 26), and other filings and appearances made throughout the course of this action. If Strike 3 was only interested in a quick, easy settlement, it would have dismissed the action when it received any "pushback" from Defendant and "just incur the normal filing cost of $400." Dkt. # 32, FAC at ¶ 13. Strike 3 values its copyrights too highly to back away empty-handed with no assurance that Defendant will cease his infringing activities.

PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S FIRST AMENDED COUNTERCLAIMS - (2:17-CV-01731-TSZ) - 8

Fox Rothschild LLP
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
206.624.3600

57138018.v1

Defendant further alleges that because the action was filed to possibly induce settlement, it constitutes unlawful extortion and abuse of process. Dkt. # 32, FAC at ¶ 74. But even if this were true, every plaintiff that files an action and is not 100% determined to carry the case through trial has abused the process by initiating a legal proceeding that could conceivably induce settlement.[6]

Defendant's absurd contentions and exhaustive attempts to villainize Strike 3 for attempting to protect its statutory rights should not be tolerated. It is axiomatic that prosecuting a group of people who have committed blatant and wholesale infringement of one's intellectual property and pursuing damages expressly recoverable by statute is entirely proper and lawful; it is not "a scheme to extort" or an "abuse of process." Defendant's counterclaim for abuse of process fails as a matter of law.

### D. Defendant's Amended Counterclaim Should Be Dismissed Without Leave to Amend

To determine if leave to amend should be granted under Fed.R.Civ.P. 15, courts consider: (1) bad faith on the part of the pleading party; (2) undue delay on the part of the pleading party; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the pleadings have previously been amended. *Wizards of the Coast LLC v. Cryptozoic Entm't LLC*, 309 F.R.D. 645, 649 (W.D. Wash. 2015).

The factors in the instant case support a denial of leave to amend Defendant's counterclaims. Defendant's first counterclaims consisted of a claim for declaratory relief of non-infringement, a claim for negligent infliction of emotional distress, and a claim for outrage. Realizing these causes of action were not actionable after Strike 3 filed its first motion to dismiss

---

[6] Defendant further alleges that Plaintiff: (1) failed to make any "specific allegations of copyright infringement against any defendant." FAC at ¶¶ 61-63. That is patently false. Strike 3's pleadings are saturated with specificity and factual detail supporting allegations of infringement against Defendant. *See* Dkt. # 1 & 4. Defendant further alleges that Plaintiff failed to "disclose the actual parties in interest." FAC at ¶¶ 63-66. That is also false. Strike 3 duly identified its parent company General Media Systems and submitted a declaration from Strike 3's owner Greg Lansky. *See* Dkt. # 2 & 4-2. Defendant's accusations are also highly ironic as Defendant refuses to disclose his identity pursuant to Fed.R.Civ.P. Rule 26(a)(1)(A) despite the Court's issuance of a protective order.

PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S FIRST
AMENDED COUNTERCLAIMS - (2:17-CV-01731-TSZ) - 9

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

57138018.v1

(Dkt. # 24), Defendant has instead alleged a new set of facially invalid causes of action (with the exception of a claim for a declaration of non-infringement now alleged twice which, as explained in Section III.A, *supra*, is wholly inappropriate and unnecessary). Strike 3 has now had to brief two motions to dismiss Defendant's frivolous claims and should not be required to undergo additional expense. Defendant has also misused the pleadings process by personally attacking Strike 3's employees and consultants, going so far as to publically file sensitive personal information of a fact witness. *See* Dkt. # 21-24. Moreover, there is no indication whatsoever that affording Defendant another chance to plead a facially plausible cause of action will bear fruit. Rather, another round of briefing will waste judicial resources and needlessly delay adjudication of this action.

The multiple meritless counterclaims asserted by Defendant must be read for what they are: Defendant's attempt to countersue for . . . simply, being sued. Defendant's "counterclaims" are not actionable claims. If he is unhappy with being sued, he can (1) reveal his identity to Plaintiff (which will be protected by the protective order in place) so his involvement, or that of someone possibly connected to him, can be further investigated; (2) attempt to defend this action on the merits and seek to recover attorneys' fees should he prove he has no liability in this matter and that a fee award is otherwise appropriate; or (3) bring and prevail on a malicious prosecution lawsuit should he prevail in this matter and demonstrate that this lawsuit was filed maliciously. Tellingly, he refuses to do option No. 1—if he were innocent of infringement, one would think he would want Plaintiff to know as much about that as possible. At the same time, he refuses to acknowledge that he has options Nos. 2 and 3 at his disposal. Instead, he has chosen his own option: file meritless motions and counterclaims in the hopes that Plaintiff will give up pursuing its rights under the Copyright Act. It should be clear now that those efforts fail and Plaintiff will not simply walk away permitting Defendant to resume his infringement at will. Defendant's Amended Counterclaim should be dismissed without leave to amend.

PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S FIRST
AMENDED COUNTERCLAIMS - (2:17-CV-01731-TSZ) - 10

Fox Rothschild LLP
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
206.624.3600

57138018.v1

## IV. CONCLUSION

Defendant's First Amended Counterclaim constitutes a second attempt to spew false assumptions and baseless conclusions about Strike 3's business model and ethics.  After brushing away the smoke caused by the inflammatory rhetoric, it becomes abundantly clear that there remains no factual or legal basis for any of Defendant's purported "counterclaims."  The Court should dismiss Defendant's FAC entirely with prejudice and without leave to amend.

DATED this 31st day of May, 2018.

FOX ROTHSCHILD LLP

_s/ Bryan J. Case_
Bryan J. Case, WSBA #41781
Lincoln D. Bandlow, *admitted Pro Hac Vice* (CSBA #170449)
Attorneys for Plaintiff

PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S FIRST AMENDED COUNTERCLAIMS - (2:17-CV-01731-TSZ) - 11

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

57138018.v1

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 31, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following persons:

| | |
|---|---|
| J. Curtis Edmondson, WSBA #43795<br>399 NE John Olsen Avenue<br>Hillsboro, Oregon 97124<br>Telephone: (503) 336-3749<br>Email: jcedmondson@edmolaw.com | ☑ Via CM/ECF<br>☐ Via U.S. Mail<br>☐ Via Messenger Delivery<br>☐ Via Overnight Courier<br>☐ Via Facsimile |

DATED this 31st day of May, 2018.

*Melinda R. Sullivan* (signature)
Melinda R. Sullivan
Legal Administrative Assistant

PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S FIRST AMENDED COUNTERCLAIMS - (2:17-CV-01731-TSZ) - 12

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

57138018.v1