Honorable Thomas S. Zilly

1

2

3

4

5

6

7

8

9

**U.S. DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF WASHINGTON**

10

11

12

STRIKE 3 HOLDINGS, LLC, a
Delaware corporation,

13

Plaintiff,

14

vs.

15

16

JOHN DOE, subscriber assigned IP
address 73.225.38.130,

17

Defendant.

18

19

Case No. 2:17-cv-01731-TSZ

**DEFENDANT'S OPPOSITION TO
PLAINTIFF STRIKE 3
HOLDINGS, LLC'S MOTION TO
DISMISS DEFENDANT'S FIRST
AMENDED COUNTERCLAIMS
(FACC)**

**NOTING DATE: JUNE 22, 2018
ORAL ARGUMENT
REQUESTED**

20

**DEFENDANT'S OPPOSITION BRIEF**

21

22

**I.     SUMMARY OF THE OPPOSITION**

    Defendant JOHN DOE, subscriber assigned IP address 73.225.38.130,  ("Doe"), a retire

23

police officer, is one of hundreds of defendants sued within the past year by Plaintiff Strike 3

24

Holdings, LLC ("Strike 3").   This case, and the hundreds like it, are subject to the equitable

25

principles laid down in *Morton Salt, Inc. v. Supringer Co.* 314 U.S. 488, ("*Morton Salt*") which

26

places equitable boundaries on the monopolist.  In this case Strike 3 has gone beyond those

27

equitable boundaries by suing defendants for Copyright Infringement based solely on the "I.P.

-1-

**EDMONDSON IP LAW**
Venture Commerce Center, 3699 NE John Olsen Ave
Hillsboro, Oregon 97124
TEL. 503.336.3749 • FAX 503.482.7418

1

2

3

Address" without first making use of the essentially free remedy provided by DMCA notices. Instead, Strike 3 knows that the average defendant, faced with the "choice" of hiring expensive copyright lawyers or taking a "nuisance settlement" (from $1,000.00 to $ 10,000.00) will choose the latter whether or not they actually infringed.

4

5

6

7

8

9

10

11

12

13

This is not a case where Strike 3 "merely seeks to protect its copyrights from widespread infringement" (Motion at 5), because if that were its true objective, it would sue immediately after observing infringing activity that met a certain threshold level.  This is not borne out by the analysis of Strike 3's filings, which, in Washington State alone, show a wide variability in the number of alleged infringements in each case, ranging from 19 hashes to 80. Further, prompt litigation to curb any alleged infringement would mean there would not be a lengthy delay in filing suit. The interval between first observed alleged infringement and filing of the suit ranges, again in Washington State, from 75 to 196 days.   This variability is not unique to Washington State, a recently filed case in New York alleges infringement of 122 works over a period of 254 days, with suit not being filed until 287 days after the first observed instance of alleged infringement. (See Rockenstein Declaration §7-10).

14

15

16

17

18

Given Strike 3's repeated claims of "widespread" infringement, one would expect a proportional distribution of suits in judicial district across the United States.  Instead, the target districts are those with the highest average salary and where Strike 3 can shake the "money tree". (See Rockenstein Declaration §6).  This is not rational copyright enforcement, this is copyright monetization without knowing who infringed (e.g. since the I.P. address cannot accurately identify an infringer).

19

20

21

22

Doe respectfully request that this Court declare that he is not an infringer, but more importantly Doe asks for the equitable remedy available, namely that the copyrights not be enforced under the doctrine of Copyright Misuse. Further Doe also asks that damages be awarded for clear abuse of process.  Since Does has properly alleged these facts, dismissal at the pleading stage is unwarranted.  This motion should be denied.

23

24

**II.     STANDARD OF REVIEW AND PROCEDURAL SITUATION**

Dismissals under Rule 12(b)(6) are reviewed *de novo*.  *Holcombe v. Hosmer,* 477 F.3d

25

1094, 1097 (9th Cir. 2007).  All facts alleged in the cross-complaint are presumed to be true.

