The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC, a Delaware corporation,<br><br>                            Plaintiff,<br><br>        v.<br><br>JOHN DOE, subscriber assigned IP address 73.225.38.130,<br><br>                            Defendant. | Case No. 2:17-cv-01731-TSZ<br><br>**STRIKE 3 HOLDINGS, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS DEFENDANT JOHN DOE'S FIRST AMENDED COUNTERCLAIMS**<br><br>NOTE ON MOTION CALENDAR: JUNE 22, 2018 |

## I.     INTRODUCTION

Defendant John Doe's rambling Opposition does not advance any cogent factual or legal arguments as to why any of his counterclaims state an actionable claim upon which relief can be granted.  The Court should dismiss Defendant's counterclaims for multiple reasons, and should do so with prejudice.

First, Defendant's declaratory relief claim of non-infringement is simply a mirror image of Plaintiff's claim for copyright infringement and an impermissible offensive counterclaim that purports to require Plaintiff to defend itself against an unknown party.  Defendant's non-infringement "counterclaim" is really just a defense to Plaintiff's infringement claim.

REPLY ISO MOTION TO DISMISS DEFENDANT'S
AMENDED COUNTERCLAIMS - (2:17-CV-01731-TSZ) - 1

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

57138018.v1
58580731.v1

Second, Defendant still fails to plead any facts to support a plausible claim that Plaintiff is misusing its copyrights in some purported monopolistic way to gain an unfair competitive advantage in the industry. To the contrary, Plaintiff's prosecution of rampant, widespread and damaging copyright infringement *preserves the marketplace* for not only Plaintiff's films, but also all other copyright holders and film makers worldwide. This action and the others pursued by Plaintiff sends a very clear message to all those who would go to BitTorrent or other such sites to illegally download Plaintiff's films or any other copyrighted work: this practice is theft, it will get you sued, and you will be held accountable.

Third, Defendant's abuse of process claim fails to allege any facts to state a plausible claim that Plaintiff is somehow exploiting this lawsuit to obtain relief beyond that which is expressly authorized by the Copyright Act upon a showing of infringement. Rather, Plaintiff is simply suing to enjoin infringement of its copyrights and collect damages, two remedies expressly permitted under the Copyright Act. Plaintiff is properly "using process" to obtain relief routinely provided under the Copyright Act, it is not "abusing" process in any way. Defendant's counterclaims are not cognizable legal theories, nor do they contain sufficient facts to support these supposed actionable counterclaims.

Accordingly, Plaintiff respectfully requests this Court dismiss all of Defendant's counterclaims with prejudice, and without leave to amend.[1]

## II.     AUTHORITY & ARGUMENT

### A.     Defendant's Declaration of Non-Infringement Claim is Procedurally Improper and Manifestly Inequitable.

Plaintiff's Motion presented abundant case law authorizing a district court to dismiss a declaration of non-infringement counterclaim where the question of whether defendant infringed plaintiff's copyrights would be decided by plaintiff's infringement claim. *See* Dkt. # 35 at pp. 3-4

---

[1] Defendant does not request leave to amend in his Opposition nor does he assert how he could cure his claims and thus concedes that dismissal with prejudice is appropriate.

REPLY ISO MOTION TO DISMISS DEFENDANT'S
AMENDED COUNTERCLAIMS - (2:17-CV-01731-TSZ) - 2

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

57138018.v1
58580731.v1

citing *Atl. Recording Corp. v. Serrano*, No. 07-cv-1824, 2007 WL 4612921, at *4 (S.D. Cal. 2007); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995); *Tenneco Inc. v. Saxony Bar & Tube, Inc.*, 776 F. 2d 1375, 1379 (7th Cir. 1985); *Stickrath v. Globalstar, Inc.*, No. C07-1941-TEH, 2008 WL 2050990, at *3 (N.D. Cal. 2008); *Pettrey v. Enter. Title Agency, Inc.*, No. 1:05-cv-1504, 2006 WL 3342633, at *3 (N.D. Ohio 2006) (affirming the "mirror image" rule).  Defendant's declaration of non-infringement "counterclaim" is not an offensive claim, but rather a defense or denial of Plaintiff's infringement claim.  When Defendant answers Plaintiff's amended complaint, he is free to deny any infringement and/or assert non-infringement as an affirmative defense.  But attempting to advance his defense as an offensive "counterclaim" is inappropriate.

