The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC, a Delaware corporation,<br><br>                                      Plaintiff,<br><br>        v.<br><br>JOHN DOE, subscriber assigned IP address 73.225.38.130,<br><br>                                      Defendant. | Case No. 2:17-cv-01731-TSZ<br><br>**STRIKE 3 HOLDINGS, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**NOTE ON MOTION CALENDAR:**<br><br>**MARCH 1, 2019**<br><br>**ORAL ARGUMENT REQUESTED** |

## I.      INTRODUCTION

Plaintiff Strike 3 Holdings, LLC ("Strike 3"), using experienced investigators employing reliable technology, identified the IP address of Defendant John Doe, subscriber assigned IP address 73.225.38.130 ("Defendant") to be engaged in the habitual torrent infringement of 87 of Strike 3's copyrighted works over a period of six months.  Strike 3 owns these works, which were and are registered with the U.S. Copyright Office.  Strike 3 is acting well within its rights to prosecute the widespread infringement of its works and pursue damages expressly available by statute.  Sufficient evidence existed for Strike 3 to file this lawsuit and, indeed, as the suit progressed it appeared increasingly likely that Defendant or someone in Defendant's household

STRIKE 3 HOLDINGS, LLC'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - (2:17-CV-01731-TSZ) - 1

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA  98154
(206) 624-3600

Active\88460383.v1-2/7/19

1
2
3
4

engaged in this infringement. Indeed, Defendant's IP address ceased all infringing activities *after* Defendant became aware of this suit and Defendant's counsel refused to provide Strike 3's counsel with Defendant's identity despite multiple requests and the entry of a protective order keeping Defendant's identity confidential, thus further signaling culpability.

5
6
7
8
9
10

Strike 3 has therefore conducted straightforward copyright infringement litigation and has in no way engaged in any behavior in this action that could remotely be construed as an "abuse of process." Rather than bring this "abuse of process" counterclaim in good faith, Defendant's counsel brought it solely in an effort to improperly impugn onto Strike 3 the bad faith copyright litigation efforts undertaken by other adult-film companies and their unscrupulous counsel (*e.g.*, Prenda Law, Inc.).

11
12
13
14
15
16
17
18
19
20

In this action, however, Strike 3 and its counsel have been entirely the anti-Prenda. The factual record indisputably demonstrates that Strike 3 has fully complied with every Court order, has taken great measures to protect Defendant's privacy throughout this action and has expended considerable resources in litigating this action which far transcend what one would expect if Strike 3 was merely interested in obtaining some small settlement. After Defendant's counsel finally (months after this litigation was instituted and after having been asked repeatedly during that time) provided Strike 3 with Defendant's name, Strike 3 conducted a further investigation and then immediately dismissed its claims without prejudice once Strike 3 discovered that Defendant's adult son—who has the same name as Defendant—is most likely the infringer, not Defendant.

21
22
23
24
25
26

There are no facts which demonstrate Strike 3 did anything to fabricate its claims, concoct evidence, or leverage a suit it knew to be meritless to accomplish anything beyond the purview of the case, *i.e.*, to attempt to collect something beyond what the Copyright Act expressly authorizes. Further, the act of filing Strike 3's complaint, declarations, motions, and other materials directly pertains to, or is material to, this judicial proceeding and, accordingly, falls squarely within the scope of the litigation privilege and therefore cannot form the basis of

STRIKE 3 HOLDINGS, LLC'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - (2:17-CV-01731-TSZ) - 2

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 9854
(206) 624-3600

1   an abuse of process claim.  Thus, Defendant's abuse of process claim is facially untenable,

2   utterly unsupported by fact or law, and runs contrary to the bedrock principles of copyright and

3   intellectual property, as well as a party's First Amendment right to seek redress of grievance in a

4   court of law.  It is axiomatic that prosecuting an individual who has appeared to have engaged in

5   blatant, wholesale infringement of one's intellectual property and pursuing damages expressly

6   recoverable by law for such infringement is entirely proper and lawful.  This lawsuit is not a

7   "scheme to extort" or an "abuse of process."  Rather, this is entirely typical copyright

8   infringement litigation, akin to those pursued by motion picture producers, recording industry

9   talent, computer software makers, book publishers and countless others.  Indeed, when this Court

10  requested that Strike 3 explain how it has handled these kinds of litigations, this Court found that

11  there was nothing unusual or questionable at all with how Strike 3 has prosecuted these matters.

12  *See* Case No. 3:17-cv-05952, Dkt. # 22.

13      Accordingly, because Defendant's abuse of process counterclaim fails as a matter of law,

14  the Court should grant partial summary judgment and dismiss that counterclaim with prejudice.

## II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.   Strike 3 is a Leader in the Adult Film Industry, and Widespread Torrent Infringement Poses an Enormous Threat to its Business.

18      Strike 3 is an intellectual property holding company that manages the copyrights and

19  trademarks to creative works developed by GL Web Media ("GLWM") (a production company)

20  and Kode Shop, LLC ("Kode") (a post-production company).  Declaration of Emilie Kennedy

21  ("Kennedy Decl.") ¶ 4.  GLWM is owned and operated by Greg Lansky who is a member of

22  General Media Systems, LLC ("GMS"), Strike 3's parent company.  *Id.*  For over five years,

23  GLWM and Kode have produced thousands of copyrighted works which have been assigned to

24  Strike 3 and distributed to the public through adult websites and DVDs.  *Id.*  These websites

25  attract more than 20 million unique visitors each month, and Strike 3's websites have one of the

26  highest subscriber rates of anyone in the industry.  *Id.*  Strike 3 also licenses its motion pictures

STRIKE 3 HOLDINGS, LLC'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - (2:17-CV-01731-TSZ) - 3

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 9854
(206) 624-3600

Active\88460383.v1-2/7/19

to popular broadcasters, and Strike 3's works are the top selling adult DVDs in the United States.[1]  *Id.*

As Strike 3's brands have grown, its motion pictures have been subject to an increasing amount of Internet piracy via the BitTorrent File Distribution Network, which is a file sharing network often used to quickly download and distribute copyrighted works.  *Id.* at ¶ 5.  The BitTorrent Network is a substantial method by which users infringe Strike 3's works, which are filmed in 4kHD quality and contain large file sizes.  *Id.*  The BitTorrent Network facilitates this infringement by allowing users to download and transfer large files in pieces which can be quickly reassembled to create viewable copies of the works.  *Id.*

Strike 3's research and investigation have revealed that its works are infringed each month by hundreds of thousands of different individuals via the BitTorrent Network.  *Id.* at ¶ 6.  This results in lost revenues amounting to approximately ***millions of dollars per month!***  *Id.*  Accordingly, Strike 3 has been left with no choice but to prosecute this massive infringement to help curb these substantial losses and protect the integrity of its works.[2]  *Id.*  To meaningfully deter the infringement of Strike 3's works, Strike 3 must bring litigation against thousands of infringers nationwide, and even this constitutes a very small percentage of the overall infringement.  *Id.*  Notwithstanding this, Strike 3 does not sue anyone and everyone found to be infringing its works.  Id. at ¶ 8.  Strike 3 only pursues defendants who have been observed infringing numerous works over a substantial period of time.  *Id.*  Strike 3 never prosecutes defendants who are underage, actively serving in the U.S. armed forces, or provide proof of financial hardship.  *Id.*  Strike 3 also encourages defendants at the case's inception to provide

---

[1] Strike 3's works and websites have earned considerable industry recognition and have won numerous awards.  *See* Dkt. # 4-2 at ¶¶ 19-21; Kennedy Decl. ¶ 4.

