The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC, a Delaware corporation,<br><br>                    Plaintiff,<br><br>    v.<br><br>JOHN DOE, subscriber assigned IP address 73.225.38.130,<br><br>                    Defendant. | Case No. 2:17-cv-01731-TSZ<br><br>**STRIKE 3 HOLDINGS, LLC'S REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER TO VACATE, POSTPONE, AND/OR LIMIT DEPOSITION OF GREG LANSKY**<br><br>**NOTE ON MOTION CALENDAR:**<br><br>**FEBRUARY 22, 2019** |

STRIKE 3'S REPLY ISO MOTION FOR A PROTECTIVE ORDER - (2:17-CV-01731-TSZ) - 1

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
(206) 624-3600

171719\00002\89935715.v1

## I. INTRODUCTION

Defendant's Opposition boils down to this: Mr. Lansky's deposition is supposedly "necessary" because: (a) he submitted a declaration in this case; and (b) he is listed as a potential witness in Strike 3's Initial Disclosures. What Defendant fails to mention, however, is that Mr. Lansky's declaration is simply a 30,000-foot view of Strike 3's formation and history, as well as the challenges that Strike 3 faces in protecting its content from widespread piracy. Strike 3 also disclosed Mr. Lansky *before* Defendant filed his counterclaims and listed Mr. Lansky as a potential witness to testify to the general impact mass-infringement has had on its business and provide unique insight into the production of Strike 3's works. In other words, the actual contents of the declaration and witness disclosure demonstrate that Mr. Lansky has no knowledge whatsoever relevant to the remaining counterclaims. Indeed, Defendant flatly fails to explain how any statements in the declaration or witness disclosure have anything to do with whether Strike 3 committed an abuse of process in bringing this particular action (*i.e.*, whether Strike 3 had an ulterior purpose in suing Defendant, whether Strike 3 committed an act not proper in the regular prosecution of proceedings, and/or whether Strike 3 is using this process to obtain something other than for which this process was designed to achieve). Defendant emphasizes that Strike 3 has filed several hundreds of nearly identical actions for copyright infringement nationwide and proclaims that virtually identical copies of Mr. Lansky's declaration were submitted in each case.[1] This, however, further establishes that Mr. Lansky *does not* have any knowledge about a specific case, let alone unique personal knowledge of facts relevant to Defendant's counterclaims. If Defendant had an actual interest in discovering facts

---

[1] In its lawsuits, Strike 3 submits Mr. Lansky's declaration to provide courts with some background about its company and the widespread scope and detrimental impact torrent infringement has had on it its business. There is nothing unusual about the fact that Mr. Lansky's declaration, as well as declarations from Strike 3's expert investigators, tend to remain virtually unchanged case-by-case because all of these cases prosecuting BitTorrent infringement are themselves (other than the infringer and the number/identity of the works infringed) virtually identical. Accordingly, in no way does submitting the same declarations, motions, or pleadings indicate an abuse of process. The uniformity of these filings simply reflects the uniformity of the cases, facts, and issues at play, the persistence of rampant copyright infringement around the country faced by Strike 3, and an effort by Strike 3 to be as efficient as possible.

STRIKE 3'S REPLY ISO MOTION FOR A PROTECTIVE
ORDER - (2:17-CV-01731-TSZ) - 2

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 9854
(206) 624-3600

relevant to this case, he would depose lower-level Strike 3 employees who obtained the evidence of infringement that was the basis for the underlying lawsuit. Instead, Defendant has gone straight to the top to depose Strike 3's "apex" officer for no legitimate purpose but rather to unduly burden and harass Mr. Lansky, in clear violation of Fed. R. Civ. P. 26(c)(1). Accordingly, the Court should grant Strike 3's motion and enter the requested protective order.[2]

## II. REPLY ARGUMENT

### A. Listing Mr. Lansky in Strike 3's Initial Disclosures Before Defendant's Counterclaims Were Pled Does Not Entitle Defendant to Depose Mr. Lansky.

