THE HONORABLE THOMAS S. ZILLY

U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC, a Delaware corporation,<br><br>                Plaintiff,<br><br>  vs.<br><br>JOHN DOE, subscriber assigned IP address 73.225.38.130,<br><br>                Defendant. | NO. 2:17-cv-01731-TSZ<br><br>**DEFENDANT'S MOTION TO COMPEL PRODUCTION OF SOFTWARE OR EXCLUDE EXPERT AND LAY TESTIMONY WHICH DEPENDS ON ITS RELIABILITY**<br><br>**Note on Motion Calendar: 04/19/2019** |
| JOHN DOE subscriber assigned IP address 73.225.38.130,<br><br>                Counterclaimant,<br><br>  vs.<br><br>STRIKE 3 HOLDINGS, LLC,<br><br>                Counterdefendant. | |

**TABLE OF CONTENTS**

Page No.

I. INTRODUCTION ..................................................................................................................1

II. RELEVANT FACTS............................................................................................................2

    A. Relevant background ...............................................................................................2

    B. The discovery requests at issue ................................................................................5

    C. The opinions of S3H's expert and lay witnesses depend on the software's Reliability ..................................................................................................................6

        1. S3H's expert opinions rely on the accuracy of the software .....................6

        2. S3H's lay witnesses offered technical opinions dependent on the software's accuracy ...................................................................................7

        3. Doe's expert has opined that the software, which did not capture enough pieces to amount to a fully playable movie, is not accurate ..................................................................................................8

III. MEET AND CONFER CERTIFICATION........................................................................8

IV. STATEMENT OF THE ISSUES .......................................................................................8

V. EVIDENCE RELIED UPON ..............................................................................................8

VI. ARGUMENT .......................................................................................................................9

    A. S3H should produce the software that its expert and lay witnesses rely upon, and that S3H relied upon in alleging infringement and seeking early discovery...................................................................................................................9

    B. S3H's claim that the software is not within its custody, possession, or control rings hollow..................................................................................................10

    C. If S3H does not produce the software, S3H should not be allowed to introduce evidence that relies on the software ......................................................10

VII. CONCLUSION ................................................................................................................12

## TABLE OF AUTHORITIES

**Page No.**

### FEDERAL CASES

*Daubert v. Merrell Dow Pharm., Inc.*,
 509 U.S. 579 (1993) ...................................................................................................11

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
 499 U.S. 340 (1991) .....................................................................................................9

*Luttrell v. Novartis Pharm. Corp.*,
 894 F. Supp. 2d 1324 (E.D. Wash. 2012) ............................................................10, 11

*Marya v. Warner/Chappell Music, Inc.*,
 131 F.Supp.3d 975 (C.D. Cal., 2015) ..........................................................................9

*Soto v. City of Concord*,
 162 F.R.D. 603 (N.D. Cal. 1995) ..............................................................................10

*St. Jude Med. S.C., Inc. v. Janssen-Counotte*,
 104 F. Supp. 3d 1150 (D. Or. 2015) ..........................................................................10

*Williams v. Bridgeport Music, Inc.*,
 No. CV–13–6004–JAK (AGRx), 2014 WL 7877773 (C.D. Cal. Oct. 30, 2014) .............9

*United States v. Gonzales*,
 No. R1701311001PHXDGC, 2019 WL 669813 (D. Ariz. Feb. 19, 2019) .......................9

### FEDERAL RULES

Fed. R. Evid. 701 ....................................................................................................................12

# I. INTRODUCTION

This case, like thousands of other cases filed by Plaintiff Strike 3 Holdings, LLC ("Strike 3" or "S3H" or "Plaintiff") across the United States, involves software that monitors the internet for Plaintiff's works. According to Plaintiff's investigator, IPP:

> One of the services that IPP provides is that its system monitors the BitTorrent file distribution network...IPP's <u>forensic software</u> identifies Internet Protocol ("IP") addresses that are being used by infringers to distribute copyright works within the BitTorrent File Distribution Network."

*See* ECF 4-3 (Declaration of Tobias Fieser), ¶ 5 (emphasis added).

