The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>JOHN DOE, subscriber assigned IP address 73.225.38.130,<br><br>Defendant. | Case No. 2:17-cv-01731-TSZ<br><br>**STRIKE 3 HOLDINGS, LLC'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL PRODUCTION OF SOFTWARE OR EXCLUDE EXPERT AND LAY WITNESS TESTIMONY**<br><br>**NOTE ON MOTION CALENDAR:**<br><br>**APRIL 19, 2019** |

I.  **INTRODUCTION**

Defendant's motion to compel highly sensitive and proprietary data from an independent third party by badgering Strike 3 into submission is so nonsensical that the motion actually disagrees with itself.  On the one hand, the motion contends "Doe's expert, Dr. Kal Toth has analyzed [IPP's] software and concluded it is an unproven software-based tool, with a large number of latent software faults, and a false positive rate of approximately 11%."[1]  Dkt. # 94 at p. 1.  The motion further claims that IPP has already disclosed its software, and Dr. Toth has analyzed IPP's software, also known as Guardaley, MaverickEye, and Excipio, on "several prior

---

[1] This conclusion squarely contradicts Doe's claims that IPP's software is unreliable.  According to his own expert, the software is right approximately 89% of the time.

STRIKE 3'S OPPOSITION TO MOTION TO COMPEL
PRODUCTION OF SOFTWARE OR EXCLUDE EXPERT AND
LAY WITNESS TESTIMONY  - (2:17-CV-01731-TSZ) - 1

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
(206) 624-3600

171719\00002\93424769.v2

occasions." *Id.* at p. 10.  Yet, on the other hand, Defendant demands that Strike 3 force IPP to produce its software so Dr. Toth can redundantly analyze it yet again, and Defendant seeks to exclude Strike 3's experts and lay witnesses if the software is not produced.  Defendant's motion is self-defeating and is simply an improper straw-man attempt to exclude Strike 3's admissible experts and lay witnesses.

Strike 3 cannot be forced to produce materials or sensitive proprietary trade secrets within the possession, custody, and control of a third-party independent contractor over whom Strike 3 has no control.  Of course, Defendant is welcome to subpoena IPP for these materials, and Defendant's counsel, had they asked, would have been told that Strike 3's counsel had been authorized to accept service of process of the subpoena, effectively eliminating any Hague Convention concerns.  Declaration of Lincoln Bandlow ("Bandlow Decl.") at ¶ 3.  But Defendant appears more interested in burdening Strike 3 and this Court with frivolous and churning motion practice than actually obtaining the data he seeks.

Further, Defendant's argument that Strike 3's experts and lay witnesses should be excluded because their testimony is based on purportedly unreliable software demonstrates a fundamental misunderstanding of *Daubert*.  The admissibility of such testimony does not hinge on the reliability of IPP's system; rather it depends on the experts' backgrounds, qualifications, and methodology used to test the system.  Any argument as to alleged unreliable software goes to weight or credibility, not admissibility.  In other words, Strike 3's experts did not rely on the reliability of IPP's system whatsoever but rather conducted detailed, deliberate, and carefully documented tests of the system, and from these examinations the experts drew certain conclusions that Defendant finds unappealing.  As for Strike 3's lay witnesses, their testimony is based on personal observations and experience.  At worst, the credibility of their testimony may depend on the reliability of IPP's software, but that is not grounds for exclusion.

STRIKE 3'S OPPOSITION TO MOTION TO COMPEL
PRODUCTION OF SOFTWARE OR EXCLUDE EXPERT AND
LAY WITNESS TESTIMONY - (2:17-CV-01731-TSZ) - 2

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 9854
(206) 624-3600

171719\00002\93424769.v2

The Court should deny Defendant's motion to compel in its entirety. Additionally, Defendant and his counsel's flagrant abuse of the discovery process (*See e.g.*, Dkt. # 86, 94, 96) must cease, and an award of attorneys' fees pursuant to Fed. R. Civ. P. 37(a)(5) is warranted.

## II.  AUTHORITY & ARGUMENT

### A.  Strike 3 Cannot Be Compelled To Produce Third Party Materials Over Which Strike 3 Has No Possession, Custody, Or Control.

