The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>JOHN DOE, subscriber assigned IP address 73.225.38.130,<br><br>Defendant. | Case No. 2:17-cv-01731-TSZ<br><br>**STRIKE 3'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS REGARDING STRIKE 3 HOLDINGS' SUCCESS AS A PRODUCER OF PORNOGRAPHY**<br><br>**NOTE ON MOTION CALENDAR:**<br><br>**APRIL 19, 2019** |

## I.   INTRODUCTION

Defendant's motion manufactures a dispute to unduly burden Strike 3 Holdings, LLC ("Strike 3") and this Court with yet another unnecessary and unwarranted discovery battle. Defendant began this charade by demanding records that broadly pertain to Strike 3's business and have nothing to do with the case at hand. Notwithstanding that, and as a courtesy, Strike 3 supplemented its production on March 14, 2019—one week after the parties' meet and confer— to include over 200 pages of additional materials which directly pertain to Strike 3's development, the notoriety of its works, and its success in the industry. Three weeks later and without ever indicating to Strike 3 that this supplemental production was insufficient, Defendant

PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL PRODUCTION OF DOCUMENTS REGARDING STRIKE 3'S SUCCESS AS A PRODUCER OF PORNOGRAPHY (2:17-CV-01731-TSZ) - 1

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

171719\00002\93524091.v1

filed this motion and disingenuously claims that Strike 3 has failed to produce "a single responsive document in response to Requests for Production 16, 19, 20, 21, and 22." Dkt. # 96 at 7. This is 100% false! If Defendant found Strike 3's supplemental production to be insufficient, his counsel should had initiated further meet and confer efforts to resolve these concerns instead of simply firing off this motion without warning and (not so coincidentally) on the same day Defendant's motion to compel the production of IPP's software was filed (Dkt. #94), which is another unnecessary and frivolous motion. Plus, Defendant's motion proved to be premature because much of the data that Defendant seeks to compel about Strike 3's business, industry success, and struggles with piracy has already been provided by Greg Lansky and Jessica Fernandez in their depositions on April 11 and 12, respectively.

In any event, Defendant's requests for materials evidencing Strike 3's subscriber base, licensees, content rankings, and struggles with piracy are vastly overbroad and not proportional to the needs of this case. The majority of these records are also publically available and Strike 3 has no obligation to do Defendant's research for him. Further, Defendant's primary purpose in seeking these records is to demonstrate that Strike 3 should have issued a notice under the Digital Millennium Copyright Act ("DMCA") to Defendant and that Strike 3's failure to do so somehow constitutes an abuse of process. Dkt. # 96 at 5-6. Not only is this theory wrong, but Strike 3 also discovered after Defendant filed this motion that such a false theory even if true does not even apply to this case. Defendant admitted in his deposition that he did in fact receive DMCA notices in the past but such notices did nothing to curb infringement.

The Court should deny Defendant's motion on the merits or, alternatively, on procedural grounds in light of Defendant's counsel's insufficient meet and confer efforts. Further, an award of attorneys' fees to Plaintiff pursuant to Fed. R. Civ. P. 37(a)(5) is warranted.

PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL
PRODUCTION OF DOCUMENTS REGARDING STRIKE 3'S
SUCCESS AS A PRODUCER OF PORNOGRAPHY
(2:17-CV-01731-TSZ) - 2

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

171719\00002\93524091.v1

## II. AUTHORITY & ARGUMENT

### A. Defendant Fabricated This Dispute And Failed To Adequately Meet And Confer In Good Faith.

Defendant requested production of a wide array of documents related to Strike 3's websites, downstream licensees, struggles with piracy, and use of the DMCA procedure. Strike 3 objected to several of these requests on the grounds that they were irrelevant and disproportional to Defendant's counterclaims, but still produced hundreds of pages of documents and files to Defendant. Declaration of Lincoln Bandlow ("Bandlow Decl.") ¶ 3. After the initial production, the parties met and conferred on March 7, 2019, and Defendant's counsel requested Strike 3 produce additional materials. *Id*. Strike 3 complied and on March 14, 2019 provided a supplemental production consisting of over 200 additional pages of records. *Id*. Thereafter, Defendant's counsel never raised any concerns regarding the adequacy of Strike 3's supplemental production, did not initiate any further meet and confer efforts, and did not ask Strike 3 to produce anything else. *Id*. at ¶ 4. Then, approximately three weeks later and without warning, Defendant filed this motion and represents that Strike 3 refused to produce "a single responsive document in response to Requests 16, 19, 20, 21, 22." *Id*.; Dkt. # 96 at 7.

