THE HONORABLE THOMAS S. ZILLY

1
2
3
4
5

U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

6
7

STRIKE 3 HOLDINGS, LLC, a Delaware
corporation,

                    Plaintiff,

    vs.

JOHN DOE, subscriber assigned IP
address 73.225.38.130,

                    Defendant.

NO. 2:17-cv-01731-TSZ

**REPLY IN SUPPORT OF
DEFENDANT'S MOTION TO
COMPEL PRODUCTION OF
DOCUMENTS REGARDING STRIKE
3 HOLDINGS' SUCCESS AS A
PRODUCER OF PORNOGRAPHY**

JOHN DOE subscriber assigned IP
address 73.225.38.130,

                    Counterclaimant,

    vs.

STRIKE 3 HOLDINGS, LLC,

                    Counterdefendant.

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

# I.  REPLY

Doe's good faith efforts to meet and confer are well-documented. The parties' emails tell a straightforward, yet uncommon story in discovery disputes. *See* Declaration of Adrienne D. McEntee ("McEntee Decl."), Exh. A. Doe requested documents necessary to support his counterclaim for abuse of process. *Id.* Strike 3 produced some documents but refused to produce others. *Id.* Counsel for Doe and Strike 3 conferred by phone. *Id.* After the parties spoke, they detailed their positions in writing. *Id.* Those writings evidence the parties' impasse. *Id.* As the civil rules allow, Doe then moved to compel a subset of documents. Now, Strike 3 accuses Doe of wrongdoing, feigning surprise that Doe would file this motion even though Strike 3 was on notice that Doe intended to do just that. Strike 3 has not met its burden of establishing any valid basis for refusing to produce documents in response to Requests for Production 16, 19, 20, 21, and 22. Consequently, Doe requests that the Court grant his motion to compel documents responsive to these requests.

A.  **Strike 3 cannot meet its burden to establish discovery should be disallowed.**

Strike 3 cannot justify its refusal to produce documents in response to Requests for Production 16, 19, and 20, as is its burden. *Bryant v. Ochoa*, 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009) ("[T]he party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections"). These requests, which ask Strike 3 to produce documents regarding allegations (1) that it licenses its motion pictures to popular broadcasters, (2) it has secured subscriptions to websites that are one of the highest of any adult-content sites in the world, (3) it has more than 20 million unique visitors to its websites each month, (4) its DVDs are the number one selling adult DVDs in the United States, and (5) its motion pictures are among the most pirated in the world, are all relevant to Doe's abuse of process counterclaim.

Documents sought in Request 20 regarding Strike 3's licenses are relevant to Doe's abuse of process counterclaim for several reasons, including the example Doe provided in his

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO
COMPEL PRODUCTION OF DOCUMENTS REGARDING
STRIKE 3 HOLDINGS' SUCCESS AS A PRODUCER OF
PORNOGRAPHY - 1
CASE NO. 2:17-cv-01731-TSZ

opening brief—to determine whether Strike 3's licensees have experienced the problems Strike 3 argues it has encountered. This is a valid question given the stark contrast between the extraordinarily high number of cases Strike 3 has filed since 2017 (over 3,000) and the number of cases, for example, Disney Enterprises, Inc. has filed (just 2). McEntee Decl. ¶¶ 14-15. And while Doe would not expect Strike 3 to have documents related to its licensees' experiences, Strike 3 certainly knows their identities. Strike 3 argues that a less intrusive method for Doe to obtain this information is through non-party subpoenas. Third party subpoenas are not a less intrusive means of discovery. *See In re NCAA Student–Athlete Name & Likeness Licensing Lit.*, 2012 WL 4846522, at *2 (N.D. Cal. Aug. 7, 2012) ("Rule 45 imposes a mandatory responsibility on th[e] court to protect nonparties from unduly burdensome discovery."). Regardless, Doe cannot send subpoenas to unidentified companies. While Doe may learn the identities of a few of Strike 3's licensees from Strike 3's DVDs, Mr. Lansky testified there are thousands. McEntee Decl. ¶ 13. Identifying information can only come from Strike 3.

Documentation regarding Strike 3's licenses is also relevant to rebut Strike 3's allegation that DMCA notices are not effective to deter piracy, and particularly so in the context of Strike 3's deliberate decision to sue and seek early discovery regarding defendants Strike 3 knows may not be responsible for infringement. According to Strike 3, the only effective way to do so is by filing thousands of lawsuits against Does, who Strike 3 admits may not be infringers. McEntee Decl., Exh. B at 186:24-187:25 ("it's not something that we are able to really look at until after we get the defendant's name"). Strike 3's position begs the question: If DMCA notices aren't effective, why does Strike 3 bother sending an average of 50,000 per month?

