THE HONORABLE THOMAS S. ZILLY

U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

STRIKE 3 HOLDINGS, LLC, a Delaware corporation,

Plaintiff,

vs.

JOHN DOE, subscriber assigned IP address 73.225.38.130,

Defendant.

---

JOHN DOE subscriber assigned IP address 73.225.38.130,

Counterclaimant,

vs.

STRIKE 3 HOLDINGS, LLC,

Counterdefendant.

NO. 2:17-cv-01731-TSZ

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL DEFENDANT'S HARD DRIVES (DOCKET 125)**

**ORAL ARGUMENT REQUESTED**

## I. INTRODUCTION

The key issue in this discovery motion is what compelling reason should allow Strike 3 to deviate from the Model ESI order that this district has adopted?

DOE is agreeable to having DOE's records custodian search on the Hard Drive for the words: *Vixen*, *Tushy*, and *Blacked* (the three brands that Strike 3's movies are marketed under.)

DOE is also agreeable to search for extracted raw movie footage from the PCAP data that Strike 3's German computer company, IPP, recorded.  DOE is also agreeable to search strings with the torrent file names of the 87 works at issue.  In short, DOE is agreeable to almost any combination of relevant search strings.

What DOE does oppose is the wholesale access to the entire Hard Drive.  This is neither required under the facts of this case nor is supported under the Amended Rule 26.  The reason is that the entire hard drive[1] also contains the private and personal information of DOE.

Further, as Strike 3 has no claim for damages of infringement, removal and examination of the entire hard drive is not proportional to the needs of this case.   Proportionality is the key factor in considering the scope of ESI discovery.  Since relevant "search strings" will indicate whether there is infringing works or not, Strike 3 is not at any disadvantage employing a methodology that this district, and other districts, use as a model rule.

## II. STATEMENT OF FACTS

Defendant provides a brief overview of the relevant evidence collected in this case and the issues that remain for trial.  This overview is necessary in view of Rule 26's proportionality requirement.

### A. Remaining Claims and Affirmative Defenses

This case started with a claim of copyright infringement of 80 to 87 pornographic works. (See Dockets 1 and 43).  Strike 3's claim is that DOE used a computer to download these movies using a program called "Bittorrent".  DOE challenged those claims and Strike 3 then dismissed their claim of copyright infringement without prejudice. (Docket 53).

DOE filed amended counterclaims for declaratory relief of non-infringement and abuse of process. (Docket 64).  Strike 3 has answered the counterclaims. (Docket 65).

---

[1] There is only one drive at issue, the original drive and an "imaged" hard drive.   See Expert Report of Michael Yasumoto.

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION
TO COMPEL DEFENDANT'S HARD DRIVES (DOCKET
125) - 2
CASE NO. 2:17-CV-01731-TSZ

Strike 3 contends in its motion that this discovery is relevant to Strike 3's counterclaim of non-infringement. (See Docket 125, Motion at Pg. 4, lines 23-24, Pg. 5, lines 1-3).

**B.**  The Data Collected by Strike 3's IPP Monitoring System

Plaintiff employed a data collection firm, "IPP International", to record evidence of data activity at IP address 73.225.38.130.  (See Fieser Decl, Docket 4-3, Garcia-Paeth Decl, Docket 82).  The evidence collected by IPP[2] consists of:

1) A digital copy of the alleged infringed work. (approx. 100MB-200MB)

2) PCAP data (16KB data blocks)

3) File Names Titles of the infringed works.

4) Hash Values (Docket 43-1)

**C.**  The Media at Issue

There are two classes of ESI at issue in this case:

- "ASUS Computer Hard Drive" - The ESI of DOE's Computer that was used on a daily basis for connecting to and communicating with the Internet.  This device was imaged by forensics expert Michael Yasumoto to preserved evidence and to avoid claims of spoliation.  Expert Yasumoto then prepared and served an Expert Report.

- "Goodwill Computer Hard Drives" - The ESI from computers and other miscellaneous media (uninstalled computers) from DOE's inventory of computers that he has purchased from Goodwill, eBay, etc..  In his retirement, DOE buys and fixes computers.

Strike 3 has limited this motion to the inspection of the ESI of the "ASUS Computer Hard Drive" . (See Motion, Docket 126).

---

[2] Doe does not admit that IPP system collects information accurately, instead this is the data that Strike 3 contends IPP collected.

