The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STRIKE 3 HOLDINGS, LLC, a
Delaware corporation,

                Plaintiff,

    v.

JOHN DOE, subscriber assigned IP
address 73.225.38.130,

                Defendant.

No. 2:17-cv-01731-TSZ

**PLAINTIFF/COUNTER-DEFENDANT'S MOTION TO COMPEL PRODUCTION OF SON'S HARD DRIVE**

Noted on Motion Calendar:
**July 5, 2019**

    Plaintiff/Counter-Defendant, Strike 3 Holdings, LLC ("Strike 3" or "Plaintiff"), respectfully requests entry of an order compelling production of a newly discovered hard drive in Defendant/Counter-Plaintiff's ("Defendant") possession, and in further support, states:

## I.     INTRODUCTION

    Since the commencement of this lawsuit, Defendant has denied any involvement with copyright infringement, accused Plaintiff of initiating sham litigation, insisted on the inaccuracy of IPP's infringement detection system, and outright claimed that Plaintiff has no evidence of infringement.  To prove that a legitimate legal dispute existed and to further

Arête
LAW GROUP
1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

establish that IPP's system was valid and that Plaintiff's reliance on it was well-founded, Plaintiff did what Defendant strangely (and without any valid basis) thought Plaintiff would never do – litigate. Through the litigation process, Plaintiff has uncovered a substantial amount of evidence confirming the validity of its original Complaint and IPP's system – evidence which Defendant has improperly sought to withhold from discovery.  Indeed, Plaintiff recently learned that Defendant _still_ possesses yet another Hard Drive ("Son's Hard Drive") which: (1) was located in Defendant's home during the entire period of infringement; (2) was used to access The Pirate Bay website; (3) had uTorrent installed on it; and (4) was used to download adult content via the uTorrent client and The Pirate Bay website during the exact same time period that Plaintiff alleged infringement of its works.[1] The Son's deposition testimony clearly makes this Hard Drive relevant and may, indeed, be the literal "smoking gun" demonstrating that Plaintiff's initial suit was entirely justified, and Defendant' counterclaims are nothing less than a fraud upon the Court.

Plaintiff now seeks entry of an order compelling production of the Son's Hard Drive which is clearly in Defendant's possession, custody, or control.  For the foregoing reasons as explained more fully below, Plaintiff respectfully requests that the instant Motion be granted.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 26(b) defines the broad scope of discovery, stating:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

---

[1] Indeed, Defendant's son admits to using BitTorrent for the main purpose of downloading adult content during the relevant period of infringement – he just doesn't remember which adult content he downloaded, presumably because he downloaded so much.

PLAINTIFF'S MOTION TO COMPEL PRODUCTION
OF SON'S HARD DRIVES
No. 2:17-cv-01731-TSZ – Page 2

Arête
LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

1    "A party seeking discovery may move for an order compelling […] production, or

2    inspection. This motion may be made if […] a party fails to produce documents or fails to

3    respond that inspection will be permitted -- or fails to permit inspection -- as requested

4    under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iv).

5    Upon granting a motion to compel "[t]he court must, after giving an opportunity to

6    be heard, require the party … whose conduct necessitated the motion … to pay the

7    movant's reasonable expenses incurred in making the motion, including attorney's fees."

8    Fed. R. Civ. P. 37(a)(5)(A).  A court must require this payment when the movant has made

9    an attempt in good faith to obtain the disclosure or discovery without court action, the

10   opposing party's nondisclosure or responses were not substantially justified, and the award

11   of expenses is just.  *See* Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii).

## III.    FACTS

13   On April 9, 2019, Defendant testified that his son had a computer in his room

14   ("Son's Computer") which was in use during the period of infringement.

15   Q: From the period of August 2016 through December 2017, did your son
16   have a computer in his room?
     A: There was a computer in his room, yes.
17   Q: And was that a desktop?
     A: Yes.
18

19   *See Excerpts from Defendant's Deposition Transcript* 57:15-24, attached hereto as Exhibit

20   "A."  Defendant also testified that the Son's Computer was sold in March or April of 2018

     – during this lawsuit.
21

22   Q: Okay. I want to go back to the computer that he had for some time. And at
     some point it left the house. How? Was it sold, was it taken --
23   A: Yes.
     Q: Okay, it was sold. Do you know who it was sold to?
24   A: No.
     […]
     Q: Do you remember when your son told you he sold that computer?
25   Q: No, it's probably been -- I'm guessing it would be March or April of last
     year.
26   Q: Of 2018?
     A: 2018.

