1

The Honorable Thomas S. Zilly

2

3

4

5

6

7

8
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11
STRIKE 3 HOLDINGS, LLC, a
Delaware corporation,

No. 2:17-cv-01731-TSZ

12
Plaintiff,

**DECLARATION OF LINCOLN
BANDLOW IN SUPPORT OF
PLAINTIFF/COUNTER-
DEFENDANT'S MOTION TO
COMPEL ECONOMICS
INTERNATIONAL
CORPORATION'S COMPLIANCE
WITH RULE 45 SUBPOENA**

13
v.

14
JOHN DOE, subscriber assigned IP
address 73.225.38.130,

15
Defendant.

16
Note on Motion Calendar:
**July 5, 2019**

17

18

19

20
I, Lincoln Bandlow, do hereby state and declare as follows:

21
1.      My name is Lincoln Bandlow.  I am over the age of 18 and am otherwise

22
competent to make this declaration.

23
2.      This declaration is based on my personal knowledge and, if called upon to

24
do so, I will testify that the facts stated herein are true and accurate.

25
3.      I represent Strike 3 Holdings, LLC ("Strike 3" or "Plaintiff") in the above-

26
captioned matter.

BANDLOW DECL. IN SUPPORT OF PLAINTIFF'S
MOTION TO COMPEL ECONOMICS INTERNATIONAL
CORPORATION'S COMPLIANCE WITH SUBPOENA
No. 2:17-cv-01731-TSZ – Page 1

Arête
LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

4.      Concurrently-filed Exhibit "A" contains a true and correct copy of email correspondence between myself and Mr. Curtis Edmondson regarding the Rule 45 subpoenas and production of responsive documents.

5.      Concurrently-filed Exhibit "B" contains a true and correct copy of Strike 3's Notice of Subpoena, Subpoena and Document Request issued on Economics International Corporation (care of Eric Fruits) on May 6, 2019.

6.      Concurrently-filed Exhibit "C" contains a true and correct copy of Mr. Fruits' Estimate of time and expense.

7.      Concurrently-filed Exhibit "D" contains a true and correct copy of Strike 3's conferral letter regarding the deficient responses by Economics International Corporation sent on June 11, 2019.

8.      Plaintiff received Economics International Corporation's responses and objections to Plaintiff's subpoena on May 20, 2019.  *See* Exhibit "A."

9.      On June 4, 2019, Defendant's counsel noted that Defendant's experts would not comply with the subpoena unless they were first paid, stating "Since these costs are now not recoverable under the copyright act, Rimini, we require all expert prep costs requested by the other side to be paid in advance."  *See id.*

10.     In response, Strike 3 explained its issues with Defendant's request and noted that it would be willing to pay the cost of copying and shipping as well as any expert hourly fee for the time spent on tasks which required expert knowledge and skill.  *See Id.*

11.     Defendant then sent Mr. Fruits' estimate of time and expense, *see* Exhibit "C," on June 5, and concluded that the parties should meet and confer if Strike 3 wanted to move to compel.  *See* Exhibit "A."

BANDLOW DECL. IN SUPPORT OF PLAINTIFF'S
MOTION TO COMPEL ECONOMICS INTERNATIONAL
CORPORATION'S COMPLIANCE WITH SUBPOENA
No. 2:17-cv-01731-TSZ – Page 2

Arête
LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

1        I declare under penalty of perjury under the laws of the United States of America that

2    the foregoing is true and correct.

3        Executed on this 20th of June, 2019, at Los Angeles, California.

4

5                                    */s/ Lincoln Bandlow*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

BANDLOW DECL. IN SUPPORT OF PLAINTIFF'S
MOTION TO COMPEL ECONOMICS INTERNATIONAL
CORPORATION'S COMPLIANCE WITH SUBPOENA
No. 2:17-cv-01731-TSZ – Page 3



Arête
LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

## CERTIFICATE OF SERVICE

I, Jeremy Roller, hereby certify that on June 20, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of filing to the following parties:

Adrienne D. McEntee, WSBA #34061
Beth E. Terrell, WSBA #26759
Email: bterrell@terrellmarshall.com
amcentee@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

J. Curtis Edmondson, WSBA #43795
Email: jcedmondson@edmolaw.com
EDMONDSON IP LAW
399 NE John Olsen Avenue Hillsboro
Oregon 97124
Telephone: (503) 336-3749

*Attorneys for Defendant*

DATED this 20th day of June 2019 at Seattle, Washington.

/s/ Jeremy E. Roller
Jeremy E. Roller

BANDLOW DECL. IN SUPPORT OF PLAINTIFF'S
MOTION TO COMPEL ECONOMICS INTERNATIONAL
CORPORATION'S COMPLIANCE WITH SUBPOENA
No. 2:17-cv-01731-TSZ – Page 4

Arête
LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

# EXHIBIT A

From: **Lincoln Bandlow** lincoln@bandlowlaw.com
Subject: **FW: WAWD1003 -- Notices of Intent to Serve Subpoenas on Kalman C. Toth, Eric Fruits (Economics International), and Michael Yasumoto (Deadbolt Forensics)**
Date: May 5, 2019 at 11:38 PM
To: **J. Curtis Edmondson** jcedmondson@edmolaw.com
Cc: amcentee@terrellmarshall.com, bterrell@terrellmarshall.com

Dear Curt,

Thank you for agreeing to accept service on behalf of all John Doe's experts in the above referenced matter. Enclosed please find Strike 3 Holdings, LLC's subpoenas to Kalman C. Toth, Economics International Corp. c/o Eric Fruits, and Deadbolt Forensics LLC c/o Michael Yasumoto. Please note that the subpoenas are only for the production of documents and not for the taking of any depositions.

To minimize any unnecessary costs, Strike 3 requests that each expert produce the responsive documents in electronic form if possible. Responsive documents should be produced to me at: Lincoln@bandlowlaw.com. If necessary, Strike 3 is willing to assist in the production of larger electronic files by providing an electronic storage cloud or device upon request. Please let me know if you have any questions or concerns.

Thank you for your cooperation,

Notice of Intent
to Serv…its.pdf
Notice of Intent
to Serv…oth.pdf
Notice of Intent
to Serv…oto.pdf

**From:** J. Curtis Edmondson <jcedmondson@edmolaw.com>
**Sent:** Monday, May 20, 2019 10:11 PM
**To:** Lincoln Bandlow <Lincoln@bandlowlaw.com>; Adrienne McEntee <amcentee@terrellmarshall.com>
**Cc:** John Atkin <JAtkin@atkinfirm.com>; DN@newmanlaw.com; Jeremy Roller <jroller@aretelaw.com>; Rachel Horvitz <Rachel@newmanlaw.com>
**Subject:** RE: [External] RE: Strike 3 Holdings v. John Doe (73.225.38.130), C17-1731 TSZ (W.D. Wash.)

Counsel:

Please find the attached responses and objections to the discovery requests for our three experts.   Please call me if you have any questions about these responses.

In Best Regards,

J. Curtis Edmondson, Patent Attorney | Edmondson IP Law
USPTO 57027 | CA SBN 236105 | WA SBN 43795 | DC BAR NO 998407 | CA PE 13377| WA PE 43728
Venture Commerce Center, 3699 NE John Olsen Ave, Hillsboro OR 97124
ph: (503) 336-3749 | fax: (503) 482-7418
jcedmondson@edmolaw.com | www.edmolaw.com

On June 4, 2019 at 2:00 PM Lincoln Bandlow <lincoln@bandlowlaw.com> wrote:

Curt,

Have you produced any documents from your experts?  I don't recall receiving any.

*Lincoln Bandlow*

1801 Century Park East, Suite 2400

Los Angeles, CA  90067

P: (310) 556-9680  |  F: (310) 861-5550

Lincoln@BandlowLaw.com

www.BandlowLaw.com

**From:** J. Curtis Edmondson <jcedmondson@edmolaw.com>
**Sent:** Tuesday, June 4, 2019 11:21 AM
**To:** Lincoln Bandlow <lincoln@bandlowlaw.com>; Adrienne McEntee
<amcentee@terrellmarshall.com>; jcedmondson@edmolaw.com
**Subject:** Re: WAWD1003

Hi Lincoln,

We served our expert reports on March 15, 2019.

If this is about the expert depos, you asked for documents in connection with the depositions.  I got an estimate from Michael Yasumoto and he estimated that there would be 20 hours of time to get the documents.  So you need to cut a check for 5K and then the number of hours for the depo.

Then there are documents for Fruits and Toth.  I would expect the costs to be the same.

Since these costs are now not recoverable under the copyright act, Rimini, we require all expert prep costs requested by the other side to be paid in advance.

B. Regards,

J. Curtis Edmondson, Patent Attorney | Edmondson IP Law
USPTO 57027 | CA SBN 236105 | WA SBN 43795 | DC BAR NO 998407 | CA PE 13377| WA PE 43728
Venture Commerce Center, 3699 NE John Olsen Ave, Hillsboro OR 97124
ph: (503) 336-3749 | fax: (503) 482-7418
jcedmondson@edmolaw.com | www.edmolaw.com

From: **Lincoln Bandlow** lincoln@bandlowlaw.com
Subject: RE: WAWD1003
Date: June 4, 2019 at 12:43 PM

To: **J. Curtis Edmondson** jcedmondson@edmolaw.com, **Adrienne McEntee** amcentee@terrellmarshall.com

Curtis,

I understand that you are demanding payment for each expert's response time.  However, I never received an invoice from any expert itemizing the cost (the amount of hours required and the details of each task).  To date, no one has provided any basis for the cost at all, and at least two of the experts failed to provide any actual cost.  This is evidenced by your email below.  I also never received any actual legal support which would remotely indicate that these are costs Strike 3 should bear.  In fact, from my research, the opposite is true.  Indeed, there is basis to support our position that a party is not responsible for paying an expert his hourly expert rate to conduct administrative tasks to comply with a subpoena. *Estate of Lynott by & through Lynott v. Luckovich*, No. C14-0503RSL, 2016 WL 11271942, at *2 (W.D. Wash. Mar. 3, 2016).  On a few occasions your experts even sited (and therefore relied on) a number of website articles that have since been taken down from the respective websites.  I sincerely doubt Strike 3 should bear the burden of any administrative cost associated with hunting those articles down.  Your experts were required under Rule 26(a) to disclose much of the material the subpoena requested anyway, and "[r]equired disclosures have never been compensable[.]" *Young v. Liberty Mut. Grp. Inc.*, No. CV-12-02302-PHX-JAT, 2015 WL 12669890, at *2 (D. Ariz. Jan. 8, 2015).  Therefore, having to pay for the production of those documents is unreasonable.  Strike 3 has not even served your experts with subpoenas for depositions, but when we do, we of course intend on paying them for their time.  The subpoenas served are for the production of documents and nothing more.  No one is asking them to prepare for a deposition.

Notwithstanding these violations and the invalid reasons upon which they are likely based, Strike 3 agrees to pay the cost of any third-party copying service and shipping.  Please also note that Strike 3 previously agreed to pay the cost of electronic production through a cloud-service if that would be easier for the experts.  I do also want to note that Strike 3 is willing to also pay the cost of imaging the hard drive that Mr. Yasumoto examined since copying of this image is considered an "expert" task.

At this time, none of your experts have filed a motion for protective order.  Accordingly, each expert has violated a lawfully issued subpoena.  I have been instructed to move to compel production of records pursuant to the subpoenas.  Please advise of a date and time when we can hold a telephonic meet and confer conference.

Thank You.
*Lincoln Bandlow*


1801 Century Park East, Suite 2400
Los Angeles, CA  90067
P: (310) 556-9680  |  F: (310) 861-5550
Lincoln@BandlowLaw.com
www.BandlowLaw.com

**From:** Curt Edmondson <jcedmondson@edmolaw.com>
**Sent:** Tuesday, June 4, 2019 2:05 PM
**To:** Lincoln Bandlow <lincoln@bandlowlaw.com>; Adrienne McEntee <amcentee@terrellmarshall.com>
**Cc:** jcedmondson_edmolaw com <jcedmondson@edmolaw.com>
**Subject:** Re: WAWD1003

Lincoln,

One of my experts provided an estimate. He won't work unless he gets paid.    I do not need documents
from your experts and my depo should not go more than an hour.

If you want the experts to work for free you can move to compel.

Why don't you narrow your doc request

Curt


Sent from my BlackBerry - the most secure mobile device


From: Lincoln Bandlow lincoln@bandlowlaw.com
Subject: RE: WAWD1003
Date: June 4, 2019 at 4:54 PM
To: Curt Edmondson jcedmondson@edmolaw.com, Adrienne McEntee amcentee@terrellmarshall.com

Curt,
We are willing to narrow if needed, but as of right now none of the experts have provided
detailed information about which requests would take up the majority of the supposed
20+ hours. Please provide a date and time to hold a telephonic meet and confer on this
issue.
Lincoln Bandlow
1801 Century Park East, Suite 2400
Los Angeles, CA 90067
P: (310) 556-9680 | F: (310) 861-5550
Lincoln@BandlowLaw.com
www.BandlowLaw.com

**From:** J. Curtis Edmondson <jcedmondson@edmolaw.com>
**Sent:** Wednesday, June 5, 2019 6:35 PM
**To:** Lincoln Bandlow <lincoln@bandlowlaw.com>; Adrienne McEntee
<amcentee@terrellmarshall.com>; jcedmondson@edmolaw.com
**Subject:** Toth subpoena response hourly estimate.


Lincoln,

I asked Dr. Toth to break your subpoena records down, request-by-request, and he is at an estimated 59.5 hours
(Attached is his spreadsheet).

If you want to move to compel Dr. Toth, then let me know when you want to meet and confer on this.  I am on
vacation next week, but will have my cell phone with me. ████████

I am not sure if you want to reschedule his depo until after we resolve this document issue.  Let me know if you do.



B. Regards,

J. Curtis Edmondson, Patent Attorney, P.E.
Edmondson IP Law
Venture Commerce Center
3699 NE John Olsen Ave, Hillsboro OR 97124
ph: (503) 336-3749 | fax: (503) 482-7418
jcedmondson@edmolaw.com | www.edmolaw.com

Licenses:
CA SBN 236105 | WA SBN 43795 | DC BAR NO 998407 | OR SBN 190356
USPTO 57027
CA PE (Electrical) 13377| WA PE (Electrical) 43728

 **From:** J. Curtis Edmondson <jcedmondson@edmolaw.com>
**Sent:** Friday, June 7, 2019 1:00 PM
**To:** Lincoln Bandlow <lincoln@bandlowlaw.com>; Bradford Kinsey <bkinsey@terrellmarshall.com>;
Adrienne McEntee <amcentee@terrellmarshall.com>
**Subject:** Fruits Time Estimate to collect and review documents in response to the subpoena.


