# EXHIBIT 4

```
                    US. DISTRICT COURT
              WESTERN DISTRICT OF WASHINGTON


 STRIKE 3 HOLDINGS, LLC, A           )
 DELAWARE CORPORATION,               )
                                     )
                 PLAINTIFF,          )
                                     )
      VS.                            )   CASE NO.
                                     )   2:17-CV-01731TZS
                                     )
 JOHN DOE SUBSCRIBER ASSIGNED IP     )
 ADDRESS 73.225.38.130,              )
                 DEFENDANT.          )
 _____)
                                     )
 JOHN DOE, SUBSCRIBER ASSIGNED IP    )
 ADDRESS 73.225.38.130,              )
                                     )
            COUNTERCLAIMANT,         )
                                     )
      VS.                            )
                                     )
 STRIKE 3 HOLDINGS, LLC,             )
                                     )
            COUNTERDEFENDANT.        )
                                     )
 _____)


         DEPOSITION OF JESSICA FERNANDEZ, taken on behalf
 of the Counterclaimant, at 35 Hugus Alley, Pasadena,
 California, commencing at 10:08 a.m, Friday, April 12, 2019,
 before Sandra Mitchell, C.S.R. 12553, pursuant to Notice.
```

                                                                2

```
 1      A     I don't know what's being determined.
 2      Q     Well, who are you going to sue?
 3      A     It's done through a filtering process.  It's --
 4   no one does it.  I think it's an automatic process.  We
 5   filter out states that we're not -- we don't have local
 6   counsel in.  We filter out internet service providers
 7   that are not reliable.  We filter out anyone who's
 8   infringed under a certain amount of works.
 9      Q     So you said --
10      A     It's all automatic, though.
11      Q     So the filtering is automatic?
12      A     Yes.
13      Q     Who wrote the automatic filtering software?
14      A     It would probably be Sid.
15      Q     Sid.  Who works for?
16      A     GMS.
17      Q     GMS.  Okay.
18            And do you know Sid's last name?
19      A     He's in --
20            MR. BANDLOW:  Don't give it, please.  But --
21            THE WITNESS:  I don't recall it anyway.
22            MR. EDMONDSON:  It's covered by the protective
23   order.
24   BY MR. EDMONDSON:
25      Q     What's Sid's last name?
```

                                                              161

BARRETT REPORTING, INC.        (888) 740-1100        www.barrettreporting.com

DECLARATION OF ADRIENNE D. MCENTEE IN
SUPPORT OF DEFENDANT'S SUPPLEMENTAL
RESPONSE TO MOTION FOR SUMMARY
JUDGMENT - 28
CASE NO. 2:17-CV-01731-TSZ

```
 1   Garciapath?
 2       A    I glanced at it at some point.  Not in
 3   preparation for this deposition, because it wasn't in
 4   the list of topics, but I glanced at it at some point in
 5   the past.
 6       Q    Okay.  When you say glanced at it, did you
 7   actually read it or just --
 8       A    No, I didn't -- I did not read it in great
 9   detail.
10       Q    Did you see the columns on the report?
11       A    No.
12       Q    No?
13       A    It doesn't ring a bell.
14       Q    Do you have any idea what percentage of the
15   film of your work is sampled from the alleged
16   infringer's system to form a basis for infringement?
17       A    No.
18       Q    Do you know -- you talked about the worst of
19   the worst.  Do you have a standard at Strike 3 Holdings
20   to determine how much of the work has to be on the
21   alleged infringer's computer to make a determination of
22   whether that person is the worst of the worst?
23       A    No.
24       Q    In the data provided to you by IPP, is there a
25   column that shows the percentage of the work that's been
```

187

**BARRETT REPORTING, INC.**            (888) 740-1100            www.barrettreporting.com

DECLARATION OF ADRIENNE D. MCENTEE IN
SUPPORT OF DEFENDANT'S SUPPLEMENTAL
RESPONSE TO MOTION FOR SUMMARY
JUDGMENT - 29
CASE NO. 2:17-CV-01731-TSZ

1  sampled by IPP?
2      A    So yes.  It's called the bit value.
3      Q    Okay.
4      A    And just to go backwards, I think it was -- you
5  had asked me another question about the percentage of
6  work on an infringer's computer that would -- what was
7  the question again?  The first -- the one before that.
8           What I was going to say to that was that,
9  typically, when there is an IP address that has, over
10 the course of, let's say, like, nine months been
11 infringing our works -- and this can span across
12 different brands, of course -- it is our understanding
13 that at that point, the individual has been downloading
14 and has very likely downloaded to completion each of the
15 works, or at least the majority of the works.  Because
16 if not, they wouldn't continue to go back and look for
17 more Blacked, Vixen, Tushy.
18          So an IP address isn't going -- there's not
19 going to be a ton of PCAPs on somebody who is not going
20 back and downloading more and more and more the same
21 content, if that makes sense.  So I may not
22 necessarily -- like, unless I have the defendant's
23 computer, I'm not going to necessarily know that he has
24 the entire work, let's say.  But I know that this
25 particular IP address went into 87 different swarms all

188

BARRETT REPORTING, INC.          (888) 740-1100          www.barrettreporting.com

DECLARATION OF ADRIENNE D. MCENTEE IN
SUPPORT OF DEFENDANT'S SUPPLEMENTAL
RESPONSE TO MOTION FOR SUMMARY
JUDGMENT - 30
CASE NO. 2:17-CV-01731-TSZ

