1     The Honorable Thomas S. Zilly

2

3

4

5

6

7

8                  UNITED STATES DISTRICT COURT
                  WESTERN DISTRICT OF WASHINGTON
9                         AT SEATTLE

10
      STRIKE 3 HOLDINGS, LLC, a
11    Delaware corporation,                    No. 2:17-cv-01731-TSZ

12                        Plaintiff,           **DECLARATION OF JESSICA
                                               FERNANDEZ IN SUPPORT OF
13          v.                                 PLAINTIFF/COUNTER-
                                               DEFENDANT'S RESPONSE TO
14    JOHN DOE, subscriber assigned IP         MOTION TO SEAL**
      address 73.225.38.130,
15                                             Noted on Motion Calendar:
                        Defendant.             **July 12, 2019**
16

17

18

19          I, Jessica Fernandez, do hereby state and declare as follows:

20          1.      I am over the age of 18 and am otherwise competent to make this

21    declaration.

22          2.      This declaration is based on my personal knowledge and, if called upon to

23    do so, I will testify that the facts stated herein are true and accurate.

24          3.      I am employed as an in-house attorney for Plaintiff/Counter-Defendant

25    Strike 3 Holdings, LLC ("Strike 3" or "Plaintiff").

26          4.      To my knowledge, only a limited number of people have access to the

      sensitive financial information of this company.

FERNANDEZ DECLARATION IN
SUPPORT OF MOTION TO SEAL
No. 2:17-cv-01731-TSZ – Page 1

**Arête**
LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

5.      I have reviewed the unredacted copies of Defendant's Supplemental Response to Motion for Summary Judgment (Dkt. No. 148)[1], Defendant's Excerpts from my April 12, 2019 Deposition (Dkt. No. 150-5),[2] and Defendant's Excerpts from the April 11, 2019 deposition transcript of Greg Lansky (Dkt. No. 150-12).[3]

6.      Defendant's Excerpts from the April 11, 2019 deposition transcript of Greg Lansky contain information relating to Strike 3's revenue from subscriptions, licensing fees, and DVD sales.  It also contains the total number of subscribers to Strike 3's websites. Defendant's Excerpts from my April 12, 2019 Deposition contain information about the gross and net recovery from Strike 3's legal matters.

7.      Strike 3 does not disclose this information to its competitors or the general public.  All employees who obtain such revenue and proceeds information are under a duty of confidentiality and would not share this information other than with those who need to know it for a business purpose within the company.  Public disclosure of this information could harm Strike 3 by permitting competitors to know Strike 3's revenue and net proceeds and basing, in part, competitive business decisions upon that information.

8.      Defendant's Supplemental Response to Motion for Summary Judgment contains: (1) Strike 3's total number of subscribers; (2) Strike 3's total yearly revenues from subscriptions, licensing fees, and DVD sales; and (3) gross and net recovery from Strike 3's legal matters.

9.      Strike 3 maintains all of the information listed in the immediately preceding paragraph in confidence.

10.      Disclosure of this information could harm Strike 3's competitive standing.

11.      In short, Strike 3 derives economic benefit from keeping this type of

---

[1] This document is also listed as Exhibit 1 to Dkt. No. 147.

[2] This document is also listed as Exhibit 2 to Dkt. No. 147.

[3] This document is also listed as Exhibit 3 to Dkt. No. 147.

FERNANDEZ DECLARATION IN
SUPPORT OF MOTION TO SEAL
No. 2:17-cv-01731-TSZ – Page 2

Arête
LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

information confidential.

12.     Although Plaintiff has made public portions of its own excerpts of Mr. Lansky's deposition transcript and my deposition transcript, which overlap with portions used in Defendant's exhibits, Plaintiff respectfully submits Exhibits "A," "B" and "C" to this declaration, which are redacted public versions of Defendant's Supplemental Response, Excerpts of Jessica Fernandez Deposition, and Excerpts of Greg Lansky, respectively.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 3rd day of July, 2019, at Los Angeles, California.

Jessica Fernandez

Arête
LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## CERTIFICATE OF SERVICE

I, Jeremy Roller, hereby certify that on July 5, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of filing to the following parties:

> Adrienne D. McEntee, WSBA #34061
> Beth E. Terrell, WSBA #26759
> Email: bterrell@terrellmarshall.com
> amcentee@terrellmarshall.com
> 936 North 34th Street, Suite 300
> Seattle, Washington 98103-8869
> Telephone: (206) 816-6603
> Facsimile: (206) 319-5450
>
> J. Curtis Edmondson, WSBA #43795
> Email: jcedmondson@edmolaw.com
> EDMONDSON IP LAW
> 399 NE John Olsen Avenue Hillsboro
> Oregon 97124
> Telephone: (503) 336-3749
>
> *Attorneys for Defendant*

DATED this 5th day of July 2019 at Seattle, Washington.

> */s/ Jeremy Roller*
> Jeremy Roller

FERNANDEZ DECLARATION IN
SUPPORT OF MOTION TO SEAL
No. 2:17-cv-01731-TSZ – Page 4

Arête
LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

# EXHIBIT A

THE HONORABLE THOMAS S. ZILLY

U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC, a Delaware corporation, | NO. 2:17-cv-01731-TSZ |
| Plaintiff, | **DEFENDANT'S SUPPLEMENTAL RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| JOHN DOE, subscriber assigned IP address 73.225.38.130, | |
| Defendant. | |
| JOHN DOE subscriber assigned IP address 73.225.38.130, | |
| Counterclaimant, | |
| vs. | |
| STRIKE 3 HOLDINGS, LLC, | |
| Counterdefendant. | |

DEFENDANT'S SUPPLEMENTAL RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:17-cv-01731-TSZ

Terrell Marshall Law Group PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

## **<u>TABLE OF CONTENTS</u>**

**Page**

I. INTRODUCTION ................................................................................................. 1

II. ADDITIONAL FACTS ...................................................................................... 1

    A.    Strike 3's complaint accused John Doe alone of infringement ......................... 1

    B.    Strike 3 moved to subpoena Doe's internet provider based on the same
allegations ....................................................................................................... 2

    C.    Strike 3's motion for early discovery failed to disclose material facts
to the Court ...................................................................................................... 3

    D.    Strike 3 has used this proceeding to investigate third parties other
than John Doe ................................................................................................... 5