26

*McLachlan v. Bell,* 261 F.3d 908, 909 (9th Cir.2001). Evaluation of dismissals of declaratory

27

-2-

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO
DISMISS DEFENDANT'S FIRST AMENDED COUNTERCLAIMS
CASE NO. 2:17-CV-01731-TSZ

**EDMONDSON IP LAW**
Venture Commerce Center, 3699 NE John Olsen Ave
Hillsboro, Oregon 97124
TEL. 503.336.3749 • FAX 503.482.7418

1
2
relief actions reviewed for abuse of discretion. *Wilton v. Seven Falls Co.,* 515 U.S. 277, 289-90 (1995).

3
### III.  PROCEDURAL SUMMARY

4
5
6
7
8
Strike 3 filed its complaint on November 16, 2017.  (Docket 1). Strike 3 moved ex-parte to seek the identity of the alleged infringers on December 4, 2017 (Docket 5). Doe filed his motion to dismiss and for a more definitive statement on March 8, 2018 (Docket 21).  This Court granted Doe's motion for a more definitive statement on June 6, 2018 (Docket 36) and ordered that a first amended complaint be filed within 30 days.  Doe amended his counterclaims on May 1, 2018. (Docket 32).

9
10
11
This case is positioned procedurally different than most other cases. There is no operative complaint by virtue of this Court's Order on 06/06/18 and no answer on file.   As such all that exists are the counterclaims by John Doe.

12
### IV.  ARGUMENT
13
#### a.  A COUNTERCLAIM FOR A DECLARATORY JUDGMENT FOR NON-INFRINGEMENT IS REQUIRED SINCE PLAINTIFF HAS THE OPTION OF NOT FILING A FIRST AMENDED COMPLAINT

14
15
16
17
18
The Declaratory Judgment Act allows courts to "declare the rights and other legal relations" of parties to "a case of actual controversy." 28 U.S.C. § 2201. An actual controversy exists if the declaratory action if a party  has a real and reasonable apprehension that he will be subject to a suit *Societe de Conditionnement en Aluminium v. Hunter Engineering Co.,* 655 F.2d 938, 944 (9th Cir. 1981).

19
20
21
22
23
There is no question that Doe has some real apprehension regarding a suit, namely because a suit is currently in progress.  While, Strike 3's movies are provided to the general public through three "portals" at a reasonable market rate,  (FACC, ¶¶4,31), Strike 3's assertion of statutory damages can range from $ 200.00 to $ 150,000.00 per work, or up to $ 12,000.000.00 (80 works * 150K/work).

24
25
26
The "mirror image" argument made by Strike 3 is inapplicable here as there is no answer on file to the complaint.  Assuming, *en arguendo*, that an answer exists, then Strike 3's argument for dismissal of Doe's counterclaim has been raised before and rejected just recently in the ND CAL. (See RJN1, Malibu *Media v. Doe*, 15-04441, ND CAL (2015)).

27

-3-

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S FIRST AMENDED COUNTERCLAIMS CASE NO. 2:17-CV-01731-TSZ

**EDMONDSON IP LAW**
Venture Commerce Center, 3699 NE John Olsen Ave
Hillsboro, Oregon 97124
TEL. 503.336.3749 • FAX 503.482.7418

1

2

3

### b. COPYRIGHT MISUSE SHOULD NOT BE DISMISSED AS THE "SUE AND SETTLE MODEL" WITHOUT DMCA NOTICES IS AN UNFAIR EXTENSION OF THE COPYRIGHT MONOPOLY UNDER MORTON SALT.