Defendant dodges this authority and concedes the Court has discretion to dismiss his counterclaim for redundancy but argues the Court should not do so because he has not answered Plaintiff's complaint or forthcoming amended complaint.  *See* Dkt. # 37 at p. 3.  Defendant wrongly concludes that since Plaintiff may elect to forego filing an amended complaint, Defendant's counterclaim for declaratory relief should survive.  This reasoning overlooks the fact that Plaintiff's complaint has ***not*** been dismissed.  Plaintiff is merely required to amend its complaint within the time set by the Court, and if it declines this invitation then Defendant is welcome to file his own suit for declaratory relief and seek whatever attorney's fees or costs to which he believes he is entitled.  *See UMG Recordings, Inc. v. DivX, Inc*., No. CV 07-06835, 2008 WL 11338802, at *4-5 (C.D. Cal. Aug. 22, 2008) (dismissing copyright defendant's counterclaim for a declaration of non-infringement because the assertions therein were "identical" to those in the answer and finding defendant could file an action for declaratory relief if plaintiff moves to dismiss without prejudice).[2]  Accordingly, dismissing Defendant's

---

[2] Defendant's reliance on Judge Otis Wright's opinion in *Malibu Media, LLC v. John Does 1 through 10*, 2012 WL 53832304, at *3-4 (C.D. Cal. 2012) is misplaced.  Judge Wright denied Malibu Media's motion to dismiss due to concern that removing the declaratory relief counterclaim would permit Malibu Media to voluntarily dismiss the suit and only incur the costs of "a single filing fee, a bit of discovery, and stamps," while the defendant would be left to cover his own fees and costs.  *Id.*  Judge Wright reasoned "by requiring Malibu to file separate lawsuits for each of

REPLY ISO MOTION TO DISMISS DEFENDANT'S
AMENDED COUNTERCLAIMS - (2:17-CV-01731-TSZ) - 3

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

57138018.v1
58580731.v1

counterclaim at this stage as premature does not cause the Defendant any prejudice but rather permits this litigation to ripen without complicating it with a redundant cause of action.

Further, in the event that Plaintiff elects not to amend its complaint or if its complaint is ultimately dismissed, failure to dismiss this counterclaim subjects Plaintiff to the inequity of having to defend itself against an unknown plaintiff.  Rule 10(a) of the Federal Rules of Civil Procedure requires that the title of every complaint "include the names of all the parties."  Courts find prejudice against the defendant "where a plaintiff's anonymity interferes with the defendant's ability to address specific allegations against it or is logistically impracticable." *See, e.g., Publius v. Boyer-Vine*, 321 F.R.D. 358, 365 (E.D. Cal. 2017).  Anonymity should not prejudice the opposing party's ability to litigate the case. *Does 1 thru XXIII v. Advanced Textile Corp.*, 214 F. 3d 1058, 1069 (9th Cir. 2000).[3]  If Defendant remains anonymous and his counterclaim(s) are maintained, prejudice to Plaintiff will follow.  For example, Plaintiff cannot

---

the Doe Defendants, Malibu will have to expend additional resources to obtain a nuisance-value settlement." *Id*. In contrast, here Plaintiff has spent these "additional resources" to the tune of tens of thousands of dollars briefing a motion for early discovery (Dkt. # 4), preparing an opposition to Defendant's voluminous motion for more definite statement (Dkt. # 21 & 26), and briefing two motions to dismiss Defendant's various counterclaims (Dkt. # 24 & 35), *inter alia*.  Plaintiff has vigorously litigated this matter, as well as many of the other infringement actions it has filed nationwide, to protect its copyrighted works from continued torrent infringement – not to collect a "nuisance-value settlement."  Plaintiff is prepared to litigate this action to trial if that is what it takes to terminate Defendant's rampant infringement.  Moreover, Defendant admits he is not an "average defendant" and can afford to engage Plaintiff in costly litigation, which he has done. Dkt. # 37 at p. 2.  Accordingly, Judge Wright's concerns do not apply to this case under these circumstances.