[2] Strike 3 has saved litigation as a last resort to prosecute torrent infringement.  Kennedy Decl. ¶ 7.  Rather, Strike 3 first uses the notice/takedown procedure provided by the Copyright Act.  Strike 3 has caused millions of DMCA notices to be sent to BitTorrent sites worldwide within the past two years, but this strategy has proved largely ineffective as a means to significantly reduce infringement.  Kennedy Decl. ¶ 7; Dkt. # 41 at ¶ 7; Dkt. # 35 at p. 8, fn. 5.

STRIKE 3 HOLDINGS, LLC'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - (2:17-CV-01731-TSZ) - 4

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 9854
(206) 624-3600

Active\88460383.v1-2/7/19

exculpatory evidence, and promptly dismisses the case if it entertains any reasonable doubt over whether the defendant is the infringer. *Id.*

### B. Strike 3 Files Suit Against Defendant's IP Address Which Was Observed Habitually and Significantly Infringing Strike 3's Copyrighted Works.

In May 2017, Strike 3's investigator IPP International U.G. ("IPP") used a proprietary BitTorrent client to enter a swarm inside the BitTorrent Network where users were exchanging files. *Id.* at ¶ 9. IPP downloaded a piece of a digital media file linked to one of Strike 3's motion pictures from Defendant's IP address which made such file available to IPP and other torrent users. *Id.*; Declaration of Tobias Fieser ISO Motion to serve Third Party Subpoena (Dkt. # 4-3) ("Fieser Decl.") ¶ 7. From May to December of 2017, IPP's BitTorrent client downloaded scores of additional pieces of digital media files from Defendant's IP address. Kennedy Decl. ¶ 9; Fieser Decl. ¶ 7. All of these pieces were linked to digital media files which contained copies of 80 of Strike 3's copyrighted audio-visual works. Kennedy Decl. ¶ 9; Fieser Decl. ¶ 7; Dkt. # 1, Ex. A. These works were duly registered with the U.S. Copyright Office. Kennedy Decl. ¶ 9; Dkt. # 1, Ex. A.

To address and terminate this rampant infringement, Strike 3 gathered this evidence and filed this lawsuit for copyright infringement on November 16, 2017 against John Doe, subscriber assigned IP address 73.225.38.130. Kennedy Decl. ¶ 10. As is the case with most piracy-related lawsuits, Strike 3 was unaware of Defendant's true identity and could only identify him by his IP address. *Id.* On November 29, 2017, Strike 3 sought leave to serve a third party subpoena on Defendant's ISP, Comcast Cable Communications, LLC ("Comcast") (Dkt. # 4) prior to the Fed. R. Civ. P. 26(f) scheduling conference so that Defendant's identity could be discovered to facilitate a further investigation and, if appropriate, amend the complaint and effect service. Kennedy Decl. ¶ 11. Knowledge of a defendant's identity allows Strike 3 to expeditiously verify that a defendant was indeed operating the IP address observed infringing Strike 3's works and determine whether prosecuting the defendant complies with company policy immunizing certain

STRIKE 3 HOLDINGS, LLC'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - (2:17-CV-01731-TSZ) - 5

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 9854
(206) 624-3600

Active\88460383.v1-2/7/19

categories of individuals from suit.  *Id.* at ¶¶ 8, 11.  Strike 3 always encourages courts to enter

protective orders so that a defendant's identity remains anonymous throughout the course of

litigation, like it did here.  *Id.* at ¶ 11.

On December 4, 2017, the Honorable Marsha J. Pechman issued an order (Dkt. # 5)

granting this motion upon a finding of good cause.  Kennedy Decl. ¶ 12.  As part of Judge

Pechman's order, pursuant to 47 U.S.C. § 551(c)(2)(B), Comcast was required to notify the

subscriber of this action before disclosing any personal identifying information.  Dkt. # 5 at ¶ 4.

Shortly after this order issued and Comcast provided Defendant notice of the subpoena,

Defendant's IP address ceased all infringement of Strike 3's works.  Kennedy Decl. ¶ 12.

### C. Strike 3 Complies with All Court Orders and Takes Great Measures to Protect Defendant's Privacy Throughout the Litigation.

On January 25, 2018, this case was transferred to the Honorable Thomas S. Zilly, who

currently presides over the matter.  Dkt. # 7.  The Court issued an Order (Dkt. # 8) the same day

instructing Comcast to disclose Defendant's identity and location to the Court's clerk who then

completed the summons, sealed it, and mailed it to Strike 3 to hand off to its process server.  Dkt.

# 8; Declaration of Lincoln Bandlow ("Bandlow Decl.") ¶ 4.  Further, the Court prohibited Strike

3 or its attorneys from communicating directly with Defendant.  Dkt. # 8.  Strike 3 fully

complied with this Order and promptly served the Court's Order on Comcast to ensure that

Comcast could comply as well.  Bandlow Decl. ¶ 4; Dkt. # 9 & 10.  Neither Strike 3 nor its

counsel have ever communicated with Defendant directly.  Bandlow Decl. ¶ 5.  Rather, for the

entirety of this action, Strike 3's counsel has dealt exclusively with Defendant's counsel, J.

Curtis Edmondson, who first informed Strike 3's counsel of his retention on February 10, 2018

and requested that Strike 3 stipulate to a protective order to safeguard Defendant's privacy.[3]  *Id.*

at ¶ 5, Ex. A.

---

[3] Strike 3 went to great lengths to ensure that it complied with the Court's Order (Dkt. # 8) expressly prohibiting Strike 3 or its counsel from "communicat[ing] directly with any defendant John Doe for any purpose until further order of the Court."  Unsure whether this prohibition applied to just communication with a Defendant directly or

STRIKE 3 HOLDINGS, LLC'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - (2:17-CV-01731-TSZ) - 6

Active\88460383.v1-2/7/19

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 9854
(206) 624-3600

Later that day, Strike 3's counsel spoke with Defendant's counsel over the phone and asked him to provide Defendant's name and address. *Id.* at ¶ 6. Strike 3's counsel explained that learning Defendant's identity would permit Strike 3 to complete its investigation regarding Defendant's culpability (or lack thereof) and, if appropriate, withdraw its complaint. *Id.* Strike 3's counsel also assured Defendant's counsel that Strike 3 would enter into a confidentiality agreement to keep Defendant's identity strictly confidential and only use the information to conduct a further investigation and/or commence any potential settlement negotiations. *Id.* Indeed, Strike 3 in good faith agreed to stipulate to the protective order Mr. Edmondson proposed which provided that Strike 3 "shall not disclose [Defendant's] address, telephone number, email, social media username, or any other identifying information, other than defendant's IP address…" and that "[a]ll documents including [D]efendant's identifying information, apart from his or her IP address, shall be filed under seal…". Dkt. # 17. Notwithstanding this as well as the Court's express orders (Dkt. # 8 & 20) prohibiting Strike 3 from publicly disclosing Defendant's identity, Defendant's counsel refused to reveal Defendant's identity. Bandlow Decl. ¶ 6.