Defendant claims that because Strike 3 listed Mr. Lansky as a witness in its Initial Disclosures, Mr. Lansky may be deposed "on this basis alone." Defendant is wrong. *See In re Google Litig.*, 2011 WL 4985279, at *2 (N.D. Cal. 2011) (precluding "apex" deposition despite the fact that officer was listed in defendant's initial disclosures because plaintiff failed to show officer had "unique and first-hand knowledge of the facts of this case, or that [plaintiff] exhausted other less intrusive methods of discovery."). Moreover, the authority Defendant relies on is inapposite.[3]

---

[2] Defendant analogizes this action to *Cobbler Nevada, LLC v. Gonzales*, 901 F. 3d 1142 (9th Cir. 2018), but *Cobbler* is completely inapposite. In *Cobbler*, the plaintiff sued over the infringement of one work and the subpoena to the ISP revealed that the defendant was the operator of an adult foster care home. After defendant was deposed, plaintiff conceded that it could not identify "a specific party that is likely the infringer" yet plaintiff still named him as the sole defendant in an amended complaint for direct and contributory infringement. *Id.* at 1145-46. Here, Strike 3's preliminary investigation revealed Defendant that Defendant's IP address (connected to a residence, not an adult foster care home or any other entity with multiple residents) was linked to the infringement of nearly 100 works over a six-month period, and Defendant's IP address ceased all infringement once Strike 3 filed suit indicating the infringement was coming from the home, not an outside "wifi freeloader." Dkt. # 43 at ¶¶ 50-51. Finally, when Strike 3 learned that Defendant's son, who has the exact same first and last name as Defendant, was the likely infringer, Strike 3 voluntary dismissed its claims against Defendant virtually immediately. Thus, this present lawsuit is, in fact, the anti-*Cobbler*. In that case, the plaintiff continued to pursue the defendant with multiple amended complaints even after every bit of evidence the plaintiff acquired indicated that the plaintiff was not the infringer. Here in this case, however, after Defendant's counsel finally relented and actually provided Strike 3 with Defendant's name, Strike 3 immediately conducted a further investigation, determined the infringer was actually most likely Defendant's son, and immediately dismissed Defendants.

[3] *See North Dakota v. Heydinger*, 2016 WL 5661926, at *22-23 (D. Minn. 2016) (this case does not consider the "apex" doctrine, and plaintiffs ultimately stipulated to withdraw their deposition requests); *Clearlamp, LLC v. LKQ Corp.*, 2016 WL 7013478, at *3 (this case does not consider the "apex" doctrine, and the issue of the witness being listed in a party's initial disclosures was only relevant to determining whether the witness was outside the court's subpoena power and, if so, whether it was necessary to videotape the deposition).

Strike 3 only disclosed Mr. Lansky as a potential witness to testify to matters relating to the damaging effects mass infringement has had on Strike 3's company, its ability to compete in the online market, and its ability to maintain a high standard of quality for its works, as well as provide unique insights into GMS' creative process and the techniques and expenses involved in recording and marketing its works. None of this is relevant in any way to whether Strike 3 abused the process in prosecuting Defendant for rampantly infringing its copyrights. Further, Strike 3 served its Initial Disclosures listing Mr. Lansky as a potential witness on April 20, 2018— ***before*** Defendant filed declaration of non-infringement,[4] copyright misuse, and abuse of process counterclaims on May 1, 2018. Dkt. # 32. Strike 3 never designated Mr. Lansky as a witness with unique personal knowledge of facts relevant to Defendant's counterclaims. Thus, Mr. Lansky's inclusion in Strike 3's pre-counterclaims Initial Disclosures does not support Mr. Lansky being deposed.

### B. The Content of Mr. Lansky's Declaration is Wholly Irrelevant to Defendant's Counterclaims and Does Not Warrant his Deposition.

Mr. Lansky's four-page declaration (Dkt. # 4-2) solely pertains to the formation and growth of Strike 3 and its parent company General Media Systems ("GMS"), Mr. Lansky's personal journey to the United States and work in the industry, the critical acclaim of Strike 3's works, and the general impact widespread infringement has had on Mr. Lansky's companies. The declaration also affirms that Strike 3 values the privacy of defendants' names and has attempted to reduce the massive infringement of Strike 3's works by sending tens of thousands of notices via the Digital Millennium Copyright Act every month to no avail (*i.e.*, facts that numerous lower-level Strike 3 employees know and can testify to). The declaration speaks for itself, and neither party disputes it was filed or for what purpose. Moreover, Mr. Lansky did not attest to any unique personal knowledge of facts with respect to this particular action, how