Unlike any other forensic software—which is tested and validated by NIST (National Institute of Standards and Technology, https://www.nist.gov/itl/ssd/software-quality-group/computer-forensics-tool-testing-program-cftt)—IPP's software ("IPP Code")[1] has not been independently tested and validated according to any recognizable standard. *See* ECF 83 (Declaration of Kal Toth). Doe's expert, Dr. Kal Toth has analyzed the software and concluded it is an unproven software-based forensics tool, with a large number of latent software faults, and a false positive rate of approximately 11%. ECF 83 at p. 10.

Further compounding this issue is that the "forensic software" conducted only *deminimus* sampling of the IP address' activity to conclude infringement. On average, the IPP Code captured just .007% of a movie, and never captured enough alleged infringement to amount to a playable movie. *See* ECF 82 ¶ 13 (Declaration of Brandon Garcia-Paeth).

Plaintiff has designated two experts: Patrick Paige and Stephen Bunting. Neither expert is a computer programmer by profession or has any experience in the field of software validation and testing. Their experience is with "hard drive" forensics, based on their use of industry-recognized third-party tools like EnCase to examine hard drives. But when it comes to

---

[1] Doe uses "software" and "IPP Code" interchangeable to refer collectively to IPP's proprietary object code, source code, third-party software licenses, build files, and validation test files, as referenced and sought in Requests for Production 1 through 5.

experience building and validating complex computer systems—which is critical in this case—Paige and Bunting have none.

This Court has already rejected testimony by the software's developer, Benjamin Perino, that the software cannot yield a false positive. And for good reason. It is unimaginable, for example, that a Microsoft employee would testify that a product, which is subject to rigorous testing, is flawless. Why should an unknown software company like IPP be able to make such an unfounded representation about an untested system that Strike 3 has used to drag thousands of individuals into litigation?

Strike 3 should be bound to demonstrate the accuracy and reliability of its software in real-time conditions. In the alternative, if Plaintiff does not produce its software, Plaintiff should not be permitted to introduce evidence that depends on the software's accuracy, which has not been established.

## II.  RELEVANT FACTS

A.  **Relevant background.**

Defendant John Doe is a married, retired police officer in his 70's. ECF 21-25 at ¶ 1. Until he was sued by S3H, Doe had never heard of the pornographic websites: "Blacked," "Vixen," or "Tushy." *Id.*, ¶ 3. Nevertheless, in February 2018, Doe learned from his internet service provider ("ISP") (ECF 11) that he was the target of this lawsuit, which wrongly accuses him of having downloaded pornographic films.

Several months before Doe learned he was S3H's target, S3H filed a sole cause of action claiming "John Doe, subscriber assigned IP address 73.225.38.130" had illegally copied S3H's copyrighted pornographic movies using BitTorrent in violation of the Copyright Act of 1976, 17 U.S.C. § 101, *et seq. See, generally,* ECF 1.  The basis for this claim derived from data collected by the IPP Code.

A few weeks later, S3H sought and obtained permission to subpoena Comcast for the identity of the subscriber. ECF 4. S3H supported its motion with four *pro forma* declarations,

including the Declaration of Tobias Fieser—a German citizen who works for S3H's investigator, the German company IPP International UG ("IPP")—and John Pasquale and Susan Stalzer, each of whom discusses the software-based investigation S3H used to detect the alleged infringement. ECF 4-2, 4-4, and 4-5.

S3H's entire case depends on the reliability of proprietary software used and owned by IPP, which allegedly provides forensic investigation services to companies like S3H through software that "identifies Internet Protocol ('IP') addresses that are being used by infringers to distribute copyrighted works within the BitTorrent File Distribution Network." ECF 4-3, ¶¶ 3-4. According to S3H, IPP's software allowed it to enter a BitTorrent swarm, connect with Doe's IP address, and determine that Doe "downloaded, copied, and distributed a complete copy of Plaintiff's Works without authorization." ECF 1, ¶¶ 24-27.