Defendant asks this Court to ignore the plain language of the Federal Rules of Civil Procedure and order Strike 3 to produce highly sensitive proprietary data within the possession, custody, and control of a non-party. However, Fed. R. Civ. P. 34 expressly provides that a party is only obligated to produce or permit for copying or inspection documents and materials "***in the responding party's possession, custody, or control***[.]" (emphasis added). "Property is deemed within a party's 'possession, custody, or control' if the party has actual possession, custody, or control thereof or the legal right to obtain the property on demand." *Allen v. Woodford*, 2007 WL 309945, at *2 (E.D. Cal. 2007). Indeed, "[c]ontrol must be firmly placed in reality, not in an esoteric concept such as inherent relationship. We do not look to whether the [party] theoretically controlled the [other party]; rather, we inquire whether *actual* control existed." *U.S. v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1453-54 (9th Cir. 1989) (emphasis original) (internal citations omitted). "[T]he party seeking production of documents has the burden of proving the opposing party has control under the meaning of Federal Rule 34." *Maria Del Socorro Quintero Perez, CY v. U.S.*, 2016 WL 705904, at *2 (S.D. Cal. 2016). Defendant cannot carry his burden.

Defendant has not set forth any facts or law that establish or even support the notion that Strike 3 possesses IPP's infringement detection system or that Strike 3 has the legal right to obtain the system on demand. Instead, Defendant claims IPP produced its software in past litigation which Dr. Toth apparently analyzed—which begs the question of why IPP must redundantly produce it again. Dkt. # 94 at p. 10. Defendant also asserts that Strike 3 obtained

STRIKE 3'S OPPOSITION TO MOTION TO COMPEL
PRODUCTION OF SOFTWARE OR EXCLUDE EXPERT AND
LAY WITNESS TESTIMONY - (2:17-CV-01731-TSZ) - 3

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 9854
(206) 624-3600

171719\00002\93424769.v2

additional information regarding IPP's software that it added to its amended complaint over a "short period of time"—which means exactly what it says: that Strike 3 obtained additional information about IPP's system that Strike 3 disclosed in its Amended Complaint so Defendant now knows what Strike 3 knows, but Strike 3 was not provided the object code, source code, third-party software licenses, or any of the build files for IPP's software. *Id*. Defendant then speculates that IPP's relationship with Strike 3 is important enough to IPP that it would gladly provide the underlying software for inspection. Even if this were true, Strike 3 cannot compel IPP to do so, and Defendant has made no effort to subpoena IPP for this data. *See Nosal v. Granite Park LLC*, 269 F.R.D. 284, 290 (S.D.N.Y. 2010) (finding party had no obligation to produce records within third-party vendor's possession, and noting "a party upon whom discovery is served need not seek such documents from third parties if compulsory process against the third parties [*i.e.*, a subpoena] is available to the party seeking the documents.") (citation omitted).

Additionally, Defendant's reliance on his sole authority in support of his position, *Soto v. City of Concord*, 162 F.R.D. 603, 620 (N.D. Cal. 1995), is misplaced. In *Soto*, the court found that the City of Concord had the ability to produce evaluations conducted by the city's police department that pertained to officers in the department. But of course the court in *Soto* compelled the City to produce these documents—the police department that possessed the records is a part and division of the City and the records dealt with police officers who were employees of the City.

In contrast, IPP is not an agent, partner, owner, division, or subsidiary of Strike 3 or any of Strike 3's parent companies, and Strike 3 does not employ any member of IPP's staff. Declaration of Emilie Kennedy ("Kennedy Decl.") at ¶ 4. IPP is an entirely separate entity from Strike 3 with different owners in different companies working in different industries. *Id*. The only relationship between IPP and Strike 3 is contractual whereby IPP collects infringement data

STRIKE 3'S OPPOSITION TO MOTION TO COMPEL
PRODUCTION OF SOFTWARE OR EXCLUDE EXPERT AND
LAY WITNESS TESTIMONY - (2:17-CV-01731-TSZ) - 4

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 9854
(206) 624-3600

171719\00002\93424769.v2

for Strike 3 that Strike 3 uses to protect its copyrighted works. *Id.* at 3, Ex. A. Nowhere in its contract with IPP does Strike 3 obtain the right to disclose, produce, or use IPP's object code, source code, build files, or any other sensitive proprietary data. *Id*. at 5. Even Strike 3's experts who have tested IPP's system were never given access to the materials Defendant seeks.[2] *Id.* Defendant's argument is the equivalent of Plaintiff alleging that it conducted a Google search of Defendant's name and found certain information, and Defendant demanding that Plaintiff release Google's source code. This request is equally improper.