That assertion is completely false. Strike 3's supplemental production consisted of hundreds of pages of articles detailing Strike 3's formation and industry success as well as the success of Strike 3's works, subscriber base, viewership, business model, and ongoing struggle with piracy. Bandlow Decl., ¶ 3. Defendant's motion is an obvious attempt to mischaracterize Strike 3's discovery efforts and saddle Strike 3 and this Court with yet another unnecessary discovery fight. This is hardly the "good faith effort" this Court requires from counsel in resolving discovery disputes without court action. *See* Local Civil Rule ("LCR") 37(a)(1).[1]

---

[1] Defendant's motion is also premature. Bandlow Decl., ¶ 6. During the week after Defendant filed his motion, Defendant deposed Strike 3's Chief Creative Officer Greg Lansky and, as a 30(b)(6) witness on dozens of categories of information, in-house counsel Jessica Fernandez, and they both provided a wealth of information regarding Strike 3's viewership, subscriber base, licensees, DVD ratings, and struggles with infringement. *Id*. If after reviewing

PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL
PRODUCTION OF DOCUMENTS REGARDING STRIKE 3'S
SUCCESS AS A PRODUCER OF PORNOGRAPHY
(2:17-CV-01731-TSZ) - 3

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

171719\00002\93524091.v1

### B. The DMCA Is Irrelevant To This Action, And Strike 3 Has Not Misrepresented Or Omitted Facts About It.

Defendant fixates on the purported relevance of the DMCA notice and takedown procedure to this action, and claims the records it seeks will expose that Strike 3 bypassed the DMCA and thereby (supposedly) abused the process. Dkt. # 96 at 2-6. This is a gross mischaracterization of the case. Strike 3 simply states that DMCA notices are ineffective, as they were in *this case*. Defendant admitted in his deposition that he received at least two DMCA notices from his ISP, Comcast, about his son's illegal downloading of music and a television show, yet the infringing behavior in Defendant's household continued. Bandlow Decl., ¶ 5, Ex. A at 95:16-96:9, 195:24-200:23.

Putting this reality aside, Defendant's arguments are untenable and contradicted by law and the record. Defendant's claims here amount to nothing more than advice as to how he thinks Strike 3 should supposedly protect its copyrights. But that is not actionable let alone a basis to order discovery. "John Doe identifies no authority for his claim that a copyright holder abuses its copyrights by pursuing only the most easily identifiable infringers, *viz.*, those whose IP addresses are traceable by their download and redistribution activities on BitTorrent." *Malibu Media, LLC v. Doe*, 2018 WL 5841866, at *10 (M.D. Pa. 2018). In other words, simply because Defendant disagrees with Strike 3's approach to protecting its copyrights does not mean Strike 3 abused the process. This should go without saying, but filing a lawsuit for copyright infringement upon having a good faith basis to believe that a defendant infringed your copyrights or enabled another person under his roof to infringe your copyrights is entirely lawful and proper.

---

these depositions and Strike 3's supplemental production Defendant still found the discovery to be insufficient, that would have perhaps been the time to approach Strike 3's counsel for additional records and engage in further meet and confer efforts. But Defendant's counsel bypassed this process and marched straight into court, which is exactly what LCR 37(a)(1) prohibits. Of course, this unprofessionalism is not surprising as Defendant's counsel has engaged in similar behavior before. *Strike 3 Holdings, LLC v. Doe*, 2019 WL 935390, at *1 (E.D. Cal. 2019) (denying Doe's motion to quash and finding Doe's counsel filed motion before court could schedule the informal conference Defendant's counsel requested with Strike 3).

PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL
PRODUCTION OF DOCUMENTS REGARDING STRIKE 3'S
SUCCESS AS A PRODUCER OF PORNOGRAPHY
(2:17-CV-01731-TSZ) - 4

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

171719\00002\93524091.v1

Indeed, the DMCA does not diminish the rights and remedies generally available under the Copyright Act. Copyright infringement litigation predates the DMCA by centuries, and Title II of the DMCA simply "augments the rights of copyright owners," *Capitol Records, LLC v. Vimeo, LLC*, 826 F.3d 78, 83 (2d Cir. 2016); *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 942 (9th Cir. 2010). The DMCA does not supplant the fundamental tenant of the Copyright Act that "[a]nyone who violates *any* of the exclusive rights of the copyright owner… is an infringer of the copyright… [and the] owner of an exclusive right under a copyright is entitled… to institute an action for any infringement of that particular right committed while he or she is the owner of it." *See* 17 U.S.C. §§ 501(a), (b). To be clear: this action involves the allegation that Defendant went on the Internet using the services of his ISP to download and distribute Strike 3's movies. That activity is, and always has been, an act of copyright infringement by Defendant and is, and always has been, immediately actionable. Before the advent of the DMCA, such activity could also have immediately given rise to a claim ***against the ISP*** under a secondary liability theory of copyright infringement. The DMCA, however, put in place certain safe harbors for ISPs which, under certain circumstances, give an ISP protection against such claims as long as certain notice and takedown procedures are in place. Thus, **the DMCA *has absolutely nothing to do with individual downloader/distributors such as Defendant; it only relates to potential claims against ISPs*.** Since there is no claim against an ISP in this case, what Strike 3 did or did not do under Section 512 of the DMCA with respect to this litigation is entirely immaterial. *See Malibu Media, LLC v. Does 1*, 2013 WL 1702549, at *7 (E.D. Pa. 2013) (striking an infringer's affirmative defense under the DMCA because "the court is aware of no case where Section 512's safe harbor provision was extended to a private individual"); *see also Ventura Content Ltd. v. Motherless Inc.*, 2013 WL 12122569, at *3 (C.D. Cal. 2013) (finding plaintiff's decision to bypass the DMCA and instead to sue Defendants for copyright infringement ***"does not suggest bad faith."***) *Id.* (emphasis added).

PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL
PRODUCTION OF DOCUMENTS REGARDING STRIKE 3'S
SUCCESS AS A PRODUCER OF PORNOGRAPHY
(2:17-CV-01731-TSZ) - 5

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

171719\00002\93524091.v1

In sum, Defendant's assertion that the DMCA is the better route to combating online piracy rings hollow and fails to convert any of his extraneous production requests into relevant ones.

### 1. Mr. Lansky's Statements Regarding The DMCA Are Irrelevant To Defendant's Abuse Of Process Counterclaim.

Mr. Lansky's declaration merely provides some basic facts about Strike 3 and some background on its history and problems with infringement. His mention of the DMCA is transitory. Mr. Lansky merely states that "[Strike 3] send[s] on average 50,000 DMCA notices a month but it does virtually nothing to stop the rampant copyright infringement." Dkt. # 4-2 at p. 5. This simply explains that Strike 3 has tried less adversarial methods of enforcement before suing individual infringers with little to no success. Again, to be clear, a DMCA notice simply says "someone is infringing my content so please, ISP, make them stop." It is a notice that *infringement has already happened*, it is not a roadblock to going after the infringer that prompted the DMCA notice in the first place. If it were, Congress would revise the Copyright Act and say so.

More perplexing here is Defendant's claim that "Mr. Lansky's declaration contain[s] significant omissions and inaccuracies…". Dkt. # 96 at p. 8–9. Such a serious charge should warrant substantial support. But all Defendant submits is "despite Mr. Lansky's statement that Strike 3 sends 50,000 notices a month, Strike 3 never sent one to Comcast regarding Doe's alleged infringement." *Id.* at 9. This is not a misstatement, nor is it a material omission, nor is it anything resembling evidence that would push the needle towards an abuse of process. *See Liguori v. Hansen*, 752 F. Appx. 389, 394 (9th Cir. 2018) (noting that "something more than its *post hoc* disagreement with [a party]'s litigation strategy" is required to find some bad act warranting sanctionable conduct or a reduced attorney's fees award).