Strike 3 argues that in focusing on DMCA notices, Doe imposes on Strike 3 an exhaustion requirement that does not exist.[1] Strike 3 misunderstands Doe's argument. Doe

---

[1] Strike 3 also argues that Doe should not be able to discuss Strike 3's failure to send a DMCA notice because Doe received two DMCA notices in 2013 alleging that someone at his IP address downloaded a song, and an episode of the Big Bang Theory. Notices that Doe received four years before this lawsuit ever began regarding raw, explicit, embarrassing pornography have no bearing on the issues in this case.

1  seeks documentation regarding DMCA notices Strike 3 sent to its licensees, and documentation
2  regarding their effectiveness, because they are relevant to whether Strike 3 abused the legal
3  process by suing and seeking discovery regarding people who were not responsible for
4  infringement when other effective means to curb piracy were available. Strike 3 argues this
5  behavior is lawful. Doe, a defendant who did not do what he is accused of, disagrees.

6      Strike 3 also interprets Request 20 narrowly to include only documents sufficient to
7  identify the licensees. But Request 20 is broader, encompassing the licensing agreements,
8  which Doe expects will have information regarding the revenue received from licensing its
9  motion pictures to other companies. Similarly, responsive documents to Requests 16 and 19
10 regarding the number of subscriptions to the Strike 3 brands and the visitors to its web sites,
11 and documents sought in Request 21 regarding Strike 3's DVD sales, should include
12 information regarding the revenue received from Strike 3's subscriptions and from the sale of
13 DVDs. Documents regarding revenue are relevant to Doe's allegation that Strike 3's decision to
14 pursue early discovery through thousands of cases around the country is a money-making
15 scheme unconnected to the pursuit of valid copyright claims.

16     Finally, documents sought in Request 19 regarding Strike 3's subscribers, and Request
17 22 regarding Strike 3's assertion that its content has been pirated repeatedly, are relevant to
18 Strike 3's claim it has tried, but failed, to find the seeder(s) who initiated the infringement.
19 Strike 3 hired to IPP to investigate and capture the IP addresses infringing its films. It stands to
20 reason that Strike 3 also has the ability to compare those IP addresses with the IP addresses of
21 its subscribers but does not do so. McEntee Decl., Exh. B at 160:15-167:17. Like Strike 3's use
22 (or lack of use) of DMCA notices, these documents are relevant to whether Strike 3 abused the
23 legal process by suing and seeking discovery regarding people (like Doe) who Strike 3 knew
24 might not be responsible for infringement when it could have implemented a procedure by
25 which it compared infringing IP addresses with subscribers' IP addresses and notified those
26 subscribers.

27

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO
COMPEL PRODUCTION OF DOCUMENTS REGARDING
STRIKE 3 HOLDINGS' SUCCESS AS A PRODUCER OF
PORNOGRAPHY - 3
CASE NO. 2:17-cv-01731-TSZ

**B.     The documents Strike 3 produced in response to Requests for Production 21 and 22 are incomplete.**

Doe did not have an opportunity to view the 200 pages of public documents Strike 3 promised to produce in response to Requests 21 and 22 before filing his motion. On March 12th Strike 3's counsel emailed they would "shortly" send a link with public articles about Strike 3, and additional evidence about other BitTorrent swarms. McEntee Decl., Exh A. The next day, Doe's counsel notified Strike 3's counsel that "we did not receive a link from Kiteworks. Did you send it? If not, please do so." *Id*. Strike 3's counsel did not respond. *Id.* ¶ 8. After reading Strike 3's opposition, Doe's counsel searched and found that someone else in Fox Rothschild's office (not Mr. Bandlow or Mr. Case) later emailed a link to these documents, but the link had expired. *Id*. ¶ 9. Doe's counsel immediately requested the documents from Strike 3's counsel, who timely reproduced the documents. *Id*.

Doe's counsel has since reviewed the documents, which are only partially responsive to Requests 21 and 22. They are comprised of screenshots from public websites containing pornographic images and lists of top selling adult DVDs, and publicly available public relations articles regarding Mr. Lansky and Strike 3. McEntee Decl. ¶ 10.[2] But Strike 3 produced no internal documents regarding the piracy Strike 3 alleges it endured that would be responsive to Request 22, and no internal documents regarding Strike 3's DVD sales that would be responsive to Request 21. *Id.* ¶ 10.