**D.** The Expert Reports and Declarations concerning the ESI

Strike 3 served three expert reports, by Mr. Bunting and Mr. Paige, on March 15, 2019, the date required for expert disclosures. DOE timely served the Expert Report by Mr Yasumoto on the same date. Mr. Yasumoto imaged the drive for evidence preservation in 2018 as there were still claims of copyright infringement by Strike 3.

The Yasumoto Report identifies a single hard drive that was used as a source ESI. From that hard drive a forensic copy was made. There are two drives, a source drive and a forensic image drive.

**E.** The Competing Protocols

DOE's counsel has proposed an ESI protocol that mirrors the WDWA model ESI protocol. Strike 3's counsel desires an ESI protocol that involves taking possession of the hard drive and inspecting with few limitations, and failing to designate a people who will look at the hard drive.

### III. STATEMENT OF ISSUES

Has Strike 3 shown good cause to adopt inspection methodology that is differs from the WDWA model ESI order and is different from what other Districts allow?

### IV. AUTHORITY AND ARGUMENT

**A. Possession and Inspection of the Hard Drive is not supported by Amended Rule 26.**

Rule 26(b)(1) states:

Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information,

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION
TO COMPEL DEFENDANT'S HARD DRIVES (DOCKET
125) - 4
CASE NO. 2:17-CV-01731-TSZ

the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

This rule was amended in 2015 recognizing that certain electronic devices contain large amounts of private, privileged, and irrelevant information.

Since the amendment of Rule 26, decisions are driven by the multifactor test guided by the language of Rule 26.  These factors are: 1) importance of the issues at stake in the action; 2) the amount in controversy; 3) parties' relative access to relevant information; 4) parties' resources; 5) importance of the discovery in resolving the issues; 6) whether the burden or expense of the proposed discovery outweighs its likely benefit.  In short, what is often performed is a cost-benefit analysis of the six factors under Amended Rule 26.

In the 2016 case of *T.D.P. v. City of Oakland,* 16-cv-04132-LB, (N.D. Cal July 17, 2017), plaintiff brought a 1983 action against the City of Oakland for excessive police force.  A dispute arose over the searching of ESI. *Id.* at pg 8.  Plaintiffs in *T.D.P.* proposed the following targeted searches:

- "Plaintiffs request that this court order a search of the defendant officers' emails, cell phones, text messages, and social media for only 90 days following the incident for everything related to this incident, the Plaintiff, or the decedent."

- "Outside of the 90-day window, Plaintiff suggests using search terms including but not limited to 'Perkins', 'sideshow', 'gun', 'airsoft', 'air soft', 'weapon', 'officer involved shooting', 'OIS', 'shooting', and 'Bancroft.'"

- "Plaintiff also requests all emails concerning the incident to and from OPD investigators and command staff. Defendants' proposal to only use search terms is inadequate."

The key dispute was the adequacy of "keyword searches".  Id.  Magistrate Judge Beeler relied on the decision of her fellow Magistrate Judge Corley that confirming search strings were adequate and also removed the terms, "gun and weapon", from the search strings. *Id.*

In a patent infringement case involving water park slides, the Court allowed string searches on ESI. *Flowrider Surf, Ltd. v. Pac. Surf Designs, Inc*., 15-cv-1879 (S.D. Cal.,

November 3, 2016). In *Flowrider* the Court entered an ESI order that limited the scope of search terms. Despite that limitation, the searches returned tens of thousands of documents, mostly for old and irrelevant documents. Id. at 17.  The Court then modified its ESI order and the search terms "reviv*," "abandon*," "expire*," "maintenance fee," "late fee," and "patent fee" , were found to be overbroad and resulted.

 Also, in a discovery dispute involving a lawyer accused of trade secret theft of "lemon law" documents, the plaintiff was first able to determine that a former partner had made copies of the document onto ESI when a partner left the firm. *FCA U.S. LLC v. Bullock*, 17-cv-13972 (E.D. Mich., January 18, 2019).  In this case the Court acknowledged that hard drive imaging has been allowed by other courts, but, the mere suspicion by the plaintiff that there was discoverable information on ESI did require that these devices be imaged. The Court in *FCA* stated: "… *The information that Bullock has on her computer is certainly important to FCA's claims in this litigation. But the mere fact that FCA has asserted a trade secrets claim does not give it free reign to examine all of Bullock's electronic devices….*" *Id.* at 9. Likewise,  Strike  3's mere suspicion that there may be data does not compel imaging of the drive.