PLAINTIFF'S MOTION TO COMPEL PRODUCTION
OF SON'S HARD DRIVES
No. 2:17-cv-01731-TSZ – Page 3

**Arête**
LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

*Id*. at 57:24-25; 58:1-23.  On May 20, 2019, Plaintiff filed a Motion to Compel Production of Defendant's Hard Drives which sought production of Defendant's main Hard Drive in Defendant's home.  Since Defendant inaccurately testified that the Son's Computer had been sold, Plaintiff did not include the Son's Computer in its Motion to Compel because it appeared that the Son's Computer was no longer in the house.  However, on June 3, 2019, Defendant's Son provided crucial testimony about his Computer.[2]  Specifically, the Son testified that although various components from his Computer had been sold in March/April of 2018, before selling the Computer, the Hard Drive installed therein ("Son's Hard Drive") had actually been *removed* from the Computer, "formatted[,] and then put out into the common area so that [it] could be installed into other computers."

> Q: Prior to that hard drive being assembled into your computer, what hard
> drive did you have?
> A: The hard drives that were in the previous computer.
> Q: And what happened to those?
> A: Those were removed when I sold it. They were formatted and then put
> into the common area so that they could be installed into other computers.

*See Excerpts from the Son's Deposition Transcript* 39: 5-12, attached hereto as Exhibit "B."

Even more importantly, the Son further testified that he had: (1) installed the uTorrent[3] client on his Hard Drive; (2) used his Hard Drive to access The Pirate Bay website; and (3) used his Hard Drive to obtain adult content through The Pirate Bay website and uTorrent.

> Q:  Did you install BitTorrent software onto that prior hard drive that we've
> been talking about in this case?
> A: Yes. It was on my previous computer.

*Id*. at 60:24-25; 61:1-2.

> Q: What type of BitTorrent program were you using?

---

[2] The delay in deposing the Son was due to his resistance to being deposed.

[3] Significantly, as evidenced by the PCAPs (packet captures) and the Infringement Log File that Plaintiff produced to Defendant early in this case, this is the *exact* same BitTorrent client that IPP recorded being used to download Plaintiff's copyright works.

Arête
LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

A: It's called uTorrent, I believe.

*Id*. at 78:24-25; 79:1.

> Q: What, if anything, can you recall using BitTorrent to download between
> the period of May 2017 and December of 2017?
> A: There were some adult films from a site called The Pirate Bay.
> [...]
> Q: Do you remember any of the titles of those films?
> A: That wasn't -- no. That's not my concern when downloading those.

*Id*. at 78:2-20.

In light of the foregoing, on June 17, 2019, Strike 3 demanded production of the Son's Hard Drive.  Despite the obvious material nature of this evidence, Defendant refused to produce anything, claiming that he is unable to ascertain which hard drive in his hard drive collection corresponded to the Son's Computer.

## IV.   ARGUMENTS

### A.   The Son's Hard Drive is in Defendant's Possession

As previously stated, the Son testified that although the Computer which he used during the period of infringement had been sold, his Hard Drive had actually been *removed* from the Computer itself, "formatted[,] and then put out into the common area so that [it] could be installed into other computers." *See Excerpts from the Son's Deposition Transcript* 39: 5-12. Thus, the Son's Hard Drive is in Defendant's possession.[4]

### B.   The Son's Hard Drive is Relevant

The existence or non-existence of BitTorrent clients, torrent files, website history including visits to the Pirate Bay website, and adult content obtained through torrents on *any* Hard Drive in Defendant's home is clearly relevant to the claims in this case. *See* Dkt.

---

[4] To be clear, at all points in time, Defendant was in possession, custody, or control of the Son's Computer and Hard Drive (among other things).  Indeed, the Son testified that although his bedroom door has had a lock since he was a teenager, his father and mother have access to a key to that lock and that his father is "able to get access to [the Son's] bedroom if [his father] wishes to have access" to it.  *See Excerpts from the Son's Deposition Transcript* 7:23-8:15 and 10:22-25.