Lincoln,

Here is Dr. Fruits time estimate to collect, review, and produce the documents requested by your subpoena on this
expert.

B. Regards,

J. Curtis Edmondson, Patent Attorney, Edmondson IP Law
Venture Commerce Center, 3699 NE John Olsen Ave, Hillsboro OR 97124
ph: (503) 336-3749 | fax: (503) 482-7418 | jcedmondson@edmolaw.com | www.edmolaw.com
Licenses: CA SBN 236105 | WA SBN 43795 | DC BAR NO 998407 | OR SBN 190356 | USPTO 57027 | CA PE 13377
| WA PE 43728

# EXHIBIT B

1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

8

**WESTERN DISTRICT OF WASHINGTON**

9

STRIKE 3 HOLDINGS, LLC, a Delaware corporation,

10

Case No.: 2:17-cv-01731-TSZ

**NOTICE OF INTENT TO SERVE SUBPOENA**

Plaintiff,

11

12

vs.

13

JOHN DOE subscriber assigned IP address 73.225.38.130,

14

Defendant.

15

16

17

**<u>NOTICE OF INTENT TO SERVE SUBPOENA</u>**

18

Counter-Defendant, Strike 3 Holdings, LLC, hereby provides notice that it intends to

19

serve the attached subpoena directed to Economics International Corp.

20

Dated: May 6, 2019

**LAW OFFICES OF LINCOLN BANDLOW, APC**

21

22

By: /s/ *Lincoln Bandlow*
Lincoln D. Bandlow
1801 Century Park East
Suite 2400
Los Angeles, CA 90067
Telephone: 310-556-9680
Facsimile: 310-861-5550
Email: lincoln@bandlowlaw.com

23

24

25

26

*Attorneys for Plaintiff*

27

28

NOTICE OF INTENT TO SERVE
(Case No.: 2:17-cv-01731-TSZ)

1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2019, a true and correct copy of the foregoing document was served via U.S. Mail and/or email to the following·

J. Curtis Edmondson, WSBA #43795
399 NE John Olsen Avenue H
illsboro, Oregon 97124
Telephone: (503) 336-3749
Email: jcedmondson@edmolaw.com
Attorney for Defendant

Adrienne McEntee, WSBA #34061
Beth E. Terrell, WSBA #26759
TERRELL MARSHALL LAW GROUP PLLC
936 N 34th Street, Ste. 300
Seattle, WA 98103-8869
Ph: 206-816-6603
Fax: 206-350-3528
Email: amcentee@terrellmarshall.com;
bterrell@terrellmarshall.com
Attorney for Defendant

By:     */s/ Lincoln Bandlow*
        Lincoln Bandlow

NOTICE OF INTENT TO SERVE
(Case No.: 2:17-cv-01731-TSZ)

2

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

_____ District of _____

| | |
|---|---|
| _____ <br> *Plaintiff* <br> v. <br> _____ <br> *Defendant* | ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Civil Action No.

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: _____

*(Name of person to whom this subpoena is directed)*

❏ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place: | Date and Time: |
|---|---|
| | |

❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ <br> *Signature of Clerk or Deputy Clerk* | | _____ <br> *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
_____ , who issues or requests this subpoena, are:

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____                         _____

*Server's signature*

_____

*Printed name and title*

_____

*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) *For Other Discovery.*** A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) *Command to Produce Materials or Permit Inspection.***
   **(A) *Appearance Not Required.*** A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B) *Objections.*** A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) *Quashing or Modifying a Subpoena.***
   **(A) *When Required.*** On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B) *When Permitted.*** To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C) *Specifying Conditions as an Alternative.*** In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
   **(A) *Documents.*** A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B) *Form for Producing Electronically Stored Information Not Specified.*** If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C) *Electronically Stored Information Produced in Only One Form.*** The person responding need not produce the same electronically stored information in more than one form.
   **(D) *Inaccessible Electronically Stored Information.*** The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2) *Claiming Privilege or Protection.***
   **(A) *Information Withheld.*** A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B) *Information Produced.*** If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

Attachment to Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action on Economics International Corp.

## DEFINITIONS

A.      "AMENDED EXPERT REPORT" shall refer to Exhibit "A" to this attachment which is a copy of YOUR amended expert report which YOU signed on April 15, 2019.

B.      "COMMUNICATION(S)" shall refer to every manner or means of disclosure, transfer, transmission, or exchange of information, whether orally or by DOCUMENTS and whether face-to-face, in person, in a group, by telephone, by letter, facsimile, telex or telecopy, or by any other process, electric, electronic or otherwise, and includes any DOCUMENTS as defined herein including any medium which abstracts, digests, records, or transcribes any such communication, or any subsequent review or discussion of such communication.

C.      "DOCUMENT(S)" shall have the broadest meaning permitted by Rule 34(a) of the Federal Rules of Civil Procedure, and shall include, without limitation, any tangible record of intelligence or information, whether handwritten, typed, printed or otherwise visually or orally reproduced, including information stored on magnetic or optical media or in solid state storage devices, notes, drafts, reports, films, videotape, drawings, graphs, photographs, illustrations, agreements, letters, test data, circuit diagrams, software structure charts, software flow charts, software functional specifications, software code, data flow diagrams, hardware schematic diagrams, hardware logic diagrams, field maintenance print sets, timing diagrams, technical summaries, product description documents, software description documents, World Wide Web internet pages (whether archived or current), laboratory or engineers' notebooks, project or progress reports, database information, whether for prototypes or production products, and the like that are in YOUR possession, custody, or control, or to which YOU otherwise have access. Any such documents bearing on any sheet (front or back), margins, attachment, or enclosure thereof, and any mark that is not a part of the original text or reproduction thereof, is to be considered and produced as a separate document.

D.      "CONTROL" means in your possession, custody, or control and includes documents and things in the possession, custody or control of any other person in your place of business.

Attachment to Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action on Economics International Corp.

E.      "FILE" and "FILES" mean the complete file, folder, binder, or other filing system, and all documents contained therein as of the date of production, and all documents not physically in the file, folder, binder, or other filing system that are normally kept within the file, folder, binder, or other filing system in the normal course of business.

F.      "RELATE(S)" and "RELATING" shall be construed in their broadest sense to require information, documents, or things which directly or indirectly construe, comprise, concern, constitute, relate, pertain to, mention, explain, identify, describe, discuss, refer to (directly or indirectly), reflect, regard, evidence, represent, comment upon, be connected with, or summarize the subject of the request for documents.

G.       "STRIKE 3" or "PLAINTIFF" means Strike 3 Holdings, LLC, and all of its agents, servants, employees, investigators, attorneys, affiliates, subsidiaries, and all other persons or entities representing either or acting on its behalf.

H.      "YOU," and "YOUR" means Economics International Corp., and any of its directors, officers, employees, and representatives, as well as all other persons acting on its behalf including Dr. Eric Fruits.

I.      As used herein, the connectives "and" and "or" shall be construed either disjunctively or conjunctively so as to acquire the broadest possible meaning.

J.      As used herein, the terms "any," "all," and "each" shall be construed as "any, all, and each" inclusively.

K.      As used herein, the use of the singular form of any word shall include the plural and vice versa.

L.      Masculine forms of any noun or pronoun shall embrace and be read to include the feminine or neuter, as the context may make appropriate.

Attachment to Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action on Economics International Corp.

## **<u>DOCUMENTS REQUESTED</u>**

1.      YOUR complete case file for this ACTION.

2.      YOUR complete time and billing records for services YOU completed in this ACTION.

3.      All expert reports prepared by YOU or at YOUR direction for this ACTION.

4.      All DOCUMENTS setting forth or describing the nature and scope of YOUR assignment in this ACTION.

5.      All COMMUNICATIONS between YOU, on the one hand, and the party or the attorney for the party who retained, hired or designated YOU as an expert witness in this ACTION on the other hand, setting forth or describing the nature and scope of YOUR assignment in this ACTION.

6.      All DOCUMENTS setting forth or describing any limitation on the nature and scope of YOUR assignment in this ACTION.

7.      All COMMUNICATIONS between YOU, on the one hand, and the party or the attorney for the party who retained, hired or designated YOU as an expert witness in this ACTION on the other hand, setting forth or describing any limitation on the nature and scope of YOUR assignment in this ACTION.

8.      All written retainer, fee agreements, or engagement letters regarding YOUR assignment in this ACTION.

9.      All COMMUNICATIONS RELATED to the written retainer, fee agreements, or engagement letters regarding YOUR assignment in this ACTION between YOU and the party or the attorney for the party who retained, hired or designated YOU as an expert witness in this ACTION.

Attachment to Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action on Economics International Corp.

10.     All DOCUMENTS upon which YOUR opinions and conclusions in this ACTION are based.

11.     All DOCUMENTS prepared by YOU including, but not limited to, scientific, technical, or professional articles, books, texts, treatises, journals, or similar publications which have any relevance to the subject(s) to which YOUR testimony relates to YOUR opinions and conclusions in this ACTION.

12.     All DOCUMENTS including any scientific, technical, or professional articles, texts, treatises, journals, or similar publications which YOU read, referred to, considered, or relied upon in arriving at or forming YOUR opinions and conclusions in this ACTION.

13.     All DOCUMENTS demonstrating the amount of time YOU personally spent on this ACTION.

14.     All DOCUMENTS demonstrating exactly how YOU spent YOUR time in this ACTION.

15.     All DOCUMENTS showing the gross compensation and expenses paid to YOU to date for YOUR services as an expert witness by the party designating YOU as an expert witness in this ACTION.

16.     All DOCUMENTS showing the gross compensation and expenses owed to YOU for YOUR services as an expert witness by the party designating YOU as an expert witness in this ACTION.

17.     All DOCUMENTS showing the gross compensation and expenses paid to YOU for your services in the past four (4) years as an expert witness or expert consultant in all other cases by the same party or same attorney(s) for the party designating you as an expert witness in this ACTION.

Attachment to Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action on Economics International Corp.

18.    All DOCUMENTS showing the gross compensation and expenses owed to YOU for your services in the past four (4) years as an expert witness or expert consultant in all other cases by the same party or same attorney(s) for the party designating you as an expert witness in this ACTION.

19.    All DOCUMENTS showing the results of tests, including destructive testing, conducted by YOU in this ACTION.

20.    All DOCUMENTS showing or listing the raw data, including test protocols resulting from any test performed by YOU or at YOUR direction in this case.

21.    All DOCUMENTS analyzing the raw data resulting from any test or examination performed by YOU or at YOUR direction in this ACTION.

22.    All DOCUMENTS setting forth YOUR opinions and conclusions in this ACTION.

23.    All DOCUMENTS setting forth the opinions and conclusions YOU will be giving at trial in this ACTION.

24.    All DOCUMENTS setting forth the basis(es) for each of the opinions and conclusions YOU will be giving at trial in this ACTION.

25.    All DOCUMENTS setting forth the reasons or reasoning for each of the opinions and conclusions YOU will be giving at trial in this ACTION.

26.    All COMMUNICATIONS between YOU and the party who designated YOU as an expert in this ACTION.

27.    All COMMUNICATIONS between YOU and the attorney(s) for the party who designated YOU as an expert in this ACTION.

Attachment to Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action on Economics International Corp.

28.     All DOCUMENTS evidencing any and all interviews conducted by YOU of any and all persons who have, or claim to have, personal knowledge of facts which support the opinions and conclusions YOU will be giving at the trial of this ACTION.

29.     All notes taken or made by YOU or at YOUR direction regarding this ACTION.

30.     All DOCUMENTS provided to YOU by or at the direction of the party or the attorney for the party who retained, hired or designated YOU as an expert witness in this ACTION.

31.     All written reports prepared by other expert(s) upon which YOU intend to rely on in this ACTION.

32.     All DOCUMENTS showing each assumption YOU made in forming the opinions and conclusions YOU will be giving at the trial in this ACTION.

33.     All DOCUMENTS which show any inconsistencies in the opinions and conclusions YOU will be giving at the trial in this ACTION.

34.     All sworn testimony by YOU as an expert witness, including affidavits or declarations, deposition transcripts, or trial transcripts wherein YOU testified in the last four (4) years.

35.     All sworn testimony by YOU as an expert witness, including affidavits or declarations, expert reports, deposition transcripts, or trial transcripts wherein YOU testified on the same or similar issues in any other action involving allegations of copyright infringement through the BitTorrent network.

36.     All expert reports by YOU that YOU are aware were either served on any party or filed in any action involving allegations of copyright infringement through the BitTorrent network.

Attachment to Subpoena to Produce Documents, Information, or Objects or to Permit Inspection
of Premises in a Civil Action on Economics International Corp.

37.     All sworn testimony by others, including affidavits or declarations, depositions or

otherwise which were read, reviewed, or relied upon by YOU, regarding or relating to the subject

matter of this ACTION.

38.     Any and all COMMUNICATIONS between YOU, on the one hand, and the party

or the attorney for the party who retained, hired, or designated YOU as an expert witness in this

ACTION on the other hand, regarding payment arrangement for YOUR expert services rendered

in this ACTION.

39.     Any and all DOCUMENTS which supports YOUR contention that "[i]t defied

economic reasoning and common sense that Mr. Lanksy would form his business and […] 'risk

everything' without a strategy to mitigate the costs or anticipated efforts to infringe on Strike's

works."

40.     Any and all DOCUMENTS you relied on or reviewed to set forth YOUR opinion

that "Custos' service or similar services would [be] more effective and less costly that Strike's

litigation strategy[,]" as listed on page 7 of YOUR AMENDED EXPERT REPORT.

41.     Any and all DOCUMENTS you relied on or reviewed to set forth YOUR opinion

that a copyright infringement notice "would provide an infringer the incentive to convert to a

subscriber[,]" as listed on page 9 of YOUR AMENDED EXPERT REPORT.

42.     Any and all DOCUMENTS you relied on or reviewed to set forth YOUR opinion

that a copyright infringement notice "to subscriber who is not the infringer could result in

proactive actions to prevent infringement, such as changing a wi-fi password[,]" as listed on page

9 of YOUR AMENDED EXPERT REPORT.

Attachment to Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action on Economics International Corp.

43.     Any and all DOCUMENTS you relied on or reviewed to set forth YOUR opinion that sending copyright infringement notices is "more effective than pursuing lawsuits[,]" as described on page 9 of YOUR AMENDED EXPERT REPORT.