1   ==for the same content over and over and over and over the==
2   ==span of eight months.==
3               That's telling me something at that point.
4   They're not just clicking on a file, downloading half of
5   it, and then saying forget it, I don't want Anal
6   Threesomes.  I want Anal Threesomes 2 instead and then
7   switching on over.  So usually the data is very telling
8   as to that point.
9        Q    Telling to the extent of that IP address?
10       A    Correct, yes.
11       Q    But not a particular computer behind the IP
12  address; correct?
13       A    No -- yeah -- well, that's not entirely true.
14  The data that we get from IPP will also have a port
15  number associated with each of the transactions.  So
16  each of the -- like, on an infringement log you'll see,
17  you know, what BitTorrent client they use.  But you can
18  also see a port number.  And a port number is something
19  that is randomly assigned to -- so when you install a
20  BitTorrent software on your computer, your computer will
21  randomly assign it a port number.
22              And so I might be able to look at a port number
23  and say, oh, wow, we have -- the infringement log shows
24  300 separate transactions for a number of works.  And I
25  can see that the port number is the same for all of

189

BARRETT REPORTING, INC.        (888) 740-1100        www.barrettreporting.com

DECLARATION OF ADRIENNE D. MCENTEE IN
SUPPORT OF DEFENDANT'S SUPPLEMENTAL
RESPONSE TO MOTION FOR SUMMARY
JUDGMENT - 31
CASE NO. 2:17-CV-01731-TSZ

```
 1   them.  That tells me that it's the same computer.  But
 2   sometimes you might be able to see that there's five
 3   different, you know, port numbers and that tells me it's
 4   very likely five different computers.  So to some
 5   degree, yes, it -- it doesn't identify the computer
 6   itself, but it tells you -- it might be able to kind of
 7   narrow in how many computers may have been used for the
 8   infringement.
 9        Q    Well, do you make a determination based on
10   multiple port numbers or --
11        A    Make a determination?
12        Q    A determination of whether to sue?
13        A    Oh, no.  That's just more of something in
14   discovery that I'm looking at.  If I know -- it kind of
15   tells me a little bit, like, how many computers are
16   likely at issue.  So you may disclose 100 devices, but I
17   may be able to narrow it in and say, actually, I think
18   it's maybe just one or two devices, or -- it just would
19   depend on the port number.  And this is just something
20   that would help us.
21        Q    But at time of the analysis --
22        A    We don't look at the port numbers at that time.
23        Q    Okay.
24        A    Not usually.
25        Q    And so you -- but at this point, can you
```

190

BARRETT REPORTING, INC.        (888) 740-1100        www.barrettreporting.com

DECLARATION OF ADRIENNE D. MCENTEE IN
SUPPORT OF DEFENDANT'S SUPPLEMENTAL
RESPONSE TO MOTION FOR SUMMARY
JUDGMENT - 32
CASE NO. 2:17-CV-01731-TSZ

1   identify an individual using that computer?
2       A    I guess I'm not -- you want me to be able to
3   identify -- you're asking me who the infringer is, it
4   sounds like.
5           MR. BANDLOW:  When we have all this data, do we
6   know the specific individual?
7           THE WITNESS:  Oh, yeah, no.  There's -- you
8   know, no.
9   BY MR. EDMONDSON:
10      Q    So any person who's accessed that IP address;
11  correct?
12      A    Yeah.
13      Q    Okay.  And does IPP know that multiple people
14  can access the IP address?
15      A    I don't what IPP knows.
16      Q    Excuse me.  I mixed it up.  Does Strike 3
17  Holdings know that multiple individuals can access an IP
18  address?
19      A    Absolutely.
20      Q    Okay.  And how do you account for the fact that
21  multiple people in a household can access that
22  particular IP address?
23      A    How do I know that?
24      Q    No, how do you -- how do you account for it in
25  your determination of the worst of the worst?

191

BARRETT REPORTING, INC.          (888) 740-1100          www.barrettreporting.com

DECLARATION OF ADRIENNE D. MCENTEE IN
SUPPORT OF DEFENDANT'S SUPPLEMENTAL
RESPONSE TO MOTION FOR SUMMARY
JUDGMENT - 33
CASE NO. 2:17-CV-01731-TSZ

```
 1      A    Oh.  So that determination is -- it's not
 2   something that we are able to really look at until after
 3   we get the defendant's name.  So once we know who the
 4   defendant is, we can -- and where they live, of course,
 5   we can, you know, determine if they might be living with
 6   someone, say a son perhaps, or a wife.  We know if they
 7   live in an apartment complex.  At times later on, even
 8   in discovery, other information is disclosed and they
 9   may, you know, be able to tell us if they had a tenant
10   in the home.  That happens sometimes during settlement
11   negotiations, a defendant will bring forth exculpatory
12   evidence that says, you know, I actually have a tenant;
13   here's the lease that proves it.  And at that point, you
14   know, we obviously abide by Rule 11 and we wouldn't
15   pursue someone that we knew was not the infringer, so
16   long as we knew that they were not the infringer.  But
17   it's hard to do that when you don't have someone's name.
18      Q    Uh-huh.
19      A    It's impossible to do that when you don't have
20   someone's name.
21      Q    What's the average settlement amount with the
22   purported infringers in all your cases?
23           MR. BANDLOW:  This would be designated
24   confidential to the extent you know.
25           THE WITNESS:  I actually don't know the
```

192

BARRETT REPORTING, INC.          (888) 740-1100          www.barrettreporting.com

DECLARATION OF ADRIENNE D. MCENTEE IN
SUPPORT OF DEFENDANT'S SUPPLEMENTAL
RESPONSE TO MOTION FOR SUMMARY
JUDGMENT - 34
CASE NO. 2:17-CV-01731-TSZ