    E.    Strike 3's tactics have literally paid off ........................................................... 6

III. ADDITIONAL AUTHORITY AND ARGUMENT .............................................. 7

    A.    Summary Judgment Standard ............................................................................ 7

    B.    Abuse of Process ............................................................................................... 7

        1.    Strike 3 abused the process by failing to disclose they could
not know whether it was Doe, or someone else, who was
responsible for alleged infringement ..................................................... 8

        2.    Strike 3 improperly used the discovery process to gather
evidence regarding potential infringers other than Doe ........................ 9

        3.    Strike 3's actions proximately caused Doe's harm .............................. 10

    C.    Other federal district courts have refused to allow Strike 3 to engage
in early discovery because Strike 3 does not know whether a
defendant has infringed ................................................................................... 11

    D.    John Doe seeks a bench trial ........................................................................... 12

IV. CONCLUSION ................................................................................................ 12

DEFENDANT'S SUPPLEMENTAL RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - i
Case No. 2:17-cv-01731-TSZ

**Terrell Marshall Law Group PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

## <u>TABLE OF AUTHORITIES</u>

2
**Page**

**FEDERAL CASES**

3

*Anderson v. Liberty Lobby, Inc.*,
4    477 U.S. 242 (1986) ...................................................................................... 7

5
*Celotex Corp. v. Catrett*,
6    477 U.S. 317 (1986) ...................................................................................... 7

7
*Cobbler Nevada, LLC v. Gonzales*,
   901 F.3d 1142 (9th Cir. 2018) ................................................................. 7, 9
8

*Strike 3 Holdings, LLC v. Doe*,
9    351 F. Supp. 3d 160 (D.D.C. 2018) ........................................................... 11

10
*Strike 3 Holdings, LLC v. Doe*,
11    2019 WL 78987 (S.D.N.Y. Jan. 2, 2019) ................................................... 12

12
*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,
   809 F.2d 626 (9th Cir. 1987) ....................................................................... 7
13

14
*Vargas Ramirez v. United States*,
   93 F. Supp. 3d 1207 (W.D. Wash. 2015) ................................................... 10
15

**STATE CASES**

16

17
*Batten v. Abrams*,
   28 Wn. App. 737, 626 P.2d 984 (1981) ...................................................... 10
18

19
*Bellevue Farm Owners Ass'n v. Stevens*,
   198 Wn. App. 464, 394 P.3d 1018 (2017) ................................................... 8

20
*Mark v. Williams*,
21    45 Wn. App. 182, 724 P.2d 428 (1986) ....................................................... 9

22

**FEDERAL RULES**

23
Fed. R. Civ. P. 11 ................................................................................................ 8

24

**OTHER AUTHORITIES**

25
13 Vand. J. Ent. & Tech. L. 695, 724 (2011) ................................................... 12

26

27

DEFENDANT'S SUPPLEMENTAL RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - i
CASE No. 2:17-CV-01731-TSZ

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

# I.  INTRODUCTION

Strike 3 accused John Doe of downloading dozens of Strike 3's pornographic films. Strike 3's allegations minced no words. Strike 3 did not suggest that Doe "might" be responsible for infringement. Strike 3 did not indicate that the facts led to a "reasonable inference" that Doe was guilty. Strike 3 did not hedge any risk whatsoever that someone else could have infringed. In no uncertain terms, Strike 3 alleged: "Defendant downloaded, copied, and distributed a complete copy of Plaintiff's Works without authorization." ECF 1 ¶ 27.

Strike 3 then doubled down, leading the Court to believe that the infringement—for which they said Doe alone was responsible—meant that Strike 3 should be allowed to engage in early discovery to learn Doe's identity so that Doe could be formally named in the amended complaint. Strike 3's motion omitted material facts. First, Strike 3 did not tell the Court that they *could not have known* that Doe was responsible for infringement. Second, Strike 3 did not inform the Court that the technology they used to investigate Doe *could never prove* that anyone downloaded complete copies of Strike 3's works. Finally, Strike 3 did not disclose that they intended to use the discovery process as a fishing expedition directed toward third parties.

These facts have led other courts around the country to conclude that Strike 3 is not entitled to early discovery. Had Strike 3 been candid here, the Court may not have granted Strike 3's *ex parte* request. Strike 3's decision to hide the ball from the Court not only calls into question their duties under Rule 11, it supports liability for the tort of abuse of process. As argued here, and in Doe's prior submission, genuine issues of material fact support Doe's abuse of process counterclaim. Summary judgment should be denied.

# II.  ADDITIONAL FACTS

## A.    Strike 3's complaint accused John Doe alone of infringement.

The first paragraph of Strike 3's complaint takes direct aim at John Doe, the subscriber assigned IP address 73.225.38.130: "This is a case about the ongoing and wholesale copyright infringement of Plaintiff's motion pictures by Defendant…." ECF 1 ¶ 1. Strike 3's

DEFENDANT'S SUPPLEMENTAL RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1
CASE NO. 2:17-CV-01731-TSZ

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

representation that Doe was their sole target, and the only person who could have been responsible for alleged infringement, could not be clearer from the complaint's allegations. The relevant allegations, which accuse Doe of egregious conduct, include:

> 4. Defendant, is in a word, stealing these works on a grand scale. Using the BitTorrent protocol, Defendant is committing rampant and wholesale copyright infringement by downloading Strike 3's motion pictures as well as distributing them to others. Defendant did not infringe just one or two of Strike 3's motion pictures, but has been recorded infringing 80 movies over an extended period of time.
>
> 5. …. Defendant attempted to hide his theft by infringing Plaintiff's content anonymously….
>
> 23. Defendant used the BitTorrent file network to illegally download and distribute Plaintiff's copyrighted motion pictures.
>
> 27. Defendant downloaded, copied, and distributed a complete copy of Plaintiff's Works without authorization.

ECF ¶ 1.

**B.     Strike 3 moved to subpoena Doe's internet provider based on the same allegations.**

Strike 3 made similar allegations in support of their *ex parte* request for early discovery. ECF 4. In their motion, Strike 3 represented: "Not only does Defendant download these movies through the BitTorrent protocol, Defendant distributes these movies to others, encouraging others to steal Strike 3's motion pictures." *Id*. at 8-9. Strike 3 continued, "Defendant's infringement is consistent, ongoing, and highly damaging." *Id*. at 9. "[B]ut for the Doe Defendant directing his or her BitTorrent client to download the torrent file, the alleged infringement would not have occurred." *Id*. at 10.