4

5

Copyright Misuse has its origins in Patent Misuse. (See RJN 2). The patent and copyright monopolies arise from the same constitutional grant, namely:

6

7

8

9

> The grant to the inventor of the special privilege of a patent monopoly carries out a public policy adopted by the Constitution and laws of the United States, 'to promote the Progress of Science and useful Arts, by securing for limited Times to * * * Inventors the exclusive Right * * *.' to their 'new and useful' inventions. United States Constitution, Art. I, § 8, cl. 8;
> (*Morton Salt*)

10

11

12

13

14

15

16

17

18

19

20

The grant of a government monopoly is not a trivial thing.  Holders of the monopolies are given special privileges to extract rents from consumers, either directly or indirectly. The goal of a monopolist is to seek the highest rent possible, subject to market forces.  In some cases, the government has set statutory license fees. In the Copyright Act, there are numerous statutory license fees to prevent conflicts involving use of musical works.  (See 17 U.S.C. §§ 114, 115). These statutory license fees are imposed by Congress to balance the rights of artists and users of their works in certain situations. In other situations, where Congress has not legislated, the Courts have crafted equitable licenses fees.  This is especially prevalent in case of FRAND patent licensing. *Microsoft Corp. v. Motorola, Inc*., 795 F.3d 1024 (9th Cir., 2015). FRAND licensing balances the competing forces of cooperation of standards bodies with the risk of patent holdup. In the case of FRAND disputes, the parties litigate, but the Courts will ultimately determine an equitable license fee.  In either case, statutory licensing or litigated licensing, Congress or the Court applies statutory or equitable principles in determining what a fair for the monopolist.

21

22

23

24

25

26

What constitutes fair conduct for the copyright monopolist can only be reviewed in the context of today's internet technologies. The internet has created a very cost effective distribution platform for Strike 3.  Strike 3 no longer has to contract with movie theaters to distribute movies for public viewing (these theaters having high fixed costs), Strike 3 does not have to distribute DVDs as digital downloading is possible via its three portals.   While Strike 3 enjoys the benefits of the Internet distribution platform, its investment in the creation of this

27

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO
DISMISS DEFENDANT'S FIRST AMENDED COUNTERCLAIMS
CASE NO. 2:17-CV-01731-TSZ

**EDMONDSON IP LAW**
Venture Commerce Center, 3699 NE John Olsen Ave
Hillsboro, Oregon 97124
TEL. 503.336.3749 • FAX 503.482.7418

platform is insignificant.  Practically speaking, Strike 3 uses this internet platform to distribute works, but paid nothing to develop the platform on which it relies for distribution.

When the DMCA was enacted, Congress legislated a balance regarding internet copyright infringement.  Congress understood that millions of internet infringements were occurring either intentionally or inadvertently since the cost of infringement had been driven to zero. If every infringement on the Internet required a Federal lawsuit, the Federal Courts would be overwhelmed.  That is why the "DMCA notice" is so important, it allows an easy, practically cost free, way to give notice to the infringer.   It is especially important when infringement can only be tied to an IP address and it is possible that hundreds of people could have used that IP address.

Here, Doe is asking this Court to follow three general principles of *Morton Salt* that DOE has satisfied at this stage of the pleadings:

> (i).  **Courts, and especially courts of equity, may appropriately withhold their aid where the plaintiff is using the right asserted contrary to the public interest**.

It is in the public interest to prevent courts being inundated with litigation before all avenues designed to maintain an efficient judiciary have been exhausted.  It is clearly contrary to public interest for Strike 3 to embark on a voluminous litigation spree with apparent disregard to the processes, (e.g. DMCA notice to the IP Address), put in place by Congress to address copyright infringement in the internet era.

> (ii).  **The equitable maxim that a party seeking the aid of a court of equity must come into court with clean hands**.

In seeking the aid of a court of equity, Doe has come to the court with clean hands as he has asserted non-infringement.  While Strike 3 differs on this point, that is something to resolve down the road when there is discovery.  Doe has pled non-infringement and given the paucity of test data regarding Strike 3's "monitoring system", Strike 3 cannot demonstrate infringement with data admissible under *Daubert*.