[3] A plaintiff may be permitted to file anonymously under special circumstances when "nondisclosure of the party is necessary to protect a person from harassment, injury, ridicule or personal embarrassment." *Doe v. Amazon.com, Inc.*, 2011 WL 13073281, at *2 (W.D. Wash. 2011).  However, even if Defendant claims here that revealing his identity would subject him to harassment, injury, ridicule, or embarrassment caused by the public (which he cannot as the alleged harm, if non-physical, must be "extreme" *see Id*. at *3), Defendant suffers no risk of serious harm if his identity is solely disclosed to Plaintiff and the Court.  *See also Doe v. State Bar of Cal.*, 415 F. Supp. 308, 309 fn. 1 (N.D. Cal. 1976) (finding courts look with "great disfavor" upon anonymous pleadings where plaintiff conceals his identity to avoid a "possible adverse impact on his reputation.").  Moreover, this Court has already entered a protective order maintaining Defendant's privacy and anonymity, but Defendant remains masked (which is curious since Defendant vehemently pleads his innocence yet remains concealed as if he has something to hide). Dkt. # 17 & 20.

REPLY ISO MOTION TO DISMISS DEFENDANT'S
AMENDED COUNTERCLAIMS - (2:17-CV-01731-TSZ) - 4

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

57138018.v1
58580731.v1

identify witnesses related to Defendant who may have information helpful to Plaintiff's defense, cannot depose Defendant, and cannot engage in meaningful discovery while blindfolded.

In sum, Defendant's non-infringement counterclaim fails because it is a mirror image of Plaintiff's copyright infringement claim, involves identical factual and legal issues, and serves no useful purpose aside from needlessly complicating this litigation. Further, Defendant's counterclaim should be dismissed because it is a thinly veiled attempt to lock Plaintiff into a litigation in which Plaintiff may be forced into the inequitable circumstance of having to defend itself against an unknown plaintiff.[4]

### B.  Defendant's Copyright Misuse Claim is Meritless and Unintelligible.

Incredibly, Defendant's Opposition devotes over two pages to arguing that Plaintiff is somehow misusing its copyrights by simply filing an action for copyright infringement. Defendant is flat wrong. In doing so, Defendant bemoans Plaintiff's alleged strategic decision not to issue a slew of notices under the Digital Millennium Copyright Act ("DMCA") and incorrectly concludes that Plaintiff's alleged "sue and settle model" violates the public interest. Dkt. # 37 at pp. 4-6. As illustrated in its Motion, Plaintiff has good reason for electing to sue the individuals infringing its copyrights rather than utilize the DMCA process, particularly when overwhelming empirical evidence demonstrates that the majority of users do not cease their infringing activities even after receiving multiple notices and warnings.[5] Dkt. #35 at p. 8, fn. 4.

---

[4] If the Court denies Plaintiff's motion to dismiss Defendant's counterclaim for declaratory relief, or any of Defendant's counterclaims for that matter, Plaintiff respectfully requests that the Court order Defendant to immediately reveal his identity (subject to the protective order of course) so that Plaintiff can prepare an adequate defense.

[5] Plaintiff, in fact, has employed the DMCA process and has caused *millions of notices* to be sent to BitTorrent sites worldwide within the past two years, but this strategy has proved largely ineffective as a means to significantly reduce infringement. Declaration of Emilie Kennedy ("Kennedy Decl.") ¶7. Indeed, Defendant himself references the Greg Lansky declaration in which Mr. Lansky states that approximately 50,000 DMCA notices are routinely sent out by Plaintiff every month, yet Defendant merely concludes that this evidence somehow "stands in stark contrast to the true facts and motivations behind this case." Dkt. #37 at p. 8. Defendant, unsurprisingly, offers no facts or any basis for this allegation.