### D. Defendant Challenges the Sufficiency of Strike 3's Complaint and Advances Frivolous Counterclaims.

On March 8, 2018, Defendant challenged Strike 3's Complaint with a Motion to Dismiss or Abate and for a More Definite Statement (Dkt. # 21), which alleged Strike 3 failed to specifically plead how Defendant infringed its works and wrongly assailed the credibility of Strike 3's declarants who submitted affidavits in support of its motion to serve a third party subpoena (which had been granted three months earlier). *Id.* at ¶ 8. Defendant, hardly concerned with minimizing attorneys' fees and preserving judicial economy, attached twenty-

---

also to communications with Defendant's counsel, Strike 3 carefully deliberated the Order's scope and ultimately determined that communication with Defendant's counsel was not proscribed because complying with the Court's local rules with respect to noticing motions and preparing joint reports would be impossible absent such communications. *See* Case No. 3:17-cv-05952, Dkt. # 20 at ¶¶ 5-6.

STRIKE 3 HOLDINGS, LLC'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - (2:17-CV-01731-TSZ) - 7

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 9854
(206) 624-3600

Active\88460383.v1-2/7/19

1    one exhibits and four supporting declarations to this motion totaling over 200 pages of mostly

2    irrelevant material.  *Id.*  Defendant also filed counterclaims (Dkt. # 22) for a declaration of non-

3    infringement, negligent infliction of emotional distress, and outrage—effectively putting Strike 3

4    into the highly inequitable position of having to defend itself against an unknown

5    counterclaimant.  *Id.*  Defendant's counterclaims lacked any allegation or argument that Strike 3

6    committed an abuse of process with respect to this action.  *Id.*  Strike 3 moved to dismiss these

7    counterclaims on March 29, 2018 (Dkt. # 24).  *Id.*

8         **E.    Strike 3 is Forced to Litigate Against an Unknown Defendant.**

9         On April 3, 2018, the parties held their first Rule 26(f) conference.  *Id.* at ¶ 9.  Strike 3's

10   counsel explained to Defendant's counsel, yet again, that absent knowledge of Defendant's

11   identity, Strike 3 could not adequately measure the strength of its case or determine whether it

12   should proceed.  *Id.*  Nevertheless, Mr. Edmondson masked Defendant's identity in Defendant's

13   initial disclosures which were served on April 17, 2018.  *Id.*, Ex. B.  Defendant remained veiled

14   even though Strike 3 already agreed to the entry of a protective order protecting Defendant's

15   identity from public disclosure, the Court's prior orders (Dkt. # 8 & 20) prohibited Strike 3 from

16   disclosing Defendant's identity to any other party, and Rule 26(a)(1)(A)(i) expressly required

17   Defendant to disclose the name, address, and contact information of "each individual likely to

18   have discoverable information… that the disclosing party may use to support its claims or

19   defenses."  *See* Bandlow Decl., at Ex. B Sec. A(1) (disclosing Doe possesses materials

20   Defendant may use to support its defenses and counterclaims).  In other words, Defendant

21   effectively said in his initial disclosures "the main witness on whom we will rely to defend all of

22   the allegations of copyright infringement in the complaint is … somebody whose name I will not

23   tell you."  In contrast, on April 20, 2018, Strike 3 served its initial disclosures which were full

24   and complete and provided detailed information about the witnesses on whom Strike 3 would

25   rely in this case.  Bandlow Decl. ¶ 10, Ex. C.

26

STRIKE 3 HOLDINGS, LLC'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - (2:17-CV-01731-TSZ) - 8

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 9854
(206) 624-3600

Active\88460383.v1-2/7/19

**F.    Defendant Propounds Discovery Before Answering the Complaint and Before Precise Causes of Action, Issues (Legal and Factual), Admissions, Denials, and Affirmative Defenses are Framed or Alleged.**

On May 1, 2018, Defendant filed his First Amended Counterclaims ("Amended Counterclaims") (Dkt. # 32) which reiterated his claim for a declaration of non-infringement, but added new claims for copyright misuse and abuse of process. *Id.* at ¶ 11.  Strike 3 moved to dismiss the Amended Counterclaims on May 31, 2018 (Dkt. # 35).  On May 31, 2018, before the Court could rule on either party's motions to dismiss Strike 3's complaint and Defendant's Amended Counterclaims, Defendant served 27 requests for production on Strike 3.  *Id.*, Ex. D.

On June 6, 2018, the Court issued an Order (Dkt. # 36) denying Defendant's motion to dismiss or abate Strike 3's complaint but granting Defendant's motion for a more definite statement.  *Id.* at ¶ 12.  The Court also ordered the parties to conduct a new Rule 26(f) conference and submit a Joint Status Report twenty-one days after Strike 3 filed its amended complaint on July 3, 2018.  *Id.*; Dkt. # 36 at p. 3.  On June 19, 2018, however, two weeks before the amended complaint was due and before the parties could conduct the court-ordered Rule 26(f) conference, Defendant propounded eight requests for admission on Strike 3 in violation of Rule 26(d)(1) and refused to reissue his requests for documents despite the fact that they sought records supporting, or otherwise relating to, allegations pled in Strike 3's initial complaint.  Bandlow Decl. ¶ 13, Ex. E.  Many of Defendant's requests for admissions also referenced Strike 3's initial complaint, which was no longer the operative pleading.  *Id.*  Accordingly, Strike 3 responded to all of Defendant's discovery requests as premature since the precise causes of action, issues (legal and factual), admissions, denials, and affirmative defenses were not yet framed or alleged.  Bandlow Decl. ¶ 13.[4]

---

[4] Notwithstanding the fact that such discovery was clearly inappropriate and premature, Defendant's counsel ultimately moved to compel responses (Dkt. # 51) setting into motion a costly discovery dispute that would have easily been avoided had Defendant revealed his identity so Strike 3 could properly evaluate the merits of the action at the onset.  Bandlow Decl. ¶ 14.  Defendant could also have simply waited to reissue discovery until the Court determined which causes of action were sustainable and which should be dismissed.  *Id.*