---

[4] Any potential argument Defendant may have had that Mr. Lansky has unique personal knowledge of facts relevant to Defendant's counterclaim for a declaration of non-infringement was waived because Defendant failed to address this issue in his Opposition. *See* Motion at 2; *see also Digby Alder Grp., LLC v. Mercedes-Benz U.S.A., LLC*, 2015 WL 5138080, at *2 (N.D. Cal. 2015) (holding party's failure in its opposition papers to respond to argument advanced in motion to dismiss concedes the argument); *Kryzanowski v. Wyndam Hotels and Resorts, LLC*, 2014 WL 895449, at *3 (S.D. Cal. 2014) (finding party's failure to address argument concedes its validity). *Cf.* LCR 7(b)(2).

Defendant's IP address was detected, the scope of Defendant's infringement, the purpose Strike 3 hoped to accomplish in filing this case, or any actions Strike 3 took in this litigation or any other litigation.

Moreover, Mr. Lansky's first declaration does not contradict his statements in his declaration in support of this motion that he was not directly involved in and has no unique personal knowledge about Strike 3's national litigation efforts to prosecute infringement of its works. Dkt. # 70 at ¶ 2. Nowhere in *either* declaration does Mr. Lansky say he was involved in Strike 3's litigation efforts or had any knowledge of these efforts aside from knowing that such efforts were happening. And why would he? Mr. Lansky is Strike 3's Chief Creative Officer. His job duties pertain to the production, marketing, and development of Strike 3's works, not the enforcement of its copyrights—a task handled by lower-level officers, employees, and third-party investigators. Dkt. # 70 at ¶ 2-3. The fact that Mr. Lansky, as head of Strike 3, approved the company's policy to enforce its copyrights by suing individual infringers, like Defendant, does not warrant Mr. Lansky's deposition. *See Estate of Levingston v. Cty. of Kern*, 320 F.R.D. 520, 528 (E.D. Cal. 2017) (precluding deposition of "apex" officer and requiring plaintiff to depose the employees "actually involved in the development and implementation of the relevant policies," even though officer submitted a declaration and attested that he approved the policies at issue but was not the person most knowledgeable about them).

Further, the authority Defendant cites to support his argument is distinguishable:

- *In re Air Crash at Taipei, Taiwan on Oct. 31, 2000*, 2002 WL 32155478, at *3 (C.D. Cal. 2002) (deposition of "apex" officer was permitted because officer played a ***direct*** role in the case firing a key witness whom the Court ordered to be produced for deposition and made public admissions on behalf of company – matters clearly relevant to the case). (Emphasis added.) Conversely, Mr. Lansky had no such involvement with this case, or Strike 3's litigation in general, and never made any admissions of liability.

- *Dig. Equip. Corp. v. Sys. Indus., Inc.*, 108 F.R.D. 742, 743-44 (D. Ma. 1986) (granting a protective order because deposition was designed to harass president and obtain irrelevant information). This case, if anything, supports Strike 3's position. Defendant seeks to depose Mr. Lansky even though he lacks unique personal knowledge of any facts relevant to Defendant's counterclaims. Plus, Defendant's prior harassment of Mr. Lansky and Susan Stalzer during the course of this action (*see* Motion at 6-7)—which

STRIKE 3'S REPLY ISO MOTION FOR A PROTECTIVE
ORDER - (2:17-CV-01731-TSZ) - 5

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 9854
(206) 624-3600

Defendant ignores in his Opposition—makes it "transpicuously clear" that Defendant is only deposing Mr. Lansky to harass him. *Id.* at 744.

- *Travelers Rental Co., Inc. v. Ford Motor Co.*, 116 F.R.D. 140, 142 (D. Mass. 1987) (permitting "apex" depositions because "it was not clear that all information is available and/or has already been obtained from other sources."). Unlike in *Travelers* where the plaintiff outlined the connections between the "apex" executives and the relevant evidence and issues and first exhausted other sources of information, Defendant here makes no such showing and, instead, simply concludes that because Mr. Lansky submitted a "form declaration" in this case in support of Strike 3's motion for early discovery that Mr. Lansky should be deposed. Defendant has no explanation for how Mr. Lansky's anticipated testimony would be relevant to any counterclaim, and has no answer as to why other Strike 3 employees would not be more knowledgeable of the relevant facts and issues.