On March 8, 2018, Doe moved for a more definite statement "regarding how Doe allegedly copied and distributed the Strike 3's 'Works' using BitTorrent and how Strike 3 determined and accounted for false positives in connection with the alleged injury to Strike 3." ECF 21. The Court granted Doe's request, noting that while S3H's investigator used software to allegedly obtain one or more pieces of the digital media files listed on Exhibit A from defendant's Internet Protocol ("IP") address, the allegation that the investigator obtained a <u>full</u> copy of the digital media files indicated those copies came from the overall "BitTorrent file distribution network," rather than from Doe's IP address alone. ECF 36 (citing ECF 1 at ¶¶ 25-26). As such, "plaintiff did not allege that the pieces of the files downloaded from defendant's IP address are or contain renderable, viewable versions of plaintiff's copyrighted works or any portions thereof." ECF 36.

Moreover, because the operative pleading offered no detail concerning the software S3H's investigator used to harvest the pieces of the digital media files at issue and set forth no facts tending to show that defendant was using the IP address at issue at the times listed in Exhibit A, the Court was unpersuaded that S3H had alleged a sufficient link between defendant

DEFENDANT'S MOTION TO COMPEL PRODUCTION
OF SOFTWARE OR EXCLUDE EXPERT AND LAY
TESTIMONY WHICH DEPENDS ON ITS
RELIABILITY - 3
CASE NO. 2:17-CV-01731-TSZ

and the IP address at issue, which might have been spoofed, used without defendant's knowledge or consent, or otherwise falsely implicated. ECF 36. The Court ordered S3H to address these deficiencies in an amended complaint. *Id*.

On July 3, 2018, S3H filed an amended complaint that includes additional, vague allegations about the software. *See* ECF 43. It describes the software as "a proprietary BitTorrent client which enters into the swarm of infringers" and "allows a party to communicate with, and hence download from, the BitTorrent swarm." *Id*. ¶ 26. It further alleges that IPP records the infringer's transactions in a PCAP and analyzes the PCAP with "a proprietary packet analyzer." *Id*. ¶¶ 28-30. But the additional allegations fail to address the deficiencies the Court had previously identified. *See* ECF 43. Rather than provide sufficient detail concerning the software its investigator used, or to identify several crucial components and operational characteristics essential to evaluating IPP's torrent monitoring system ("IPP Code"), S3H characterizes the software as "proprietary," which emphasizes the lack of transparency in S3H's investigation. Moreover, the new allegations fail to allege the elements needed to sustain S3H's claim for copyright infringement; specifically, that the pieces downloaded from Doe's IP address contain renderable, viewable versions of Strike 3's copyrighted works. Instead, S3H admits it is "unable to capture the full, or a playable portion of its motion picture." *Id*. ¶ 42.

Doe again moved for a more definite statement. *See* ECF 44. In its opposition, S3H wrote that Doe's challenges to the credibility and reliability of S3H's infringement investigation "are trial or dispositive motion arguments to be explored in discovery" and urged the Court to deny Doe's motion "so the parties can commence discovery and litigate this case on the merits." ECF 48.[2]

---

[2] S3H dismissed its claims against Doe before the Court could rule on the second motion for more definite statement. Dkt 53 (Notice of Dismissal Without Prejudice); Dkt 58 (order striking motion for more definite statement as moot).

DEFENDANT'S MOTION TO COMPEL PRODUCTION
OF SOFTWARE OR EXCLUDE EXPERT AND LAY
TESTIMONY WHICH DEPENDS ON ITS
RELIABILITY - 4
CASE NO. 2:17-CV-01731-TSZ

**B.      The discovery requests at issue.**

Despite S3H's suggestion that that parties address questions about the reliability of the software used as part of S3H's investigation during the discovery process (ECF 48), it has since changed course. It now refuses to produce the software that Doe has challenged as unreliable from the inception of this case. Instead, S3H maintains that it does not have the software. *See* Declaration of J. Curtis Edmondson ("Edmondson Decl."), Exh. 1 (Plaintiff's Responses to Requests for Production).