### B.     Defendant Should Be Required To Subpoena The Records From IPP.

"When documents are sought from a nonparty, the usual method of compelling production is via a subpoena under Fed.R.Civ.P. 45." *Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir. 2006). Indeed, when the documents are not within the control of a party, "the subpoena duces tecum is the *only way* to compel a nonparty to produce documents or other materials." *Id*.

Because Defendant has failed here to meet his burden of establishing that Strike 3 has control of IPP's proprietary system and software, *supra*, Defendant must subpoena IPP for these materials. When the parties conducted a meet and confer on March 7, 2019, Defendant's counsel suggested that Strike 3's counsel ask IPP to voluntarily produce the information. Bandlow Decl., at ¶ 3. Strike 3's counsel said he would inquire. *Id*. Then, without ever confirming IPP would voluntarily produce its software or asking if Strike 3's counsel was authorized to accept service of a lawfully issued subpoena to IPP, Defendant and his counsel simply fired off this Motion without warning. *Id*. Had Defendant's counsel diligently asked, they would have been told that Plaintiff's counsel would accept service of such a subpoena, which would avoid the burden and expense of having to navigate through the Hague Convention. *Id*. However, in the month

---

[2] *St. Jude Med. S.C., Inc. v. Janssen-Counotte*, 104 F. Supp. 3d 1150, 1168 (D. Or. 2015) is also distinguishable. Dkt. # 94 at p. 10. In that case, the plaintiff sought to enforce a third-party subpoena, and the court compelled the third party to produce records held by a European company that was indisputably within the corporate umbrella of the third party. *St. Jude Med. S.C., Inc.*, *supra* at 1157. Conversely, Defendant seeks to compel Strike 3, a party to this action, to produce the records held by a third-party company that is completely independent of Strike 3 and not affiliated whatsoever with Strike 3 or any parent or subsidiary of Strike 3.

STRIKE 3'S OPPOSITION TO MOTION TO COMPEL
PRODUCTION OF SOFTWARE OR EXCLUDE EXPERT AND
LAY WITNESS TESTIMONY - (2:17-CV-01731-TSZ) - 5

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 9854
(206) 624-3600

171719\00002\93424769.v2

between the parties' meet and confer and the filing of Defendant's motion, Defendant inexplicably failed to serve Strike 3's counsel with a subpoena for IPP which could have rendered this whole issue moot. *Id.* at ¶ 4. As Defendant concedes, IPP has produced this data when duly subpoenaed in other cases, so Defendant's choice not to subpoena IPP in this instance is a way to burden Strike 3 and the Court with unnecessary motion practice.[3] A party's self-imposed harm "suggests a different motivation is at work." *Malibu Media, LLC v. Harrison*, 2014 WL 5598582, at *8 (S.D. Ind. 2014). Indeed, here, "Defendant's purpose [is] to precipitate a non-existent dispute in order to fabricate a basis to seek to exclude [Strike 3's expert] testimony. Such purpose is improper and borders on sanctionable conduct itself." *Id.* at *10.

### C. The Court Should Not Exclude Strike 3's Experts.

"Under *Daubert*, the district judge is a gatekeeper, not a fact finder." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010). Thus, "[w]hen an expert meets the threshold established by [Fed. R. Evid.] 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony." *Id.* at 565. "For scientific opinion, the court must assess the reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance, but the inquiry is a flexible one." *Id.* at 564. "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id.*; *see also Malibu Media, LLC*, *supra* at *3. (recognizing "total exclusion of an expert's testimony is an extreme sanction.").