Defendant is essentially attempting to fashion a new element of copyright infringement, "exhaustion by notice," as a basis to obtain unwarranted discovery. But, "[t]he Copyright Act is

PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL
PRODUCTION OF DOCUMENTS REGARDING STRIKE 3'S
SUCCESS AS A PRODUCER OF PORNOGRAPHY
(2:17-CV-01731-TSZ) - 6

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

171719\00002\93524091.v1

a strict liability regime under which *any infringer*, whether innocent or intentional, is liable." *Blue Nile, Inc. v. Ideal Diamond Sols., Inc.*, 2011 WL 3360664, at *2 (W.D. Wash. 2011) (citation omitted) (emphasis added). Thus, whether Strike 3 issued a DMCA notice to Comcast regarding the infringement is irrelevant to the question of whether an abuse of process occurred.

### C. Defendant's "Initial Seeder" Theory Falls Flat.

Defendant cites to Mr. Lansky's statement that Strike 3's subscriber base is so large that it is unable to determine the initial seeder with whom the infringement originates. Dkt. # 96 at 9. However, the existing claims in this case do not concern who the "initial seeder" was, who actually seeded to Defendant, or anything related to seeding beyond infringement of Strike 3's works. Mr. Lansky merely notes that Strike 3 is unable to identify the initial seeder, in part, because its vast subscriber base (a group that Strike 3 knows has access to Strike 3's motion pictures) is too large to narrow down to a few suspects. *See* Dkt. 4-2, at ¶ 23.

Moreover, it is entirely possible that the original seeder is no longer part of the swarm. "As each peer receives a new piece of the file, the peer also immediately becomes a source of that piece for other peers, relieving the original seeder from having to send that piece to every peer requesting a copy." *Glacier Films (USA), Inc. v. Does 1-29*, 2015 WL 8989217, at *3 (N.D. Ill. 2015); *see also 808 Holdings, LLC v. Collective of Dec. 30, 2011*, 2012 WL 12882142, at *2 (S.D. Cal. 2012) (finding "even if the original seeder leaves the swarm, the media file can continue to be downloaded by old and new members").

Like Defendant's DMCA argument, this initial seeder argument is a red herring. There is no difference in copyright law between the liability of an initial seeder and a downstream peer that infringed a work. *Patrick Collins, Inc. v. John Does 1-13*, 2013 WL 3466833, at *4 (D.N.J. 2013) (finding "file sharing of copyrighted work is infringement").

PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL
PRODUCTION OF DOCUMENTS REGARDING STRIKE 3'S
SUCCESS AS A PRODUCER OF PORNOGRAPHY
(2:17-CV-01731-TSZ) - 7

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

171719\00002\93524091.v1

**D.  Since Defendant Argues Irrelevant Matters, Strike 3's Objections Were Proper.**

Most of Defendant's requests for production spring from Paragraph 14 of Strike 3's First Amended Complaint under the heading "Plaintiff's Award-Winning Copyrights." *See* Dkt. # 43, at p. 3. But these allegations provide background facts, are inconsequential to Defendant's counterclaims, and are not a hook to compel discovery. *See Lynch v. Southhampton Animal Shelter Found. Inc.*, 248 F.R.D. 55, 62-63 (E.D.N.Y. 2011) (recognizing that "not every allegation in the complaint will ultimately be relevant or admissible."). Nonetheless, Strike 3 did produce sufficient documents in response to many of Defendant's irrelevant requests after the parties' meet and confer. Bandlow Decl., ¶ 3. Now, Defendant wants even more irrelevant discovery and did not confer with Strike 3 to produce additional materials prior filing this motion. *Id.* at ¶ 4.

The irrelevant discovery Defendant seeks can be grouped into three categories: (1) Strike 3's website traffic and subscriber base (RFP Nos. 16 and 19); (2) Strike 3's licensees and sale records (RFP Nos. 20 and 21); and (3) Strike 3's ongoing struggle with piracy (RFP No. 22).