**C.     Strike 3's request for fees and costs should be denied.**

There is no merit to Strike 3's request for fees and costs. Strike 3 argues that it should be entitled to fees because it produced documents related to two of the requests, and witnesses who testified about similar topics. ECF 104. But the documents Strike 3 produced pertain to only two of the requests (Requests 21 and 22) and are limited to public documents. And Strike

---

[2] Ironically, in one article, Mr. Lansky criticized so-called "tube sites" for allowing his work to be pirated. McEntee Decl., Exh. C. The article named the company MindGeek, known as a giant which owns multiple tube sites, including PornHub. *Id*. Mr. Lansky's criticism of these tube sites runs counter to Strike 3's testimony that it has an express agreement with PornHub to include Strike 3's films. *Id*., Exh. B at 116:14-121:23. This contradictory information that feeds Doe's concerns about "self-seeding."

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO
COMPEL PRODUCTION OF DOCUMENTS REGARDING
STRIKE 3 HOLDINGS' SUCCESS AS A PRODUCER OF
PORNOGRAPHY - 4
Case No. 2:17-cv-01731-TSZ

3's later, limited testimony on these topics does not alleviate Strike 3's obligation to produce responsive documents. The parties conferred by telephone on March 7 and reached impasse on March 13. Strike 3 could have moved for a protective order to justify its position at any time afterward but chose not to do so. Doe was substantially justified in bringing this motion.

## II.  CONCLUSION

Doe respectfully requests that the Court grant his motion to compel documents in response to Requests 16, 19, 20, 21 and 22.

RESPECTFULLY SUBMITTED AND DATED this 19th day of April, 2019.

TERRELL MARSHALL LAW GROUP PLLC


By:   /s/ Adrienne D. McEntee, WSBA #34061
Beth E. Terrell, WSBA #26759
Email:  bterrell@terrellmarshall.com
Adrienne D. McEntee, WSBA #34061
Email:  amcentee@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

J. Curtis Edmondson, WSBA #43795
Email: jcedmondson@edmolaw.com
EDMONDSON IP LAW
399 NE John Olsen Avenue
Hillsboro, Oregon 97124
Telephone: (503) 336-3749

*Attorneys for Defendant*

1

## CERTIFICATE OF SERVICE

2   I, Adrienne D. McEntee, hereby certify that on April 19, 2019, I electronically filed the

3   foregoing with the Clerk of the Court using the CM/ECF system which will send notification of

4   such filing to the following:

5

6   Bryan J. Case, WSBA #41781
    Email: bcase@foxrothschild.com
7   FOX ROTHSCHILD LLP
    1001 Fourth Avenue, Suite 4500
8   Seattle, Washington 98154
    Telephone: (206) 624-3600
9   Facsimile: (206) 389-1708

10  Lincoln D. Bandlow, *Admitted Pro Hac Vice*
    Email: lbandlow@foxrothschild.com
11  FOX ROTHSCHILD LLP
    10250 Constellation Blvd., Suite 900
12  Los Angeles California 90067
    Telephone: (310) 598-4150
13  Facsimile: (310) 556-9828

14
    John C. Atkin, *Admitted Pro Hac Vice*
15  Email: jatkin@atkinfirm.com
    THE ATKIN FIRM, LLC
16  55 Madison Avenue, Suite 400
    Morristown, New Jersey 07960
17  Telephone: (973) 285-3239

18
    *Attorneys for Plaintiff*
19
    Joshua L. Turnham, WSBA #49926
20  E-mail: joshua@turnhamlaw.com
    THE LAW OFFICE OF JOSHUA L. TURNHAM PLLC
21  1001 4th Avenue, Suite 3200
    Seattle, Washington 98154
22  Telephone: (206) 395-9267
    Facsimile: (206) 905-2996
23

24  *Attorneys for Non-Party Donald Isaksen, Jr.*

25

26

27

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO
COMPEL PRODUCTION OF DOCUMENTS REGARDING
STRIKE 3 HOLDINGS' SUCCESS AS A PRODUCER OF
PORNOGRAPHY - 6
CASE NO. 2:17-cv-01731-TSZ

1

2        DATED this 19th day of April, 2019.

3                                    TERRELL MARSHALL LAW GROUP PLLC

4

5                                    By:   /s/ Adrienne D. McEntee, WSBA #34061
                                          Adrienne D. McEntee, WSBA 34061
6                                         Email:  amcentee@terrellmarshall.com
                                          936 North 34th Street, Suite 300
7                                         Seattle, Washington 98103-8869
                                          Telephone: (206) 816-6603
8                                         Facsimile: (206) 319-5450

9
                                          *Attorneys for Defendant*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO
COMPEL PRODUCTION OF DOCUMENTS REGARDING
STRIKE 3 HOLDINGS' SUCCESS AS A PRODUCER OF
PORNOGRAPHY - 7
CASE NO. 2:17-cv-01731-TSZ