 In a published case between Motorola and Hytera over a trade secrets dispute, the court in Motorola stated: "…Forensic examination is generally regarded as a drastic step even in general discovery. *See, e.g., John B. v. Goetz* , 531 F.3d 448, 460 (6th Cir. 2008) ("mere skepticism that an opposing party has not produced all relevant information is not sufficient to warrant drastic electronic discovery measures.")." *Motorola Solutions, Inc. v. Hytera Commc'ns Corp.,* 314 F.Supp.3d 931, 939 (N.D. Ill., 2018).

 The aforementioned cases involve real disputes where the plaintiffs have claims for damages.  In this case, Strike 3 has already dismissed their claims for infringement.

**B. The application of the Six Factors weighs in favor Doe's proposed Search String protocol and in line with the WDWA Model ESI order.**

In the analysis of each of the six factors as required under Rule 26:

Factor 1 - <u>Importance of the issues at stake in the action</u> - Currently the only issue is the declaratory relief of non-infringement. DOE does not bear the burden of proof on infringement. This issue has not been rendered moot because Strike 3 failed to dismiss without prejudice. Strike 3 contends that data on the ASUS drive is important to prove the existence of infringement. On this factor Strike 3 contends that "...*any device evidencing that Plaintiff correctly identified the IP address engaged in BitTorrent activity is important to the central issues and claims in this case..*" (Motion at 7). Strike 3's position is either incomplete or non-sensical. The abuse of process counter-claim has nothing to do Doe's activity, rather it goes the misrepresentations made to this Court after the Complaint was filed. Since DOE did not participate in these misrepresentations, there is no information on his Hard Drive that could be discoverable. This factor weighs in favor of DOE.

Factor 2 - <u>Amount in Controversy</u> - This is similar to factor #1. On the infringement claim there are no copyright damages at issue. While DOE may be permitted to move for fees as the prevailing party under the Copyright Act, the award of damages is for the Court to decide. The evidence of finding the movies using "search strings" can be used to gather evidence to negate a claim for attorney fees. Taking possession of the Hard Drive has no additional evidentiary value. This factor weighs in favor of DOE.

Factor 3 - <u>Parties' relative access to relevant information</u> - Strike 3 already has access to significant information from the "IPP monitoring system." IPP contends that it communicated with Doe's computer and captured "PCAP" data. Therefore parts of the PCAP data should identically match what is on the hard drive.

Strike 3 already has significant evidence collected by their investigator IPP regarding infringement.  To confirm this evidence, Strike 3 could select certain data subsets from the IPP collected, such as PCAP data, and request that it be matched against the hard drive contents.

DOE has been more than willing to apply Strike 3's search strings to the Hard Drive. DOE can also apply search strings to other Hard Drives.   This factor again weighs in favor of DOE.

Factor 4 - Parties' Resources - Strike 3 has not calculated the expected cost involving the inspection of the Hard Drive to determine if there are: 1) private financial information; 2) privileged communications with counsel; 3) family photos; and 4) other irrelevant but sensitive documents.   DOE's counsel will have to review the Hard Drive for those documents and seek a protective order or a stipulation.  This cost is not accounted for in Strike 3's analysis.

Factor 5 - Importance of the discovery in resolving the issues -   The evidence of infringing files is possibly relevant to Strike 3's affirmative defense.   The evidence of infringing files does not implicate the abuse of process claim. See Factor 1.

Factor 6 - Whether the burden or expense of the proposed discovery outweighs its likely benefit. - Strike 3 minimizes the cost of having to review the Hard Drive for the documents. Since DOE has proposed an equally effective search methodology, the most cost-effective method should be adopted.

**C.   DOE's Custodian was willing to search and return records of "Vixen", "Tushy" and "Blacked", and other data strings, but Strike 3 never proposed search terms until this motion.**

DOE reached out in early 2018 to have the ESI issue resolve.  Strike 3 ignored DOE's request on the issue of ESI for an entire year.  (Edmondson Declaration)

Setting this aside, DOE proposes two search strings for each of the works at issue.  DOE will also search for the terms: Vixen, Tushy, and Blacked.  If Strike 3 provides raw data excerpts from their IPP system, these will be searched as well.

The reality is that search strings give Strike 3 what they want, confirmation of evidence that their movies are on the Hard Drive.

### D.  Michael Yasumoto's search of the Hard Drive is a Red Herring.

Strike 3 somehow argues they will be prejudiced by having Michael Yasumoto prepare his expert report, as he was required to do by the March 15, 2019 deadline.   First Michael Yasumoto peformed two functions in this case – he preserved evidence by making a forensic copy of the hard drive in 2018, and second he examined the hard drive to locate any video files owned by Strike 3.  There is no evidence his search methodology is defective or inferior to using search strings.