Arête
LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

1   125 and Dkt. No. 134.  Simply put, Defendant's accusation that Plaintiff's filed its

2   complaint with no evidence of infringement, makes any Hard Drive used to access adult

3   content via The Pirate Bay website and uTorrent client exceedingly relevant.  As such, the

4   Son's Hard Drive goes to the heart of Defendant's counterclaims and whether Plaintiff will

5   be filing a new complaint, alleging infringement claims against the Son.

6          **C.**      **Production of the Son's Hard Drive is Proportional to the Needs of the**

7                    **Case**

8          In determining if a request is proportional to the needs of the case, Fed. R. Civ. P.

9   26(b)(1) dictates that the court should consider: (1) the importance of the issues at stake in

10  the action; (2) the amount in controversy; (3) the parties' relative access to relevant

11  information; (4) the parties' resources; (5) the importance of the discovery in resolving the

12  issues; and (6) whether the burden or expense of the proposed discovery outweighs its

13  likely benefit.  *See* Fed. R. Civ. P. 26(b)(1).  As outlined below, each of these factor weighs

14  in Plaintiff's favor.

15         First, Defendant's Second Amended Counterclaim states that (1) there is no

16  evidence of infringement, (2) the infringement detection software generated false positives,

17  and (3) Plaintiff falsely claimed infringement.  As such, any device evidencing that Plaintiff

18  correctly identified the IP address that engaged in BitTorrent activity is more than just

19  "important" to Defendant's counterclaims, it may very well be dispositive of them. Second,

20  imaging the Son's Hard Drive would cost approximately $1,000 and Plaintiff is willing to

21  pay this cost.  Thus, this second factor weighs in favor of permitting this discovery.  Third,

22  Defendant has easy access to the Son's Hard Drives as they are located in the common area

23  of his house.  Fourth, as noted above, Plaintiff is willing to bear the cost of imaging the

24  Hard Drives which should take no longer than a single business day.  Fifth, examination of

25  the Son's Hard Drives can potentially resolve, if not substantially impact, Defendant's

26  declaratory judgment of non-infringement and abuse of process claims.  Finally, with

Arête  | 1218 THIRD AVENUE
LAW GROUP | SUITE 2100
| SEATTLE WA 98101
| (206) 428-3250

respect to the sixth factor, in light of the significance of this evidence, the burden and expense cannot possibly outweigh the likely benefit.

**D.      This Court Should Not Let Defendant Continue to Evade His Discovery Obligations**

"[A] party responding to a Rule 34 production request ... is under an affirmative duty to seek that information reasonably available to it from its employees, agents, or others subject to its control." *Hill v. Eddie Bauer*, 242 F.R.D. 556, 560 (C.D. Cal. 2007), *quoting Gray v. Faulkner*, 148 F.R.D. 220, 223 (N.D.Ind.1992).  Still, at every turn in this litigation, Defendant has failed to take the most basic steps that any reasonable person would take in his position.  He claims he never mentioned the lawsuit to his son.[5]  He claims he never discussed it with his wife.  And despite this stone-walling, now that Plaintiff has proof that critical evidence is within his control and demanding its production Defendant throws his hands up in the air and says, "I know there is a relevant Hard Drive in my home. It's in this pile of a hundred other computers, but since I don't know which Hard Drive it is, go pound sand."  Respectfully, Defendant has buried his head *and* material evidence for long enough.  At this point Defendant's refusal to search his home for this crucial evidence and to produce it or cooperate at all in the process of locating this evidence, and, further, now that it is beyond dispute that it (1) exists and (2) is in a common area of his home, is *de facto* concealment.  Defendant has a duty to seek out and produce documents which he *knows* are relevant and which he *knows* are in his possession.  Burying his head in the sand is an inadequate basis to withhold production of such evidence.

---

[5] Even though Defendant claims to have never mentioned the lawsuit to his son, the timing in which the Son's hard drive was removed and supposedly wiped clean is suspicious. Indeed, it was just a few weeks after Defendant received notice of this lawsuit and shortly after Defendant retained counsel.

PLAINTIFF'S MOTION TO COMPEL PRODUCTION
OF SON'S HARD DRIVES
No. 2:17-cv-01731-TSZ – Page 7

Arête
LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

**V.      CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court grant entry of an order compelling Defendant to produce the Son's Hard Drive.