44.     Any and all DOCUMENTS containing YOUR online search term history you relied on or reviewed to set forth YOUR opinion that sending copyright infringement notices is "more effective than pursuing lawsuits[,]" as described on page 9 of YOUR AMENDED EXPERT REPORT.

45.     Any and all DOCUMENTS containing legal (case law) research YOU conducted for this ACTION and in forming YOUR opinions listed in YOUR AMENDED EXPERT REPORT.

Exhibit "A" to Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of
Premises in a Civil Action on Economics International Corp.

AMENDED EXPERT REPORT OF ERIC FRUITS, PH.D.
IN THE MATTER OF

STRIKE 3 HOLDINGS, LLC

     V.

JOHN DOE, SUBSCRIBER
ASSIGNED IP ADDRESS 73.225.38.130

CASE NO. 2:17-CV-01731-TSZ
IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

**Economics International Corp.**

503-928-6635

www.econinternational.com

info@econinternational.com

April 15, 2019

# Contents

Summary of conclusions ................................................................. 2

1   Qualifications ........................................................................ 3

2   Assignment and background ....................................................... 4

3   Litigation is not the only effective way to stop infringement ........................ 5

4   DMCA notices as a method to discourage infringement ........................... 7

5   Actual and statutory damages ...................................................... 9

6   Nuisance lawsuits and sue-then-settle strategies ................................. 11

7   Plaintiff's revenues from settling litigation ........................................ 17

8   Damages ........................................................................... 19

9   Conclusion ......................................................................... 20

**Exhibits**

1   Curriculum vitae

# Summary of conclusions

I have been retained by counsel for Defendant in this matter to provide an economic opinion regarding damages in this matter.

Plaintiff's amended complaint alleges that, using BitTorrent, Defendant copied and distributed 87 works in which Plaintiff is the owner of the copyrights-in-suit and thereby willfully infringed on Plaintiff's copyrights. Plaintiff is seeking, inter alia, statutory damages. The following are my conclusions.

- Litigation is not the only way for Plaintiff to stop infringement. If the volume of complaints filed by Strike 3 are an indication of actual infringement, it seems obvious that the filing of lawsuits is not "effective" in deterring infringement.

- DMCA notices are one method to discourage infringement. At the time of the downloading activity alleged by Plaintiff, Defendant's Internet service provider, Comcast, indicates it had policies to comply with the DMCA, including, "a policy to terminate the Service, in appropriate circumstances, provided to any customer or user who is a repeat infringer of third party copyright rights."

- Plaintiff's actions in this suit, and others, are consistent with a theory that plaintiff is pursuing nuisance value settlements, using the prospect of statutory damages and litigation expenses to extract quick settlements of low-probability-of-prevailing claims. Strike 3's strategy in BitTorrent litigation appears to satisfy a three-part test for nuisance value litigation.

- Additional information from Plaintiff would be useful to more comprehensively evaluate Plaintiff's income from pursuing and settling litigation.

The remainder of the report provides the bases for the conclusions summarized above. ∎

STRIKE 3 HOLDINGS, LLC v.
JOHN DOE, SUBSCRIBER
ASSIGNED IP ADDRESS 73.225.38.130

Eric Fruits, Ph.D.

# 1  Qualifications

I am president and chief economist at Economics International Corp., a
consulting firm that specializes in providing economics services to private and
public sector clients. I am also an adjunct professor at Portland State University,
where I teach courses in economics and real estate. I have a masters' and a
doctorate degree in economics and a bachelors' degree in business economics
and public policy. Exhibit 1 is a current curriculum vitae including testimony
and publications.

My graduate-level training included the study of statistics and econometrics (the
application of statistical methods to economics issues). I have taught graduate-
level courses in economics, econometrics, finance, and the economics of
regulation and antitrust. I have published several peer-reviewed papers, each of
which have included statistical and econometric analysis.

I have been engaged in many projects involving financial analysis and business
valuation. I have testified in federal and state courts on business and technology
valuation and financial markets. As an economic damages expert, I have
provided expert testimony regarding business valuation, lost profits, and
foregone income. I have consulted and testified in several matters involving the

valuation of intellectual property, including the valuation of technology, trade marks, and trade dress. I have provided expert opinions involving statistics, economics, and finance to United States of America federal and state courts and to an international criminal tribunal.

I am familiar with BitTorrent litigation. I served as an economics expert in the case of *Malibu Media, LLC v. Doe subscriber assigned IP address 76.126.99.126* in the Northern District of California. I served as an economics expert in the case of *Clear Skies v. Hancock* in the Northern District of Illinois. I served as an economics expert in the case of *QOTD v. Wilson* in the Western District of Washington.

Economics International Corp. is compensated at an hourly rate of $350 for my work on this matter. No part of the compensation is dependent on the outcome of the matter.

## 2   Assignment and background

I have been retained by counsel for Defendant in this matter to provide an economic opinion regarding damages in this matter.

Plaintiff's amended complaint alleges that, using BitTorrent, Defendant copied and distributed 87 works in which Plaintiff is the owner of the copyrights-in-suit and thereby willfully infringed on Plaintiff's copyrights. Plaintiff is seeking, inter alia, statutory damages.

Greg Lansky made a declaration under a penalty of perjury at Docket 4-3. Greg Lansky states he has "…personal knowledge of all matters contained in this declaration…". I note that at Docket 70, made a different declaration about his knowledge. For this purposes of this motion, I will assume Docket 4-2 is accurate and not contradicted by Docket 70.

Relevant parts of the Lansky Declaration (4-2) state:

1. "Unfortunately, piracy is a major threat to our company. We can compete in the industry, but we cannot compete when our content is stolen." (¶22)

2. "We have discovered that when we put videos online for paid members to view, it takes as little as four minutes to be downloaded on to torrent

> websites. We have attempted to identify the initial seeder but have
> found it impossible with the large volume of our subscriber base." (¶23)

3. "We send on average 50,000 DMCA notices a month but it does
virtually nothing to stop the rampant copyright infringement." (¶26)

4. "The only effective way to stop piracy of our movies on BitTorrent is to
file lawsuits like this one." (¶27).

I am not offering any analysis, conclusions, or expert opinions regarding the law.
To the extent this report refers to laws, court decisions, and/or legal opinions, my
analysis is based on an economic evaluation of the information presented.

I have no opinions regarding liability in this matter.

In preparing this report, I have relied on my general expertise and knowledge
regarding economics, finance, and statistics as well as publicly available
information and information provided by Defendant and/or Defendant's
counsel. The materials relied upon are cited in the text and footnotes to this
report. Any of the information referred to in this report and its exhibits, as well
as summaries or exhibits based on this information, may be used at trial.

I understand that discovery is not complete. I reserve the right to supplement or
modify my report and opinions as new or additional information is presented,
obtained, or reviewed or new or additional analyses are completed, including
analyses provided by Plaintiff or its experts.

This amended report incorporates by reference my declaration in this matter
dated February 25, 2019 (Dckt. 81).

# 3   Litigation is not the only effective way to stop infringement

The Lansky Declaration claims filing lawsuits against individual alleged
downloaders is "the only effective way to stop" infringing downloading of its
copyrighted material.

Strike 3 has filed more than 2,700 complaints in federal court alleging copyright
infringement. Filing fees alone amount to more than $1.1 million.

Since the date of the Lansky Declaration, Strike 3 has filed more than 2,600 complaints alleging copyright infringement. In the first two months of 2019, Strike 3 had filed more than 360 complaints. If the volume of complaints filed by Strike 3 are an indication of actual infringement, it seems obvious that the filing of lawsuits is not "effective" in deterring infringement.

The Lansky Declaration claims Strike 3 was formed in 2015. Prior to the formation of Strike 3, Malibu Media, LLC filed nearly 3,300 complaints alleging copyright infringement similar to the claims Strike 3 is making in this case. Mr. Lansky claims he was involved in the industry for approximately nine years before forming Strike 3. His declaration indicates that he was sufficiently familiar with the industry to conclude, "the industry and I were not offering the best quality and experience possible." As someone with nearly a decade of experience in the industry, it would be reasonable to conclude that Mr. Lanksy was aware of the highly publicized Malibu Media cases and had an understanding of the pervasiveness of alleged copyright infringement of pornographic works. It defies economic reasoning and common sense that Mr. Lansky would form his business and—as he says in his declaration—"risk everything" without a strategy to mitigate the costs of anticipated efforts to infringe on Strike 3's works.

Forensic watermarking of content is a well-known and widely used technique to identify individuals distributing infringing content and has been available prior to the formation of Strike 3.[1] Trade publication Streaming Media notes: "Forensic watermarking allows content owners and rights holders to identify pirated content online, then alert internet service providers, who can then issue a warning to the infringing user or even shut off the user's subscription."[2] Using such a service, Strike 3 can identify which of its subscribers is uploading infringing content and take immediate action, such as cancelling the uploaders' subscriptions to Strike 3's services.

---

[1] See, for example: Trabelsi, W. and M. H. Selmi. Multi-signature robust video watermarking. *2014 1st International Conference on Advanced Technologies for Signal and Image Processing (ATSIP)*, pp. 158-163. 2014.

[2] Krefetz, N. Protecting your assets: How studios secure their premium video. *Streaming Media Magazine*. September 28, 2018. https://www.streamingmedia.com/Articles/Editorial/Featured-Articles/Protecting-Your-Assets-How-Studios-Secure-Their-Premium-Video--127701.aspx, retrieved February 22, 2019.

Custos Media Technologies (RF) (Pty) Ltd. provides a service named "Screener Copy." The service adds a unique watermark and embeds a Bitcoin bounty to each video file distributed to users. The watermark and bounty make each copy identifiable and traceable. "Bounty hunters" on the Internet scan video files for the hidden Bitcoin bounties and, once found, claim it as a reward. Once the bounty is claimed, the copyright owner is notified of the leaked copy. Because the bounty is unique to each copy, the copyright owner can identify the source of the leak.[3] Custos indicates it was designed to serve "smaller movie producers" and claims of 130,000 copies of material it has distributed, the service has "not had a single leak."[4] Based on information available at the time of this report, it is likely that Custos' service or similar services would more effective and less costly than Strike 3's litigation strategy.

# 4   DMCA notices as a method to discourage infringement

The Lansky Declaration states Strike 3 sends an average of 50,000 DMCA notices a month, but that the notices do "virtually nothing" to stop infringement of its copyrights.

Citing *In re Charter Commc'ns, Subpoena Enforcement Matter*, 393 F.3d at 773 (8th Cir. 2005), the court in *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.* (E.D. Va., 2016) notes:

> Congress enacted the Digital Millennium Copyright Act ("DMCA"), which sought to strike a balance "between the interests of ISPs in avoiding liability for infringing use of their services and the interest of copyright owners in protecting their intellectual property and minimizing online piracy." In return for a certain

---

[3] Custos Media Technologies (RF) (Pty) Ltd. Custos Video: A simple one-click solution for filmmakers and videographers. 2017. https://custostech.com/custos-video/, retrieved February 22, 2019.

[4] Lourie, G. This SA startup is fighting global problem of online piracy using Bitcoin blockchain. *TechFinancials*. June 21, 2018. https://techfinancials.co.za/2018/06/21/this-sa-startup-is-fighting-global-problem-of-online-piracy-using-bitcoin-blockchain/, retrieved February 22, 2019.

> amount of cooperation, ISPs would enjoy the protection of four
> liability-limiting safe harbors. To be eligible, an ISP must, for
> example, "adopt[] and reasonably implement[], and inform[]
> subscribers and account holders of the service provider's system or
> network of, a policy that provides for the termination in
> appropriate circumstances of subscribers and account holders of
> the service provider's system or network who are repeat
> infringers." [footnotes and citations omitted]

From an economics approach, the idea to "strike a balance" recognizes that the
purpose of copyright enforcement under the DMCA is to discourage
infringement while reducing the costs associated with litigation.

At the time of the downloading activity alleged by Plaintiff, Defendant's Internet
service provider, Comcast, indicates it had policies to comply with the DMCA:[5]

> Owners of copyrighted works who believe that their rights under
> U.S. copyright law have been infringed may take advantage of
> certain provisions of the Digital Millennium Copyright Act of 1998
> (the "DMCA") to report alleged infringements to us. In accordance
> with the DMCA and other applicable laws, Comcast also maintains
> a policy to terminate the Service, in appropriate circumstances,
> provided to any customer or user who is a repeat infringer of third
> party copyright rights.

I understand that Plaintiff has not provided any information demonstrating that
Strike 3 notified Comcast of Defendant's alleged activity outside of the present
litigation.

Monitoring companies like Rightscorp, Inc. send DMCA notices on behalf of
other media companies to the IP address of alleged infringers. In these notices,
requests are made to pay for the works allegedly infringed. In some cases, the
infringers have paid for the works allegedly infringed. In other cases, the notices
have been associated with a cessation of the alleged infringing activity. In either

---

[5] Comcast Corporation. Acceptable use policy for XFINITY® Internet. October 11, 2017.
https://web.archive.org/web/20171011050118/www.xfinity.com/Corporate/Customers/Policies/Hi
ghSpeedInternetAUP.html, retrieved February 22, 2019.

case, if the objective of Strike 3 is to reduce alleged infringement, this approach would be more beneficial to Strike 3 than filing lawsuits. The notice requesting payment would provide an infringer the incentive to convert to a subscriber. A notice to subscriber who is not the infringer could result in proactive actions to prevent infringement, such as changing a wi-fi password. Since the cost of sending a DMCA notice is de minimis, and since a DMCA notice can be sent in a more timely manner than filing a lawsuit, this approach is less costly and more effective than pursuing lawsuits against, what Plaintiff describes as "the worst" infringers.

I understand a 30(b)(6) deposition was taken of Strike 3. I have not had an opportunity to review the deposition transcript. Upon discussion with Defendant's counsel, I understand no objective reasons were presented indicating why DMCA notice cannot be sent to the IP address associated with a subscriber. Upon review of the transcripts, I intend to supplement my report.

# 5   Actual and statutory damages

17 USC 504 identifies two remedies for copyright infringement.

1. **Actual damages and profits**: a quantifiable monetary loss the plaintiff has suffered, or the profit the infringer has gained, from infringing the copyrights. I understand Plaintiff has not made a claim that Defendant gained a profit from the alleged copyright infringement. A quantifiable monetary loss to Plaintiff can be calculated by identifying what Plaintiff would have received had it sold or licensed the works.

2. **Statutory damages**: an amount in the range of $750 to $30,000 per infringed work. In some circumstances, including those in which the infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court may reduce the award of statutory damages to $200.

I understand that Plaintiff sought statutory damages and did not specify the range of statutory damages sought (Complaint, Docket 1).