Strike 3's motion depended entirely on the strength and credibility of the "investigation" conducted by their German investigator, IPP. To support their motion for early discovery, Strike 3 submitted declarations designed to bolster IPP's work. These same witnesses have submitted nearly identical declarations in thousands of other cases, including in

DEFENDANT'S SUPPLEMENTAL RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 2
CASE NO. 2:17-CV-01731-TSZ

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

this district. ECF 79 at 8, 11. Each suggests that Strike 3, rather than IPP, directed the investigation. For example, Strike 3 submitted a declaration from John Pasquale, who testified that he tied the alleged infringement to Doe's IP address based on information he received from IPP. ECF 4-4 ¶ 9. But in his deposition, Mr. Pasquale admitted that he only assumed IPP was the source of the information, and in fact, never communicated with IPP. Ex. 1 (Pasquale Dep.) at 23:1-16, 41:10-21, 45:11-45:3.[1]

Similar problems surround Susan Stalzer. In her declaration, Ms. Stalzer testified that "IPP provided me with the infringing motion picture file for each of the file hashes listed on Exhibit A to Strike 3's Complaint." ECF 4-5 ¶ 8. But when deposed, she explained that it was Strike 3—not IPP—who provided her the "verification tool" she needed for her role in the investigation. Ex. 2 (Stalzer Dep.) at 36:24-37:17, 110:14-16. Ms. Stalzer's contact at Strike 3 is with someone named "Sud." *Id.* Both witnesses conceded they did not draft their declarations and do not know who authored them. Ex. 1 at 22:9-23:2; Ex. 2 at 104:17-25.

The name "Sud" or "Sid" also came up in other depositions. Tobias Fieser testified that when he receives requests for information from Strike 3, those requests often come from Sid. Ex. 3 (Fieser Dep.) at 172:18-173:4, 233:11-25. And Strike 3's corporate representative, Jessica Fernandez, testified that "Sid" does work for GMS and wrote the software that Strike 3 uses to decide who the company should sue. Ex. 4 (Fernandez Dep.) at 161:2-16. Strike 3 initially agreed to work with Doe to depose "Sid/Sud" about his work but has since refused to produce any documents that would provide Doe any information about Sid/Sud's role at Strike 3. Ex. 6 (Plaintiff's Objections and Responses to Defendant's Fourth Set of Requests for Production).

**C.  Strike 3's motion for early discovery failed to disclose material facts to the Court.**

Strike 3 was recently summoned to court in Camden, New Jersey for a May 31, 2019 hearing before Judge Joel Schneider. There, Strike 3 was asked to address questions about allegations in another form complaint involving identical allegations against a different

---

[1] All exhibits are attached to the McEntee Declaration unless otherwise noted.

DEFENDANT'S SUPPLEMENTAL RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 3
CASE NO. 2:17-CV-01731-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  defendant. Many of Judge Schneider's questions "explore[d] Rule 11 concerns" regarding

2  specific allegations in the complaint. Judge Schneider's primary focus was on paragraph 27,

3  which alleges, just as it does here, that "Defendant downloaded, copied, and distributed a

4  complete copy of each of plaintiff's works without authorization." Ex. 7 (Hearing Transcript) at

5  14:4-7, 24:21-33:11.

6         Strike 3 initially tried to skirt around the plain language of paragraph 27, representing

7  that what they are really "saying in the initial Complaint [is] that the subscriber is going to get

8  us to that infringer." *Id.* at 24:8-15. But when Judge Schneider pushed back—"No, that's not

9  what you say, counsel. That's not what you say"—Strike 3's attorneys acknowledged that

10 Strike 3 "may need to look at our Complaint and perhaps tweak what we're saying." *Id.* Strike

11 3 was forced to admit that when they file a complaint, the only evidence they have that a Doe

12 defendant has infringed is his or her connection to an IP address. "Strike 3 doesn't know who

13 the subscriber is…" *Id.* at 22:7-15. They "only know an IP address." *Id.*

14        Strike 3's position is that while they have an "obligation before we file our Amended

15 Complaint under Rule 11 to make sure that we have more [than a connection to an IP address],"

16 they need not do so in their original complaint. *Id.* at 32:8-9. In response to Judge Schneider's

17 suggestion that Strike 3 had "skipped a step," Strike 3 relied on the Ninth Circuit's decision in

18 *Cobbler Nevada, LLC v. Gonzales,* 901 F.3d 1142, 1145 (9th Cir. 2018). Ex. 7 at 32:17-33:11.

19 But the *Cobbler Nevada* decision held the opposite—that a Doe's "status as the registered

20 subscriber of an infringing IP address, standing alone, does not create a reasonable inference

21 that he is also the infringer." *Cobbler Nevada,* 901 F.3d at 1145.

22        Strike 3's admission that paragraph 27 of their complaint may be inaccurate is material.

23 In the initial response to summary judgment, Doe submitted testimony by Dr. Eric Fruits, in

24 which Dr. Fruits opined that Strike 3 had only a 36% chance of suing the right person. ECF 81

25 ¶ 34. Strike 3's recent representations in Camden add support to Dr. Fruits' opinion. After

26 Strike 3 obtains a subscriber's identity through early discovery, they decide "not to move

27

DEFENDANT'S SUPPLEMENTAL RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 4
CASE NO. 2:17-CV-01731-TSZ

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   forward" "roughly about 35 to 40 percent of the time…." Ex. 7 at 58:25-59:8.

2       Strike 3 also admitted that the allegation in paragraph 27 that John Doe downloaded

3   complete copies of the works was inaccurate. Instead, Strike 3 relies on bit field value evidence

4   of only "between 50 and 70 percent…" for each movie. *Id.* at 99:25-103:8. And while Strike 3

5   has been working with IPP to "figure out if there's a way to get that full copy of the movie

6   from the subscriber," IPP's software currently cannot "download[] a hundred percent of the

7   movie from the subscriber." *Id.*

8       Strike 3 made similar admissions in a recent deposition. In-house counsel Jessica

9   Fernandez admitted that Strike 3 does not know whether the subscriber is responsible for the

10  alleged infringement when it files their case and seeks early discovery. Ex. 4 at 190:25-192:17

11  (…"you're asking me who the infringer is, it sounds like…. Oh, yeah, no. There's – you know,

12  no."). Ms. Fernandez also conceded that Strike 3 does not know whether the subscriber actually

13  downloaded full copies of the works until they have access to his or her computer. Ex. 4 at

14  187:18-189:2 ("I may not necessarily -- like, unless I have the defendant's computer, I'm not

15  going to necessarily know that he has the entire work….").