> (iii).  **The maintenance of the suit concerns the public interest as well as the private interests of suitors**.

This is one of the few cases that involves not only the litigation between Doe and Strike 3, but also the hundreds of other cases filed by Strike 3, the thousands of cases filed by

-5-

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO
DISMISS DEFENDANT'S FIRST AMENDED COUNTERCLAIMS
CASE NO. 2:17-CV-01731-TSZ

**EDMONDSON IP LAW**
Venture Commerce Center, 3699 NE John Olsen Ave
Hillsboro, Oregon 97124
TEL. 503.336.3749 • FAX 503.482.7418

1
2
3
4
5

Malibu Media, and thousands of cases filed by movie companies controlled by Voltage Pictures, etc.  This case is a test of the "business model" of copyright monetization and whether thin and ambiguous data can be used to support litigation whose sole purpose is an easy settlement.  The courts are intended to provide a means to resolve disputes, not to provide a vehicle to collect $5,000.00-$10,000.00 for an entry price of $ 400.00.  Taxpayers are ultimately subsidizing these docket-clogging-suits that do little more than encumber the court system.

6
7
8

As Doe clearly satisfies the *Morton Salt* test for misuse and at this stage of the case, Doe's allegations must be accepted as true, Strike 3's motion to dismiss the claim for copyright misuse should be denied.

9
10

**c. DOE'S CLAIM FOR ABUSE OF PROCESS SHOULD NOT BE DISMISSED BECAUSE THE *EX-PARTE* MOTION IS FILED AFTER THE INITIATION OF THE LAWSUIT SATISFYING *SALVIDAR V. MOMAH* , 145 WASH APP. 365, 388 (2008).**

11
12
13
14
15
16
17
18
19
20

Strike 3 contends that any act prior to filing a lawsuit is essentially "fair game" under the holding of *Salvidar v. Momah*, 145 Wash App. 365, 388 (2008), and therefore cannot be the subject of an abuse of process claim.  Applied to the facts of this case, this would mean that Strike 3 could collect random data from internet, process it using poorly written code, cross-reference to unregistered copyrights, then have this "data" reviewed by unlicensed investigators, act which is illegal under Washington law.  While Doe does not believe that these prelitigation acts are insulated from the tort of abuse process (See *Bellevue Farm Owners Ass'n v. Stevens*, 198 Wash.App. 464 (Wash. App., 2017)), Strike 3's argument fails because these representations were presented after initiation of litigation via the "*Ex-Parte*" notice.  Reliance on these prelitigation acts as the basis for the "*Ex-Parte*" notice brings them squarely within "act after filing suit" (See Motion at 7).

21
22
23
24

But, *Salvidar* is also old law in Washington for the tort of abuse of process.  Strike 3 oddly does not mention *Bellevue*, which is the leading case. Doe has properly alleged all of the elements required for abuse of process articulated under *Bellevue* ((1) an ulterior purpose to accomplish an object not within the proper scope of the process, (2) an act not proper in the regular prosecution of proceedings, and (3) harm caused by the abuse of process.

25
26
27

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S FIRST AMENDED COUNTERCLAIMS CASE NO. 2:17-CV-01731-TSZ

**EDMONDSON IP LAW**
Venture Commerce Center, 3699 NE John Olsen Ave
Hillsboro, Oregon 97124
TEL. 503.336.3749 • FAX 503.482.7418

1

2

Doe, has alleged all of these facts in the FACC.  While Strike 3 may speculate and argue via lengthy and copious footnotes (e.g. a "speaking motion") this is something that has to be dealt with on summary judgment or at trial with admissible evidence.

3

4

Doe therefore requests that Strike 3's motion to dismiss the claim for Abuse of Process be denied as each element under *Salvidar* and *Bellevue* has clearly been satisfied at this stage of the pleadings.