REPLY ISO MOTION TO DISMISS DEFENDANT'S
AMENDED COUNTERCLAIMS - (2:17-CV-01731-TSZ) - 5

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

57138018.v1
58580731.v1

Tellingly, Congress did not make the DMCA notice/takedown procedure mandatory for copyright holders. Rather, it was created as a relatively simple, low-cost alternative to litigation that a copyright holder may use to protect works from online infringement. The fact that Defendant vehemently disagrees with Plaintiff's decision to instead file a lawsuit to defend its works merely shows how effective litigation can be to deter continued infringement. It is not a misuse of copyrights to file suit, but rather a proper use of process to protect those copyrights.[6]

Moreover, the sole case upon which Defendant bases his argument, *Morton Salt Co. v. G. S. Suppiger Co.*, 314 U.S. 488, 490 (1942), is inapposite to this action. In *Morton Salt*, the U.S. Supreme Court presumed a party who used a patent to restrain the sale of salt tablets in competition with its own sale of unpatented tablets substantially lessened competition for its products and thereby abused the patent.[7]

Conversely, in this present action, Defendant makes no allegations (nor could he) that Plaintiff having brought a routine copyright infringement action against an illegal downloader is "restraining competition" in the marketplace for adult films. *Id.* Instead, the litigation Plaintiff and other motion picture production companies have shouldered to stop and prevent rampant widespread infringement helps protect the marketplace for all films and all copyrighted works by ensuring their production remains a profitable endeavor not destroyed by online theft. *See* Dkt. #

---

[6] The exact course of conduct that Defendant assails was specifically endorsed by the former U.S. Register of Copyrights, Marybeth Peters, in a statement on the DMCA: "[w]hile we would like to think that everyone obeys the law simply because it is the law and out of a sense of obligation, we also know that laws without penalties may be widely ignored. For many people, the best form of education about copyright in the internet is the threat of litigation… ***Copyright owners have every right to enforce their rights in court, whether they are taking action against providers of peer-to-peer services designed to profit from copyright infringement or against the persons engaging in individual acts of infringement using such services.***" Statement of Marybeth Peters before the Committee on the Judiciary, U.S. Senate 108th Congress, 1st Session (Sept. 9, 2003) (emphasis added).

[7] *Morton Salt* was later abrogated by *Illinois Tool Works Inc. v. Independent Ink Inc.*, 547 U.S. 28, 42-43 (2006), which found that tying arrangements involving patented products are not *per se* unlawful and that such a contention of patent abuse must be supported by "proof of power in the relevant market." Defendant has not alleged any facts whatsoever here that this litigation has the power to curb or adversely affect the market for adult films.

REPLY ISO MOTION TO DISMISS DEFENDANT'S
AMENDED COUNTERCLAIMS - (2:17-CV-01731-TSZ) - 6

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

57138018.v1
58580731.v1

35 at pp. 4-6; *UMG Recordings, Inc. v. Lindor*, 531 F. Supp. 2d 453, 459 (E.D.N.Y. 2007) ("Collectively bringing infringement suits… exhibits none of the hallmarks of anticompetitive copyright pooling, and cannot be classified as such."); *Oracle USA, Inc. v. Rimini St., Inc.*, 879 F. 3d 948, 957 (9th Cir. 2018) (holding that the copyright misuse doctrine cannot prohibit using conditions to control the use of copyrighted material); *Malibu Media, LLC v. Doe*, No. 13 C 3648, 2014 WL 2581168, at *2 (N.D. Ill. June 9, 2014) (finding that, for example, Coach, Inc. filing 57 lawsuits over four years naming hundreds of entities as defendants to be an undoubtedly appropriate means to combat mass infringement).[8]

Thus, Defendant is simply accusing Plaintiff of misusing its copyrights by suing to protect those very copyrights against infringement. Such a suit by Plaintiff is expressly authorized by and squarely within the scope of the Copyright Act. Plaintiff is properly using the legal process, not misusing it. Defendant's counterclaim for copyright misuse fails as a matter of law and should be dismissed with prejudice.

### C. Defendant's Specious Claim for Abuse of Process Defies Both Law and Fact.

Defendant alleges that this action constitutes "extortion through sham litigation" and bases his claim for abuse of process on a baseless conspiracy theory. *See* Dkt. # 32 at ¶¶ 52-74. The "facts" upon which Defendant claims support this theory are not facts at all, but rather speculative assumptions and suppositions Defendant makes as to Plaintiff's purported motivation in bringing this suit—all of which are debunked by Plaintiff's Motion.[9] Dkt. #35 at pp. 7-9.