STRIKE 3 HOLDINGS, LLC'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - (2:17-CV-01731-TSZ) - 9

**Fox Rothschild LLP**
1001 Fourth Avenue, Suite 4500
Seattle, WA 9854
(206) 624-3600

Active\88460383.v1-2/7/19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

G.     **Strike 3 Files a First Amended Complaint Still Without Having Been Provided with Defendant's Identity.**

On July 3, 2018, Strike 3 filed its First Amended Complaint ("FAC") (Dkt. # 43) which illustrated in further detail how Defendant's IP address was detected infringing Strike 3's works and why it was unlikely the address had been spoofed. *Id.* at ¶ 15. Strike 3 also attached an updated exhibit listing seven additional works that Defendant's IP address was observed infringing after Strike 3's initial complaint was filed on November 16, 2017 but before Comcast notified the Defendant of this suit per the Court's Order on December 4, 2017. *Id.* Defendant once again moved to dismiss the FAC and, once again, submitted a small treatise of materials amounting to 63 pages of largely irrelevant data for judicial notice plus a pseudo-expert declaration. *Id.*; Dkt. # 44, 45 & 46.

H.     **Strike 3 Finally Learns Defendant's Identity and Conducts an In-Depth Investigation Revealing Defendant's Son is the Likely Infringer.**

On July 11, 2018, Strike 3's counsel corresponded with Defendant's counsel asking yet again for him to provide Defendant's identity so that Strike 3 could adequately evaluate the case and participate in discovery. *Id.* at ¶ 16, Ex. F. It was not until July 20, 2018, over six months after Defendant became aware of this action, that Defendant's counsel finally amended Defendant's initial disclosures and provided Defendant's name to Strike 3. *Id.*, Ex. G. That information was still incomplete because Defendant's counsel continued to refuse to provide Defendant's address (ISPs generally provide a name and address in response to a subpoena). *Id.* Although Strike 3 did not have Defendant's address (and still does not have his address), it immediately initiated a further investigation to determine whether Defendant was, in fact, the individual infringing Strike 3's works. Bandlow Decl. ¶ 17; Kennedy Decl. ¶ 14. During this examination, Strike 3's investigators discovered that Defendant's name belongs to two individuals, a father ("Doe Sr.") and son ("Doe Jr."), residing at different residences in Auburn, Washington. Kennedy Decl. ¶ 14. A username consisting of Does' first initial and last name was linked to several posts on a uTorrent forum website, one of which states that that user is

STRIKE 3 HOLDINGS, LLC'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - (2:17-CV-01731-TSZ) - 10

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 9854
(206) 624-3600

Active\88460383.v1-2/7/19

running "uT 2.2 beta." *Id.*; Bandlow Decl. ¶ 18, Ex. H.  This is the exact same BitTorrent client

Defendant used in this case to infringe Strike 3's works.  Kennedy Decl. ¶ 14.  In another post,

Doe Sr. or Doe Jr. states he "hooked up to Comcast as [his] ISP."  *Id.*; Bandlow Decl. ¶ 18, Ex.

H.  The infringing IP address in this case was a Comcast Cable Communications IP address.

Kennedy Decl. ¶ 14.  Further, Strike 3 discovered evidence that Doe Jr. downloaded the video

game "World of Warcraft" through the BitTorrent Network on the same day IPP observed him

distributing Strike 3's works, tweeted a hashtag on Twitter that is associated with adult content,

and has at least one Twitter follower who markets adult content.  *Id.*; Bandlow Decl. ¶ 18, Ex. H.

In light of this evidence, as well as a myriad of other posts by Doe Sr. and/or Doe Jr. on torrent

file sharing and computer technology-related forums, Strike 3 is confident that Doe Sr. and/or

Doe. Jr. is the infringer.  Kennedy Decl. ¶ 14.  And given the disparity in age, the nature of

conduct, Doe Jr.'s activity in the BitTorrent Network, and his prurient interests on social media,

it is highly likely that Doe Jr. is the culprit.  *Id.*  Accordingly, on August 24, 2018, Strike 3

dismissed its FAC against Defendant (*i.e.*, Doe Sr.) without prejudice (Dkt. # 53).[5]  Kennedy

Decl. ¶ 14.

        On October 24, 2018, the Court issued an Order striking Defendant's motion for a more

definite statement as moot in light of Strike 3's dismissal.  Dkt. # 58.  The Court also dismissed

with prejudice Defendant's counterclaim for copyright misuse upon finding that there is no

allegation that Strike 3 tried to use its copyrights to restrain the development or dissemination of

competing products.  *Id.*  On January 3, 2019, Defendant filed a Second Amended Counterclaim

("SACC") (Dkt. # 64) that is identical to Defendant's FACC but corrects Defendant's IP address

in the caption.  Strike 3 filed an answer to the SACC (Dkt. # 65) on January 24, 2019, thus

---

[5] Strike 3 offered to dismiss its action with prejudice against Defendant, his son, and all members of Defendant's family if Defendant agreed to dismiss his counterclaims and agree that each party would bear their own costs. Bandlow Decl. ¶ 18, Ex. H.  Defendant declined and demanded nearly $15,000 in fees, most of which would have never been incurred had Strike 3 been allowed to discover Defendant's name and fully investigate the infringement at the onset.  *Id.*, Ex. I.

STRIKE 3 HOLDINGS, LLC'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - (2:17-CV-01731-TSZ) - 11

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 9854
(206) 624-3600

Active\88460383.v1-2/7/19

putting Defendant's counterclaim for a declaration of non-infringement and Defendant's

counterclaim for abuse of process at issue.[6]  Those two claims are the only remaining claims in

this action.

## III.   EVIDENCE RELIED UPON

Declarations of Lincoln Bandlow and Emilie Kennedy, exhibits thereto, and the Court

file herein.

## IV.   AUTHORITY & ARGUMENT

### A.   There is No Factual Basis that Strike 3 Committed an Abuse of Process.

To establish an abuse of process claim, Defendant must prove:

1) "an ulterior purpose to accomplish an object not within the proper scope of the

process";

2) "an act not proper in the regular prosecution of proceedings"; and

3) "harm proximately caused by the abuse of process."

*Bellevue Farm Owners Ass'n v. Stevens* 198 Wash. App. 464, 477 (2017) (citing Restatement

(Second) of Torts § 682 ("For abuse of process to occur there must be use of the process for an

immediate purpose ***other than that for which it was designed and intended***… [such as] using

the process to put pressure on another to compel him to pay a different debt or to take some other

action or refrain from it.")) (Emphasis added).

Filing suit to induce a settlement does not constitute an abuse of process if there is a legal

basis to support the claim asserted.  *LHF Prod., Inc. v. Kabala*, 2018 WL 4053324, at *4-5 (D.