Mr. Lansky's declaration is a broad overview of Strike 3's business and struggle with widespread piracy. It contains no facts relevant to Defendant's counterclaims, and even if it did, such facts would also be known by lower-level employees.

### C. Mr. Lansky's Lack of Any Unique Personal Knowledge of Facts Relevant to Defendant's Counterclaims Warrants a Protective Order.

Defendant's allegation that Mr. Lansky is seeking to avoid a deposition because he is an "apex" officer is a straw argument and sidesteps the fact that Mr. Lansky lacks any unique personal knowledge of any facts relevant to Defendant's counterclaims. All of the cases Defendant cites in support of his argument dealt with "apex" officers who not only had (or probably had) some knowledge regarding the substance of the deposing party's claims, but also possessed knowledge that no other employee possessed. That is not the case here, and Defendant makes no showing otherwise. Mr. Lansky is Strike 3's Chief Creative Officer, primarily concerned with production, public relations, marketing, company development, and financial management. Dkt. # 70 at ¶ 2. He has had no direct involvement with this action or any of the other cases Strike 3 has initiated to prosecute the infringement of its works, and whatever limited knowledge he has gleaned about Strike 3's litigation was told to him by other employees. *Id.* Thus, any deposition of Mr. Lansky will be duplicative and unproductive. *See Hughes v. Gen. Motors Corp.*, 1974 WL 168899, at *1 (S.D.N.Y. 1974) (precluding deposition

STRIKE 3'S REPLY ISO MOTION FOR A PROTECTIVE
ORDER - (2:17-CV-01731-TSZ) - 6

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 9854
(206) 624-3600

of "apex" officer as unduly duplicative when information plaintiff sought was clearly available through other employees).

### D. Defendant Should be Denied Attorneys' Fees and Costs, and Strike 3 Should be Awarded Fees and Costs.

Defendant baldly concludes Strike 3 has no substantial justification in moving for a protective order. As set forth above, there was more than just a substantial justification to bring this motion, in fact, the law compels that it be granted. Moreover, notwithstanding all of the reasons stated above, Defendant's assertion that Strike 3's Motion is somehow unjustified given *Defendant's counsel's flagrant harassment of Mr. Lansky and Ms. Stalzer earlier in this litigation* (*see* Motion at 6-7) is just plain absurd. This is not a motion that says "don't let Defendant harass a witness" but rather one that says "don't let him do it a third time."

Thus, regarding a fee award, the proper remedy is one in favor of Strike 3, to recoup its fees for this Motion pursuant to the Fed.R.Civ.P. 37(a)(5)(A) given Defendant's insistence on deposing an "apex" officer who, indisputably, has no unique personal knowledge of any of the facts or issues relevant to Defendant's counterclaims and Defendant's refusal to first pursue less-intrusive means to obtain whatever information he seeks.

## III. CONCLUSION

For the foregoing reasons, the Court should grant Strike 3's Motion, enter a protective order and award Strike 3 fees for having been compelled by Defendant to bring this Motion.

DATED this 22nd day of February, 2019.

FOX ROTHSCHILD LLP

*s/ Bryan J. Case*
Bryan J. Case, WSBA #41781
Lincoln D. Bandlow, *admitted Pro Hac Vice*
(CSBA #170449)
*Attorneys for Plaintiff*

STRIKE 3'S REPLY ISO MOTION FOR A PROTECTIVE ORDER - (2:17-CV-01731-TSZ) - 7

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 9854
(206) 624-3600

# **CERTIFICATE OF SERVICE**

I hereby certify that on February 22, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following persons:

| | |
|---|---|
| J. Curtis Edmondson, WSBA #43795<br>399 NE John Olsen Avenue<br>Hillsboro, OR 97124<br>Telephone: (503) 336-3749<br>Email: jcedmondson@edmolaw.com | ☒ Via CM/ECF<br>☐ Via U.S. Mail<br>☐ Via Messenger Delivery<br>☐ Via Overnight Courier<br>☐ Via Facsimile |

DATED this 22nd day of February, 2019.

*Courtney R. Tracy* (signature)
Courtney R. Tracy

STRIKE 3'S REPLY ISO MOTION FOR A PROTECTIVE
ORDER - (2:17-CV-01731-TSZ) - 8

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 9854
(206) 624-3600