The specific Requests for Production at issue in this motion include:

**REQUEST FOR PRODUCTION NO. 1**: A copy of the object code of the Infringement Detection Software used on the Dates Of Alleged Infringements.

**REQUEST FOR PRODUCTION NO. 2:** A copy of the source code of the Infringement Detection Software that was used on the Dates Of Alleged Infringements.

**REQUEST FOR PRODUCTION NO. 3**: A copy of all third-party software licenses that were used for Infringement Detection Software on the Dates Of Alleged Infringements.

**REQUEST FOR PRODUCTION NO. 4**: A copy of all build files of the Infringement Detection Software that was used on the Dates Of Alleged Infringements.

**REQUEST FOR PRODUCTION NO. 5**: A copy of all validation test files for the Infringement Detection Software that was used on the Dates Of Alleged Infringements.

S3H objected to each request on the basis (among others) that "[t]he documents and materials sought by this request—documents related to the technical specifications, hardware, software, code operation, creation, tests, or maintenance of the Infringement Detection System—are in the exclusive possession, custody, and control of IPP International, UG's ("IPP"), a third party over whom Plaintiff has no control." *See* Responses to Requests for Production 1 through 5. And, while S3H maintains that it has never partnered with IPP, and that IPP is merely a vendor, it objected that the requests "seek confidential, proprietary, and trade secret information." *Id.* Finally, S3H argues that the requests are "vastly overbroad,

beyond the scope of permissible discovery and not relevant to the claims and defenses in this case nor proportional to the needs of this case." *Id*.

C. **The opinions of S3H's expert and lay witnesses depend on the software's reliability.[3]**

    1.    <u>S3H's expert opinions rely on the accuracy of the software.</u>

Prior to March 15, 2019, S3H produced three documents created by the two experts designated in this case. Edmondson Decl ¶¶ 2, 3, 4. Each report relies on the accuracy of the software.

Mr. Bunting alleges he constructed and conducted a test which determined that the proprietary software and hardware platform owned and run by German company, GuardaLey, LTD, a German company, and licensed to IPP, is accurate. *See* Edmondson Decl., Exh. 2 (Expert Report of Stephen Bunting, ¶ 16). The substance of Mr. Bunting's test is set forth in Exhibit B to his report, which is in turn a report that Mr. Bunting prepared for film producer, Voltage Pictures, LLC. *Id.*, Exh. B ¶ 17. Exhibit B describes the underlying basis for Mr. Bunting's opinion that the software is accurate, which hinges on the expert opinion and work of Benjamin Perino, who created the software. Exh. B ¶¶ 17-18. Specifically, Mr. Bunting's expert opinion relies on the qualifications of Mr. Perino and the accuracy of his proprietary software, which Mr. Bunting tested with Mr. Perino's help. Exh. B ¶¶ 22-25, 38 ("Based on a combination of my testing and of my understanding of the features and function of the MEU system, having read Mr. Perino's expert report on the MEU system, I am of the opinion that it was designed to maintain the accuracy and integrity of the evidence throughout"). Mr. Bunting also concurred with Mr. Perino's opinion that "TCP/IP Connections cannot be spoofed and cannot yield false positives." *Id.* ¶ 39.

This Court previously reviewed Mr. Perino's expert opinion, and on January 8, 2018, held that Mr. Perino—whose background consists of a technical high school education and

---

[3] This motion seeks to exclude portions of the experts' testimony specific to the software. Doe reserves the right to strike additional expert testimony after discovery has been completed.

work experience unrelated to BitTorrent—"does not have the qualifications necessary to be considered an expert in the field in question, and his opinion that the surveillance program is incapable of error is both contrary to common sense and inconsistent with plaintiff's counsel's conduct in other matters in this district." *See Venice PI, LLC v. Sean O'Leary Jr., et al.*, C17-0988 TSZ, ECF 34 (Jan. 8, 2018) (citations omitted).

S3H's second expert, Patrick Paige, also claims to have tested IPP's software, and from his test, "concluded that IPP's infringement detection system worked." *See* Edmondson Decl., Exh. 3 (Expert Report of Patrick Paige, ¶ 42).