Defendant seeks to exclude the portions of Stephen Bunting's and Patrick Paige's reports that "relate to or reference the accuracy of [IPP's] software because the reliability of the software has not been established." Dkt. # 94 at p. 11. Since both reports concern the reliability of IPP's software insofar as it can accurately track an IP address infringing Strike 3's works via the

---

[3] In these other actions, Strike 3's counsel routinely accepted service of subpoenas on IPP's behalf, and IPP would produce its proprietary data accordingly. Kennedy Decl., ¶ 6. IPP requires a subpoena so it can make its software available for inspection on its own terms, thereby allowing IPP to ensure its trade secrets and proprietary data are adequately protected. *Id.*

STRIKE 3'S OPPOSITION TO MOTION TO COMPEL
PRODUCTION OF SOFTWARE OR EXCLUDE EXPERT AND
LAY WITNESS TESTIMONY - (2:17-CV-01731-TSZ) - 6

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 9854
(206) 624-3600

171719\00002\93424769.v2

BitTorrent Network, Defendant actually requests the Court completely exclude both experts—an extreme request indeed. Defendant's request demonstrates a misunderstanding of *Daubert* and the work Mr. Bunting and Mr. Paige performed for this case.

Neither Mr. Bunting nor Mr. Paige assumed the reliability of IPP's software or generated opinions based on this assumption. To the contrary, their purpose was to evaluate the accuracy of IPP's system by designing and conducting scientific tests that would help determine its reliability. Based on these tests, and not the system itself nor any source code, object code, software licenses, build files or other proprietary information of IPP, Mr. Bunting and Mr. Paige concluded that the system is reliable, *i.e.*, they did their own work independent of IPP. If Defendant disagrees, he is welcome to retain his own expert to test IPP's system with the same data and resources Mr. Bunting and Mr. Paige were afforded, which he apparently has with Dr. Toth. However, Defendant may not exclude the opinions of Strike 3's experts solely because they reached a result with which Defendant disagrees. Nor can Defendant exclude Strike 3's experts because the source code, build files, and other proprietary components of the software they tested has not been made available. *See U.S. v. Chiaradio*, 684 F.3d 265, 277-78 (1st Cir. 2012) (affirming the admission of expert testimony supporting the reliability of FBI's peer-to-peer software when expert's test "sufficiently evinced the reliability of [the software]" even though the software was not peer-reviewed, was largely untested and the source code was kept secret).[4]

Moreover, Defendant fails to state any basis for why Mr. Bunting's or Mr. Paige's tests are flawed in either research, method, or data. Defendant fails to even discuss any factors which

---

[4] Defendant claims that in *U.S. v. Gonzales*, 2019 WL 669813 (D. Ariz. 2019), the court "compel[ed] production of forensic software used to track BitTorrent activity when defendant's expert called into question the prosecution's version of events." Dkt. # 94 at p. 9. Defendant is mistaken. The court in *Gonzales* did not require the discovery of forensic software but rather conditioned it on the defendant demonstrating that production of the software would aid in his defense, which he failed to do. *Gonzales*, *supra* at *9. Defendant here is in the same boat. His expert already analyzed IPP's software and concluded that it is correct approximately 89% of the time. Dkt. # 94 at p. 1. Thus, Dr. Toth's conclusion does not call into question the reliability of IPP's software, and producing the source code to software that Defendant's own expert already concluded to be reliable will do nothing to advance Defendant's case.

STRIKE 3'S OPPOSITION TO MOTION TO COMPEL
PRODUCTION OF SOFTWARE OR EXCLUDE EXPERT AND
LAY WITNESS TESTIMONY - (2:17-CV-01731-TSZ) - 7

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 9854
(206) 624-3600

171719\00002\93424769.v2

may result in the tests producing a high error rate, or that the methods used to conduct the tests are not generally accepted within the scientific community. Further, Defendant does nothing to debunk either expert's extensive experience and qualifications. Instead, Defendant creates a another strawman argument attacking the credibility of Benjamin Perino who is not an expert in this case but rather the developer of software similar to that of IPP's which Mr. Bunting tested for another case using Mr. Bunting's own scientific methods. Dkt. # 94 at p. 6; Dkt. # 95 at p. 115, ¶ 17. Mr. Perino's qualifications, or lack thereof, are irrelevant to the issue of whether Mr. Bunting should be excluded. Mr. Bunting's extensive experience and qualifications speak for themselves, and Defendant does not present a shred of evidence that indicates Mr. Bunting's examination process is defective or otherwise unreliable to warrant the "extreme sanction" of total exclusion under *Daubert*. *Malibu Media, LLC*, *supra* at *3.