1.  <u>Strike 3's Website Traffic And Subscriber Base Are Irrelevant.</u>

Defendant seeks production of documents illustrating Strike 3's website traffic and enormous subscriber base because "Strike 3's subscriber base and its size . . . are relevant to Strike 3's allegation that it cannot identify the person who has pirated Strike 3 films….". Dkt. # 96 at p. 9.[2] As discussed above, this misreads the record. The entire basis to Strike 3's claim that it cannot identify infringers using the BitTorrent network—whether they are the initial seeder or a downstream infringer—is because BitTorrent users are anonymous. *See generally* Dkt. # 4.

---

[2] Defendant makes the additional outrageous claim that its discovery is reasonable because "one prior company" seeded their works to the BitTorrent network. *See* Dkt. 86, at 9; *see also id.* at 3 (citing *Ingenuity 13 LLC v. John Doe*, No. CV 12-8333-ODW JCX, 2013 WL 1898633, at *1 (C.D. Cal. May 6, 2013)). Defendant's attempt to conflate Strike 3 with unrelated parties and their conduct is wholly inappropriate and flat wrong. Defendant is spinning allegations and relevancy out of whole cloth.

PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL
PRODUCTION OF DOCUMENTS REGARDING STRIKE 3'S
SUCCESS AS A PRODUCER OF PORNOGRAPHY
(2:17-CV-01731-TSZ) - 8

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

171719\00002\93524091.v1

The size of Strike 3's subscription base or visitors is irrelevant to Strike 3's ability or inability to identify the infringer.  Infringers using BitTorrent protocol to download and distribute works are rendered anonymous by BitTorrent technology, and are only identifiable by their IP address.  If Strike 3 had just 10 subscribers, or 1,000, or 100,000, it still would not be able to identify the infringer without requesting a court order to subpoena the appropriate ISP. Accordingly, the scale of Strike 3's viewership and subscriber base is irrelevant to Defendant's counterclaim for abuse of process.

### 2. Strike 3's Licensee And Business Records Are Irrelevant And Grossly Disproportional To The Needs Of This Case.

Defendant overreaches with his request for confidential business records involving Strike 3's licensees and sales.  One would think that a request for such sensitive documents, the release of which could put Strike 3 at a competitive disadvantage, would engender a strong need.  Not so.  Defendant's argues that "information regarding the broadcasters to whom Strike 3 licensed its movies is relevant to Strike 3's claim that lawsuits are the only efficient way to stop piracy." Dkt. # 96 at p. 9.  This would "provide Doe an opportunity to determine whether Strike 3's licensees have experienced the problems Strike 3 argues it has encountered." *Id.*  This convoluted line of argument is at odds with itself.

First, the request is patently overbroad as written and now as explained.  Contrary to what Defendant claims, these requests do not seek anything related to its licensees' experience with infringement.  Request No. 20 seeks the names of Strike 3's licensees, and Request No. 21 seeks business records related to sales.  Neither of these categories of documents have anything to do with these parties' experience with infringement of Strike 3's works.  It is not even clear what Defendant means by "experienced" here.

Second, if Defendant really wanted to discover Strike 3's licensees' experience with the piracy of Strike 3's works, it could certainly achieve this through a less intrusive request, one that did not call for confidential business records.  For instance, a non-party subpoena could

PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL
PRODUCTION OF DOCUMENTS REGARDING STRIKE 3'S
SUCCESS AS A PRODUCER OF PORNOGRAPHY
(2:17-CV-01731-TSZ) - 9

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

171719\00002\93524091.v1

work. According to Defendant's Second Amended Counterclaims, he or his counsel is familiar with Strike 3's DVDs and knows enough about them to aver that they do contain a "'copyright warning notice' at the beginning of the films…". *See* Dkt. # 64 at ¶ 24. Certainly then, Defendant can ascertain the identity of some of Strike 3's licensees from its DVDs and then subpoena them instead of compelling production of Strike 3's business documents.

Lastly, even if Defendant had appropriately narrowed its request to something proportional, the licensees' personal experience with piracy of Strike 3's work is beyond the scope of this litigation. It is not clear what information they could provide in support of a declaration for non-infringement or abuse of process claim, and Defendant's theory of relevance is utterly incomprehensible.