Plaintiff's experts, Bunting and Paige, have had access to this report for over two months. They did not file a rebuttal report objecting to the methodology used by Yasumoto by the required deadline. Experts Bunting and Paige did not propose alternative or superior search methodologies in the motion.

### V.  CONCLUSION

Strike 3 requests intrusive discovery about evidence of infringement by requesting that the Hard Drive be imaged and inspected   This may be appropriate if Strike 3 still had claims for infringement, but the case law does not support that position.  But Strike 3 does not even have claims for infringement.  No one force Strike 3 to abandon their claim of infringement.

Based on the foregoing, DOE respectfully requests the Court deny Strike 3's motion to inspect the Hard Drive and instead allow "search strings" be submitted to Doe's record's custodian.

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION
TO COMPEL DEFENDANT'S HARD DRIVES (DOCKET
125) - 9
CASE NO. 2:17-cv-01731-TSZ

RESPECTFULLY SUBMITTED AND DATED this 3rd day of June, 2019.

By:   /s/ J. Curtis Edmondson

J. Curtis Edmondson, WSBA #43795
Email: jcedmondson@edmolaw.com
EDMONDSON IP LAW
399 NE John Olsen Avenue
Hillsboro, Oregon 97124
Telephone: (503) 336-3749

Beth E. Terrell, WSBA #26759
Email:  bterrell@terrellmarshall.com
Adrienne D. McEntee, WSBA #34061
Email:  amcentee@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

*Attorneys for Defendant*

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION
TO COMPEL DEFENDANT'S HARD DRIVES (DOCKET
125) - 10
CASE NO. 2:17-CV-01731-TSZ

CERTIFICATE OF SERVICE

I, Adrienne D. McEntee, hereby certify that on June 3, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

>Lincoln D. Bandlow, *Admitted Pro Hac Vice*
>Email: lincoln@bandlowlaw.com
>LAW OFFICES OF LINCOLN BANDLOW, P.C.
>1801 Century Park East, Suite 2400
>Los Angeles, California 90067
>Telephone: (310) 556-9580
>Facsimile: (310) 861-5550
>
>John C. Atkin, *Admitted Pro Hac Vice*
>Email: jatkin@atkinfirm.com
>THE ATKIN FIRM, LLC
>55 Madison Avenue, Suite 400
>Morristown, New Jersey 07960
>Telephone: (973) 285-3239
>
>Jeremy E. Roller, WSBA #32021
>Email: jroller@aretelaw.com
>ARETE LAW GROUP PLLC
>1218 Third Avenue, Suite 2100
>Seattle, Washington 98101
>Telephone: (206) 428-3250
>Facsimile: (206) 428-3251
>
>*Attorneys for Plaintiff*
>
>Joshua L. Turnham, WSBA #49926
>E-mail: joshua@turnhamlaw.com
>THE LAW OFFICE OF JOSHUA L. TURNHAM PLLC
>1001 4th Avenue, Suite 3200
>Seattle, Washington 98154
>Telephone: (206) 395-9267
>Facsimile: (206) 905-2996
>
>*Attorneys for Non-Party John Does Son*

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION
TO COMPEL DEFENDANT'S HARD DRIVES (DOCKET
125) - 11
CASE NO. 2:17-CV-01731-TSZ

F. Christopher Austin, *Admitted Pro Hac Vice*
Email: caustin@weidemiller.com
Allen Gregory Gibbs, *Admitted Pro Hac Vice*
Email: ggibbs@weidemiller.com
WEIDE & MILLER, LTD.
10655 Park Run Drive, Suite 100
Las Vegas, Nevada 89144
Telephone: (702) 382-4804

Derek A. Newman, WSBA #26967
Email: dn@newmanlaw.com
Rachel Horvitz, WSBA #52987
Email: rachel@newmanlaw.com
NEWMAN DU WORS LLP
2101 4th Avenue, Suite 1500
Seattle, Washington 98121
Telephone: (206) 274-2800
Facsimile: (206) 274-2801

*Attorneys for Attorneys for Third-Party Witnesses Tobias Fieser, IPP International UG, Bunting Digital Forensics, LLC, Stephen M. Bunting*

DATED this 3rd day of June, 2019.

By: /s/ J. Curtis Edmondson, WSBA #34061
*Attorney for Defendant*