DATED this 19 day of June, 2019

**LAW OFFICES OF
LINCOLN BANDLOW, PC**

By: /s/ Lincoln Bandlow
Lincoln D. Bandlow, Admitted Pro Hac Vice
1801 Century Park East
Suite 2400
Los Angeles, CA 90067
Telephone: 310-556-9680
Facsimile: 310-861-5550
Email: lincoln@bandlowlaw.com

**THE ATKIN FIRM, LLC**

By: /s/ John C. Atkin
John C. Atkin, Admitted Pro Hac Vice
Email: jatkin@atkinfirm.com
55 Madison Avenue, Suite 400
Morristown, New Jersey 07960
Telephone: (973) 285-3239

**ARETE LAW GROUP PLLC**

By: /s/ Jeremy E. Roller
Jeremy E. Roller, WSBA #32021
Email: jroller@aretelaw.com
1218 Third Avenue, Suite 2100
Seattle, Washington 98101
Telephone: (206) 428-3250
Facsimile: (206) 428-3251

*Attorneys for Plaintiff*

Arête
LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

1

## CONFERRAL CERTIFICATE PURSUANT TO LCR 37(a)(1).

2    Plaintiff has in good faith conferred or attempted to confer with Defendant in an

3 effort to resolve the dispute without court action.  On June 17, 2019, Plaintiff sent

4 Defendant a letter detailing this discovery dispute and on June 18, 2019, the parties

5 attended a telephonic conferral (Attorney Lincoln Bandlow for the Plaintiff and Attorney

6 Adrienne McEntee and Attorney Curtis Edmondson for the Defendant).  However, the

7 parties were still unable to resolve this dispute.  In light of the impending discovery cut-off,

8 the issue must be resolved as soon as possible to allow analysis of the Hard Drives to

9 commence.

10

11            By: /s/ *Lincoln Bandlow*
             Lincoln D. Bandlow

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Arête
LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

## CERTIFICATE OF SERVICE

I, Annabel Barnes, hereby certify that on June 19, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of filing to the following parties:

> Adrienne D. McEntee, WSBA #34061
> Beth E. Terrell, WSBA #26759
> Email: bterrell@terrellmarshall.com
> amcentee@terrellmarshall.com
> 936 North 34th Street, Suite 300
> Seattle, Washington 98103-8869
> Telephone: (206) 816-6603
> Facsimile: (206) 319-5450
>
> J. Curtis Edmondson, WSBA #43795
> Email: jcedmondson@edmolaw.com
> EDMONDSON IP LAW
> 399 NE John Olsen Avenue Hillsboro
> Oregon 97124
> Telephone: (503) 336-3749
>
> *Attorneys for Defendant*

DATED this 19th day of June 2019 at Seattle, Washington.

/s/ Annabel Barnes
Annabel Barnes, Legal Assistant

Arête
LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

# EXHIBIT A

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

STRIKE 3 HOLDINGS, LLC, a Delaware )
corporation,                       )
                                   )
            Plaintiff,             )
                                   ) Case No.
      vs.                          ) 2:17-cv-01731-TSZ
                                   )
JOHN DOE, subscriber assigned IP   )
address 73.225.38.130,             )
                                   )
            Defendant.             )

VIDEOTAPED DEPOSITION OF ███████████████

April 9, 2019

10:01 a.m.

Seattle, Washington

Reported by:
Mark Hovila, CCR, CM
CCR No. 2599
Job No. 790669

```
 1                        APPEARANCES

 2

 3      For the Plaintiff:

 4                      LINCOLN D. BANDLOW, ESQ.
                        Fox Rothschild LLP
 5                      10250 Constellation Boulevard
                        Suite 900
 6                      Los Angeles, CA  90067
                        310.228.2913
 7                      lbandlow@foxrothschild.com

 8
        For the Defendant:
 9
                        ADRIENNE McENTEE, ESQ
10                      Terrell Marshall Law Group PLLC
                        936 N. 34th Street, Suite 300
11                      Seattle, WA  98103
                        206.816.6603
12                      amcentee@terrellmarshall.com

13            and

14                      J. CURTIS EDMONDSON, ESQ.
                        Attorney at Law
15                      399 NE John Olsen Avenue
                        Hillsboro, OR  97124
16                      503.336.3749
                        jcedmondson@edmolaw.com
17

18      THE VIDEOGRAPHER:

19                      KURT SCHULTZ
                        US Legal Support
20                      206.673.4473

21

22

23

24

25
```

1    A.   Yes.

2    Q.   What kind of computer is that?

3    A.   A generic.

4    Q.   Is it a PC?

5    A.   Yeah, it's a PC.

6    Q.   Does it have access to the Internet?

7    A.   Yes.

8    Q.   Does he still have that in his room?

9    A.   No.

10   Q.   When --

11   A.   We'll, he has a different computer,

12   basically.