When this complaint was filed, statutory damages for 80 works was sought. Then, I understand Plaintiff amended its complaint and sought statutory

damages for 87 works. Likewise, Plaintiff did not specify the range of statutory damages sought.

In my experience defendants have been more concerned with the maximum exposure to damages than the likely exposure to damages. This is likely more significant in a case such as this, in which the Plaintiff is represented by a large national law firm having hundreds of attorneys.

For the range of statutory damages specified by 17 USC 504, and assuming Defendant is liable for infringing on all 87 works, damages would be in the range of $62,250 and $2,610,000.

In a similar BitTorrent case, the court concludes statutory damages are not intended to serve as a windfall to plaintiffs:[6]

> Plaintiff argues that a significantly higher award is necessary to force people like Defendants to appear and participate in these BitTorrent cases. Plaintiff apparently wants the Court to raise the statutory damage award to an amount that is at or above the anticipated costs of defending this action. A defendant may, however, decide that conceding liability through default is the best course of action given the nature of the claims and the available defenses. The "punishment" for that choice is the entry of default judgment and an award of damages under the governing standards. As discussed above, those standards lead to the conclusion that the minimum statutory penalty should apply in this case. Plaintiff offers no support for the proposition that participation in federal litigation should be compelled by imposing draconian penalties that are out of proportion to the harm caused by Defendants' actions or any benefits derived therefrom. Statutory damages are not intended to serve as a windfall to plaintiffs and will not be used to provide such a windfall here.

I reserve the right to supplement or modify my report if Plaintiff or its experts provide a quantifiable claim for damages.

---

[6] *CELL Film Holdings, LLC v. Roger Hawkins*, Order Granting in Part Cell Film Holdings' Motions for Default Judgment, Case 2:16-cv-01091-RSL (W.D. Wash, March 14, 2019).

# 6  Nuisance lawsuits and sue-then-settle strategies

Plaintiff's actions in this suit, and others, is consistent with a theory that plaintiff is pursuing nuisance-value settlements, using the prospect of statutory damages and litigation expenses to extract quick settlements of low-probability-of-prevailing claims.

One of the earliest models of a sue-then-settle strategy finds that with low costs of filing a suit, plaintiffs can gather valuable information about the strength of their claim from a defendant's response:[7]

> A strategy such as [file suit, then go to trial if the defendant offers to settle, otherwise drop the action] may not at first seem to make much sense. Why does the plaintiff not grab the settlement when it is offered? Further reflection reveals that such a strategy may be quite appropriate where the defendant has information not available to the plaintiff. For instance, it might be that the defendant has chosen [to offer to settle if violator, otherwise do not offer to settle]. For the plaintiff then, the defendant's offer to settle is an indication that the defendant did in fact violate the law, so that the plaintiff may prefer to increase his winnings by going to trial. On the other hand, the defendant's refusal to offer to settle may be an indication that he did not violate the law, in which case the plaintiff would want to cut his losses. …

> Put differently, the plaintiff's first strategy, (do not sue), is dominated by his fifth strategy, [file suit, then go to trial if the defendant offers to settle, otherwise drop the action]. We conclude that the plaintiff will always bring an action.

> This surprising result is implied by the assumption that the plaintiff incurs no legal costs by filing an action and then dropping it. Given the assumption, the conclusion is quite intuitive: the plaintiff loses nothing from filing suit.

---

[7] P'ng, I. P. L. (1983). Behavior in suit, settlement, and trial. *Bell Journal of Economics*, 14(2): 539–550.

Another early model of "nuisance suits" concludes that although a defendant knows that the plaintiff will drop the case if the defendant responds, the defendant will still be willing to pay a settlement amount of up to the cost of responding solely in order to avoid having to make such a response.[8]

P'ng (1983) applies his sue-then-settle model to what he calls "frivolous suits:"

> To some extent, this result accords with the folklore: a plaintiff brings a frivolous action in the hope of extorting a settlement that is less than the value of the defendant's legal costs. The analysis also points to another possibility: the defendant may be able to deter plaintiffs who have filed actions from bringing these to trial by adopting a strategy of refusing to settle, whatever his true type.

The economic rationale for damages is to make the Plaintiff "whole" and/or to deny the liable party of the profits of from the wrongful act. Concepts of the efficient allocation of resources conclude that laws, institutions, or arrangements that provide a windfall profit to plaintiffs would result in a misallocation of resources. Legal scholars have implicitly incorporated the economic approach in their attempts to define a copyright "troll:"[9]

> A copyright troll is a plaintiff who seeks damages for infringement upon a copyright it owns, not to be made whole, but rather as a primary or supplemental revenue stream.

The following attempt to define "trolling" recognizes the process of searching or prowling for potential revenues from litigation:[10]

> The essence of trolling is that the plaintiff is more focused on the business of litigation than on selling a product or service or licensing their IP to third parties to sell a product or a service. The paradigmatic troll plays a numbers game in which it targets hundreds or thousands of defendants, seeking quick settlements

---

[8] Rosenberg, D. and S. Shavell (1985). A model in which suits are brought for their nuisance value. *International Review of Law and Economics*. 5(1): 3–13.

[9] DeBriyn, J. (2012). Shedding light on copyright trolls: An analysis of mass copyright litigation in the age of statutory damages. *UCLA Entertainment Law Review*, 19(1): 79–112.

[10] Sag, M. (2015). Copyright trolling: An empirical study. *Iowa Law Review*, 100(3): 1105–1147.

> priced just low enough that it is less expensive for the defendant to
> pay the troll rather than defend the claim.

Greenberg (2015) identifies the role statutory damages may play in the misallocation of resources for a copyright owner who "uses the prospect of statutory damages and litigation expenses to extract quick settlements of often weak claims."[11]

Commenting on the doctrine of copyright misuse, Judge Posner noted the following: "hoping to force a settlement or even achieve an outright victory over an opponent that may lack the resources or the legal sophistication to resist effectively, is an abuse of process."[12]

Consistent with Posner's observation regarding opponents with a "lack of resources," AIPLA (2011) reports the median cost of litigating copyright infringement through the end of discovery in the West is $150,000.[13]

Sudarshan (2008) proposes a three-part test to identify nuisance value patent litigation, which could be applied to copyright suits (citations omitted):[14]

> This Article relies on nuisance-value patent litigation having three specific and necessary definitional conditions.
>
> 1. First, the patent holder offers a settlement (or license) figure which is significantly less than the cost of defending the suit through the discovery phase of a trial.
>
> 2. Second, this settlement amount does not correspond to traditional measures of patent damages, i.e., reasonable royalty or lost profits.

---

[11] Greenberg, B. A. (2015). Copyright trolls and common law. *Iowa Law Review Bulletin*, vol. 100:77–86.

[12] *Assessment Techs. of WI, LLC v. Wire Data, Inc.*, 350 F.3d 640 (2003).

[13] American Intellectual Property Law Association (2011). *Report of the Economic Survey*.

[14] Sudarshan, R. (2008). Nuisance-value patent suits: An economic model and proposal, *Santa Clara High Technology Law Journal*, 25(1):159-189.

3. Third, the plaintiff seeks to avoid litigation because of a sufficiently high probability that the asserted claims are a) invalid, or b) not infringed by the defendant's products.

This definition recognizes that a suit is not necessarily a nuisance suit just because the offered settlement amount is less than the cost of defense. For example, the second prong of the definition excludes situations where a defendant's infringement may have been so minor that a license would have been worth less than the cost of asserting the patent in litigation. Similarly, the third prong of the definition leaves out scenarios where a plaintiff's validity and infringement contentions are meritorious, but a steep discount may have been given to the defendant for any number of reasons.

Based on information available at the time of this report, Strike 3's strategy in BitTorrent litigation appears to satisfy Sudarshan's (2008) three-part test for nuisance value litigation.

Sag (2015) suggests that sue-then-settle actions are consistent with a theory that plaintiffs are pursuing nuisance value settlements:[15]

After obtaining the names and addresses of account holders suspected of participating in a BitTorrent swarm, the plaintiff can get to work negotiating settlements. An account holder accused of infringement is almost invariably threatened with statutory damages and the prospect of paying the plaintiff's attorney's fees if he is unable to establish his innocence. Reports indicate that settlements are usually in the range of $2000 to $4000. That is a lot to pay for a movie, but only a fraction of the potential statutory damages for willful copyright infringement, which can be as high as $150,000 per work infringed. The $4000 figure is also evidently "a sum calculated to be just below the cost of a bare-bones defense." This does not prove that the plaintiffs are simply pursuing nuisance-value settlements, but it is consistent with that theory.

---

[15] Sag, M. (2015). Copyright trolling: An empirical study. *Iowa Law Review*, 100(3): 1105–1147.

Consistent with Sag's (2015) observations, I understand Strike 3 has accepted offers of judgment of $3,250, inclusive of damages, costs, and attorney fees.

1. *Strike 3 Holdings, LLC v. John Doe subscriber assigned IP address 76.172.87.57* (S.D.Cal.) 3:17-cv-02317-JAH-BLM.

2. *Strike 3 Holdings, LLC v. John Doe subscriber assigned IP address 76.247.176.87* (N.D.Cal.) 5:17-cv-07058-EJD.

In a similar Strike 3 matter, the court concluded, "Strike 3 is a copyright troll," and invoked much of the economic logic discussed above:[16]

> Little wonder so many defendants settle. Indeed, the copyright troll's success rate comes not from the Copyright Act, but from the law of large numbers. According to PACER, over the past thirteen months, Strike 3 has filed 1849 cases just like this one in courts across the country—forty in this district alone—closely following the copyright trolls who together consumed 58% of the federal copyright docket in 2015. These serial litigants drop cases at the first sign of resistance, preying on low-hanging fruit and staying one step ahead of any coordinated defense. They don't seem to care about whether defendant actually did the infringing, or about developing the law. If a Billy Goat Gruff moves to confront a copyright troll in court, the troll cuts and runs back under its bridge. Perhaps the trolls fear a court disrupting their rinse-wash-and-repeat approach: file a deluge of complaints; ask the court to compel disclosure of the account holders; settle as many claims as possible; abandon the rest. [citations omitted]

Consistent with Judge Lamberth's "Billy Goat Gruff" observation, I understand Strike 3 has dismissed all cases being heard by Judge Zilly. I also understand that in the face of risking $250 in sanctions for missing deadlines in the Eastern District of California, Strike 3 has terminated 24 cases. This seems to support Judge Lamberth's "cut and run" observation.

---

[16] *Strike 3 Holdings, LLC v. John Doe subscriber assigned IP address 73.180.154.14.* Memorandum Opinion. Civil Action #1:18-cv-01425-RCL (D.D.C). November 16, 2018.

1. *Strike 3 Holdings, LLC v. John Doe subscriber assigned IP address 73.2.97.225,* 1:18-cv-01075-MCE-CKD

2. *Strike 3 Holdings, LLC v. John Doe subscriber assigned IP address 24.7.149.73,* 1:18-cv-01076-MCE-CKD

3. *Strike 3 Holdings, LLC v. John Doe subscriber assigned IP address 73.151.0.97,* 1:18-cv-01080-MCE-CKD

4. *Strike 3 Holdings, LLC v. John Doe subscriber assigned IP address 73.220.162.116,* 1:18-cv-01089-MCE-CKD

5. *Strike 3 Holdings, LLC v. John Doe subscriber assigned IP address 73.151.0.180,* 1:18-cv-01304-MCE-CKD

6. *Strike 3 Holdings, LLC v. John Doe subscriber assigned IP address 67.160.250.96,* 2:18-cv-02640-MCE-CKD

7. *Strike 3 Holdings, LLC v. John Doe subscriber assigned IP address 73.70.116.109,* 2:18-cv-02641-MCE-CKD

8. *Strike 3 Holdings, LLC v. John Doe subscriber assigned IP address 73.71.165.41,* 2:18-cv-02642-MCE-CKD

9. *Strike 3 Holdings, LLC v. John Doe subscriber assigned IP address 98.208.93.240,* 2:18-cv-02643-MCE-CKD

10. *Strike 3 Holdings, LLC v. John Doe subscriber assigned IP address 108.245.210.201,* 2:18-cv-02584-MCE-CKD

11. *Strike 3 Holdings, LLC v. John Doe subscriber assigned IP address 162.237.197.54,* 2:18-cv-02585-MCE-CKD

12. *Strike 3 Holdings, LLC v. John Doe subscriber assigned IP address 98.238.245.116,* 2:18-cv-02636-MCE-CKD

13. *Strike 3 Holdings, LLC v. John Doe subscriber assigned IP address 24.10.96.207,* 2:18-cv-02638-MCE-CKD

14. *Strike 3 Holdings, LLC v. John Doe subscriber assigned IP address 71.193.15.139,* 2:18-cv-02639-MCE-CKD

15. *Strike 3 Holdings, LLC v. John Doe subscriber assigned IP address 73.41.142.236,* 2:18-cv-02206-MCE-CKD

16. *Strike 3 Holdings, LLC v. John Doe subscriber assigned IP address 73.41.243.20*, 2:18-cv-02207-MCE-CKD

17. *Strike 3 Holdings, LLC v. John Doe subscriber assigned IP address 73.41.91.169*, 2:18-cv-02208-MCE-CKD

18. *Strike 3 Holdings, LLC v. John Doe subscriber assigned IP address 73.90.99.129*, 2:18-cv-02209-MCE-CKD

19. *Strike 3 Holdings, LLC v. John Doe subscriber assigned IP address 108.197.138.209*, 2:18-cv-02582-MCE-CKD

20. *Strike 3 Holdings, LLC v. John Doe subscriber assigned IP address 24.7.176.79*, 2:18-cv-02201-MCE-CKD

21. *Strike 3 Holdings, LLC v. John Doe subscriber assigned IP address 67.164.218.16*, 2:18-cv-02202-MCE-CKD

22. *Strike 3 Holdings, LLC v. John Doe subscriber assigned IP address 67.169.98.18*, 2:18-cv-02203-MCE-CKD

23. *Strike 3 Holdings, LLC v. John Doe subscriber assigned IP address 73.151.99.229*, 2:18-cv-02204-MCE-CKD

24. *Strike 3 Holdings, LLC v. John Doe subscriber assigned IP address 73.192.163.54*, 2:18-cv-02205-MCE-CKD

# 7   Plaintiff's revenues from settling litigation

Plaintiff has not provided financial information for Strike 3 in this matter. Upon provision of such information, I reserve the right to supplement or modify my report to evaluate revenues and/or income Plaintiff receives from pursuing its litigation strategy in BitTorrent matters. The following information would be useful to more comprehensively evaluate Plaintiff's income from pursuing and settling litigation:

1. Information similar to that submitted to the court in *Malibu Media, LLC v. John Doe subscriber assigned IP address 24.148.79.226*, Plaintiff's Status and Informational Report for Its Cases in the Northern District of Illinois, Civil Action No. 1:14-cv-00693 (N.D. Ill. Apr. 6, 2014). The submission provides

information regarding 268 cases filed by Malibu Media and included the following information:

    a.  Number of cases filed,

    b.  Number of cases with joined defendants and number of cases against a single defendant;

    c.  Investigation costs associated with each case including, but not limited to the purchase and investigation of PCAP files;

    d.  Status of each of the cases, such as:

        i.  Dismissed—Hardship

        ii.  Dismissed—Insufficient Evidence

        iii.  Dismissed—No Discovery

        iv.  Dismissed—Settled (including settlement amount)

        v.  Judgment Entered (including judgment amount)

        vi.  Litigation

        vii.  Negotiating

        viii.  Pre-Discovery

        ix.  Pre-Litigation

2.  Number of monthly and/or annual subscriptions to Strike 3's Blacked, Tushy, and Vixen adult websites; monthly and/or annual subscription revenue; processing charges associated with subscriptions.