16      Neither admission is found in the submissions Strike 3 made to the Court in support of

17  their *ex parte* request for early discovery.

18  **D.      Strike 3 has used this proceeding to investigate third parties other than John Doe.**

19      Strike 3 represented to the Court that it would use early discovery to investigate whether

20  Doe was responsible for alleged infringement. ECF 4. "With Defendant's identity, Plaintiff will

21  be able to amend its Complaint to name Doe Defendant, and with said name and address, will

22  be able to serve a summons upon Defendant." *Id.* at 15. But once Doe hired an attorney, Strike

23  3 abandoned any attempt to substitute Doe's true name into the complaint. The back and forth

24  between the attorneys for Strike 3 and Doe is significant. Strike 3 asked Doe's attorney to

25  disclose Doe's identity in early 2008. Ex. 8 (Email Correspondence dated April 9, 2018). Doe's

26  attorney agreed to provide Doe's identity, in exchange for PCAP information. Ex. 9 (Email

27

DEFENDANT'S SUPPLEMENTAL RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 5
CASE NO. 2:17-CV-01731-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  Correspondence dated April 10, 2018). Strike 3 finally produced PCAPs, but not until 2019.

2  McEntee Decl. ¶ 15.

3          Rather than use the process to investigate Doe and name him as a defendant, Strike has

4  taken great pains to engage in a fishing expedition to determine who else could be responsible

5  for infringement that Strike 3 initially pinned only on Doe. In Doe's deposition, for example,

6  Strike 3 spent little time discussing Doe's internet habits, and instead asked pages of questions

7  directed at determining which family members or friends could have infringed Strike 3's

8  works. Ex. 10 (Doe Dep.) at 12:6-17, 41:9-42:2, 45:14-18, 51:23-52:15, 53:14-74:17. Similarly,

9  Strike 3's counsel spent much of the deposition of Doe's son asking questions about the son's

10  use of the internet, rather than Doe's use. Ex. 11 (Doe's Son Dep.) at 21:13-22:3, 46:2-48:13.

11  Strike 3's tactics are contrary to the motion for early discovery, in which Strike 3 promised to

12  investigate Doe alone.

13  **E.      Strike 3's tactics have literally paid off.**

14          Settlements from litigation are a major revenue stream for Strike 3. Strike 3 has made

15  ▮▮▮▮▮▮▮ from their litigation campaign in less than two years. Ex. 5 (Confidential

16  Fernandez Dep.) at 196:6-13. The company saw revenue of ▮▮▮▮▮ in 2017, and close to

17  that same amount the year prior. Ex. 12 (Lansky Dep.) at 195:11-197:9. Depending on timing,

18  Strike 3's settlement revenue could account for up to a third of their gross revenue. If half of

19  Strike 3's approximately 3,000 lawsuits result in settlement, the average settlement is ▮▮▮▮

20  ▮▮▮▮▮▮▮. Strike 3's subscriptions are $29.95 per month. *Id.* at 184:18-185:18.

21  Assuming that Doe's alleged infringement displaces a paid subscription for one year

22  ($29.95/mo * 12 months = $359.40), Strike 3's revenue from infringement cases far exceeds

23  subscription revenue.

24          Strike 3 owner, Greg Lansky, has complained that piracy is a threat to his company.

25  ECF 4-2 ¶ 22. If true, a rational businessman in Mr. Lansky's position would implement a

26  system that would have the greatest impact on piracy at the lowest cost. For example, Strike 3

27

DEFENDANT'S SUPPLEMENTAL RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 6
CASE NO. 2:17-CV-01731-TSZ

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

could send DMCA notices directly to the ISP's, which costs very little. But by providing notice to the infringing IP address, Strike 3 has the potential to significantly decrease infringement.[2] Strike 3 also has the ability to implement watermarking. Watermarking would allow the company to draw on their subscribers to police the internet for piracy, a service Strike 3's subscribers already provide. ECF 81 ¶ 18; Ex. 12 at 131:7-132:2 ("a lot of our paying members take it upon themselves, because they're very loyal customers, to send out links, themselves, and be, like, look. I feel really bad. Your content is out there for free. You should take it down"). The notion that the company is struggling because of piracy is speculative, at best.

### III.  ADDITIONAL AUTHORITY AND ARGUMENT

**A.    Summary Judgment Standard**

Summary judgment is appropriate only if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The moving party must demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the adverse party must present affirmative evidence, which "is to be believed" from which all "justifiable inferences" are to be favorably drawn. *Anderson,* 477 U.S. at 255, 257. "[I]f a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

**B.    Abuse of Process**

The following elements constitute abuse of process in Washington: (i) the existence of an ulterior purpose to accomplish an object not within the proper scope of the process, (ii) an

---

[2] Strike 3 hired Rightscorp for one week to send DMCA notices directly to the ISP, but stopped, claiming Rightscorp went out of business. Ex. 7 at 112:1-13. However, the company's web site suggests that its services are still available. *See* https://www.rightscorp.com/ (last visited June 24, 2019).

DEFENDANT'S SUPPLEMENTAL RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 7
CASE NO. 2:17-CV-01731-TSZ

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

act in the use of legal process not proper in the regular prosecution of the proceedings, and (iii)

harm proximately caused by the abuse of process. *Bellevue Farm Owners Ass'n v. Stevens*, 198

Wn. App. 464, 477, 394 P.3d 1018 (2017).

Federal Rule of Civil Procedure 11 requires pleadings to have evidentiary support. Fed.

R. Civ. P. 11. While the rule addresses the Court's authority to police a party's representations,

it is not the exclusive source for control of improper presentations of claims and "does not

preclude a party from initiating an independent action for malicious prosecution or abuse of

process." *See* Advisory Committee Notes (1993) to Fed. R. Civ. P. 11.

1.  <u>Strike 3 abused the process by failing to disclose they could not know whether it
    was Doe, or someone else, who was responsible for alleged infringement.</u>

Strike 3 abused the process by failing to disclose two material facts that may have

affected the Court's decision to grant early discovery.

First, Strike 3 failed to disclose that they could not know whether it was Doe, or

someone else, who was responsible for alleged infringement, until Strike 3 obtained Doe's

computer. Instead, Strike 3 misled the Court into believing that only Doe could be responsible

for infringement, when Strike 3 affirmatively represented—as they have in literally thousands

of other form complaints filed across the country—that Doe violated the Copyright Act when

he "downloaded, copied, and distributed a complete copy of Plaintiff's Works without

authorization." ECF 1 ¶ 27.  Strike 3 then filed a motion based on these facts seeking the

Court's permission to learn Doe's identity.