5

6

7

//

8

9

//

10

//

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

-7-

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO
DISMISS DEFENDANT'S FIRST AMENDED COUNTERCLAIMS
CASE NO. 2:17-CV-01731-TSZ

**EDMONDSON IP LAW**
Venture Commerce Center, 3699 NE John Olsen Ave
Hillsboro, Oregon 97124
TEL. 503.336.3749 • FAX 503.482.7418

1

2   **V.   CONCLUSION**

3         In support of Strike 3's *Ex-Parte* Notice in this case, Greg Lansky has claimed that an

4   average of 50,000 DMCA notices are sent out a month (Docket 4-2, ¶26). His claim is repeated

5   in hundreds of his other pro-forma declarations, submitted in support of other *Ex-Parte* Notices.

6   His statement stands in stark contrast to the true facts and motivations behind this case.

          Buried in one of its numerous footnotes, Strike 3 has provided probably the most telling

7   piece of information in any of their pleadings:

8

9               "**Strike 3's election not to exercise its rights** under the Digital Millennium
                Copyright Act ("DMCA") does not continue misuse of its rights but rather
10              **is a choice in litigation strategy**."

11        (See Motion, fn. 2, pg 6, emphasis added).

12        DMCA notices were never intended to form part of a "litigation strategy".   They were

13  Congress's solution to provide a means to address internet infringement and to reduce the burden

14  of excessive copyright litigation. Any rational copyright holder faced with "*exponential,*

15  *widespread, and [sic] torrent infringement of its works*" (Motion at 7), would use the DMCA as

16  the first line of defense.  By choosing to forgo DMCA notices to the purported infringers, Strike

    3 is admitting it could not care less about actually curbing infringement.  The only other rational

17  explanation is that this litigation is about supplementing Strike 3 movie revenues and using the

18  court system as a quasi-box office.

19        In view of the foregoing, Doe respectfully requests that this Court deny Strike 3's motion

20  to dismiss the FACC.

21

22  Respectfully submitted on June 18, 2018      by:   /s/ *J. Curtis Edmondson*
                                                 J. Curtis Edmondson, WSBA #43795
23                                               3699 NE John Olsen Avenue Hillsboro, OR 97124
                                                 Telephone: (503) 336-3749
24                                               Email: jcedmondson@edmolaw.com
                                                 *Attorney for Defendant*
25

26

27

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO
DISMISS DEFENDANT'S FIRST AMENDED COUNTERCLAIMS
CASE NO. 2:17-cv-01731-TSZ

**EDMONDSON IP LAW**
Venture Commerce Center, 3699 NE John Olsen Ave
Hillsboro, Oregon 97124
TEL. 503.336.3749 • FAX 503.482.7418

1

## CERTIFICATE OF SERVICE

2

I, J. Curtis Edmondson, hereby certify that on June 18, 2018, I electronically filed the

3

foregoing with the Clerk of the Court using the CM/ECF system which will send notification of

4

such filing to the following:

5

        Bryan J. Case, WSBA #41781
        Email: bcase@foxrothschild.com

6

        FOX ROTHSCHILD LLP (SEATTLE)
        1001 Fourth Avenue, suite 4500

7

        Seattle, Washington 98154
        Telephone: (206) 624-3600

8

9

        Lincoln D. Bandlow, *Admitted Pro Hac Vice*
        Email: lbandlow@foxrothschild.com

10

        FOX ROTHSCHILD LLP (LOS ANGELES)
        10250 Constellation Blvd., Suite 900

11

        Los Angeles, California 90067
        Telephone: (310) 598-4150

12

13

        *Attorneys for Plaintiff Strike 3 Holdings LLC*

14

DATED this 18th day of June, 2018.

15

16

        By:   /s/   *J. Curtis Edmondson*
            J. Curtis Edmondson

17

18

19

20

21

22

23

24

25

26

27

PROOF OF SERVICE
CASE NO. 2:17-CV-01731-TSZ