---

[8] Defendant does not address this authority or provide any explanation for why Plaintiff's litigation strategy should be construed as "copyright misuse" while more mainstream brands like Coach and Microsoft can execute the same strategy without question as to its legitimacy. *See, e.g., Microsoft Corp v. Does 1-10*, 2017 WL 5548641 (W.D. Wash. 2017); *Microsoft Corp v. Does 1-10*, 2018 WL 263313 (W.D. Wash. 2018); *Microsoft Corp v. Does 1-10*, 2016 WL 10637083 (W.D. Wash. 2016); *Microsoft Corp v. Does 1-10*, 2017 WL 4958047 (W.D. Wash. 2017); *Microsoft Corp v. Does*, 2015 WL 12930800 (W.D. Wash. 2015); *Microsoft Corp v. Does 1-10*, 2017 WL 2345550 (W.D. Wash. 2017); *Microsoft Corp v. Does*, 2015 WL 12930822 (W.D. Wash. 2015); *Microsoft Corp v. Does 1-10*, 2017 WL 1133965 (W.D. Wash. 2017); *Microsoft Corp v. Does*, 2016 WL 9526409 (W.D. Wash. 2016).

[9] Defendant continues the false narrative that because Strike 3 chose litigation over the DMCA notice/takedown mechanism that, somehow, Strike 3 is "abusing the process." Yet, even if this were true, Strike 3 has caused

REPLY ISO MOTION TO DISMISS DEFENDANT'S
AMENDED COUNTERCLAIMS - (2:17-CV-01731-TSZ) - 7

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

57138018.v1
58580731.v1

Defendant concocts a few additional allegations in his Opposition that are worth noting to demonstrate the baseless nature of his abuse of process counterclaim. He contends that Plaintiff has purposely sued users in districts "with the highest average salary and where Strike 3 can shake the 'money tree.'" Dkt. # 37 at p. 2. Defendant offers no substantiation for this claim; rather, he is making all of this up as he goes.[10] Plaintiff has filed lawsuits against defendants whose IP addresses trace to cities with a widespread variety of demographics throughout the country. *See* Kennedy Decl. ¶13, Ex. A. Plaintiff also is only able to identify users by their IP address and has no knowledge as to a certain user's annual income or respective wealth, notwithstanding the fact that such information is entirely irrelevant to whether the user infringed Plaintiff's copyrights. Defendant further claims that Plaintiff's litigation efforts constitute a "business model" from which it can monetize its copyrights by suing and inducing an "easy settlement." Dkt. #37 at p. 6. Wrong again. There is nothing easy or cheap about conducting national litigation to ***enjoin rampant infringement of Plaintiff's works***. Plaintiff also (for the umpteenth time) is not interested in collecting token settlements; its goal is to protect its valuable works from continued torrent infringement.

Notwithstanding the foregoing, Defendant's abuse of process claim fails as a matter of law. The case that Defendant claims is the "leading case" for abuse of process, *Bellevue Farm Owners Ass'n v. Stevens*, 198 Wash. App. 464 (2017), cites Restatement (Second) of Torts § 682 which states:

---

millions of DMCA notices to be sent to BitTorrent sites and users but found litigation necessary to curb infringement. Kennedy Decl. ¶7. Strike 3 has every right to sue Defendant and other individuals who infringe its works. This is called "use of process."

[10] Defendant cites to the Declaration of Kiren Rockenstein ("Rockenstein Decl.") to support this claim, yet the veracity of this declaration is dubious. First, Ms. Rockenstein is not listed as co-counsel of record for Defendant in this action on the docket viewable by Public Access to Court Electronic Records ("PACER") as she claims, and a copy of the Excel spreadsheet reflecting a "master database" of the infringements in cases filed in this district which was allegedly used to calculate the interval between the first observed instance of infringement and the date of suit (as if that matters) is conspicuously absent from Defendant's papers. Rockenstein Decl. ¶¶ 2, 9.