Nev. 2018) (finding identification of specific defendants via IP addresses engaged in torrent

infringement and dismissing with prejudice after discovering defendants were not the infringing

parties was not an abuse of process and did not constitute evidence plaintiff lacked a justifiable

---

[6] In the interest of good faith and fairly resolving this matter, Strike 3 is prepared to consent to a judgment of non-infringement as to Defendant, provided such a judgment does not entitle Defendant to any attorney's fees or costs, but reserves all rights to prosecute Defendant's son.

STRIKE 3 HOLDINGS, LLC'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - (2:17-CV-01731-TSZ) - 12

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 9854
(206) 624-3600

Active\88460383.v1-2/7/19

1    basis for commencing suit).  Indeed, the fact that a plaintiff prosecuting widespread torrent

2    infringement has not yet taken a claim to trial "does not diminish the legitimacy of its motives,

3    particularly when the vast majority of civil lawsuits never make it to trial."  *Id.* at 4; *See also*

4    *Purzel Video GmbH v. Smoak*, 11 F. Supp. 3d 1020, 1027 (D. Col. 2014) ("plaintiff's settlement

5    offer for an amount within the statutory damages ranges does not support [defendant's]

6    allegations of extortion and abuse of process.").

7        *Glacier Films (USA), Inc. v. Turchin*, 896 F. 3d 1033 (9th Cir. 2018) is instructive.  In

8    that action, the film production company Glacier Films ("Glacier"), brought suit against the John

9    Doe subscriber of an IP address which Glacier identified as having infringed its work via the

10   BitTorrent Network on at least eighty different occasions.  *Id.* at 1036.  Glacier conducted early

11   discovery and subpoenaed records from Comcast to ascertain Doe's identity—Andrey Turchin

12   ("Turchin").  *Id.*  Glacier amended its complaint with Turchin's identity and Turchin answered

13   denying all liability.  *Id.* at 1037.  Ultimately, the parties settled for minimum statutory damages

14   and Glacier sought fees from the district court which denied its request, finding the suit was

15   improper.  *Id.*

16       The Ninth Circuit reversed and remanded, holding that the district court failed to consider

17   the merits of the individual action and instead "saddled [Glacier] with a blanket indictment

18   against peer-to-peer copyright litigation."  *Id.* at 1038.  The Ninth Circuit recognized that "digital

19   piracy of copyrighted materials on peer-to-peer networks can have severe financial consequences

20   for copyright holders" and noted that Congress had increased the available statutory damages

21   under the Copyright Act to combat new technologies rendering peer-to-peer infringement

22   increasingly ubiquitous.  *Id.* at 1040.  Thus, "Congress specifically… contemplate[d] that suits

23   like this were within the Act."  *Id.* (quoting *Sony BMG Music Entm't v. Tenenbaum*, 660 F. 3d

24   487, 500 (1st Cir. 2011)).  Indeed,

25           [i]nherent in the Act's purpose is that a copyright holder has always
             had the legal authority to bring a traditional infringement suit against
26           one who wrongfully copies.  In the Internet Age, such suits have

STRIKE 3 HOLDINGS, LLC'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - (2:17-CV-01731-TSZ) - 13

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 9854
(206) 624-3600

served as a teaching tool, making clear that much file sharing, if done without permission, is unlawful, and apparently [has] had a real and significant deterrent effect.

*Id.* at 1041 (quoting *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 963 (2005)) (Internal quotations omitted).

Accordingly, Glacier's action "fits squarely within the tradition of copyright enforcement" and did not contain any of the abusive practices that some BitTorrent plaintiffs have historically committed.  *Id.*  For instance, Glacier did not demand thousands of dollars to settle a claim in which the infringing defendant admitted liability and claimed financial hardship. *Id.* (distinguishing *Countryman Nevada LLC v. Doe*, 193 F. Supp. 3d 1174 (D. Or. 2016) in which the plaintiff demanded $8,500 from an impoverished defendant who had admitted liability and had downloaded the work only once and by accident).  Additionally, Glacier did not seek an uncounseled settlement or pursue particularly vulnerable individuals, nor was Glacier a "copyright troll" in which it was focused more on the business of litigation than on selling or licensing copyrighted works.  *Id.* at 1042 (distinguishing *AF Holdings, LLC v. Does 1-1058*, 752 F. 3d 990 (D.C. Cir. 2014) in which the plaintiff acquired rights to various copyrighted works in which it had nothing to do with the works' production solely for the purpose of prosecuting infringement).  The district court erroneously based its conclusions on "generalizations" about these and other BitTorrent cases rather than "on the totality of circumstances in *this* case."  *Id.* at 1042 (emphasis original) (internal quotation marks omitted).  The Ninth Circuit emphasized "***we must judge each case on its own merits.***"  *Id.* at 1040 (emphasis added).

Strike 3 has exercised the utmost good faith during the entire course of this action and has not abused the legal process to coerce settlements based on frivolous claims against vulnerable defendants.  To the contrary, Strike 3 is using the legal process to enjoin Defendant from infringing its copyrighted works and pay statutory damages expressly authorized by the Copyright Act.  Strike 3 is not using this or any other lawsuit to accomplish anything other than what an ordinary copyright action is designed to do, and in fact, is doing exactly what the federal

STRIKE 3 HOLDINGS, LLC'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - (2:17-CV-01731-TSZ) - 14

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 9854
(206) 624-3600

Active\88460383.v1-2/7/19

government has encouraged copyright holders to do.[7]

Moreover, Strike 3 stands in the same shoes as those of Glacier, whose action to prosecute BitTorrent infringement was found by the Ninth Circuit to fit *"**squarely within the tradition of copyright enforcement.**" Glacier, supra* at 1041 (emphasis added).  Strike 3, via its forensics team, detected Defendant's IP address infringing 80 of its copyrighted works over a period of six months, just as Glacier detected instances of infringement of its work.  Strike 3 is wholly owned by General Media Systems, LLC ("GMS") who is, in part, owned and managed by Greg Lansky, sole owner of GL Web Media ("GLWM")—the company that produced these works to display and disseminate to the public for subscription fees.  *See* Kennedy Decl. ¶ 4.  This is not a case where a plaintiff has purchased random works for the sole purpose of prosecuting infringement (*i.e.*, a copyright troll).

Further, like Glacier, Strike 3 obtained leave from the Court to engage in early discovery and subpoena records from an Internet Service Provider ("ISP") to identify the owner of the IP address and effectuate service of process.  Both Glacier and Strike 3 filed their meritorious motions with the same quantum of evidentiary support that could reasonably be obtained at that time: forensic documentation linking a specific IP address to dozens of downloads and transfers on a BitTorrent Network of their copyrighted content.  The Ninth Circuit took no issue with this in *Glacier*, let alone construed it as an abuse of process.