2. <u>S3H's lay witnesses offered technical opinions dependent on the software's accuracy.</u>

S3H's non-expert witnesses also rely on the accuracy of the software. For example, Tobias Fieser, an IPP employee who testified he "was assigned the task of overseeing, analyzing, and reviewing the results of" the investigation into Doe," opined that Doe's IP address "is associated with significant long term BitTorrent use." ECF 4-3 ¶¶ 6, 12. Mr. Fieser testified extensively regarding technical issues that would typically fall within the province of experts. He testified that he reviewed IPP's forensic activity records, that IPP's software analyzed each BitTorrent "piece" distributed by Doe's IP address, and even contradicted the admission in S3H's amended complaint that S3H was "unable to capture the full, or a playable portion of its motion picture" when he "verified that reassembling the pieces using a specialized BitTorrent client results in a fully playable digital movie." *Compare* ECF 43 ¶ 42 *with* ECF 4-3 ¶ 9. Likewise, John Pasquale was hired to "analyze and retain forensic evidence captured by IPP International U.G." ECF 4-4 ¶ 6. Based on this analysis, which depends on the accuracy of S3H's PCAPs, Mr. Pasquale concluded that Comcast was Doe's ISP. Finally, Susan Stalzer opined that she compared the file hashes enumerated in Exhibit A to the complaint with S3H's works and that they were the same. Her opinion, as does Mr. Fieser's and Mr. Pasquale's, depends entirely on the reliability of IPP's software.

3. <u>Doe's expert has opined that the software, which did not capture enough pieces to amount to a fully playable movie, is not accurate.</u>

One of Doe's experts, Dr. Kal Toth, previously examined the reliability of the software. ECF 83 at pp. 2, 5. He opines that claims that operational software is defect-free, and a complex software-based system detects infringement flawlessly, are not credible. *Id.*, p. 11. Without technical documents or software modules regarding the software, no objective evidence exists that can be relied on to prove that the IPP software executes correctly, accurately or reliably. *Id.*, p. 7. Absent such documentation, it is impossible to know whether the software correctly executes the inherently complex functions and protocols needed to search a BitTorrent swarm for purported infringement. *Id.* at p. 11. Even if S3H could establish the software is accurate, the sample the software allegedly captured is so small that, on average, it amounted to approximately 0.007% of a movie. *See* ECF 82 ¶ 13 (Declaration of Brandon Garcia-Paeth).

### III.  MEET AND CONFER CERTIFICATION

Counsel conferred by telephone on March 7, 2019, in a good faith effort to resolve their disputes in compliance with LCR 37(a)(1).

### IV.  STATEMENT OF THE ISSUES

1. Should the Court compel S3H to produce the software?

2. Alternatively, should the Court preclude lay and expert testimony regarding the software because S3H has not established the software is reliable?

### V.  EVIDENCE RELIED UPON

Defendant relies on the Declaration of J. Curtis Edmondson, with exhibits, and the balance of pleadings and papers filed in this case.

# VI.  ARGUMENT

**A.  S3H should produce the software that its expert and lay witnesses rely upon, and that S3H relied upon in alleging infringement and seeking early discovery.**

Whether it is a direct action for copyright infringement, or declaratory relief action of non-infringement by a Defendant, the owner of the copyright always has the burden of proof in an action for a declaratory judgment involving infringement of the copyright. *Marya v. Warner/Chappell Music, Inc*., 131 F.Supp.3d 975, 983-984 (C.D. Cal., 2015) (citing *Medtronic, Inc. v. Mirowski Family Ventures, LLC,* 571 U.S. 191, 198-201 (2014) ("[t]he burden of persuasion is with the patentee, just as it would be had the patentee brought an infringement suit")); *see also Williams v. Bridgeport Music, Inc*., No. CV–13–6004–JAK (AGRx), 2014 WL 7877773, at *10 (C.D. Cal. Oct. 30, 2014) (applying *Medtronic* to a declaratory judgment copyright case and concluding the defendants have the burden of proof).