**D.    The Court Should Not Exclude Strike 3's Lay Witnesses.**

"If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

   *i.    Susan Stalzer*

Ms. Stalzer's role in this case was very simple: to view each of the motion pictures that IPP observed Defendant's IP address downloading via the BitTorrent Network, compare them with Strike 3's copyrighted works, and determine if the movies are identical, strikingly similar, or substantially similar to each other. *See* Dkt. # 4-5, ¶¶ 7-10. This process was repeated for each copyrighted movie at issue in this case. Susan Stalzer's testimony was not based on scientific, technical or other specialized knowledge within the scope of "expert testimony" as listed in Fed. R. Evid. 702. The only qualifications she needed was a functioning brain and

STRIKE 3'S OPPOSITION TO MOTION TO COMPEL
PRODUCTION OF SOFTWARE OR EXCLUDE EXPERT AND
LAY WITNESS TESTIMONY - (2:17-CV-01731-TSZ) - 8

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 9854
(206) 624-3600

171719\00002\93424769.v2

eyeballs. Moreover, Ms. Stalzer directly participated in this process and her conclusions were rationally based on her perception. Her testimony that the downloaded movies were identical, strikingly similar, or substantially similar to the copyrighted works is not based on the reliability of IPP's software. It is based on her field of vision and own cognition. None of the grounds Defendant presents warrant excluding her testimony.

### ii. John Pasquale

Similarly to Ms. Stalzer's testimony, Mr. Pasquale is merely testifying to something he perceived. After viewing the contents of one of the PCAPs using the program Wireshark, Mr. Pasquale declared "I was able to confirm that IPP recorded the transaction with 73.225.38.130 at 09/05/2017 10:40:33." Dkt. # 4-4, ¶¶ 8-9. Wireshark is a free, public, and open source software that anyone can download and use to analyze data traveling across a network. Comprehensive tutorials such as this one, https://www.lifewire.com/wireshark-tutorial-4143298, are available across the Internet for any member of the public to consume. No specialized knowledge, training, or experience is necessary. Further, the reliability of Wireshark, which is what Mr. Pasquale used to conduct his examination of IPP's PCAP, is not in dispute in this case. Accordingly, there are no grounds that warrant excluding Mr. Pasquale's testimony.

### iii. Tobias Fieser

Mr. Fieser declares: (1) he reviewed IPP's forensic activity records; (2) he determined that IPP's forensic servers connected to an electronic device using Defendant's IP address; (3) this address was documented distributing to IPP's servers multiple pieces of Strike 3's copyrighted movies; (4) each transaction was recorded in a PCAP; (5) IPP's software analyzed each piece collected in the PCAP and verified that reassembling the pieces results in a fully playable digital movie; and (6) IPP's software is unable to distribute content. Dkt. # 4-3, ¶¶ 7-11. Defendant claims this constitutes expert testimony. As flattering as such a characterization may be to Mr. Fieser, Defendant's compliment overlooks the fact that "simply because a lay

STRIKE 3'S OPPOSITION TO MOTION TO COMPEL
PRODUCTION OF SOFTWARE OR EXCLUDE EXPERT AND
LAY WITNESS TESTIMONY - (2:17-CV-01731-TSZ) - 9

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 9854
(206) 624-3600

171719\00002\93424769.v2

witness testifies to opinions drawn from [his] work experience [does not mean that he is] necessarily offering expert testimony if the opinion is 'rationally based on the witness's perception.'" *Pac. Coast Fed'n of Fishermen's Ass'ns v. Murillo*, 2016 WL 6648731, at *2 (E.D. Cal. 2016) (quoting Fed. R. Evid. 701).  Simply put, "[s]uch opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business." *Hynix Semiconductor Inc. v. Rambus Inc.*, 2008 WL 504098, at *3 (N.D. Cal. 2008) (quoting Fed. R. Evid. 702, Advisory Committee Notes 2000).