### 3. Strike 3's Struggle With Piracy.

Defendant offers no arguments for why documents showing that Strike 3's works are heavily pirated is either relevant, reasonable, or proportional to the needs of this case. *See* Fed. R. Civ. P. 26(b). Rather, Defendant baldy states, "Doe should be able to test Strike 3's claim that its pictures are 'among the most pirated content in the world.'" Dkt. # 96 at p. 9. But why? Defendant has no good answer.

In any event, it is unclear from Defendant's motion what documents, in addition to the ones Strike 3 has already provided and ones already in the public domain, does Defendant seek to compel. Strike 3's struggle with piracy is firmly documented in various articles online, and Strike 3 has already produced some of these articles to Defendant's counsel. Plus, the thousands of lawsuits Strike 3 has filed nationwide to prosecute the infringement of its copyrighted works and curb this piracy is evidence in itself of Strike 3's ongoing battle with infringement. Regardless, this request is not relevant to Defendant's abuse of process counterclaim.

PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL
PRODUCTION OF DOCUMENTS REGARDING STRIKE 3'S
SUCCESS AS A PRODUCER OF PORNOGRAPHY
(2:17-CV-01731-TSZ) - 10

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

171719\00002\93524091.v1

### E. Strike 3 Should Be Awarded Its Costs And Fees.

Unless a motion to compel is "substantially justified," the Court may award the prevailing party reasonable fees and costs incurred in opposing the motion. Fed. R. Civ. P. 37(a)(5)(B). As explained above, Defendant's counsel failed to meet and confer with Strike 3 in good faith, as this Court and the Federal Rules require. Instead, Defendant filed this unnecessary and meritless motion for no other reason than to harass Strike 3 and escalate the costs of this litigation. Defendant and his counsel's abuse of the discovery process should not go unchecked. An award of $1,000, Strike 3's reasonable fees and costs incurred to oppose this motion, is warranted.

### III. CONCLUSION

For the foregoing reasons, Strike 3 respectfully requests that the Court deny Defendant's motion and sanction Defendant and/or his counsel in the amount of $1,000 for their continued abuse of the discovery process.

DATED this 15th day of April, 2019.

FOX ROTHSCHILD LLP

*s/ Lincoln D. Bandlow*
Bryan J. Case, WSBA #41781
Lincoln D. Bandlow, *Admitted Pro Hac Vice*
(CSBA #170449)
PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL
PRODUCTION OF DOCUMENTS REGARDING STRIKE 3'S
SUCCESS AS A PRODUCER OF PORNOGRAPHY
(2:17-CV-01731-TSZ) - 11

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

171719\00002\93524091.v1

# **CERTIFICATE OF SERVICE**

I hereby certify that on April 15, 2019, I electronically filed the foregoing with the Clerk of the Court using the DKT. # system which will send notification of such filing to the following persons:

| | |
|---|---|
| J. Curtis Edmondson, WSBA #43795<br>399 NE John Olsen Avenue<br>Hillsboro, Oregon 97124<br>Telephone: (503) 336-3749<br>Email: jcedmondson@edmolaw.com | ☑ Via CM/ECF<br>   Via U.S. Mail<br>   Via Messenger Delivery<br>   Via Overnight Courier<br>   Via Facsimile |
| Adrienne McEntee, WSBA #34061<br>Beth E. Terrell, WSBA #26759<br>TERRELL MARSHALL LAW GROUP PLLC<br>936 N 34th Street, Ste. 300<br>Seattle, WA 98103-8869<br>Ph: 206-816-6603<br>Fax: 206-350-3528<br>Email: amcentee@terrellmarshall.com;<br>bterrell@terrellmarshall.com | ☑ Via CM/ECF<br>   Via U.S. Mail<br>   Via Messenger Delivery<br>   Via Overnight Courier<br>   Via Facsimile |

DATED this 15th day of April, 2019.

*/s/ Courtney R. Tracy*
Courtney R. Tracy
Legal Administrative Assistant

PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL
PRODUCTION OF DOCUMENTS REGARDING STRIKE 3'S
SUCCESS AS A PRODUCER OF PORNOGRAPHY
(2:17-CV-01731-TSZ) - 12

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

171719\00002\93524091.v1