13   Q.   Okay.  So let me back up.

14   A.   Okay.

15   Q.   From the period of August 2016 through

16   December 2017, did your son have a computer in his

17   room?

18   A.   There was a computer in his room, yes.

19   Q.   And was that a desktop?

20   A.   Yes.

21   Q.   And it was a PC?

22   A.   A PC.

23   Q.   And it had access to the Internet?

24   A.   Yes.

25   Q.   Okay.  And does that computer still exist?

1     A.   I'm sure it does.

2     Q.   Do you know where it is?

3     A.   No.

4     Q.   Well, why do you say you're sure it does?

5     A.   It was a gaming computer, and I'm just --

6  you know, you're not going to throw that away.

7     Q.   Okay.  So do you know as you sit here today

8  that still exists somewhere in the house?

9     A.   No.

10    Q.   It doesn't?

11    A.   No.

12    Q.   Okay.  At some point it left the house?

13    A.   Yes.

14    Q.   How?

15    A.   It was sold.  And the computer he has now is

16  a computer that we saved over the years for his

17  Christmas and his birthday.  I would buy components so

18  eventually he would be able -- I would able to put

19  together a gaming computer for him.  And that's the

20  computer that he has.

21    Q.   Your son is a video gamer, plays video

22  games?

23    A.   Yes.

24    Q.   Okay.  I want to go back to the computer

25  that he had for some time.  And at some point it left

1    the house.  How?  Was it sold, was it taken --

2         A.   Yes.

3         Q.   Okay, it was sold.  Do you know who it was

4    sold to?

5         A.   No.

6         Q.   Do you know how it was sold?

7         A.   I don't.

8         Q.   How do you have knowledge that it was sold?

9    How do you know that?

10        A.   Well, I guess I don't for sure.  He said,

11   you know --

12        Q.   That's what I'm saying.  Your knowledge that

13   it was sold is because your son told you he sold it.

14   Correct?

15        A.   Yeah.  Well, yeah.

16        Q.   Okay.

17        A.   I guess.

18        Q.   Do you remember when your son told you he

19   sold that computer?

20        A.   No, it's probably been -- I'm guessing it

21   would be March or April of last year.

22        Q.   Of 2018?

23        A.   2018.

24        Q.   Okay.  Okay.

25        A.   Can I expound on that a little bit?

# EXHIBIT B

1            UNITED STATES DISTRICT COURT

2          WESTERN DISTRICT OF WASHINGTON

3                   AT SEATTLE

4    _____

5    STRIKE 3 HOLDINGS, LLC, a          )

6    Delaware corporation,              )

7              Plaintiff,               )

8       vs.                            )   2:17-cv-01731-TSZ

9    JOHN DOE, subscriber assigned      )

10   IP address 73.225.38.130,          )

11             Defendant.               )

12   _____

13     TELEPHONIC DEPOSITION UPON ORAL EXAMINATION OF

14                    ███████████

15   _____

16

17                  9:56 A.M.