3.  Number of monthly and/or annual unit sales of and revenues from DVDs sold by Strike 3.

4.  Monthly and/or annual expenditures associated with serving DMCA notices.

I understand depositions were taken—and continue to be taken—in this matter. I have not had an opportunity to review the deposition transcripts. Lacking any financial details from Strike 3, and based on Defendant's counsel's observations

from deposition testimony, I estimate the following allocation of revenues, costs, and profits from Plaintiff's litigation strategy to date.

| | |
|---|---|
| Revenues from settlements | $7,000,000 |
| Expenses | |
| Filing fees: 2,980 complaints @ $400 per complaint | 1,192,000 |
| Additional court fees @100 per complaint | 298,000 |
| Inside counsel: 2 attorneys at $250,000 per year | 777,000 |
| IPP services @$85,000 a month | 1,584,000 |
| Unallocated costs, including outside counsel | 1,249,000 |
| Net revenues from settlements | $1,900,000 |

*Revenues from settlements*, *IPP services*, and *net revenues from settlements* are from Defendant's counsel's observations of deposition testimony. Number of complaints are from Lex Machina. *Additional court fees* and *inside counsel* costs are my estimates.

Without Plaintiff's financial information, there are approximately $1.25 million in unallocated costs and/or outside counsel fees associated with Plaintiff's litigation strategy to date.

# 8   Damages

My understanding is that Defendant has filed two counterclaims, one for declaratory relief of non-infringement and another for abuse of process. Further, my understanding is that Washington state law entitles a party claiming abuse of process to claim damages.[17]

I understand a part of the damage element is the harm incurred by the individual, including attorney's fees and costs. It is also my understanding that attorney's fees in the Ninth Circuit is determined by "Lodestar."

---

[17] *Hough v. Stockbridge*. 152 Wash. App. 328 (2009)

At this time, I understand that damages will be incurred as the case proceeds. These damage are likely to take the form of attorney's fees, expert fees, and actual harm to the Defendant separate from attorney's fees and costs.

The harm suffered by Defendant would be legal fees, which are ongoing until termination of this matter. At that time, I am prepared to give an opinion regarding the reasonableness of these fees. AIPLA (2011) reports the median cost of litigating copyright infringement through the end of discovery in the West is $150,000, with 50 percent of cases in the range of $100,000 to $250,000.[18]

The U.S. Supreme Court concluded, "a successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright."[19] Economically speaking, an award of attorney's fees that encourages the defense of potential nuisance suits may further the policies of the Copyright Act by discouraging the filing of a suits that plaintiffs and plaintiffs' attorneys know to be nuisance suits.

# 9   Conclusion

Litigation is not the only way for Plaintiff to stop infringement. If the volume of complaints filed by Strike 3 are an indication of actual infringement, it seems obvious that the filing of lawsuits is not "effective" in deterring infringement.

DMCA notices are one well known and widely used method to discourage infringement. At the time of the downloading activity alleged by Plaintiff, Defendant's Internet service provider, Comcast, indicates it had policies to comply with the DMCA, including, "a policy to terminate the Service, in appropriate circumstances, provided to any customer or user who is a repeat infringer of third party copyright rights."

Plaintiff's actions in this suit, and others, are consistent with a theory that plaintiff is pursuing nuisance value settlements, using the prospect of statutory damages and litigation expenses to extract quick settlements of low-probability-

---

[18] American Intellectual Property Law Association (2011). *Report of the Economic Survey.*
[19] *Fogerty v. Fantasy,* 510 U.S. 517 (1994).

EXPERT REPORT OF ERIC FRUITS, PH.D.                                          **21**

of-prevailing claims. Strike 3's strategy in BitTorrent litigation appears to satisfy a three-part test for nuisance value litigation. ∎

Respectfully submitted by

Dated: April 15, 2019

Eric Fruits, Ph.D.

# Eric Fruits, Ph.D.

Tel: 503-928-6635
www.econinternational.com
fruits@econinternational.com

**Dr. Eric Fruits** is an economics expert, finance expert, and statistics expert. He has produced numerous research studies involving economic analysis, financial modeling, and statistical analysis. As an expert witness, he has provided expert testimony in state courts, federal courts, and an international court.



As an economic damages expert, Dr. Fruits has provided expert testimony regarding business valuation, lost profits, and foregone income. He has been a testifying expert in cases involving real estate valuation, health care services, and transportation and shipping services. His research on the formation of cartels was published in the top-tier *Journal of Law & Economics*. His study of the impact of natural gas pipeline on residential property values has been published in the *Journal of Real Estate Research*, one of the premier academic journals in the field. He has provided expert testimony to state courts and federal courts.

As a finance expert, Dr. Fruits has been a testifying expert and provided expert consulting services in cases alleging insider trading and market manipulation. He is a securities expert who has conducted numerous research studies on financial issues, including initial public offerings and municipal bonds.

As a statistical expert, Dr. Fruits has provided expert testimony regarding real estate transactions, profit projections, agricultural commodities, and war crimes allegations. His expert testimony has been submitted to state courts, federal courts, and an international court.

He has written peer-reviewed articles on real estate markets, initial public offerings (IPOs), the municipal bond market, and the formation and operation of cartels.

Dr. Fruits has been affiliated with Portland State University, Pacific Northwest College of Art, University of Southern California, Indiana University, and the Claremont Colleges. He has been an economic consultant with Nathan Associates, LECG, ECONorthwest, and Econ One Research.

## Present Positions & Affiliations

Economics International Corp.                                    2006–present
    President and Chief Economist

Cascade Policy Institute                                        2019–present
    Vice President of Research

International Center for Law & Economics                         2017–present
    Chief Economist

Portland State University                                       2002–present
    Adjunct Professor in Economics, Business Administration, and Urban Studies & Planning

## Previous Professional Experience

| | |
|---|---|
| Portland State University | 2010–2019 |
|     Oregon Association of Realtors Faculty Fellow | |
|     *Center for Real Estate Quarterly Report*, Editor | |
| Nathan Associates Inc. | 2012–2018 |
|     Principal Consultant | |
| Info Tech, Inc. | 2015–2018 |
|     Expert Consultant | |
| Pacific Northwest College of Art | 2009–2010 |
|     Adjunct Professor | |
| ECONorthwest | 2002–2008 |
|     Senior Economist | |
| LECG, LLC | 1999–2002 |
|     Senior Economist | |
| Claremont Graduate University | 1996–2002 |
|     Adjunct Professor of Economics and Visiting Scholar | |
| Econ One Research, Inc. | 1998–1999 |
|     Economist | |
| University of Southern California, Marshall School of Business | 1997–1998 |
|     Visiting Assistant Professor of Finance & Business Economics | |
| Indiana University, Kelley School of Business | 1997 |
|     Visiting Assistant Professor of Business Economics & Public Policy | |
| Scripps College | 1996 |
|     Adjunct Professor of Economics | |
| Pomona College | 1994 |
|     Lecturer in Economics | |
| Andersen Consulting | 1990–1991 |
|     Staff Consultant | |

## Education

| | |
|---|---|
| Ph.D., Economics, Claremont Graduate University | 1997 |
| M.A., Economics, Claremont Graduate University | 1993 |
| B.S. with Distinction, Business Economics & Public Policy, Indiana University | 1990 |

# Publications, Reports, and Other Papers

## Academic Publications

Perceived environmental risk, media, and residential sales prices. *Journal of Real Estate Research*, with J. Freybote. 37(2):217–243. 2015.

Compact development and greenhouse gas emissions: A review of recent research. *Center for Real Estate Quarterly Journal*, 5(1):2–7. Winter 2011.

Test bank for W. B. Brueggeman and J. D. Fisher. *Real Estate Finance and Investments*, 14th ed. McGraw-Hill/Irwin. 2010.

A comprehensive evaluation of the comparative cost of negotiated and competitive methods of municipal bond issuance. *Municipal Finance Journal*, with R. J. Pozdena, J. Booth, and R. Smith. 28(4):15–41. Winter 2008.

Market power and cartel formation: Theory and an empirical test. *Journal of Law and Economics*, with D. Filson, E. Keen, and T. Borcherding. 44:465–480. 2001.

*The Determinants of Managerial Ownership: Theory and Evidence From Initial Public Offerings*. Claremont Graduate University. 1997.

Managerial ownership, compensation, and initial public offerings. In Marr, M. and Hirschey, M., editors, *Advances in Financial Economics*, volume 2. JAI Press. 1996.

## Research Reports

*Impact of Federal Transfers on State and Local Own-Source Spending*. Interstate Policy Alliance. 2015.

*Impact of Right-to-Work on the State of Washington*. Washington Policy Center. 2015.

*Proposal for Management of the Elliott State Forest to Provide Adequate Returns for Oregon Schools*. Cascade Policy Institute. 2014.

*Tax Myths Debunked*. American Legislative Exchange Council, with R. J. Pozdena. 2013.

Forecast of Oregon's economy in 2013: Disappointing but not disastrous. *Center for Real Estate Quarterly Journal*, 6(4):4–10. Fall 2012.

*Right-to-Work and Economic Growth: A Comprehensive Analysis of the Economic Benefits to New Mexico of Enacting a Right-to-Work Law*. Rio Grande Foundation. 2012.

*Right-to-Work is Right for Oregon: A Comprehensive Analysis of the Economics Benefits From Enacting a Right-to-Work Law*. Cascade Policy Institute, with R. J. Pozdena. 2012.

*Tax Policy and the Colorado Economy: The Effects on Employment and Migration*. Common Sense Policy Roundtable, with R. J. Pozdena. 2011.

*Fiscal Impacts of an Oregon Tax Credit Scholarship Program*. Cascade Policy Institute. 2011.

*The Oregon Health Plan: A "Bold Experiment" that Failed*. Cascade Policy Institute. 2010.

*Tax Policy and the Oregon Economy: The Effects of Measures 66 and 67*. Cascade Policy Institute, with R. J. Pozdena. 2009.

*Future Management of the Elliott State Forest: Providing Adequate Returns for Oregons Schools*. Cascade Policy Institute. 2009.

*Fiscal Impacts of Proposed Educational Tax Credits*. Cascade Policy Institute. 2009.

*Impact of Minimum Wage Indexing on Employment and Wages: Evidence from Oregon and Washington*. Employment Policies Institute. 2009.

*The Relationship Between Residential Development and Greenhouse Gas Emissions*. National Association of Homebuilders. 2008.

*Oregon Greenhouse Gas Reduction Policies: The Economic and Fiscal Impact Challenges*. Cascade Policy Institute, with R. J. Pozdena. 2008.

*The Ranking of Oregon State and Local Spending*. Cascade Policy Institute, with R. J. Pozdena. 2008.

Damages: Experts, liability, and calculations. In *The Employment Case: From Discovery to Decision*. Oregon State Bar CLE Seminars. 2004.

*How Does Oregon Spending Rank?  Ideas for Budget Stability*. Cascade Policy Institute, with R. J. Pozdena. 2004.

## Letters, Op-Eds, and Columns

Supplement bus lines with ridesharing. *Portland Tribune*. January 24, 2019.

What ever happened to Pendleton Grain Growers?  Pay attention to your co-op. *Oregon Family Farmer*. Fall 2018.

80% of Oregon marijuana exported? *Oregon Family Farmer*.  Fall 2018.

Taxing e-cigarettes may do more harm than good. *Oregonian*. November 29, 2018.

Policy reforms would improve state for all. *Portland Tribune*. December 14, 2017.  Also published in *Gresham Outlook*.

Health care tax would hurt middle class. *Portland Tribune*. September 21, 2017.

State can balance budget without taxes. *Portland Tribune*. February 23, 2017.

Oregon leaders must reject Medicaid expansion. *Oregonian*. January 27, 2017.

Oregon: State of wonder, or state of failure? *Oregon Business*. May 2016.

How "free" federal money costs North Carolina. *News & Observer*, with B. Balfour. December 15, 2015.

The real cost to states of "free" federal grants. *Orange County Register*. December 10, 2015.

Demand, not fiat, creates jobs. *Wall Street Journal*. June 27, 2015.

Right to work is right for Washington. *Puget Sound Business Journal*, with Erin Shannon. June 26, 2015.

Oregon chemical bill is bad news for businesses. *Oregonian*. April 11, 2015.

Right to work is right for West Virginia. *Charleston Daily Mail*. February 19, 2015.

City's noble goal meets an outlawed tax. *Portland Tribune*. August 8, 2012.

Right to work law can spur economy. *Deming Headlight*. July 10, 2012. Also published in *Tri-City Tribune*.

Rethinking public schools: It's time Portland elects a real education mayor. *Oregonian*. August 9, 2011.

PPS bonds: Save the schools but lose the house? *Oregonian*. January 12, 2011.

Water and sewer charges: Basic services before pet projects. *Oregonian*. May 21, 2010.

PERS disaster will cost taxpayers. *Statesman Journal*. November 8, 2009.

Health care: Congress can learn from the costly mistakes of the states. *Oregonian*. September 1, 2009.

Behind Oregon's jobless rate. *Oregon Business*. February 2009.

The high costs of climate change policies. *Oregonian*. January 24, 2009.

Facing the challenge of a revenue shortfall. *Oregonian*. November 19, 2008.

The youngest boomers trail behind. *Oregon Business*. September 2008.

Slow the growth to cut the carbon. *Oregon Business*. April 2008.

Do we really have a health-care crisis? *Oregon Business*. January 2008.

Economic forecast: Will 2008 bring economic salvation? *Oregon Business Powerbook 2008*. 2007.