In his initial response, Doe listed several scenarios that explain why it is inaccurate to

pin infringement on the subscriber of an IP address, including wireless home networks that

support multiple users, whether or not they are password-protected, and Comcast's replacement

of traditional customer routers with WiFi Hotspots. ECF 79 at 13. Strike 3 has since admitted

that they cannot possibly know whether the subscriber infringed before discovery. Strike 3's

corporate representative, Jessica Fernandez, testified that Strike 3 has no way of knowing

whether the subscriber is actually responsible for alleged infringement unless and until Strike 3

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   inspects his computer. And Strike 3 conceded this fact again recently at a hearing in New

2   Jersey involving identical allegations.

3        Second, Strike 3 failed to disclose that the software IPP uses is not capable of

4   determining whether Doe downloaded entire works. Instead, Strike 3 misled the Court by

5   introducing a declaration from IPP employee Tobias Fieser that states unequivocally IPP

6   determined that the pieces Doe downloaded would result in a playable movie. *See* ECF 4-3 ¶ 9.

7   In his initial response, Doe introduced expert testimony that disproves Mr. Fieser's testimony.

8   ECF 79 at 15. Rather, the PCAPs that Strike 3 produced include only *de minimis* pieces

9   required to watch each movie. *Id.* Recently, Strike 3 admitted that IPP does not have the

10  capability of gathering enough pieces to compile an entire file.

11       Because Strike 3 could not possibly know whether Doe was the infringer, and knew that

12  they did not have evidence that the infringer associated with the IP address had downloaded a

13  complete movie, Strike 3 cannot credibly argue that they complied with Rule 11 by alleging the

14  exact opposite in the Complaint. And Strike 3's suggestion that these allegations were

15  supported by reasonable inferences is unsupportable. The Ninth Circuit held in *Cobbler Nevada*

16  that a reasonable inference based on an IP address alone is not enough. 901 F.3d at 1145.

17       Strike 3 has a different reading of *Cobbler Nevada,* which purports to eliminate Strike

18  3's Rule 11 obligations until Strike 3 learns John Doe's identity. Doe can find no support for

19  this position in the opinion. Regardless of when Strike 3's Rule 11 obligations begin or end, the

20  material omissions in their motion for early discovery form a basis for Doe's abuse of process

21  counterclaim. Because genuine issues of fact surround the material omissions in Strike 3's

22  motion for early discovery, summary judgment is inappropriate.

23       2.    Strike 3 improperly used the discovery process to gather evidence regarding
             potential infringers other than Doe.

24

25       A crucial inquiry is whether the judicial system's process, after having been made

26  available to secure the presence of the opposing party, has been misused to achieve another,

27  inappropriate end. *See Mark v. Williams*, 45 Wn. App. 182, 192, 724 P.2d 428 (1986). The

DEFENDANT'S SUPPLEMENTAL RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 9
CASE NO. 2:17-CV-01731-TSZ

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   mere institution of a legal proceeding, even with a malicious motive, does not constitute an

2   abuse of process. *Vargas Ramirez v. United States*, 93 F. Supp. 3d 1207, 1232 (W.D. Wash.

3   2015). Even the filing of a baseless or vexatious lawsuit is not misusing the process, and no

4   liability attaches if nothing is done with the litigation "other than carrying it to its regular

5   conclusion." *Batten v. Abrams*, 28 Wn. App. 737, 749, 626 P.2d 984 (1981).

6        While Doe does not believe Strike 3 had a Rule 11 basis to bring their Complaint, that

7   decision does not form the basis of Doe's counterclaim. Doe's counterclaim is based on the

8   material misrepresentations and/or omissions Strike made afterward. Strike 3 represented that

9   the purpose of seeking early discovery was to identify Doe and amend the complaint to name

10  him. Instead, Strike 3 has used the legal process to gather information about others who may

11  have infringed. In doing so, Strike 3 engaged in an act, after using legal process, "to accomplish

12  an end not within the purview of the suit." *Vargas Ramirez*, 93 F. Supp. 3d at 1232; *see also*

13  *Batten*, 28 Wn. App. at 748 (the tort "goes to use of the process once it has been issued for an

14  end for which it was not designed").

15       In addition to the "sue and settle" model Doe described in his initial response, Strike 3's

16  decision to target Doe's son is precisely the type of coercive behavior that goes to the heart of

17  abuse of process. *See Batten*, 28 Wn. App. at 746 (indicating that the requisite "improper

18  purpose" for an abuse of process claim "usually takes the form of coercion to obtain a collateral

19  advantage, not properly involved in the proceeding itself").

20       3.    Strike 3's actions proximately caused Doe's harm.

21       If the Court had known that Strike 3 had no confidence that Doe was the infringer, and

22  that Strike 3's investigator is incapable of ever establishing that Strike 3's entire works had

23  been downloaded, it is unlikely the Court would have concluded that Strike 3 had good cause to

24  seek early discovery. Strike 3's decision to seek *ex parte* discovery prompted Comcast to notify

25  Doe he had been sued. Despite his innocence, Doe was force to hire an attorney to navigate

26  Strike 3's claim for copyright infringement. Strike 3's material omissions proximately caused

27

DEFENDANT'S SUPPLEMENTAL RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT - 10
CASE NO. 2:17-CV-01731-TSZ

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    Doe to incur attorneys' fees and costs that he would not have otherwise incurred.

2    **C.    Other federal district courts have refused to allow Strike 3 to engage in early**

3    **discovery because Strike 3 does not know whether a defendant has infringed.**

4          In Doe's initial response, he cited to *Strike 3 Holdings, LLC v. Doe*, 351 F. Supp. 3d

5    160, 164 (D.D.C. 2018), where Judge Lamberth denied Strike 3's request for early discovery,

6    in part, because "Strike 3 fail[ed] to give the Court adequate confidence this defendant actually

7    did the infringing."

8          Three months ago, Judge Orenstein in the Eastern District of New York similarly held

9    that Strike 3 had not established good cause to subpoena the ISP associated with a Doe

10   Defendant's IP address. *Strike 3 Holdings, LLC v. Doe*, No. 18CV0449ENVJO, 2019 WL

11   2022452, at *4 (E.D.N.Y. Mar. 21, 2019). Judge Orenstein disputed Strike 3's claim that it

12   intended to use the information obtained in early discovery actually litigate. *Id.* ("it is like that

13   the one thing it will *not* do is use the information to litigate the action in court.") (emphasis in

14   original).