REPLY ISO MOTION TO DISMISS DEFENDANT'S
AMENDED COUNTERCLAIMS - (2:17-CV-01731-TSZ) - 8

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

57138018.v1
58580731.v1

> "For abuse of process to occur there must be use of the process for an immediate purpose *other than that for which it was designed and intended*… [such as] using the process to put pressure on another to compel him to pay a *different* debt or to take some other action or refrain from it." [emphasis added].

Plainly, that is not the situation here.  Plaintiff is using the legal process to enjoin Defendant from infringing its copyrighted works and to recover statutory damages that are expressly authorized by the Copyright Act and routinely awarded in copyright infringement actions.  Plaintiff is not using this suit to accomplish anything other than what an ordinary copyright action is designed to do, and, in fact, is doing exactly what the federal government has encouraged copyright holders to do.  *See* fn. 6, *supra*.  Moreover, even if Plaintiff's main objective was to induce small settlements from individual users as a means of mitigating its damages and discouraging prospective infringement, it has every right to do so since it is not putting pressure on Defendant to pay a debt different from that which this action is designed to impose.  Defendant's abuse of process counterclaim is nothing more than a bombastic argument of counsel—it is not an actionable counterclaim.

Defendant's abuse of process claim is facially untenable and runs contrary to the bedrock principles of copyright and intellectual property law.  It is axiomatic that prosecuting a group of people who have committed blatant and wholesale infringement of one's intellectual property and pursuing damages expressly recoverable by statute is entirely proper and lawful.  It is not "a scheme to extort" or an "abuse of process."  The Court should dismiss Defendant's abuse of process counterclaim.  It fails factually and legally.

### D.  Defendant's Amended Counterclaims Should Be Dismissed With Prejudice and Without Leave to Amend.

Defendant's Opposition completely ignores and fails to address Plaintiff's argument that if his counterclaims are dismissed, they should be dismissed with prejudice and without leave to amend.  Defendant has thus conceded this point.  *Digby Alder Group, LLC v. Mercedes-Benz U.S.A., LLC*, 2015 WL 5138080, at *2 (N.D. Cal. 2015) (holding party's failure in its opposition

REPLY ISO MOTION TO DISMISS DEFENDANT'S
AMENDED COUNTERCLAIMS - (2:17-CV-01731-TSZ) - 9

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

57138018.v1
58580731.v1

papers to respond to argument advanced in motion to dismiss concedes the argument);

*Kryzanowski v. Wyndam Hotels and Resorts, LLC*, 2014 WL 895449, at *3 (S.D. Cal. 2014) (finding party's failure to address argument concedes its validity).

## III. CONCLUSION

Defendant's meritless counterclaims can be summed up in seven words: "I am upset that you sued me." That does not state a claim. If Defendant wants to address the allegation that he committed rampant infringement of Plaintiff's works, he can file an Answer. Defendant is free to attempt to mount a defense, but trying to do so through meritless counterclaims is inappropriate and the Court should not allow it. Defendant's baseless counterclaims should be dismissed entirely with prejudice and without leave to amend.

DATED this 22nd day of June, 2018.

FOX ROTHSCHILD LLP

  *s/ Bryan J. Case*
Bryan J. Case, WSBA #41781
Lincoln D. Bandlow, *admitted Pro Hac Vice* (CSBA #170449)
Attorneys for Plaintiff

REPLY ISO MOTION TO DISMISS DEFENDANT'S
AMENDED COUNTERCLAIMS - (2:17-CV-01731-TSZ) - 10

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

57138018.v1
58580731.v1

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 22, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following persons:

| | |
|---|---|
| J. Curtis Edmondson, WSBA #43795<br>399 NE John Olsen Avenue<br>Hillsboro, Oregon 97124<br>Telephone: (503) 336-3749<br>Email: jcedmondson@edmolaw.com | ☑ Via CM/ECF<br>☐ Via U.S. Mail<br>☐ Via Messenger Delivery<br>☐ Via Overnight Courier<br>☐ Via Facsimile |

DATED this 22nd day of June, 2018.

_Melinda R. Sullivan_
Melinda R. Sullivan
Legal Administrative Assistant

REPLY ISO MOTION TO DISMISS DEFENDANT'S
AMENDED COUNTERCLAIMS - (2:17-CV-01731-TSZ) - 11

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

57138018.v1
58580731.v1