While Glacier's action settled, costly protracted litigation has resulted here, through no fault of Strike 3.  Unlike in other BitTorrent actions where the court permitted the plaintiff to ascertain the defendant's identity so it could investigate whether the defendant was the actual

---

[7] Strike 3's exact course of conduct in this action was endorsed by former U.S. Register of Copyrights Marybeth Peters in a statement on the Digital Millennium Copyright Act ("DMCA").  "While we would like to think that everyone obeys the law simply because it is the law and out of a sense of obligation, we also know that laws without penalties may be widely ignored.  For many people, the best form of education about copyright in the internet is the threat of litigation… ***Copyright owners have every right to enforce their rights in court, whether they are taking action against providers of peer-to-peer services designed to profit from copyright infringement or against the persons engaging in individual acts of infringement using such services.***"  Statement of Marybeth Peters before the Committee on the Judiciary, U.S. Senate 108th Congress, 1st Session (Sept. 9, 2003) (Emphasis added).

STRIKE 3 HOLDINGS, LLC'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - (2:17-CV-01731-TSZ) - 15

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 9854
(206) 624-3600

Active\88460383.v1-2/7/19

infringer and, if appropriate, dismiss the action, Strike 3 was not afforded this luxury and instead had no choice but to continue litigation past the initial stages.  Strike 3 had every reason to believe that the Defendant was the infringer because the infringing activity, which occurred regularly over a six-month period, suddenly *stopped* once Defendant (and/or Defendant's son) learned of this suit from Comcast, his ISP.  Further, Strike 3 reasonably interpreted Defendant's failure to unveil himself (despite entry of the Court's protective order fully protecting his identity from public disclosure) as an indication that he was engaged in unlawful behavior and/or had something to do with the infringement  Once Defendant's identity became known (after repeated requests by Strike 3's counsel), Strike 3 conducted a thorough investigation and discovered strong evidence indicating that an individual with the same first and last name as Defendant committed the infringement.  Strike 3 dismissed its claim against Defendant without delay when it became apparent that it could not definitely determine whether Defendant and/or Defendant's son were the culprits since they both share the same name.

There are no facts to support Defendant's claim that Strike 3 committed an abuse of process.  By filing this suit, Strike 3 did what Congress, the Ninth Circuit, and district courts nationwide have expressly encouraged it to do, and Strike 3 should not be punished for exercising legal means to prosecute blatant and wholesale infringement of its valuable creative and copyrighted works.

### B.   Strike 3's Litigation Practices Do Not Mirror, and Should Not be Compared to, Those of Prenda Law, Inc.

Throughout this case, Defendant has submitted volumes of materials from other actions involving litigation for BitTorrent infringement and has advanced the curious and incorrect argument that Strike 3 is somehow responsible in this case for actions taken by less-scrupulous plaintiffs in these other cases.  (Dkt. # 32 at pp. 4-8).  The Ninth Circuit has expressly rejected this argument and condemned this practice holding that "individual cases… deserve to be judged on their own merits and not saddled with a blanket indictment against peer-to-peer copyright

STRIKE 3 HOLDINGS, LLC'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - (2:17-CV-01731-TSZ) - 16

litigation." *Glacier, supra* at 1038 (finding that just because other BitTorrent plaintiffs abused the system to coerce settlements to meritless claims does not mean all BitTorrent litigation follows suit).

Notwithstanding this, Defendant has attempted to liken this action to *Ingenuity 13 LLC v. John Doe*, 2013 WL 1898633 (C.D. Cal. 2013) and related BitTorrent cases in which Prenda Law, Inc. ("Prenda") was found abusing the process and defrauding courts on a national scale. That scheme went as follows:

1. Prenda attorneys formed the shell companies "AF Holdings" and "Ingenuity 13" for the sole purpose of obtaining assignments to copyrights to adult films, which were produced by unrelated third parties. *Id.* at *2. Prenda attorneys then posted these works online where they could be most easily infringed. *Id.* Many of these copyright assignments were discovered to be fraudulent, thus rendering Prenda's copyright infringement claims baseless. *Id.* at *3. Conversely, Strike 3 actually owns and has duly registered copyrights for all of the works at issue in this action. Strike 3's parent company, GMS, is linked to GLWM, which actually produced the works and did so to disseminate them for subscription fees. Moreover, Strike 3, GMS, and GLWM are real companies in the business of adult film production which have been profiled for their success in *Forbes*, *Rolling Stone*, "The Daily Beast," "Buzzfeed," and other mainstream publications and media sites. AF Holdings and Ingenuity 13 were fake companies wholly owned by Prenda attorneys who were in the business of copyright troll litigation.

2. Prenda identified IP addresses in a torrent swarm downloading data that could be used to view a single copyrighted work. *Id.* at *3. In contrast, Strike 3 linked Defendant's IP address to the infringement of at least 80 works and would never pursue litigation

STRIKE 3 HOLDINGS, LLC'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - (2:17-CV-01731-TSZ) - 17

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 9854
(206) 624-3600

Active\88460383.v1-2/7/19

against a BitTorrent user for infringing just one copyrighted work. Strike 3 only prosecutes rampant widespread infringement.[8]

3. Prenda moved the court for expedited discovery based on a single snapshot of Internet activity and a copyright assignment procured through fraud. *Id.* Conversely, Strike 3 gathered several snapshots of Defendant's infringement at different times and dates across several months and duly owns the copyrights upon which it has sued.

4. Prenda fabricated facts to support meritless claims against subscribers. For instance, in *Ingenuity 13*, Prenda represented to the court that a "deep inquiry" was performed before the complaint was filed and lied about the defendant owning a large gated estate to argue it was unlikely his IP address was being used by someone outside the home. *Id.* at *4. To the contrary, Strike 3 never made such a misrepresentation and has been always upfront about requiring Defendant's identity to complete its investigation. Upon learning Defendant's name through Defendant's counsel, Strike 3 was able to probe further and discover that the Defendant and his son have the same name. However, uncertain which individual was the habitual BitTorrent user and infringer, Strike 3 voluntarily dismissed its claims against Defendant without delay. At no point did Strike 3 misrepresent evidence or overstate its pre-discovery investigative capabilities to entrap Defendant into a suit Strike 3 knew to be meritless.

5. Prenda flagrantly disregarded and disobeyed court orders. For instance, in *Ingenuity 13*, the court's order granting leave for early discovery was vacated, but Prenda did not provide the ISP notice of this in hopes that the ISP would release the subscriber's information. *Id.* Of course, as illustrated above, Strike 3 has complied with all court orders here.

---

[8] Thus, not only is Strike 3 only going after the most egregious infringers, it is also reserving litigation for those instances where the subscriber is most likely to be the actual infringer because the habitual and long-term infringers are significantly more likely to be the subscriber, rather than an infrequent visitor or house guest.