As a result, the burden of proof regarding Doe's claim for declaratory judgment of non-infringement rests with S3H. To meet its burden, S3H must establish that Doe copied S3H's works, *Feist Publications, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 361 (1991),[4] which may prove difficult for S3H based on its own contradictory statements. For example, in its amended complaint, S3H admits it was "unable to capture the full, or a playable portion of its motion picture." ECF 43 ¶ 42. But in the Declaration of Tobias Fieser, S3H alleges the opposite—that IPP successfully used its proprietary software to connect pieces of S3H's movies to Doe's IP address. ECF 4-3. Finally, S3H recently produced reports from two expert witnesses who opine that the software is accurate, despite Dr. Kal Toth's opinion that the software is unreliable. The discrepancy between expert alone requires S3H to produce the software. *See United States v. Gonzales*, No. R1701311001PHXDGC, 2019 WL 669813, at *5 (D. Ariz. Feb. 19, 2019) (compelling production of forensic software used to track BitTorrent activity when defendant's expert called into question the prosecution's version of events). Because the software is central to whether S3H can establish Doe copied its works, the software must be produced.

---

[4] S3H must also prove ownership of a valid copyright, but ownership is not at issue in this motion.

**B.  S3H's claim that the software is not within its custody, possession, or control rings hollow.**

Under Federal Rule of Civil Procedure 34, documents sought in discovery motions must be within the "possession, custody or control" of the party upon whom the request is served. S3H objects that it lacks possession, custody, or control of the software, which it says is in the exclusive possession of IPP. S3H would prefer, it would seem, for Doe to go through the potentially fruitless process of obtaining documents via the Hague Evidence Convention. *St. Jude Med. S.C., Inc. v. Janssen-Counotte*, 104 F. Supp. 3d 1150, 1168 (D. Or. 2015) ("Under Article 23 of the Convention, Germany has flatly stated that "it will not, in its territory, execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents as known in common law countries.") (citation omitted).

S3H's position is unpersuasive. IPP has disclosed its software in the past. Expert Kal Toth has analyzed software involving IPP (also known as Guardaley, MaverickEye, and Excipio) on several prior occasions. ECF 83 at pp. 2, 5. There is no reason for IPP to decline a request from S3H now. Moreover, S3H was able to obtain the additional information regarding IPP's software that it added to the amended complaint over a short period of time. It stands to reason that the relationship with S3H is important enough to IPP that IPP would likewise be willing to provide the underlying software upon which hundreds if not thousands of S3H's case depend. *Soto v. City of Concord*, 162 F.R.D. 603, 620 (N.D. Cal. 1995) (compelling production of evaluations conducted by a non-party at defendant's request where it "seems inconceivable" defendant lacks the ability to obtain them).

**C.  If S3H does not produce the software, S3H should not be allowed to introduce evidence that relies on the software.**

If the Court concludes that S3H does not have the ability to obtain the software from IPP, Doe requests an order precluding S3H from introducing evidence about the software.

Expert witness testimony is governed by Federal Rule of Evidence 702; the proponent of the testimony must establish admissibility by a preponderance of the evidence. *Luttrell v.*

DEFENDANT'S MOTION TO COMPEL PRODUCTION
OF SOFTWARE OR EXCLUDE EXPERT AND LAY
TESTIMONY WHICH DEPENDS ON ITS
RELIABILITY - 10
CASE NO. 2:17-CV-01731-TSZ

*Novartis Pharm. Corp.*, 894 F. Supp. 2d 1324, 1332 (E.D. Wash. 2012). The Supreme Court requires that if expert testimony is proffered, a trial court "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 589 (1993). This requires that a trial court make a "preliminary assessment of whether the testimony's underlying reasoning or methodology is scientifically valid and ... can be applied to the facts in issue." *Id*. at 592–93. *Daubert* identifies four non-exclusive factors a court may consider in assessing the relevance and reliability of expert testimony: (1) whether a theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential error rate and the existence and maintenance of standards controlling the theory or technique's operation; and (4) the extent to which a known technique or theory has gained general acceptance within a relevant scientific community. *Id*. at 593-94.