Here, all of Mr. Fieser's testimony is based on knowledge he obtained by virtue of his position at IPP and his work "overseeing, analyzing, and reviewing the results of this investigation."  Dkt. # 4-3, ¶ 6.  Moreover, Mr. Fieser's testimony does not depend on the reliability of IPP's software.  He makes no claims as to whether Defendant was actually using his IP address during the period of infringing or whether it was spoofed or otherwise compromised.  There are no grounds upon which Mr. Fieser's testimony should be excluded.  And whatever contradiction Defendant perceives Mr. Fieser made with respect to the assembly of the pieces collected in the PCAP (Dkt. #94 at p. 7), this is most appropriately addressed by cross-examination and rebuttal, not outright exclusion.

### E. The Court Should Sanction Defendant And His Counsel For Their Flagrant Abuse Of The Discovery Process.

Fed. R. Civ. P. 37(a)(5)(B) instructs that a court must require the movant, the movant's counsel, or both to "pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees" unless the court finds that the motion was substantially justified or other circumstances make an award of expenses unjust. "Substantial justification exists where the losing party shows that it raised an issue about which reasonable minds could genuinely differ." *Lopez v. Mauisun Comput. Sys., Inc.*, 2016 WL 524659, at *1 (D. Ariz. 2016). "The fact that a party might consider its own position reasonable

STRIKE 3'S OPPOSITION TO MOTION TO COMPEL
PRODUCTION OF SOFTWARE OR EXCLUDE EXPERT AND
LAY WITNESS TESTIMONY - (2:17-CV-01731-TSZ) - 10

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 9854
(206) 624-3600

171719\00002\93424769.v2

does not establish substantial justification." *Kiessling v. Rader*, 2017 WL 1128605, at *1 (D. Nev. 2017); *Barren v. Robinson*, 2014 WL 12623012, at *3 (D. Nev. 2014) (finding motion to compel was not substantially justified when movant failed to adequately meet and confer and leveraged the motion into manufacturing a dispute to drive up the costs of litigation).

This motion should never have been filed. Defendant's counsel was well-aware that Strike 3 in other actions had agreed to accept service of a subpoena on IPP, and upon receipt of the subpoena Strike 3 would encourage IPP to cooperate. Kennedy Decl., ¶ 6. Yet Defendant's counsel never asked if Strike 3 would do so here. Bandlow Decl., ¶¶ 3-4. Instead of asking and then cooperating and issuing a subpoena, which Defendant's counsel had no problem doing in dozens of other cases he has litigated against Strike 3 and where IPP made its software available for inspection, Defendant's counsel stood silent for a month and then fired off this senseless motion to compel. *Id*. Also in this case, Defendant also filed a needless motion to compel the production of documents regarding Strike 3's success as producer of adult films. Dkt. # 96; *Id*. at ¶ 5. A week after the parties' meet and confer, Strike 3 supplemented its production with a couple hundred pages of additional documents reflecting Strike 3's success as a producer to which Defendant's counsel never indicated were insufficient until now.[5] *Id*. Moreover, Defendant caused his son, the principal witness in this case with 24/7 access to Defendant's home and 98 computer devices, to file a frivolous motion for a protective order (Dkt. # 86) prohibiting Strike 3 from deposing Doe Jr. under any circumstance.[6] And who knows what motion Defendant plans to file next.

---

[5] These records are publically available and are of marginal relevance to this case, but Strike 3 provided them as a courtesy and had no reason to believe Defendant's counsel found them to be insufficient until Defendant moved to compel. Bandlow Decl., ¶ 5.