18               JUNE 3, 2019

19            ████████████████

20            ███████████████

21

22

23

24   REPORTED BY:  LORI A. PORTER - RPR, CCR 2533

25   PAGES 1 - 83

                                         Page 1

```
1                          A P P E A R A N C E S
2
3    FOR THE PLAINTIFF:
     (via telephone)
4
             LINCOLN D. BANDLOW
5            Law Offices of Lincoln Bandlow
             1801 Century Park East
6            Suite 2400
             Los Angeles, California 90067
7            310.556.9680
             lincoln@bandlowlaw.com
8
9
     FOR THE DEFENDANT:
10   (via telephone)
11           ADRIENNE D. MCENTEE
             Terrell Marshall Law Group
12           936 North 34th Street
             Suite 300
13           Seattle, Washington 98103
             206.816.6603
14           amcentee@terrellmarshall.com
15
             J. CURTIS EDMONDSON
16           Law Offices of J. Curtis Edmondson
             3699 NE John Olsen Avenue
17           Hillsboro, Oregon 97124
             503.336.3749
18           jcedmondson@edmolaw.com
19
20   FOR ███████ ██ ████████
21           JOSHUA L. TURNHAM
             The Law Office of Joshua L. Turnham
22           214 East Galer Street
             Suite 100
23           Seattle, Washington 98102
             206.395.9267
24           joshua@turnhamlaw.com
25
```

Veritext Legal Solutions
866 299-5127

```
 1    influence of any substances, that would prevent you
 2    from giving your best and most truthful testimony
 3    today?
 4         A.  No.
 5         Q.  If for any reason you don't understand one of
 6    my questions, please ask or let me know you don't
 7    understand.  Otherwise, if you give an answer to a
 8    question, we're going to assume that you understood it.
 9              Do you understand that?
10         A.  Yes, I do.
11         Q.  What is your date of birth?
12         A.  ██████████████████████.
13         Q.  What is the address where you currently live?
14         A.  I currently live in the home of my parents.
15    That's ████████████████████████████████████████████
16    ██████.
17         Q.  And that's the house you're located in right
18    now as we do this deposition; correct?
19         A.  It is.
20         Q.  Where are you sitting in the house right now
21    as this deposition goes forward?
22         A.  The dining room.
23         Q.  And you occupy a bedroom in the house?
24         A.  I do.
25         Q.  Is there a lock on that door to your bedroom?
```

Page 7

1          A.   There is.

2          Q.   Is it a keyed lock?

3          A.   Yes.

4          Q.   How long has there been a keyed lock on that

5     door?

6          A.   Since I was a teenager.  20 years maybe.

7          Q.   Who has keys to that lock?

8          A.   I do and there is one extra that is in a

9     drawer in the kitchen.

10         Q.   Is your father aware of the location of that

11    extra key to your door?

12         A.   He is.

13         Q.   Is your mother aware of the location of that

14    extra key to your door?

15         A.   She is.

16         Q.   So what are the names of the other individuals

17    that live in that house besides you?

18         A.   Presently?

19         Q.   Yes.

20         A.   It's just the three of us right now.

21         Q.   So your father and mother and you?

22         A.   Yes.

23         Q.   Yes?

24         A.   Yes.

25         Q.   So your father's name is also ██████; correct?

Page 8

1     A.  Not consistently, no.

2     Q.  About how often do you pay rent or any kind of

3 financial compensation for being allowed to live in the

4 house?

5     A.  Usually when I have something to contribute.

6     Q.  Your name is not listed on the mortgage

7 documents for the house; correct?

8     A.  Sorry?

9     Q.  Is your name listed on any of the mortgage

10 documents for the house?

11     A.  No.

12     Q.  So you don't have any ownership interest

13 whatsoever in that house?

14     A.  No, I do not.

15     Q.  Do you have any kind of rental or lease

16 agreement with your parents or anyone in the house?

17     A.  No.

18     Q.  Do you have any kind of written agreements

19 regarding rules of your living there, anything of that

20 nature?

21     A.  No.  There's nothing written.

22     Q.  Is your father able to get access to your

23 bedroom if your father wishes to have access to your

24 bedroom?

25     A.  Yes.

Veritext Legal Solutions
866 299-5127

```
 1    period of 2018.
 2            Do you have a reason to believe that's
 3    incorrect?
 4         A.  No.
 5         Q.  Prior to that hard drive being assembled into
 6    your computer, what hard drive did you have?
 7         A.  The hard drives that were in the previous
 8    computer.
 9         Q.  And what happened to those?
10         A.  Those were removed when I sold it.  They were
11    formatted and then put out into the common area so that
12    they could be installed into other computers.
13         Q.  I want to backtrack on that a little bit.
14         A.  Uh-huh.
15         Q.  So you sold that old hard drive; correct?
16         A.  No.
17         Q.  You just said it was removed when you sold it.
18    What was the thing that was sold that you were
19    referring to in this answer?
20         A.  The computer that it was in.  That computer
21    was sold.
22         Q.  Who did you sell that computer to?
23         A.  I don't recall who it was.
24         Q.  Was it a friend?
25         A.  No.
```

Veritext Legal Solutions
866 299-5127

1           MR. EDMONDSON:  If there's a question

2    pending, if you don't mind repeating it, that would be

3    great.