The pixie dust of streetcars. *Oregon Business*. October 2007.

Pay me what I'm worth, or else. *Oregon Business*. July 2007.

Easy money. *The Economist*, p. 6. 1994.

## Committee and Other Service

Peer reviewer and academic adviser for textbooks and academic journals:

A. O'Sullivan. *Urban Economics*, 9th ed. McGraw-Hill/Irwin. In print.

*Taking Sides: Clashing Views in Urban Studies*. M. A. Levine, editor. McGraw Hill. 2012.

W. B. Brueggeman and J. D. Fisher. *Real Estate Finance and Investments*, 14th ed. McGraw-Hill/Irwin. 2011.

*Municipal Finance Journal*

*Land Economics*

Taxpayer Association of Oregon.  Board Member, 2014–present.

City Club of Portland.  Research Board Member, 2015–2017.

State of Oregon.  Explanatory Statement Committee member.  Ballot Title 86:  Amends Constitution:  Requires creation of fund for Oregonians pursuing post-secondary education, authorizes state indebtedness to finance fund. 2014.

Laurelhurst Neighborhood Association.  City of Portland, Oregon.  Past President and Board Member, 2014–2015.  President, 2009–2014.

City of Portland.  Mayor's Economic Cabinet.  2008–2012.

State of Oregon Department of Environmental Quality.  Fiscal Advisory Committee for the Proposed Adoption of Air Quality Improvements at the PGE Boardman Power Plant.  2008.

State of Oregon Department of Environmental Quality.  Fiscal Advisory Committee for the Proposed Adoption of the Utility Mercury Rule and Other Federal Air Quality Regulations. 2006.

City of Portland.  Mayor's Ad Hoc Work Group on Regulatory Reform.  2002.

## Testimony in Legal Proceedings

*Julie Veysey v. Israel Cervante Meraz and Henry Nicholas Veysey.*  Circuit Court for the State of Oregon for the County of Marion.  Case No. 17CV52030.  Trial testimony October 3, 2018.

*Katrina L. Pinkerton v. Wells Fargo Bank, N.A.*  United States Bankruptcy Court for the District of Oregon.  Case No. 17-33794-tmb13.  Adv. Proc. No. 18-03016-tmb.  Prove-up hearing testimony June 20, 2018.

*Estate of Jamey Charlotte Haines v. State of Oregon Department of Transportation.*  Circuit Court for the State of Oregon for the County of Washington.  Case No. 17CV17952.  Trial testimony February 6, 2018.

*Rosebank Road Medical Services Ltd. dba Rosebank Road Medical Centre, and Geeta Murali Ganesh v. Ramji Govindarajan and John Does 2–20.*  Superior Court of California, County of San Francisco, Unlimited Civil.  Case No. CGC-16-549755.  Deposition testimony September 27, 2017.  Trial testimony December 13–14, 2017.

*United States of America ex rel. Duke Tran v. Wells Fargo Bank, N.A.*  United States District Court for the District of Oregon, Portland Division.  Case No. 3:15-cv-979.  Deposition testimony October 3, 2017.

*Nubia Rodriguez v. The State of Oregon, Department of Human Services and Antoinette Hughes.*  Circuit Court for the State of Oregon for the County of Multnomah.  Case No. 16CV09393.  Trial testimony September 13, 2017.

*Madison-Rae Jordan v. United States of America.*  United States District Court for the Southern District of California.  Case No. 3:15-cv-01199-BEN-NLS. Deposition testimony January 25, 2017.

*Marie M. Pearson v. Waste Management of Oregon, Inc. and James Walker.* Circuit Court for the State of Oregon for the County of Multnomah. Case No. 15CV18258. Trial testimony August 23, 2016.

*Investors Asset Acquisition, et al. v. Angelo S. Scardina, et al.* Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida. Case No. 502014CA004618XXXXMB AD. Deposition testimony August 5, 2016.

*James Busey vs. Richland School District, Richard Jansons, Heather Cleary, Mary Guay, Rick Donahoe, and Phyllis Strickler.* United States District Court for the Eastern District of Washington. Case No. CV-12-5022-EFS. Deposition testimony February 25, 2016.

*Kivin Varghese v. Amazon.com, Inc. and Amazon Technologies, Inc.* Superior Court for the State of Washington in and for the County of King. No. 12-2-39303-6 SEA. Deposition testimony September 22, 2014.

*LMG Concerts, LLC v. Salem Communications Corporation, Salem Media of Oregon, Inc., Caron Broadcasting, Inc., Does 1 through 5.* U.S. District Court for the District of Oregon. Case No. 3:12-CV-1117. Deposition testimony September 18, 2013.

*Claude Hadley v. Extreme Technologies, Inc.* Circuit Court for the State of Oregon for Lane County. Case No. 16-11-03225. Trial testimony March 14, 2012.

*David Hill Development, LLC, v. City of Forest Grove, Steve A. Wood, and Robert A. Foster.* U.S. District Court for the District of Oregon. Civ. No. 08-266-AC. Deposition testimony December 10, 2010. Trial testimony September 20, 2011.

*Gordon Ogawa v. Malheur Home Telephone Company dba Malheur Bell and Qwest Corporation.* U.S. District Court for the District of Oregon. No. CV 08-694-MO. Trial testimony September 9, 2010.

*Dave Molony and Gold Leaf Investments, Inc. v. Crook County.* U.S. District Court for the District of Oregon. No. 3:05-CV-1467-MO. Trial testimony May 27, 2009.

*Starr-Wood Cardiac Group of Portland, P.C., Dr. H. Storm Floten, and Dr. Anthony Furnary v. Dr. Jeffrey S. Swanson, Dr. Hugh L. Gately, and Cardiothoracic Surgeons LLC.* Circuit Court for the State of Oregon for the County of Multnomah, No. 0706-06308. Trial testimony September 5, 2008.

*Milutinovic et al.* International Criminal Tribunal for the former Yugoslavia, No. IT-05-87 PT. Trial testimony April 23–24, 2008.

*In re: The Marriage of Virginia Salvadori and Gabriel Salvadori.* State of Washington Clark County Superior Court, No. 06-3-00692-2. Trial testimony April 14, 2008.

*Pamela L. Bond, Individually and as Personal Representative of the Estate of Craig R. Bond, Deceased v. United State of America.* U.S. District Court for the District of Oregon. No. 06-1652-JO. Trial testimony February 6, 2008.

*Erik E. Tolleshaug v. Shaver Transportation Co.* Circuit Court for the State of Oregon for the County of Multnomah, No. 060809122. Trial testimony December 14, 2007.

*In re: The Marriage of Denise M. Kunze and Gust F. Kunze.* State of Washington Clark County Superior Court, No. 05-3-00801-3. Trial testimony October 29, 2007.

*Securities and Exchange Commission v. Philip Evans and Paul Evans.* U.S. District Court for the District of Oregon. No. CV 05-1162-PK. Deposition testimony February 27, 2007. Trial testimony March 8, 2007.

*Randall D. Lam v. Kaiser Foundation Hospitals; Northwest Permanente, P.C.; Kaiser Foundation Health Plan of the Northwest; Robert James Shneidman, M.D.; and David Lee Brown, Jr., P.A.* Circuit Court for the State of Oregon for the County of Multnomah. No. 020706633. Trial testimony November 9, 2006.

*Vitascan Partners I and Vitascan Partners II v. G.E. Healthcare Financial Services and GE/Imatron.* Superior Court for the State of California. No. 01129909. Trial testimony July 24, 2006.

*Squaxin Island Tribe, Island Enterprises, Inc., Swinomish Indian Tribal Community, and Swinomish Development Authority v. Fred Stephens, Director, Washington State Department of Licensing.* U.S. District Court for Western District of Washington. No. C033951Z. Deposition testimony June 15, 2005.

*Androutsakos v. M/V PSARA, PSARA Shipping Corporation, and Chevron U.S.A., Inc.* United States District Court for the District of Oregon. No. 02CV1173KI. Trial testimony May 21, 2004.

*In re: Consolidated PERS Litigation.* Supreme Court for the State of Oregon. Nos. S50593, S50532, S50656, S50657, S50645, S50685, S50687, and S50686. Trial testimony February 27, 2004.

*CollegeNET, Inc., v. ApplyYourself, Inc.* United States District Court for the District of Oregon. Nos. 02CV484HU and 02CV1359HU. Daubert hearing May 9, 2003.

## Grants and Awards

| | |
|---|---|
| City of Portland Spirit of Portland Award, nominee | 2010 |
| City of Portland Livability Volunteer Award | 2010 |
| Institute for Humane Studies Research Grant | 1996 |
| John Randolph Haynes and Dora Haynes Foundation Grant | 1995 |
| Lynde and Harry Bradley Foundation Grant | 1992–1995 |
| Lionel Edie Award | 1990 |

## Courses Taught

Microeconomics

Industrial Organization

Economics of Regulation and Antitrust

Urban Economics

Managerial Economics

Econometrics

Eric Fruits, Ph.D.                                                                                                  9

Real Estate Finance and Investment

State and Local Public Finance

Economics and the Creative Industries

War Crimes

March 14, 2019

# EXHIBIT C

**Eric Fruits, Ph.D.: Estimate of time and expense**
Notice of intent to serve subpoena

| Item # | Summary | Notes | Minutes |
|---|---|---|---|
| 0. | | Time to prepare this estimate | 75 |
| 1. | Complete case file | Compile and organize requested information | 120 |
| 2. | Complete time and billing records | Review case archive | 15 |
| 3. | All expert reports | Already submitted | 5 |
| 4. | Nature and scope of assignment | Review case archive | 10 |
| 5. | Communications with party and attorney re: nature and scope | Review case archive | 10 |
| 6. | Limitations on scope and nature of assignment | Review case archive | 10 |
| 7. | Communications with party and attorney re: limitations | Review case archive | 10 |
| 8. | Engagement letters, etc. | Review case archive | 10 |
| 9. | Communications re: engagement letters, etc. | Review case archive | 10 |
| 10. | Documents supporting opinions | Review case archive | 45 |
| 11. | Publications | Not applicable | 0 |
| 12. | Documents read or relied upon | Review case archive | 30 |
| 13. | Documents demonstrating time spent | Review case archive | 15 |
| 14. | Documents demonstrating how time spent | Review case archive | 15 |
| 15. | Gross compensation and expenses paid | Review case archive | 15 |
| 16. | Gross compensation and expenses owed | Review case archive | 15 |
| 17. | Gross compensation and expenses paid in past 4 years | Review case archive; may be subject to privilege, protective order, confidentiality agreement | 30 |
| 18. | Gross compensation and expenses owed in past 4 years | Review case archive; may be subject to privilege, protective order, confidentiality agreement | 30 |
| 19. | Test results | Review case archive | 10 |
| 20. | Raw data and test protocols | Review case archive | 10 |
| 21. | Raw data analysis | Review case archive | 10 |
| 22. | Documents setting forth opinions and conclusions | Review case archive | 10 |
| 23. | Documents setting forth opinions and conclusions to be given at trial | Review case archive | 10 |
| 24. | Documents setting forth bases for opinions and conclusions to be given at trial | Review case archive | 10 |
| 25. | Documents setting forth reasoning for opinions and conclusions to be given at trial | Review case archive | 10 |
| 26. | Communications with party who designated me as expert | Not applicable | 0 |
| 27. | Communications with attorney who designated me as expert | Review case archive; may be subject to privilege, protective order, confidentiality agreement | 10 |
| 28. | Documents of interviews | Not applicable | 0 |
| 29. | Notes taken by me | Review case archive | 10 |
| 30. | Documents provided by attorney or party | Review case archive | 15 |
| 31. | Reports prepared by other experts | Not applicable | 0 |
| 32. | Documents showing assumptions | Not applicable | 0 |
| 33. | Documents showing inconsistencies | Not applicable | 0 |
| 34. | Sworn testimony in last 4 years | Review case archive | 60 |
| 35. | Expert reports and testimony re: BitTorrent in last 4 years | Review case archive | 60 |
| 36. | Expert reports served on any party | Unknown | 0 |
| 37. | Sworn testimony by others | Review case archive | 10 |
| 38. | Communications regarding payment arrangements | Review case archive | 10 |
| 39. | Documents supporting specific statement in report | Review case archive | 10 |
| 40. | Documents supporting specific statement in report | Review case archive | 10 |
| 41. | Documents supporting specific statement in report | Review case archive | 10 |
| 42. | Documents supporting specific statement in report | Review case archive | 10 |
| 43. | Documents supporting specific statement in report | Review case archive | 10 |
| 44. | Online search term history re: item 43 | Review case archive | 10 |
| 45. | Case law research | Review case archive | 10 |
| | | Estimated total minutes | 785 |
| | | Estimated total hous | 13.08 |
| | | **Estimated cost at $350/hour** | **$4,579.17** |

# EXHIBIT D



lincoln@bandlowlaw.com

June 11, 2019

**VIA EMAIL: jcedmondson@edmolaw.com**

J. Curtis Edmondson
Edmondson IP Law
Venture Commerce Center
3699 NE John Olsen Avenue
Hillsboro, OR 97124

RE:    **WAND1003 Strike 3 v. Doe – Mr. Fruits**

Dear Mr. Edmondson,

On May 6, 2019, you accepted service of Strike's 3 subpoenas on each of John Doe's experts in this matter (Kalman C. Toth, Economics International Corp. c/o Eric Fruits, and Deadbolt Forensics LLC c/o Michael Yasumoto).  I understand that the experts have demanded payment for time estimated in responding to the subpoenas.  On June 4, 2019, I sent you an email advising that I had not received any production, nor an invoice from any expert itemizing the cost (the number of hours required and the details of each task).  I also noted that Plaintiff would be willing to pay the cost of copying and shipping as well as any expert hourly fee for the time spent on tasks which required expert knowledge.  On June 7, 2019, you e-mailed me Mr. Fruits' cost break down which totals 13.08 hours.  At Mr. Fruits' $350 hourly rate, this equals $4,579.17.  Although less that Dr. Toth's estimate, Mr. Fruits still demands payment for basic culling and producing documents.  Based on our e-mail exchange it became clear that Mr. Fruits will not comply with Strike 3's subpoena until he is paid.  I am writing this letter to narrow this issue of compensation as well as to address the objections listed in Mr. Fruits' formal subpoena response.

## COMPENSATION OF MR. FRUITS

First, by nature, a subpoena *duces decum* simply requests the production of documents.  And, the 2007 amendment to Rule 26, "changed the Rule's broad language and specifically provided for expert witness compensation only for discovery conducted pursuant to Rule 26(B)(4)(A)—depositions." *Young v. Liberty Mut. Grp. Inc.*, No. CV-12-02302-PHX-JAT, 2015 WL 12669890, at *1 (D. Ariz. Jan. 8, 2015).  Thus, the rule clearly excludes payment for the production of documents.