15         Judge Orenstein further found "the fact that in more than a third of the resolved cases

16   [in the Eastern District of New York], Strike 3 could not satisfy itself that the named defendant

17   was actually the alleged infringer further undermines the proposition that good cause exists to

18   allow expedited discovery." *Strike 3 Holdings, LLC*, 2019 WL 2022452, at *4. Although Judge

19   Orenstein stopped short of concluding Strike 3 had violated Rule 11, he nonetheless found it

20   "apparent that Strike 3 is deliberately asserting claims in a scattershot fashion against a broad

21   array of individuals simply because it is confident that many of them will be liable – even if

22   almost as many of them are not." *Id.* at *4. This practice, the court found, "seems wholly

23   inconsistent with the [Rule 11] requirement that a plaintiff may not file a complaint for an

24   improper purpose and that each of a plaintiff's claims must be predicated on a good faith belief

25   in the claim's merit." *Id.*

26         Finally, the Court rejected Strike 3's argument that expedited discovery is necessary to

27

DEFENDANT'S SUPPLEMENTAL RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT - 11
CASE NO. 2:17-CV-01731-TSZ

1  deter copyright violations and enforce its copyrights. "To the contrary, attacking the problem

2  by asking judges in hundreds of cases in just one district (and presumably thousands across the

3  country) to consider the same motion and achieve a patchwork of results is plainly inefficient."

4  *Strike 3 Holdings, LLC*, 2019 WL 2022452, at *5 (citing Annemarie Bridy, Is Online Copyright

5  Enforcement Scalable?, 13 Vand. J. Ent. & Tech. L. 695, 724 (2011) ("Simply put, litigation is

6  not a scalable mechanism for dealing with the high volume of copyright disputes that arise

7  from [peer-to-peer] file sharing.")).

8       While other courts have approved Strike 3's requests for early discovery, *see Strike 3*

9  *Holdings, LLC v. Doe,* 2019 WL 78987, at *4 (S.D.N.Y. Jan. 2, 2019) (citing cases), Judge

10  Lamberth's and Judge Orenstein's opinions suggest a changing tide as additional courts learn

11  about material omissions which directly contradict Strike 3's representations, whether in

12  support of early discovery or elsewhere in the legal process.

13  **D.    John Doe seeks a bench trial.**

14      Strike 3 previously asked the Court to deny Doe's jury demand. Doe's initial response

15  explained why his counterclaims could be properly tried before a jury. However, Doe has since

16  made the decision to forgo a jury trial.

17                              **IV.  CONCLUSION**

18      Despite blatant and unequivocal allegations in their motion for early discovery that Doe

19  is the infringer, and that full copies of Strike 3's works were downloaded, Strike 3 knew that

20  their investigator could never prove that Doe had downloaded entire films, and that they might

21  not have the right defendant. Both of these facts are material to whether a court might find good

22  cause for early discovery. Yet Strike 3 disclosed neither. Nor did Strike 3 disclose, contrary to

23  their motion, that they intended to investigate third parties other than Doe. Strike 3's conduct

24  constitutes abuse of process. Based on the foregoing, and on Doe's prior submissions in

25  response to summary judgment, Doe respectfully request that the Court deny Strike 3's motion.

26

27

DEFENDANT'S SUPPLEMENTAL RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT - 12
CASE NO. 2:17-CV-01731-TSZ

1    RESPECTFULLY SUBMITTED AND DATED this 24th day of June, 2019.

2                               TERRELL MARSHALL LAW GROUP PLLC

3

4                               By:   /s/ Adrienne D. McEntee, WSBA #34061
                                   Beth E. Terrell, WSBA #26759
5                                  Email:  bterrell@terrellmarshall.com
                                   Adrienne D. McEntee, WSBA #34061
6                                  Email:  amcentee@terrellmarshall.com
                                   936 North 34th Street, Suite 300
7                                  Seattle, Washington 98103-8869
                                   Telephone: (206) 816-6603
8                                  Facsimile: (206) 319-5450

9
                                   J. Curtis Edmondson, WSBA #43795
10                                 Email: jcedmondson@edmolaw.com
                                   EDMONDSON IP LAW
11                                 399 NE John Olsen Avenue
                                   Hillsboro, Oregon 97124
12                                 Telephone: (503) 336-3749

13
                                   *Attorneys for Defendant*
14

15

16

17

18

19

20

21

22

23

24

25

26

27

DEFENDANT'S SUPPLEMENTAL RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT - 13
CASE NO. 2:17-CV-01731-TSZ

1

CERTIFICATE OF SERVICE

2

        I, Adrienne D. McEntee, hereby certify that on June 24, 2019, I electronically filed the

3

foregoing with the Clerk of the Court using the CM/ECF system which will send notification of

4

such filing to the following:

5

                        Lincoln D. Bandlow, *Admitted Pro Hac Vice*

6

                        Email: lincoln@bandlowlaw.com
                        LAW OFFICES OF LINCOLN BANDLOW, P.C.

7

                        1801 Century Park East, Suite 2400
                        Los Angeles, California 90067

8

                        Telephone: (310) 556-9580
                        Facsimile: (310) 861-5550

9

10

                        John C. Atkin, *Admitted Pro Hac Vice*
                        Email: jatkin@atkinfirm.com

11

                        THE ATKIN FIRM, LLC
                        55 Madison Avenue, Suite 400

12

                        Morristown, New Jersey 07960
                        Telephone: (973) 285-3239

13

14

                        Jeremy E. Roller, WSBA #32021
                        Email: jroller@aretelaw.com

15

                        ARETE LAW GROUP PLLC
                        1218 Third Avenue, Suite 2100

16

                        Seattle, Washington 98101
                        Telephone: (206) 428-3250

17

                        Facsimile: (206) 428-3251

18

                        *Attorneys for Plaintiff*

19

20

                        Joshua L. Turnham, WSBA #49926
                        E-mail: joshua@turnhamlaw.com

21

                        THE LAW OFFICE OF JOSHUA L. TURNHAM PLLC
                        1001 4th Avenue, Suite 3200

22

                        Seattle, Washington 98154
                        Telephone: (206) 395-9267

23

                        Facsimile: (206) 905-2996

24

                        *Attorneys for Non-Party John Doe's Son*

25

26

27

DEFENDANT'S SUPPLEMENTAL RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT - 14
CASE NO. 2:17-CV-01731-TSZ