STRIKE 3 HOLDINGS, LLC'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - (2:17-CV-01731-TSZ) - 18

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 9854
(206) 624-3600

Active\88460383.v1-2/7/19

Accordingly, the course of this action is nothing like Prenda's pervasive scheme to advance frivolous claims for copyright infringement, defraud the court with false evidence, and coerce settlements for *de minimus* infringement.[9]  Indeed, courts have repeatedly refused to impute Prenda's conduct on Strike 3.  *See e.g., Strike 3 Holdings, LLC v. John Doe subscriber assigned IP address 67.170.214.219*, No. CV 18-cv-02019-YGR (EDL), at *5 (N.D. Cal. 2018) [CM/ECF 29] ("Plaintiff's conduct in this case and the dozens of similar cases it has filed in this District suggest that the unsavory tactics of earlier copyright litigants discussed in the cases cited by Defendant are unlikely to come to fruition here."); *Strike 3 Holdings, LLC v. Doe*, No. CV 1:18-00571 EAW, 2018 WL 6166873, at *7 (W.D.N.Y. 2018) ("[T]here is no evidence that Plaintiff has engaged in any of the abusive practices used by similar plaintiffs, such as exploiting Defendant's identifying information as leverage for settlement."); *Strike 3 Holdings, LLC v. John Doe subscriber assigned IP address 104.162.88.2*, No. CV 1:18-cv-03763-DLI-SJB, at *1 (E.D.N.Y. 2018) [CM/ECF 12] ("[T]here is nothing in the record to suggest that improper conduct has been engaged in by this Plaintiff against this Defendant[.]").  Strike 3 has exercised the utmost good faith in prosecuting this case and should not be punished for other plaintiffs' unscrupulous conduct in unrelated matters in which Strike 3 played no role whatsoever.

## C.      Strike 3 is Not Liable for Abuse of Process Even if this Case Lacks Merit.

Traditionally, an abuse of process requires "an act after filing suit using legal process empowered by that suit to accomplish an end not within the purview of the suit." *Saldivar v. Momah*, 145 Wash. App. 365, 388 (2008) (citing *Batten v. Abrams*, 28 Wash. App. 737, 748 (1981)).  The "regularity or irregularity of the initial process is irrelevant." *Batten, supra* at 748.  Even if a plaintiff fabricates claims and initiates a baseless and vexatious civil proceeding, the plaintiff does not commit an abuse of process as a matter of law unless plaintiff committed an act after the suit was filed that leveraged a favorable adjudication to accomplish something beyond

---

[9] Strike 3 never made a monetary settlement demand to Defendant and is most concerned with ensuring Defendant ceases rampantly infringing its works.  Bandlow Decl. ¶ 18.

STRIKE 3 HOLDINGS, LLC'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - (2:17-CV-01731-TSZ) - 19

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 9854
(206) 624-3600

Active\88460383.v1-2/7/19

the purview of the suit. *Saldivar, supra* at 388-389 (finding even if plaintiff fabricated its claims, "the initiation of vexatious civil proceedings, although baseless, is not an abuse of process."); *see also Fite v. Lee*, 11 Wash. App. 21, 27-28 (1974).

There are no facts to support that Strike 3 committed any act whatsoever to leverage these proceedings to accomplish something other than obtaining relief that is expressly permitted by the Copyright Act. Strike 3 always communicated with Defendant's counsel and never with Defendant directly. Strike 3 made no objection to keeping Defendant's identity private throughout the litigation,[10] and Strike 3 never threatened to publicly reveal Defendant's identity to coerce a settlement (*see* fn. 9, *supra*) or condition a protective order on obtaining anything in return.[11] From the very beginning, Strike 3 repeatedly requested Defendant's identity so it could verify Defendant was the infringer, and Defendant's counsel refused to provide this information despite the entry of a protective order. When Defendant's counsel finally did disclose Defendant's name, Strike 3 conducted a further investigation to test the veracity of its claims and discovered that it could not determine with certainty that Defendant, and not his son, was the infringer. Upon learning this, Strike 3 dismissed its claims without delay.

Moreover, Strike 3 has actively litigated this action and has never been interested in an "easy settlement." (Dkt. # 37 at p. 6).[12] Strike 3 fully complied with all orders of the Court, including the Court's Order (Dkt. # 8) prohibiting Strike 3 from reviewing the summons issued

---

[10] In fact, Strike 3 in its motion for leave to subpoena the ISP unilaterally suggested to the Court that it should consider mechanisms to protect Defendant's identity once it was revealed pursuant to the subpoena. Dkt. # 4.

[11] Even if Strike 3 did threaten to reveal Defendant's identity if Defendant refused to settle for a certain amount (which it did not), that *still* is not an abuse of process as a matter of law. *See e.g., Metro Media Entm't, LLC v. Steinruck*, 2014 WL 4268838, at *1 (D. Md. 2014) (finding threat to unmask defendant unless $3,500 settlement offer was accepted was not an abuse of process); *Metro Media Entm't, LLC v. Steinruck*, 912 F. Supp. 2d 344, 351 (D. Md. 2012) (same).

[12] Strike 3 has expressed every intention of litigating this action as evidenced by this action's procedural history, which spans over 15 months. If Strike 3 was only interested in a quick, easy settlement, it would have dismissed the action when it received any "pushback" from Defendant and "just incur the normal filing cost of $400." (Dkt. # 32 at ¶ 13). Strike 3 values its copyrights too highly to back away empty-handed with no assurance that Defendant will cease his infringing activities.

---

STRIKE 3 HOLDINGS, LLC'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - (2:17-CV-01731-TSZ) - 20

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 9854
(206) 624-3600

by the Court which reflected Defendant's identity and address. Strike 3 made no misrepresentations of fact to the Court at any time and did not fabricate evidence. As soon as Strike 3 learned Defendant was not the likely infringer, Strike 3 dismissed its case. Strike 3 has been nothing but candid and respectful to both the Court and Defendant, and has acted entirely proper at all times in this litigation.

In sum, no reasonable factfinder could construe any of these undisputed material facts as an "abuse of process." It is axiomatic that prosecuting a group of people who have committed blatant and wholesale infringement of one's intellectual property and pursuing damages expressly recoverable by statute is entirely proper and lawful. Defendant's abuse of process counterclaim has no factual or legal basis.

### D.     The Litigation Privilege Bars Defendant's Abuse of Process Counterclaim.

The law is clear: acts, allegations, or events that occur within a litigation cannot, as a matter of law, form the basis of a cause of action, whether an abuse of process claim or another affirmative claim for relief. "All charges, allegations and averments contained in regular pleadings addressed to and filed in a court of competent jurisdiction, which are pertinent and material to the redress or relief sought, whether [or not] legally sufficient… are absolutely privileged." *McClure v. Stretch*, 20 Wash. 2d 460, 465 (1944). This rule extends to all witnesses, parties, and attorneys involved in the proceeding, and applies to all torts based on acts pertinent to, or material to, judicial proceedings. *McNeal v. Allen*, 95 Wash. 2d 265, 267 (1980); *Jeckle v. Crotty*, 120 Wash. App. 374, 386 (2004) (finding litigation privilege absolutely barred claims for interference, outrage, infliction of emotional distress, and civil conspiracy because "the complained acts related to and were pertinent to [judicial proceedings]").