    Doe respectfully requests an order excluding the portions of Mr. Bunting's and Mr. Paige's reports that relate to or reference the accuracy of the software because the reliability of the software has not been established. They have failed to establish the *Daubert* factors, including that the software has been subjected to peer review and publication, whether there are any known or potential error rates, and they cannot show that the software, which S3H claims is proprietary, has gained general acceptance within the relevant scientific community. Moreover, the "tests" they describe depend on the reliability of the software itself. Thus, to the extent the opinions of S3H's experts hinge on the reliability of the IPP software, their reports and testimony should be excluded.

    Doe also requests that the Court strike the testimony of Tobias Fieser, John Pasquale, and Susan Stalzer, all of whom offer lay opinion testimony that does not meet Rule 701's requirements. Under Federal Rule of Evidence 701, a lay witness may only offer opinion testimony if the opinion is: "(1) rationally based on the perception of the witness; (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue; and (3)

not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

Here, each lay witness provides opinions about technical transactions that depend on the reliability of the IPP software, which fall instead within the scope of Rule 702. In fact, at least one court has held that the pro form declaration Mr. Fieser submits in these cases is "expert testimony" which uses forensic software and related technology. Moreover, these witnesses offer opinions regarding transactions in which they did not participate and cannot be "rationally based on the perception of the witness." Fed. R. Evid. 701.

## VII. CONCLUSION

Based on the foregoing, Doe respectfully requests that the Court order S3H to produce the software that was used to monitor and allegedly link Doe to alleged infringements for each work at issue in this case.

In the alternative, because Doe carries the burden of proof on Doe's claim for declaration of noninfringement, Doe requests that the Court prohibit S3H from offering any evidence whatsoever that was generated from IPP Code, and to strike or limit the introduction of any lay or expert testimony that relied on data generated by the IPP Code.

RESPECTFULLY SUBMITTED AND DATED this 4th day of April, 2019.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/ Adrienne D. McEntee, WSBA #34061
Beth E. Terrell, WSBA #26759
Email: bterrell@terrellmarshall.com
Adrienne D. McEntee, WSBA #34061
Email: amcentee@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

|   |   |
|---|---|
| 1 |   |
| 2 | J. Curtis Edmondson, WSBA #43795 |
|   | Email: jcedmondson@edmolaw.com |
| 3 | EDMONDSON IP LAW |
|   | 399 NE John Olsen Avenue |
| 4 | Hillsboro, Oregon 97124 |
|   | Telephone: (503) 336-3749 |
| 5 |   |
| 6 | *Attorneys for Defendant* |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

DEFENDANT'S MOTION TO COMPEL PRODUCTION
OF SOFTWARE OR EXCLUDE EXPERT AND LAY
TESTIMONY WHICH DEPENDS ON ITS
RELIABILITY - 13
CASE NO. 2:17-CV-01731-TSZ

## CERTIFICATE OF SERVICE

I, Adrienne D. McEntee, hereby certify that on April 4, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

    Bryan J. Case, WSBA #41781
    Email: bcase@foxrothschild.com
    FOX ROTHSCHILD LLP
    1001 Fourth Avenue, Suite 4500
    Seattle, Washington 98154
    Telephone: (206) 624-3600
    Facsimile: (206) 389-1708

    Lincoln D. Bandlow, *Admitted Pro Hac Vice*
    Email: lbandlow@foxrothschild.com
    FOX ROTHSCHILD LLP
    10250 Constellation Blvd., Suite 900
    Los Angeles California 90067
    Telephone: (310) 598-4150
    Facsimile: (310) 556-9828

*Attorneys for Plaintiff*

DATED this 4th day of April, 2019.

TERRELL MARSHALL LAW GROUP PLLC

By:   /s/ Adrienne D. McEntee, WSBA #34061
    Adrienne D. McEntee, WSBA 34061
    Email: amcentee@terrellmarshall.com
    936 North 34th Street, Suite 300
    Seattle, Washington 98103-8869
    Telephone: (206) 816-6603
    Facsimile: (206) 319-5450

*Attorneys for Defendant*