[6] It is no wonder why Defendant seeks to prevent Strike 3 from deposing his son. Defendant revealed in his deposition that he has received multiple notices of illegal downloading which Defendant immediately attributed to his son's use of the Internet, warned him to "cease and desist" from doing so and his son admitted that he was doing this illegal downloading. Bandlow Decl., ¶ 6, Ex. A at 95:16-96:9; 195:24-200:23. Moreover, Defendant further admitted that months after this lawsuit was filed and Defendant knew it alleged illegal downloading and distributing of films, Defendant knowingly allowed the computer his son was using during the period of infringement to be sold,

STRIKE 3'S OPPOSITION TO MOTION TO COMPEL
PRODUCTION OF SOFTWARE OR EXCLUDE EXPERT AND
LAY WITNESS TESTIMONY - (2:17-CV-01731-TSZ) - 11

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 9854
(206) 624-3600

171719\00002\93424769.v2

In sum, Defendant and his counsel have demonstrated a flagrant and continued abuse of the discovery process to harass Strike 3 with needless and costly motion practice.  To stop such practice, Strike 3 requests an award of $1,000, which amounts to the reasonable fees and expenses Strike 3 incurred in opposing Defendant's frivolous motion.

## III. CONCLUSION

For the foregoing reasons, the Court should deny Defendant's motion to compel the production of IPP's software or to exclude Strike 3's expert and lay witness testimony, and award Strike 3 $1,000—the attorneys' fees it incurred to oppose Defendant's motion.

DATED this 15th day of April, 2019.

FOX ROTHSCHILD LLP

*s/ Lincoln D. Bandlow*
Bryan J. Case, WSBA #41781
Lincoln D. Bandlow, *admitted Pro Hac Vice*
(CSBA #170449)

*Attorneys for Plaintiff*

---

and Defendant made no effort to preserve any of the data from this computer. *Id*. at 53:10-59:14.  Finally, Defendant admitted that his son's current computer was not produced in discovery or searched. *Id*. at 63:9-65:4.  Bottom line:  Defendant knew his son was a serial infringer of others works, spoiled the evidence of the infringement at issue in this action and refuses to produce the new computer his son uses to this day.  This egregious behavior will soon be the subject of a motion to dismiss the counterclaims with prejudice and to sanction Defendant and his counsel.

STRIKE 3'S OPPOSITION TO MOTION TO COMPEL
PRODUCTION OF SOFTWARE OR EXCLUDE EXPERT AND
LAY WITNESS TESTIMONY - (2:17-CV-01731-TSZ) - 12

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA  9854
(206) 624-3600

171719\00002\93424769.v2

## **CERTIFICATE OF SERVICE**

I hereby certify that I am a secretary at the law firm of Fox Rothschild, LLP in Seattle, WA. I am a U.S. citizen over the age of eighteen years and not a party to the within cause. On the date shown below, I caused to be served a true and correct copy of the foregoing on counsel of records as follows:

| | |
|---|---|
| J. Curtis Edmondson, WSBA #43795<br>399 NE John Olsen Avenue<br>Hillsboro, OR 97124<br>Telephone: (503) 336-3749<br>Email: jcedmondson@edmolaw.com | ☑ Via CM/ECF<br>   Via U.S. Mail<br>   Via Messenger Delivery<br>   Via Overnight Courier<br>   Via Facsimile |
| Adrienne McEntee, WSBA #34061<br>Beth E. Terrell, WSBA #26759<br>TERRELL MARSHALL LAW GROUP PLLC<br>936 N 34th Street, Ste. 300<br>Seattle, WA 98103-8869<br>Ph: 206-816-6603<br>Fax: 206-350-3528<br>Email: amcentee@terrellmarshall.com;<br>bterrell@terrellmarshall.com | ☑ Via CM/ECF<br>   Via U.S. Mail<br>   Via Messenger Delivery<br>   Via Overnight Courier<br>   Via Facsimile |

DATED this 15th day of April, 2019.

_Courtney R. Tracy_ (signature)
Courtney R. Tracy

STRIKE 3'S OPPOSITION TO MOTION TO COMPEL
PRODUCTION OF SOFTWARE OR EXCLUDE EXPERT AND
LAY WITNESS TESTIMONY - (2:17-CV-01731-TSZ) - 13

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 9854
(206) 624-3600

171719\00002\93424769.v2