4           MR. BANDLOW:  The question is:  I've

5    handed him Exhibit 3, which is a Comcast letter with

6    some attachments, and asked him if this was the letter

7    he saw on the kitchen counter.

8        Q.  (By Mr. Bandlow)  Do you recall ever reading

9    this in any kind of depth or you just noticed there was

10   something from Comcast?

11       A.  No, I just noticed that it was from Comcast

12   and just skimmed the top page.  That was it.

13       Q.  And either this letter or something like this

14   is what prompted that first conversation that you just

15   testified to with your father; correct?

16       A.  Yes.

17       Q.  Have you ever installed BitTorrent software on

18   a device?

19       A.  I have.

20       Q.  When did you first do that?

21       A.  Many years ago.  I can't be certain.

22       Q.  Was it prior to May of 2017?

23       A.  Yes.

24       Q.  Did you install BitTorrent software onto that

25   prior hard drive that we've been talking about in this

                                                Page 60

1    case?

2        A.   Yes.  It was on my previous computer.

3        Q.   Is it on the current computer that you have?

4        A.   It is not.

5        Q.   And you installed it on the prior computer?

6        A.   I did.

7        Q.   Did your dad assist you in installing it, or

8    you did it on your own?

9        A.   No, I did it on my own.

10       Q.   Prior to May of 2017, can you gauge when you

11   put it on there?  Can you give any reasonable

12   estimation of when you think you first put it on your

13   computer?

14       A.   No.  It would be many, many years ago.

15       Q.   So you've been aware of and using BitTorrent

16   for many years; correct?

17       A.   Yes.

18       Q.   Did you hear my question?

19       A.   Yes, I did, and, yes, I have.

20       Q.   You've been aware of and using BitTorrent for

21   many years; correct?

22       A.   Yes, I have.

23       Q.   How many years -- is there any way you can

24   estimate prior to May of 2017 the years you've been

25   using it?

Veritext Legal Solutions
866 299-5127

1      A.  It's possible, yes.

2      Q.  What, if anything, can you recall using

3  BitTorrent to download between the period of May 2017

4  and December of 2017?

5      A.  There were some adult films from a site called

6  The Pirate Bay.

7      Q.  Do you remember the names of those adult

8  films?

9      A.  Not offhand, no.

10      Q.  Do you remember any of the artists featured in

11  those films?

12      A.  No, not offhand.

13      Q.  Do you remember if any of those were -- and

14  you don't remember the titles of any of those films?

15          MR. TURNHAM:  Objection to form.  Asked

16  and answered.

17      Q.  (By Mr. Bandlow)  Do you remember any of the

18  titles of those films?

19      A.  That wasn't -- no.  That's not my concern when

20  downloading those.

21      Q.  And you downloaded them from BitTorrent;

22  correct?

23      A.  I did.

24      Q.  What type of BitTorrent program were you

25  using?

1        A.   It's called uTorrent, I believe.

2        Q.   UTorrent?

3        A.   Yeah.

4        Q.   That's the name of the software?

5        A.   Yes, I believe so.

6        Q.   Do you recall about how many adult films you

7   downloaded in that May 2017 to December 2017 period?

8        A.   No.  I couldn't tell you a specific number,

9   no.

10       Q.   Have you ever been convicted of a felony?

11       A.   No.

12            MR. BANDLOW:  I don't have any further

13   questions.  I don't know if Curt or Adrienne do.

14            MS. MCENTEE:  Nothing from me.

15            MR. EDMONDSON:  This is Curt Edmondson.  I

16   don't have any questions.

17            MR. BANDLOW:  Josh, I don't know if you

18   want to question your witness.

19            MR. TURNHAM:  No, I don't have any

20   questions.

21            MR. BANDLOW:  Then why don't I propose the

22   following stipulation that -- I don't know if there in

23   Washington, Madam Court Reporter, you're obligated to

24   maintain custody of the original.

25            If you are, I would propose that you be