Second, a number of Strike's subpoena requests seek documents Mr. Fruits relied upon or considered in forming his opinions.  Mr. Fruits' expert report refers to a host of documents



J. Curtis Edmondson
June 11, 2019
Page 2

which: (i) Strike 3 does not have; and (ii) are not publicly available (or if it is, the expert report does not describe the document sufficiently enough for Strike 3 to locate it). For example, Mr. Fruits cited (and therefore relied on) a number of website articles that have since been taken down from their respective websites.[1] A citation which fails to lead the reader to the source or any avenue on which to obtain the source is tantamount to a failure to disclose the facts or data considered. Fed. R. Civ. P. 26(a)(2)(B)(ii) requires an expert to produce a report that contains "the fact or data considered by the witness in forming [his opinions][.]" The notion that Plaintiff would have to pay for the production of documents already required to be produced by the expert is absurd. Plaintiff is unwilling to pay the cost for production here since Mr. Fruits was *required* under Rule 26(a) to disclose much of the material the subpoena requested anyway, and "[r]equired disclosures have never been compensable[.]" *Young v. Liberty Mut. Grp. Inc.*, No. CV-12-02302-PHX-JAT, 2015 WL 12669890, at *2 (D. Ariz. Jan. 8, 2015). Simply put, "[b]ecause the Rule requires the retaining party to produce these documents, [Strike 3] should not have to pay the expert for collecting these documents." *Ndubizu v. Drexel Univ.*, No. CIV.A. 07-3068, 2011 WL 6046816, at *8 (E.D. Pa. Nov. 16, 2011), report and recommendation adopted, No. CIV.A. 07-3068, 2011 WL 6058009 (E.D. Pa. Dec. 6, 2011).

Finally, Strike 3's subpoena does not solicit expert opinions or require any special expertise that would warrant a $350 hourly rate. This is further established by the fact that nearly all of Mr. Fruits' listed time is comprised of locating, copying, and e-mailing (or mailing) the requested documents. Case law supports Strike 3's position that a party is not responsible for paying an expert's hourly expert rate to conduct administrative tasks in comply with a subpoena. *Estate of Lynott by & through Lynott v. Luckovich*, No. C14-0503RSL, 2016 WL 11271942, at *2 (W.D. Wash. Mar. 3, 2016).

Notwithstanding the foregoing, Strike 3 agrees to pay: (1) the reasonable cost of any third-party copying service and shipping; (2) the reasonable cost of electronic production through a cloud-service if that would be easier for the experts; and (3) the reasonable cost of any task which is considered an "expert" task because use of the expert's expertise.

As a side note, please be advised that Mr. Fruits' responses improperly fail to re-state the requests. And, although a number of the responses state that Mr. Fruits will produce documents that are discoverable pursuant to FRCP 26 and 34, these responses conveniently exclude "responsive" documents to which Mr. Fruits believes may be "undiscoverable." To facilitate a proper meet and confer, Plaintiff needs to know which (or what category of) documents are being withheld on the basis that they are "undiscoverable" or on the basis of a listed objection. Lastly, Plaintiff would like to confirm that Mr. Fruits need not produce responsive documents

---

[1] See <https://www.custostech.com/custos-video/>, cited to on Page 7 of Mr. Fruits' Amended Expert Report. See also <https://techfinancials.co.za/2018/06/21/this-sa-startup-is-fighting-global-problem-of-online-piracy-using-bitcoin-blockchain/>, cited to on page 7 of Mr. Fruits' Amended Expert Report.



J. Curtis Edmondson
June 11, 2019
Page 3

which Defendant (or defense counsel) has already produced to Plaintiff in this matter.  Further,
Mr. Fruits need not produce any of the responsive documents already on the public docket in this
case.  This should reduce any time he would need to spend on production.

## <u>ECONOMICS INTERNATIONAL CORP. A/K/A ERIC FRUITS'<br>DEFICIENT RESPONSES</u>

Request No. 1 seeks "YOUR complete case file for this ACTION."  Your response states,
"The objection is overbroad in that 'complete case file' is not defined. Further the request calls
for documents that are not discoverable pursuant to FRCP 26. Further certain documents, such as
the complaint, amended complaint, and attached exhibits that are equally available to the
requesting party. Expert will produce documents that are discoverable pursuant to FRCP 26 and
34." Strike 3's subpoena defined "file" as "the complete file, folder, binder, or other filing
system, and all documents contained therein as of the date of production, and all documents not
physically in the file, folder, binder, or other filing system that are normally kept within the file,
folder, binder, or other filing system in the normal course of business."  To clarify further, Strike
3's meaning of "complete case file" is the entire contents within the file you use in the normal
course of business to organize and store the documents for this action. Although Mr. Fruits'
responses states that he will produce documents that are discoverable pursuant to the Rules,
Strike 3 demands clarification on which documents are not being produced pursuant to an
objections listed.

Request No. 2 seeks, "YOUR complete time and billing records for services YOU
completed in this ACTION."  Mr. Fruits' response states, "Expert will produce documents that
are discoverable pursuant to FRCP 26 and 34." Although Mr. Fruits' responses states that he will
produce documents that are discoverable pursuant to the Rules, Strike 3 demands clarification on
which responsive documents are being withheld on the basis that they are 'undiscoverable.'

Request No. 4 seeks "All DOCUMENTS setting forth or describing the nature and scope
of YOUR assignment in this ACTION."  Mr. Fruits' response states, "Expert will produce
documents that are discoverable pursuant to FRCP 26 and 34." Although Mr. Fruits' responses
states that he will produce documents that are discoverable pursuant to the Rules, Strike 3
demands clarification on which responsive documents being withheld on the basis that they are
'undiscoverable.'

Request No. 5 seeks, "All COMMUNICATIONS between YOU, on the one hand, and
the party or the attorney for the party who retained, hired or designated YOU as an expert
witness in this ACTION on the other hand, setting forth or describing the nature and scope of
YOUR assignment in this ACTION."  Mr. Fruits' response states, "The request calls for
documents that are not discoverable pursuant to FRCP 26. Expert will produce all of the final
expert reports." Although Mr. Fruits' responses states that he will produce the final expert
reports, those are not the only documents sought in this request.  Indeed, the communications



**LINCOLN**
**BANDLOW LAW**

J. Curtis Edmondson
June 11, 2019
Page 4

between John Doe's attorneys and the expert are requested. And, Mr. Fruits' fails to explain what requested documents are not discoverable. Further, although "Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B)," the rule notes an exception "to the extent that the communications: (i) relate to compensation for the expert's study or testimony; (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed." Fed. R. Civ. P. 26 (b)(4)(C)(i)-(iii). Accordingly, Plaintiff will move to compel the production of the communications which fall into those categories.

Request No. 6 seeks, "All DOCUMENTS setting forth or describing any limitation on the nature and scope of YOUR assignment in this ACTION." Mr. Fruits' response states, "Expert will produce documents that are discoverable pursuant to FRCP 26 and 34." Although Mr. Fruits' responses states that he will produce documents that are discoverable pursuant to the Rules, Strike 3 demands clarification on which responsive documents are being withheld on the basis that they are 'undiscoverable.'

Request No. 7 seeks, "All COMMUNICATIONS between YOU, on the one hand, and the party or the attorney for the party who retained, hired or designated YOU as an expert witness in this ACTION on the other hand, setting forth or describing any limitation on the nature and scope of YOUR assignment in this ACTION." Mr. Fruits' response states, "The request calls for documents that are not discoverable pursuant to FRCP 26. Expert will produce all of the final expert reports." Although Mr. Fruits' responses states that he will produce the final expert reports, those are not the only documents sought in this request. Indeed, the communications between John Doe's attorneys and the expert are requested. And, Mr. Fruits' fails to explain which responsive documents are not discoverable.

Request No. 8 seeks, "All written retainer, fee agreements, or engagement letters regarding YOUR assignment in this ACTION." Mr. Fruits' response states, "Expert will produce documents that are discoverable pursuant to FRCP 26 and 34." Although Mr. Fruits' responses states that he will produce documents that are discoverable pursuant to the Rules, Strike 3 demands clarification on which responsive documents are being withheld on the basis that they are 'undiscoverable.'

Request No. 9 seeks, "All COMMUNICATIONS RELATED to the written retainer, fee agreements, or engagement letters regarding YOUR assignment in this ACTION between YOU and the party or the attorney for the party who retained, hired or designated YOU as an expert witness in this ACTION." Mr. Fruits' response states, "The request calls for documents that are not discoverable pursuant to FRCP 26. Expert will produce all of the final expert reports." Although Mr. Fruits' responses states that he will produce the final expert reports, those are not the only documents sought in this request. Indeed, the communications between John Doe's



J. Curtis Edmondson
June 11, 2019
Page 5

attorneys and the expert are requested.  And, Mr. Fruits' fails to explain which responsive documents are not discoverable.

Request No. 10 seeks, "All DOCUMENTS upon which YOUR opinions and conclusions in this ACTION are based." Mr. Fruits' response states, "Expert will produce documents that are discoverable pursuant to FRCP 26 and 34." Although Mr. Fruits' responses states that he will produce documents that are discoverable pursuant to the Rules, Strike 3 demands clarification on which responsive documents are being withheld on the basis that they are 'undiscoverable.'

Request No. 11 seeks, "All DOCUMENTS prepared by YOU including, but not limited to, scientific, technical, or professional articles, books, texts, treatises, journals, or similar publications which have any relevance to the subject(s) to which YOUR testimony relates to YOUR opinions and conclusions in this ACTION."  Mr. Fruits' response states, "Expert will produce documents that are discoverable pursuant to FRCP 26 and 34." Although Mr. Fruits' responses states that he will produce documents that are discoverable pursuant to the Rules, Strike 3 demands clarification on which responsive documents are being withheld on the basis that they are 'undiscoverable.'

Request No. 12 seeks, "All DOCUMENTS including any scientific, technical, or professional articles, texts, treatises, journals, or similar publications which YOU read, referred to, considered, or relied upon in arriving at or forming YOUR opinions and conclusions in this ACTION." Mr. Fruits' response states, "The request calls for documents that are not discoverable pursuant to FRCP 26. Expert will produce all of the final expert reports." Although Mr. Fruits' responses states that he will produce the final expert reports, those are not the only documents sought in this request.  And, Mr. Fruits' fails to explain which responsive documents are not discoverable.

Request No. 13 seeks, "All DOCUMENTS demonstrating the amount of time YOU personally spent on this ACTION."  Mr. Fruits' response states, "Expert will produce documents that are discoverable pursuant to FRCP 26 and 34." Although Mr. Fruits' responses states that he will produce documents that are discoverable pursuant to the Rules, Strike 3 demands clarification on which responsive documents are being withheld on the basis that they are 'undiscoverable.'

Request No. 14 seeks, "All DOCUMENTS demonstrating exactly how YOU spent YOUR time in this ACTION." Mr. Fruits' response states, "Expert will produce documents that are discoverable pursuant to FRCP 26 and 34." Although Mr. Fruits' response states that he will produce documents that are discoverable pursuant to the Rules, Strike 3 demands clarification on which responsive documents are being withheld on the basis that they are 'undiscoverable.'  To be clear, this request only seeks documents such as time sheet or logs of time and tasks entered for this matter.



J. Curtis Edmondson
June 11, 2019
Page 6

     Request No. 15 seeks, "All DOCUMENTS showing the gross compensation and expenses paid to YOU to date for YOUR services as an expert witness by the party designating YOU as an expert witness in this ACTION." Mr. Fruits' response states, "Expert will produce documents that are discoverable pursuant to FRCP 26 and 34." Although Mr. Fruits' response states that he will produce documents that are discoverable pursuant to the Rules, Strike 3 demands clarification on which responsive documents are being withheld on the basis that they are 'undiscoverable.'

     Request No. 16 seeks, "All DOCUMENTS showing the gross compensation and expenses owed to YOU for YOUR services as an expert witness by the party designating YOU as an expert witness in this ACTION." Mr. Fruits' response states, "Expert will produce documents that are discoverable pursuant to FRCP 26 and 34." Although Mr. Fruits' response states that he will produce documents that are discoverable pursuant to the Rules, Strike 3 demands clarification on which responsive documents are being withheld on the basis that they are 'undiscoverable.'

     Request No. 17 seeks, "All DOCUMENTS showing the gross compensation and expenses paid to YOU for your services in the past four (4) years as an expert witness or expert consultant in all other cases by the same party or same attorney(s) for the party designating you as an expert witness in this ACTION." Mr. Fruits' response claims that the request is unintelligible. However, it is intelligible. Nevertheless, Plaintiff offers the following clarification: Plaintiff seeks documents which establish total compensation that Defendant or his attorney has ever paid Mr. Fruits. Please let us know if this sufficiently clarifies the request.

     Request No. 18 seeks, "All DOCUMENTS showing the gross compensation and expenses owed to YOU for your services in the past four (4) years as an expert witness or expert consultant in all other cases by the same party or same attorney(s) for the party designating you as an expert witness in this ACTION." Mr. Fruits' response claims that the request is unintelligible. However, it is intelligible. Nevertheless, Plaintiff offers the following clarification: Plaintiff seeks documents which establish total compensation which Defendant or defense counsel owes Mr. Fruits. Please let us know if this sufficiently clarifies the request.

     Request No. 19 seeks, "All DOCUMENTS showing the results of tests, including destructive testing, conducted by YOU in this ACTION." Mr. Fruits' response states, "Expert will produce documents that are discoverable pursuant to FRCP 26 and 34." Although Mr. Fruits' response states that he will produce documents that are discoverable pursuant to the Rules, Strike 3 demands clarification on which responsive documents are being withheld on the basis that they are 'undiscoverable.'

     Request No. 20 seeks, "All DOCUMENTS showing or listing the raw data, including test protocols resulting from any test performed by YOU or at YOUR direction in this case." Mr. Fruits' response states, "Expert will produce documents that are discoverable pursuant to FRCP



J. Curtis Edmondson
June 11, 2019
Page 7

26 and 34." Although Mr. Fruits' response states that he will produce documents that are discoverable pursuant to the Rules, Strike 3 demands clarification on which responsive documents are being withheld on the basis that they are 'undiscoverable.'