1

F. Christopher Austin, *Admitted Pro Hac Vice*
Email: caustin@weidemiller.com

2

Allen Gregory Gibbs, *Admitted Pro Hac Vice*
Email: ggibbs@weidemiller.com

3

WEIDE & MILLER, LTD.
10655 Park Run Drive, Suite 100

4

Las Vegas, Nevada 89144
Telephone: (702) 382-4804

5

6

Derek A. Newman, WSBA #26967
Email: dn@newmanlaw.com

7

Rachel Horvitz, WSBA #52987
Email: rachel@newmanlaw.com

8

NEWMAN DU WORS LLP
2101 4th Avenue, Suite 1500

9

Seattle, Washington 98121

10

Telephone: (206) 274-2800
Facsimile: (206) 274-2801

11

12

*Attorneys for Attorneys for Third-Party Witnesses Tobias Fieser, IPP*
*International UG, Bunting Digital Forensics, LLC, Stephen M. Bunting*

13

14

DATED this 24th day of June, 2019.

15

TERRELL MARSHALL LAW GROUP PLLC

16

17

By:   /s/ Adrienne D. McEntee, WSBA #34061
      Adrienne D. McEntee, WSBA 34061

18

Email:  amcentee@terrellmarshall.com
936 North 34th Street, Suite 300

19

Seattle, Washington 98103-8869
Telephone: (206) 816-6603

20

Facsimile: (206) 319-5450

21

*Attorneys for Defendant*

22

23

24

25

26

27

DEFENDANT'S SUPPLEMENTAL RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT - 15
CASE NO. 2:17-CV-01731-TSZ

# EXHIBIT B

US. DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON


STRIKE 3 HOLDINGS, LLC, A          )
DELAWARE CORPORATION,              )
                                   )
                PLAINTIFF,         )
                                   )
        VS.                        )      CASE NO.
                                   )      2:17-CV-01731TZS
                                   )
JOHN DOE SUBSCRIBER ASSIGNED IP    )
ADDRESS 73.225.38.130,             )
                DEFENDANT.         )
_____)
                                   )
JOHN DOE, SUBSCRIBER ASSIGNED IP   )
ADDRESS 73.225.38.130,             )
                                   )
            COUNTERCLAIMANT,       )
                                   )
        VS.                        )
                                   )
STRIKE 3 HOLDINGS, LLC,            )
                                   )
            COUNTERDEFENDANT.      )
                                   )
_____)



C O N F I D E N T I A L


        DEPOSITION OF JESSICA FERNANDEZ, taken on behalf

of the Counterclaimant, at 35 Hugus Alley, Pasadena,

California, commencing at 10:08 a.m, Friday, April 12, 2019,

before Sandra Mitchell, C.S.R. 12553, pursuant to Notice.

```
 1       (CONFIDENTIAL TESTIMONY PER THE PROTECTIVE ORDER)

 2              THE WITNESS:  What's aggregate?

 3   BY MR. EDMONDSON:

 4       Q    Total.

 5       A    Oh, yes.

 6       Q    Oh, okay.  What is that total amount?

 7       A    It's -- so aggregate meaning total, meaning

 8   there's no expenses removed from that, it would be --

 9              THE WITNESS:  And this is designated

10   confiden- --

11              MR. BANDLOW:  This is confidential.

12              THE WITNESS:  That would be around          .

13   BY MR. EDMONDSON:

14       Q    Okay.  And what is the expenses associated with

15   that amount?

16       A    Well, I don't know what the expenses are, but I

17   know that -- at least I don't have the number in my

18   head.  But I know that if you deduct all of the expenses

19   in total from that          , it's approximately

20                 .

21       Q    Okay.

22       A    And so that average out over the course of

23   litigation, it's been going on for, like, 20 months, it

24   would be around                     .

25       Q    And is one of --
```

196

# EXHIBIT C

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

STRIKE 3 HOLDINGS. LLC, a          )
Delaware corporation,              )
                                   )
        Plaintiff,                 )
                                   )
   vs.                             ) CASE: 2:17-cv-01731-TSZ
                                   )
JOHN DOE, subscriber               )
assigned  IP address               )
73.225.38.130,                     )
                                   )
        Defendants.                )
_____)


VIDEOTAPED DEPOSITION OF GREG LANSKY,
taken on behalf of the Defendant, at Cotman IP Law Group,
PLC, One Colorado, 35 Hugus Alley, Suite 210, Pasadena,
California 91103, commencing at 10:06 a.m. and being
terminated at 3:17 p.m., on Thursday, April 11, 2019,
reported by JEANNETTE CORREIA, CSR No. 10994, a Certified
Shorthand Reporter in and for the State of California.

2

12:04:06  1          A  Right.

2          Q  -- you've hired X-Take- -- Takedowns to send

3      out DMCA notices on behalf of the company; is that --

4          A  Yes.

12:04:13  5          Q  -- right?

6          A  Yes.

7          Q  Okay.  How does XTakedowns know who to send

8      the notices to?

9          MR. BANDLOW:  Calls for speculation.

12:04:20  10          But if you know.

11          THE WITNESS:  I -- I think it's -- it's -- I

12      think it's a mix of several different various ways.

13      BY MS. McENTEE:

14          Q  What are the various ways?

12:04:29  15          A  Could be someone from our team reporting an

16      infringement online.  It could actually be a lot of our

17      paying members take it upon themselves, because they're

18      very loyal customers, to send out links, themselves, and

19      be, like, look.  I feel really bad.  Your content is out

12:04:46  20      there for free.  You should take it down.  And then that

21      notice then will forwarded.  Actually, a lot of our

22      paying customers, to support us, will -- will then --

23      will then help us out and give us links, and also

24      X-Takedown, themselves, take on the initiatives to -- to

12:04:58  25      find, you know, and try to -- try to -- try to find as

                                                              131

STRIKE 3 HOLDINGS v. JOHN DOE        GREG LANSKY                    APRIL 11, 2019

12:05:02  1     much infringement as possible.   It's a never -- yeah.

          2     It's --

          3            Q   And I think we're at the end of the tape.

          4     So --

12:05:11  5            A   Okay.

          6            MS. McENTEE:  Let's go off the record for a

          7     minute.

          8            THE VIDEOGRAPHER:  This marks the end of Media

          9     No. 1 in the deposition of Greg Lansky.

12:05:18 10            We are going off the record at 12:05 p.m.

         11          (Off the record from 12:05 p.m. - 12:22 p.m.)