This applies equally to an abuse of process claim. *Borden v. Horwitz*, 2010 WL 11459832, at *4 (C.D. Cal. 2010) (citing *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1058 (2006) (applying the litigation privilege to an abuse of process claim and holding the "pleadings and process in a case are generally viewed as privileged communications.") (citations omitted). The

STRIKE 3 HOLDINGS, LLC'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - (2:17-CV-01731-TSZ) - 21

**Fox Rothschild LLP**
1001 Fourth Avenue, Suite 4500
Seattle, WA 9854
(206) 624-3600

Active\88460383.v1-2/7/19

purpose of the privilege is to promote the effectiveness of judicial proceedings by encouraging "open channels of communications and the presentation of evidence," as well as the ***"fundamental right"*** to "communicat[e] [with the court] to investigate and remedy wrongdoing." *Wynn v. Earin*, 163 Wash. 2d 361, 376-77 (2008) (quoting *Silberg v. Anderson*, 50 Cal. 3d 205, 213-14 (1990)) (Emphasis added).

Defendant's counterclaim for abuse of process is largely based on Strike 3's pleadings, declarations, expert reports, other materials filed in judicial proceedings to prosecute the widespread and torrent infringement of Strike 3's copyrighted works. Dkt. # 64 at pp. 9-10. It is axiomatic that these filings, which detailed and carefully investigated allegations of copyright infringement against IP addresses that were observed habitually infringing Strike 3's works, at minimum, "pertain to, or [are] material to, judicial proceedings." *McNeal*, *supra* at 267. Even if these filings constitute nothing more than a scheme of "extortion through sham litigation," as Defendant baldly claims with no factual support whatsoever (*See* Dkt. # 64 at pp. 9-10), they are privileged communications with this Court that cannot give rise to tort liability. *See Rusheen*, *supra* at 1058 (finding litigation privilege applies even to false documents filed with the court, perjurous testimony, and false evidence) (citations omitted).

In sum, Strike 3 has taken no action in this case, or in any judicial proceeding it has initiated to prosecute torrent infringement, aside from investigating the infringement, filing materials with the court, and working with defendants' counsel to potentially resolve the matter to spare both parties the expense of unnecessary fees and costs. The litigation privilege bars subjecting Strike 3 to tort liability for taking the necessary steps to protect its copyrights and exercise its fundamental right to vindicate its rights in a court of law. On this basis alone, the Court should dismiss Defendant's abuse of process counterclaim.

STRIKE 3 HOLDINGS, LLC'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - (2:17-CV-01731-TSZ) - 22

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 9854
(206) 624-3600

Active\88460383.v1-2/7/19

1

**E.   If this Motion is Denied, Defendant's Remaining Counterclaims for a Declaration of Non-Infringement and Abuse of Process Should Not Be Tried by a Jury.**

2

3    A claim for declaratory relief is essentially an equitable cause of action which ordinarily

4    warrants a bench trial. *Villegas v. U.S.*, 926 F. Supp. 2d 1185, 1199 (E.D. Wash. 2013) (citing

5    *Samuels v. Mackell*, 401 U.S. 66, 70 (1971)).  Moreover, though an abuse of process claim is

6    generally "legal" in nature, it is not uncommon for it to be decided at the bench especially when

7    equitable issues are present.  *New Legacy Bldg. and Design, Inc. v. Amos*, 2008 WL 11338820,

8    at *1 (D. Ariz. 2008) (citing prior action in which counterclaim for abuse of process was tried at

9    the bench); *Fox Hollow of Turlock Owner's Ass'n v. Mauctrst, LLC*, 2015 WL 5022762, at *2

10   (E.D. Cal. 2015) (same); *Hardisty v. Moore*, 2018 WL 4268487, at *2-3 (9th Cir. 2018)

11   (affirming bench trial verdict on various claims including abuse of process).

12   When both legal and equitable issues exist in a lawsuit, a trial court has "wide discretion"

13   in granting or denying a jury trial. *Batten v. Abrams*, 28 Wash. App. 737, 743 (1981).  Here, the

14   Court should decide Defendant's declaratory relief and abuse of process claims at the bench, for

15   no other reason than to conserve judicial resources.  Whether a declaration that Defendant did

16   not infringe Strike 3's works is a question at equity (if even a question at all given Strike 3's

17   dismissal of its infringement action against Defendant).  Further, all the evidence that is

18   necessary to determine whether Strike 3 abused the process in pursuing Defendant as the likely

19   infringer consists of the pleadings, orders, motions, and other documents on file herein—all of

20   which are subject to judicial notice.  *See Batten*, *supra* at 743 (finding no abuse of discretion in

21   rejecting jury demand for abuse of process claim).  Accordingly, if the Court denies his motion, it

22   should also strike Defendant's jury demand[13] and this action should be tried entirely at the bench.

23

24
---
25   [13] *Thompson v. Butler*, 4 Wash. App. 452, 455 (1971) (affirming trial court's discretion in striking jury demand, in part, because the party who demanded the jury was also the party that raised the equitable issue).  Here, Defendant brought a counterclaim for declaratory relief and, contradictorily, demanded a jury.  Conversely, Strike 3 only demanded a jury with respect to its claim for copyright infringement; it did not (and does not) demand a jury to decide any other claims in this action.

26

STRIKE 3 HOLDINGS, LLC'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - (2:17-CV-01731-TSZ) - 23

1

**V.      CONCLUSION**

2

        For the foregoing reasons, Defendant's counterclaim for abuse of process fails as a matter

3

of law and the Court should dismiss it with prejudice.

4

        DATED this 7th day of February, 2019.

5

                                        FOX ROTHSCHILD LLP

6

7

                                        *s/ Bryan J. Case*
                                        Bryan J. Case, WSBA #41781

8

                                        Lincoln D. Bandlow, *admitted Pro Hac Vice*
                                        (CSBA #170449)

9

                                        *Attorneys for Plaintiff*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

STRIKE 3 HOLDINGS, LLC'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - (2:17-CV-01731-TSZ) - 24

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA  9854
(206) 624-3600

Active\88460383.v1-2/7/19

1

## **CERTIFICATE OF SERVICE**

2

3          I hereby certify that on February 7, 2019, I electronically filed the foregoing with the

4      Clerk of the Court using the CM/ECF system which will send notification of such filing to the

5      following persons:

6          J. Curtis Edmondson, WSBA #43795     ☑   Via CM/ECF

7          399 NE John Olsen Avenue             Via U.S. Mail
           Hillsboro, Oregon 97124               Via Messenger Delivery

8          Telephone: (503) 336-3749             Via Overnight Courier
           Email: jcedmondson@edmolaw.com     Via Facsimile

9

10         DATED this 7th day of February, 2019.

11

12

13         Courtney R. Tracy
           Legal Administrative Assistant

14

15

16

17

18

19

20

21

22

23

24

25

26

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA  9854
(206) 624-3600

Active\88460383.v1-2/7/19