Request No. 21 seeks, "All DOCUMENTS analyzing the raw data resulting from any test performed by YOU or at YOUR direction in this ACTION." Mr. Fruits' response states, "Expert will produce documents that are discoverable pursuant to FRCP 26 and 34." Although Mr. Fruits' response states that he will produce documents that are discoverable pursuant to the Rules, Strike 3 demands clarification on which responsive documents are being withheld on the basis that they are 'undiscoverable.'

Request No. 22 seeks, "All DOCUMENTS setting forth YOUR opinions and conclusions in this ACTION." Mr. Fruits' response states, "Expert will produce documents that are discoverable pursuant to FRCP 26 and 34." Although Mr. Fruits' response states that he will produce documents that are discoverable pursuant to the Rules, Strike 3 demands clarification on which responsive documents are being withheld on the basis that they are 'undiscoverable.'

Request No. 23 seeks, "All DOCUMENTS setting forth the opinions and conclusions YOU will be giving at trial in this ACTION." Mr. Fruits' response states, "Question is vague and ambiguous. EXPERT does not know what questions that counsel will ask at trial or what documents will be handed to during trial. Expert will produce documents that are discoverable pursuant to FRCP 26 and 34." Expert opinions and conclusion are predetermined prior to trial. Indeed, they are the very basis of an expert report. Thus, this request is not vague and ambiguous. Although Mr. Fruits' response states that he will produce documents that are discoverable pursuant to the Rules, Strike 3 demands clarification on which responsive documents are being withheld on the basis of the objection or on the basis that they are 'undiscoverable.'

Request No. 24 seeks, "All DOCUMENTS setting forth the basis(es) for each of the opinions and conclusions YOU will be giving at trial in this ACTION." Mr. Fruits' response states, "Question is vague and ambiguous. EXPERT does not know what questions that counsel will ask at trial or what documents will be handed to during trial. Expert will produce documents that are discoverable pursuant to FRCP 26 and 34." Expert opinions and conclusion are predetermined prior to trial. Indeed, they are the very basis of an expert report. Thus, this request is not vague and ambiguous. Although Mr. Fruits' response states that he will produce documents that are discoverable pursuant to the Rules, Strike 3 demands clarification on which responsive documents are being withheld on the basis of the objection or on the basis that they are 'undiscoverable.'

Request No. 25 seeks, "All DOCUMENTS setting forth the reasons or reasoning for each of the opinions and conclusions YOU will be giving at trial in this ACTION." Mr. Fruits' response states, "Question is vague and ambiguous. EXPERT does not know what questions that



J. Curtis Edmondson
June 11, 2019
Page 8

counsel will ask at trial or what documents will be handed to during trial.  Expert will produce documents that are discoverable pursuant to FRCP 26 and 34." Expert opinions and conclusion are predetermined prior to trial.  Indeed, they are the very basis of an expert report.  Thus, this request is not vague and ambiguous. Although Mr. Fruits' response states that he will produce documents that are discoverable pursuant to the Rules, Strike 3 demands clarification on which responsive documents are being withheld on the basis of the objection or on the basis that they are 'undiscoverable.'

Request No. 26[2] seeks, "All COMMUNICATIONS between YOU and the party who designated YOU as an expert in this ACTION." Mr. Fruits' response states, "The request calls for documents that are not discoverable pursuant to FRCP 26. Expert will produce all of the final expert reports." Although Mr. Fruits' response states that he will produce the final expert reports, those are not the only documents sought in this request.  Indeed, the communications between John Doe's attorneys and the expert are requested.  And, Mr. Fruits' fails to explain which responsive documents are not discoverable.  Further, although "Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B)," the rule notes an exception "to the extent that the communications: (i) relate to compensation for the expert's study or testimony; (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed." Fed. R. Civ. P. 26 (b)(4)(C)(i)-(iii).  Accordingly, Plaintiff will move to compel the production of the communications which fall into those categories.

Request No. 27 seeks, "All COMMUNICATIONS between YOU and the attorney(s) for the party who designated YOU as an expert in this ACTION."  Mr. Fruits' response states, "The request calls for documents that are not discoverable pursuant to FRCP 26. Expert will produce all of the final expert reports." Although Mr. Fruits' response states that he will produce the final expert reports, those are not the only documents sought in this request.  Indeed, the communications between John Doe's attorneys and the expert are requested.  And, Mr. Fruits' fails to explain which responsive documents are not discoverable.  Further, although "Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B)," the rule notes an exception "to the extent that the communications: (i) relate to compensation for the expert's study or testimony; (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed." Fed. R. Civ. P. 26 (b)(4)(C)(i)-

---

[2] Please be advised that there is confusion as to Mr. Fruits' response to Request No. 26 and 27. There may be a scrivener's error in his response.  Plaintiff assumed that Mr. Fruits' intended to assert the same objections and response as Request no. 3.  Please let us know if that is correct.



J. Curtis Edmondson
June 11, 2019
Page 9

(iii).  Accordingly, Plaintiff will move to compel the production of the communications which fall into those categories.

Request No. 28 seeks, "All DOCUMENTS evidencing any and all interviews conducted by YOU of any and all persons who have, or claim to have, personal knowledge of facts which support the opinions and conclusions YOU will be giving at the trial of this ACTION." Mr. Fruits' response states, "The request calls for documents that are not discoverable pursuant to FRCP 26. Expert will produce all of the final expert reports." Although Mr. Fruits' response states that he will produce the final expert reports, those are not the only documents sought in this request.  And, Mr. Fruits fails to explain which responsive documents are not discoverable.

Request No. 29 seeks, "All notes taken or made by YOU or at YOUR direction regarding this ACTION."  Mr. Fruits' response states, "The request calls for documents that are not discoverable pursuant to FRCP 26. Expert will produce all of the final expert reports." Although Mr. Fruits' response states that he will produce the final expert reports, those are not the only documents sought in this request.  And, Mr. Fruits fails to explain which responsive documents are not discoverable.

Request No. 30 seeks, "All DOCUMENTS provided to YOU by or at the direction of the party or the attorney for the party who retained, hired or designated YOU as an expert witness in this ACTION."  Mr. Fruits' response states, "Overbroad, vague, and requests irrelevant documents."  Plaintiff agrees to limit this request to all documents provided to Mr. Fruits by Defendant's attorneys which contain facts or data Mr. Fruits relied on or considered in forming his opinion in this case, or which: "(i) relate to compensation for the expert's study or testimony; (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed." Fed. R. Civ. P. 26 (b)(4)(C)(i)-(iii).

Request No. 31 seeks, "All written reports prepared by other expert(s) upon which YOU intend to rely on in this ACTION." Mr. Fruits' response states, "Expert will produce documents that are discoverable pursuant to FRCP 26 and 34." Although Mr. Fruits' response states that he will produce documents that are discoverable pursuant to the Rules, Strike 3 demands clarification on which responsive documents are being withheld on the basis that they are 'undiscoverable.'

Request No. 32 seeks, "All DOCUMENTS showing each assumption YOU made in forming the opinions and conclusions YOU will be giving at the trial in this ACTION."  Mr. Fruits' response states, "Expert will produce documents that are discoverable pursuant to FRCP 26 and 34." Although Mr. Fruits' response states that he will produce documents that are discoverable pursuant to the Rules, Strike 3 demands clarification on which responsive documents are being withheld on the basis that they are 'undiscoverable.'



J. Curtis Edmondson
June 11, 2019
Page 10

Request No. 33 seeks, "All DOCUMENTS which show any inconsistencies in the opinions and conclusions YOU will be giving at the trial in this ACTION." Mr. Fruits' response states, "Expert will produce documents that are discoverable pursuant to FRCP 26 and 34." Although Mr. Fruits' response states that he will produce documents that are discoverable pursuant to the Rules, Strike 3 demands clarification on which responsive documents are being withheld on the basis that they are 'undiscoverable.'

Request No. 34 seeks, "All sworn testimony by YOU as an expert witness, including affidavits or declarations, deposition transcripts, or trial transcripts wherein YOU testified in the last four (4) years." Mr. Fruits' response states, "Question is unintelligible and if intelligible, is vague as to the term 'same or similar issues.'" However, this request does not use the term "'same or similar issues." Further, to clarify, Plaintiff seeks all sworn testimony Mr. Fruits provided in his capacity as an expert witness wherein he testified in the last four years. Please let me know if this sufficiently clarifies the request.

Request No. 35 seeks, "All sworn testimony by YOU as an expert witness, including affidavits or declarations, expert reports, deposition transcripts or trial transcripts wherein YOU testified on the same or similar issues in other action involving allegations of copyright infringement through the BitTorrent network." Mr. Fruits' response states, "Question is unintelligible and if intelligible, is vague as to the term 'same or similar issues.'" To clarify, Plaintiff seeks all sworn testimony Mr. Fruits provided in his capacity as an expert witness wherein he testified about the BitTorrent network in the last four years. Please let me know if this sufficiently clarifies the request.

Request No. 36 seeks, "All expert reports by YOU that YOU are aware were either served on any party or filed in any action involving allegations of copyright infringement through the BitTorrent network." Mr. Fruits' response states, "Question is unintelligible and if intelligible, clearly overbroad." Plaintiff would like to modify its request to seek "All expert reports YOU authored which (to the best of YOUR knowledge) were used in any action involving allegations of copyright infringement through the BitTorrent network." Please let me know if this sufficiently clarifies the request.

Request No. 37 seeks, "All sworn testimony by others, including affidavits or declarations, depositions or otherwise which were read, reviewed, or relied upon by YOU regarding or relating to the subject matter of this ACTION." Mr. Fruits' response states, "Expert will produce documents that are discoverable pursuant to FRCP 26 and 34." Although Mr. Fruits' response states that he will produce documents that are discoverable pursuant to the Rules, Strike 3 demands clarification on which responsive documents are being withheld on the basis that they are 'undiscoverable.'



J. Curtis Edmondson
June 11, 2019
Page 11

Request No. 38 seeks, "Any and all COMMUNICATIONS between YOU on the one hand and the party or the attorney for the party who retained, hired or designated YOU as an expert witness in this ACTION on the other hand, regarding payment arrangement for YOUR expert services rendered in this ACTION." Mr. Fruits' response states, "Expert will produce documents that are discoverable pursuant to FRCP 26 and 34." Although Mr. Fruits' response states that he will produce documents that are discoverable pursuant to the Rules, Strike 3 demands clarification on which responsive documents are being withheld on the basis that they are 'undiscoverable.'

Request No. 39 seeks, "Any and all DOCUMENTS which supports YOUR contention that "[i]t defied economic reasoning and common sense that Mr. Lanksy would form his business and […] 'risk everything' without a strategy to mitigate the costs or anticipated efforts to infringe on Strike 3's works.'" Mr. Fruits' response states, "Expert will produce documents that are discoverable pursuant to FRCP 26 and 34." Although Mr. Fruits' response states that he will produce documents that are discoverable pursuant to the Rules, Strike 3 demands clarification on which responsive documents are being withheld on the basis that they are 'undiscoverable.'

Request No. 40 seeks, "Any and all DOCUMENTS you relied on or reviewed to set forth YOUR opinion that 'Custos' service or similar services would [be] more effective and less costly that Strike's litigation strategy[,]' as listed on page 7 of YOUR AMENDED EXPERT REPORT." Mr. Fruits' response states, "Expert will produce documents that are discoverable pursuant to FRCP 26 and 34." Although Mr. Fruits' response states that he will produce documents that are discoverable pursuant to the Rules, Strike 3 demands clarification on which responsive documents are being withheld on the basis that they are 'undiscoverable.'

Request No. 41 seeks, "Any and all DOCUMENTS you relied on or reviewed to set forth YOUR opinion that a copyright infringement notice 'would provide an infringer the incentive to convert to a subscriber[,]' as listed on page 9 of YOUR AMENDED EXPERT REPORT." Mr. Fruits' response states, "Expert will produce documents that are discoverable pursuant to FRCP 26 and 34." Although Mr. Fruits' response states that he will produce documents that are discoverable pursuant to the Rules, Strike 3 demands clarification on which responsive documents are being withheld on the basis that they are 'undiscoverable.'

Request No. 42 seeks, "Any and all DOCUMENTS you relied on or reviewed to set forth YOUR opinion that a copyright infringement notice 'to subscriber who is not the infringer could result in proactive actions to prevent infringement, such as changing a wi-fi password[,]' as listed on page 9 of YOUR AMENDED EXPERT REPORT." Mr. Fruits' response states, "Expert will produce documents that are discoverable pursuant to FRCP 26 and 34." Although Mr. Fruits' response states that he will produce documents that are discoverable pursuant to the Rules, Strike 3 demands clarification on which responsive documents are being withheld on the basis that they are 'undiscoverable.'



**LINCOLN**
**BANDLOW LAW**

J. Curtis Edmondson
June 11, 2019
Page 12

Request No. 43 seeks, "Any and all DOCUMENTS you relied on or reviewed to set forth YOUR opinion that sending copyright infringement notices is 'more effective than pursuing lawsuits[,]' as described on page 9 of YOUR AMENDED EXPERT REPORT." Mr. Fruits' response states, "Expert will produce documents that are discoverable pursuant to FRCP 26 and 34." Although Mr. Fruits' response states that he will produce documents that are discoverable pursuant to the Rules, Strike 3 demands clarification on which responsive documents are being withheld on the basis that they are 'undiscoverable.'

Request No. 44 seeks, "Any and all DOCUMENTS containing YOUR online search term history you relied on or reviewed to set forth YOUR opinion that sending copyright infringement notices is 'more effective than pursuing lawsuits[,]' as described on page 9 of YOUR AMENDED EXPERT REPORT." Mr. Fruits' response states, "Expert will produce documents that are discoverable pursuant to FRCP 26 and 34." Although Mr. Fruits' response states that he will produce documents that are discoverable pursuant to the Rules, Strike 3 demands clarification on which responsive documents are being withheld on the basis that they are 'undiscoverable.'

Request No. 45 seeks, "Any and all DOCUMENTS containing legal (case law) research YOU conducted for this ACTION and in forming YOUR opinions listed in YOUR AMENDED EXPERT REPORT." Mr. Fruits' response states, "Expert will produce documents that are discoverable pursuant to FRCP 26 and 34." Although Mr. Fruits' response states that he will produce documents that are discoverable pursuant to the Rules, Strike 3 demands clarification on which responsive documents are being withheld on the basis that they are 'undiscoverable.'

## **TELEPHONIC CONFERRAL SCHEDULING**

If we are unable to resolve the issue listed in this letter, I have been instructed to move to compel production of records pursuant to the subpoena. Please advise of a date and time when we can hold a telephonic meet and confer conference. I am available June 13 and 14 at any time between 9:00 a.m. and 5:00 p.m.

Sincerely,

Lincoln D. Bandlow