         12            THE VIDEOGRAPHER:  We are back on the record at

         13     12:22 p.m., and this marks the beginning of Media

         14     No. 2 in the deposition of Greg Lansky.

12:23:06 15            Please continue.

         16     BY MS. McENTEE:

         17            Q   Mr. Lansky, Exhibit 40.

         18            A   Sorry.  Yeah.

         19            Q   That's okay.

12:23:13 20            So, again, this is one of declarations that --

         21     that you said you signed --

         22            A   Uh-huh.

         23            Q   -- in support of one of the copyright cases.

         24            Did you actually type up this declaration?

12:23:25 25            A   Yes.

                                                                    132

**STRIKE 3 HOLDINGS v. JOHN DOE          GREG LANSKY                    APRIL 11, 2019**

02:16:13   1    have currently?  And I say "Strike 3," but I think -- if

2    I sa- -- if I use the word "company," will you know that

3    I either mean General Media Systems or Strike 3?

4           A  Sure.

02:16:27   5           Q  Is that okay if I use that term?

6           A  Sure.

7           Q  Okay.  How many subscribers does the company

8    have?

9           A  It -- it -- that number really varies.  I --

02:16:35  10    I don't know the exact number right now.

11           Q  The last time you checked, how many

12    subscribers did the company have?

13           A  There were probably little bit -- around

14    ███████.  Maybe a little bit less.

02:16:50  15           Q  Okay.  And the subscriptions, are they

16    monthly subscriptions?

17           A  Yes.

18           Q  Are there any other types of subscriptions

19    other than monthly subscriptions?

02:17:05  20           A  No.

21           Q  And how much would a subscriber pay for a

22    subscription?

23           A  It varies on the brands.

24           Q  Okay.  So for Vixen?

02:17:15  25           A  29.95.

184

STRIKE 3 HOLDINGS v. JOHN DOE          GREG LANSKY                          APRIL 11, 2019

02:17:17    1                    Q    A month?

            2                    A    Yes.

            3                    Q    What about for Blacked?

            4                    A    29.95 but occasionally the price will go

02:17:25    5    down during promos.

            6                    Q    Okay.   And what about Tushy?

            7                    A    29.95 and occasionally the price could go

            8    down during promo.

            9                    Q    And what about Blacked Raw?

02:17:36   10                    A    29.95 but the price could fluctuates during

           11    promo as well.

           12                    Q    So is Vixen the only -- the only brand where

           13    the price doesn't usually fluctuate?

           14                    A    Sometimes it does, actually.   It just -- it

02:17:47   15    just varies.

           16                    Q    Sort of across the board the status quo is

           17    29.95?

           18                    A    When we're not in a promo, yes.

           19                    Q    Okay.   How often does the company offer

02:17:56   20    promos?

           21                    A    It varies from year to year.   We've been --

           22    we've been -- we've been trying to figure out the best

           23    system so it really varies.

           24                    Q    The revenue from the subscriptions, the

02:18:06   25    money that comes in from the sub- -- subscriptions, does

                                                                                   185

**STRIKE 3 HOLDINGS v. JOHN DOE**          **GREG LANSKY**                    **APRIL 11, 2019**

02:26:58   1   really a data that you could just take at --

2   Q  Got it.

3   A  -- face value.

4   Q  So you know how many subscriptions there

02:27:04   5   are, and you know how to monetize that, but NATS doesn't

6   tell you what that ends up being in the company's

7   pocket?

8   A  Again, yeah, there is several different

9   stages in which that particular revenue is going to go

02:27:16  10   through.

11   Q  Okay.  So understanding that you don't know

12   specifically what the revenue was from subscriptions

13   last year, what was the revenue overall?

14   A  Over- -- overall?

02:27:27  15   Q  Yeah.  You said you know what the revenue

16   is.  You just --

17   A  Right.

18   Q  -- don't know how to parcel it out for --

19   A  Sure.

02:27:32  20   Q  -- the subscriptions.

21   So what was the revenue?

22   A  About ██████  I think -- I want to say

23   ███████████████  I think is the ex- -- exact number.

24   Q  Okay.  And that includes the sale of DVDs

02:27:45  25   as well?

195

**STRIKE 3 HOLDINGS v. JOHN DOE**     **GREG LANSKY**                    **APRIL 11, 2019**

02:27:46   1          A   Yes.  Includes everything.

           2          Q   Does it also include licensing fees?

           3          A   Yes.

           4          Q   Did you know what the revenue was for 2017?

02:27:57   5          A   I don't remember, but I know it was less.

           6          Q   Okay.  Was it ███████████████████████?

           7          A   Yes.

           8          Q   Was it ████████████████████████████████?

           9          A   Yes.

02:28:06  10          Q   Do you think it was █████████████████████?

          11          A   I don't want to guess exact number --

          12          Q   Okay.

          13          A   -- but -- but it sounds about right.

          14          Q   For 2016, do you recall what the revenue

02:28:16  15   was?

          16          A   Not the exact number, no.

          17          Q   Do you think it was lower than 2017?

          18          A   Yes.

          19          Q   Okay.  ████████████████████████████?

02:28:24  20          A   Yes.

          21          Q   And same question for 2015 --

          22          A   Uh-huh.

          23          Q   -- do -- do you know what the revenue was

          24   that first year?

02:28:31  25          A   I don't know the exact number, no.

                                                                    196

**BARRETT REPORTING, INC.**          **(888) 740-1100**          **www.barrettreporting.com**

02:28:33   1            Q   Was it less than 2016?

           2            A   Yes.

           3            Q   Do you think in your first year of -- of

           4    business with the company you still made ████████)

02:28:42   5    ████████?

           6            A   What do you mean by ███████████? You

           7    mean --

           8            Q   ████████████████████████.

           9            A   I think so.

02:28:49  10            Q   Okay.  And so do you know -- so taking last

          11    year, for example --

          12            A   Right.

          13            Q   -- do you know how much of that revenue was

          14    attributable to DVD sales?

02:29:02  15            A   Not really, no.

          16            Q   How do you -- so I know you use NATS to

          17    track subscriptions.

          18            A   Right.

          19            Q   Do you have any other software that you use

02:29:10  20    to track DVD sales?

          21            A   We don't use a software to track DVD sales.

          22            Q   How do you track DVD sales?

          23            A   Through our distributor.

          24            Q   So you rely on the distributor to --

02:29:21  25    distributor to tell you how many DVDs were sold?

                                                                    197