THE HONORABLE THOMAS S. ZILLY

# U.S. DISTRICT COURT

# FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC, a Delaware corporation,<br>      Plaintiff,<br><br>vs.<br><br>JOHN DOE, subscriber assigned IP address 73.225.38.130,<br>      Defendant.<br><br>―――――――――――――――――――<br>JOHN DOE, subscriber assigned IP address 73.225.38.130,<br>      Counter-claimant,<br><br>vs.<br><br>STRIKE 3 HOLDINGS, LLC, a Delaware corporation,<br>      Counter-defendant. | **Case No. 2:17-cv-01731-TSZ**<br><br>MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT OF COPYRIGHT AND ATTORNEYS' FEES AND COSTS<br><br>**NOTING DATE: August 23, 2019**<br><br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

**Page No.**

STATEMENT REGARDING COURT'S ORDER ON JULY 8, 2019 REGARDING
  THE CONSENT JUDGMENT ................................................................. 1

INTRODUCTION ............................................................................... 1

SUMMARY ...................................................................................... 2

FACTUAL BACKGROUND .................................................................. 3

    A.    STRIKE 3'S ALLEGATIONS OF INFRINGEMENT AND
            THEIR MULTIMILLION DOLLAR CLAIM AGAINST JOHN
            DOE .......................................................................... 3

    B.    THE COURT ISSUES A PROTECTIVE ORDER STATING
            THAT JOHN DOE'S IDENTITY SHOULD NOT BE REVEALED
            BY THE ISP ................................................................. 5

    C.    JOHN DOE RETAINS COUNSEL AFTER TRYING TO LOCATE
            SEVERAL LAWYERS IN THE SEATTLE AREA ...................... 5

    D.    STRIKE 3'S PRODUCES A PAUCITY OF EVIDENCE
            SUPPORTING THEIR INFRINGEMENT CLAIMS ...................... 6

    E.    KEY WITNESSES ARE DEPOSED ...................................... 6

    F.    EXPERT REPORTS ARE FILED ......................................... 6

    G.    STRIKE 3'S EXPERT PATRICK PAIGE IS DEPOSED ............... 7

    H.    COMCAST TURNS DOCUMENTS TO LINK THE IP ADDRESS
            TO THE SUBSCRIBER FOR A PERIOD OF 12 DAYS ............... 8

    I.    ANALYSIS OF JOHN DOE'S ASUS HARD DRIVE ................. 8

    J.    PROCEDURAL STATUS .................................................. 9

ARGUMENT ..................................................................................... 9

    A.    SUMMARY JUDGMENT STANDARD .................................. 9

B.    JOHN DOE IS ENTITLED TO PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE 87 WORKS BECAUSE THERE ARE NOT TRIABLE ISSUES OF FACT OF INFRINGEMENT AND  UNDER THE DOCTRINE OF JUDICIAL ESTOPPEL AND AS A MATTER OF LAW JOHN DOE IS ENTITLED TO PARTIAL SUMMARY JUDGMENTS ..................... 9

1.    STRIKE 3 DOES NOT HAVE AN ADMISSION FROM JOHN DOE THAT HE  INFRINGED THE WORKS .......................... 10

2.    STRIKE 3 HAS NO DIRECT EVIDENCE THAT DOE INFRINGED THE WORKS FROM THE HARD DRIVE ................... 11

3.    STRIKE3 HAS NO INDIRECT EVIDENCE THAT JOHN DOE INFRINGED AS THE DATA FROM STRIKE 3'S IPP SYSTEM CANNOT BE RELIED UPON TO PROVE INFRINGEMENT .............................................. 11

    3.1    THE IPP SYSTEM IS NOT ACCURATE SOFTWARE THAT AN EXPERT CAN RELY UPON UNDER *DAUBERT* .................................................................. 11

    3.2    STRIKE 3'S IPP SYSTEM ONLY DOWNLOADS A "DE MINIMUS" FILE FRAGMENT WHICH CANNOT SUPPORT INFRINGEMENT .................................. 13

    3.3.    JOHN DOE SHOULD BE GRANTED SUMMARY JUDGMENT AS THE IP ADDRESS  DATA IN THE PCAP'S IS NOT ASSOCIATED WITH IPP COMPUTER AND THERE IS NO EVIDENCE LINKING AN IPP COMPUTER TO THE PCAP DATA ......... 14

    3.4    JOHN DOE SHOULD BE GRANTED SUMMARY JUDGMENT ON 81 OF THE 87 WORKS AS THEY CANNOT SHOW THAT THE IP ADDRESS WAS ALLOCATED TO JOHN DOE FOR THE PERIODS OUTSIDE OF 8/30/2017 TO 9/12/2017 .................. 14

4.    JOHN DOE SHOULD BE GRANTED SUMMARY JUDGMENT UNDER THE DOCTRINES OF JUDICIAL ESTOPPEL AS STRIKE 3 CONTENDS JOHN DOE  IS NOT THE INFRINGER ................................................................. 15

5.    STRIKE 3'S CLAIM OF INFRINGEMENT FAILS AS A MATTER OF LAW AS THEY FAILED TO MAINTAIN A CLAIM OF INFRINGEMENT................................................ 16

ATTORNEY FEES..................................................................................................17

    A.      DOE REQUESTS AN AWARD OF ATTORNEYS' FEES.............................18

    B.      DOE REQUESTS ONLY REASONABLE ATTORNEYS' FEES
            INCURRED IN DEFENDING PLAINTIFF'S CLAIM AND
            PROSECUTING DOE'S COUNTERCLAIM FOR A
            DECLARATION OF NON-INFRINGEMENT ...................................19

          1.     The Lodestar Establishes a Presumptively Reasonable Fee ...................19

          2.     Defendant's Counsel's Hourly Rates Are Reasonable ...........................19

          3.     The Time Counsel Spent Defending Against Strike 3's Claim
               and Prosecuting the Declaration of Non-Infringement
               Counterclaim was Reasonable ................................................21

    C.      COUNSEL REQUEST REIMBURSEMENT OF TAXABLE COSTS............22

CONCLUSION...................................................................................................24

# TABLE OF AUTHORITIES

**Page No.**

## FEDERAL CASES

*American Title Ins. Co. v. Lacelaw Corp.*,
    861 F.2d 224 (9th Cir., 1988) ...................................................... 15

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986).................................................................... 9

*Atl. Recording Corp. v. Andersen*,
    No. CV 05-933 AC, 2008 WL 2536834 (D. Or. June 24, 2008)................... 18

*Blum v. Stenson*,
    465 U.S. 886 (1984)................................................................... 20

*BWP Media USA, Inc. v. Rich Kids Clothing Co., LLC*,
    No. 103 F. Supp. 3d 1242 (W.D. Wash. 2015)............................... 20

*Carpenters Health and Security Trust of W.Wa, et al. v. Paramount Scaffold, Inc., et al.*,
    Case No. 12-1252-RSM (W.D. Wash 2012) .............................. 16

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).............................................................. 9,11

*City of Inglewood v. Teixeira*,
    No. CV1501815MWFMRWX, 2015 WL 6146269 (C.D. Cal. Oct. 8, 2015)............... 18

*Camacho v. Bridgeport Fin., Inc.*,
    523 F.3d 973 (9th Cir. 2008) ...................................................... 20

*Cafasso v. Gen. Dynamics C4 Sys. Inc.*,
    637 F.3d 1047, 1061 (9th Cir., 2011) ........................................ 15

*Chalmers v. City of Los Angeles*,
    796 F.2d 1205 (9th Cir. 1986) ...................................................... 20

*Daubert v. Merrel Dow Pharmaceuticals, Inc.*
    43 F.3d 1311 (9th Cir. 1995) ...................................................... 11

*Dragor Shipping Corp. v. Union Tanks Car Co.*,
    378 F.2d 241 (9th Cir. 1967) ...................................................... 16

*Elf-man, LLC v. Lamberson*,

No. 13-CV-0395-TOR, 2014 WL 11513119 (E.D. Wash. Oct. 31, 2014) .......... 18,19, 21

*Ets-Hokin v. Skyy Spirits, Inc.*,
    323 F.3d 763 (9th Cir. 2003) ...................................................................... 19

*Feist Publications v. Rural Tele. Serv. Co.*,
    499 U.S. 340 (1991)........................................................................... 2,9,18

*Fischer v. SJB-P.D. Inc.*,
    214 F.3d 1115 (9th Cir. 2000) ................................................................... 20

*Fogerty v. Fantasy, Inc.*,
    510 U.S. 517 (1994)........................................................................... 17, 19

*Getty Images (US) v. Virtual Clinics*,
    No. C13–0626JLR, 2014 WL 1744522 (W.D. Wash. Apr. 29, 2014) .......................... 20

*Glacier Films (USA), Inc. v. Turchin*,
    896 F.3d 1033 (9th Cir., 2018) ................................................................. 2,3

*Helfand v. Gerson*,
    105 F.3d 530 (9th Cir 1997) ..................................................................... 16

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)............................................................................... 20

*In re Napster, Inc. Copyright Litig.*,
    377 F.Supp.2d 796, 800 (N.D. Cal., 2005) ..................................................... 9

*In re Pinkstaff*,
    974 F.2d 113 (C.A.9 (OR) 1992). ............................................................... 16

*Indep. Iron Works, Inc. v. United States Steel Corp.*,
    322 F.2d 656 (9th Cir. 1963) .................................................................... 23

*Ingenuity 13, LLC v. Doe*
    (C.D. Cal. Feb. 7, 2013) 12-cv-08333 ......................................................... 13

*JCW Invs., Inc. v. Novelty, Inc.*
    482 F.3d 910 (7th Cir. 2007) .................................................................... 11

*Johnson v. Storix, Inc.*,
    No. 3:14-CV-1873-H-BLM, 2016 WL 4399317 (S.D. Cal. Aug. 17, 2016)................. 18

*Kerr v. Screen Extras Guild, Inc.*,

526 F.2d 67 (9th Cir. 1975) ........................................................ 20

*Kirtsaeng v. John Wiley & Sons, Inc.,*
136 S. Ct. 1979, 195 L.Ed.2d 368, 118 U.S.P.Q.2d 1770 (2016) ......................2,3

*Lahiri v. Universal Music & Video Distrib. Corp.,*
606 F.3d 1216 (9th Cir. 2010) .................................................. 21

*Lahrichi v. Lumera Corp.,*
No. C04-2124C, 2007 WL 1521222 (W.D. Wash. May 22, 2007) .................... 23

*Lewis v. Activision Blizzard, Inc.,*
No. C 12-1096 CW, 2014 WL 4953770 (N.D. Cal. Sept. 25, 2014) ............... 18

*Malibu Media, LLC. v. Bui*,
1:13-cv-00162  (W.D. Mich. 2014) ............................................ 10

*Mlalibu Media LLC. v. Doe,*
2:14-cv-01280 (E.D. Pa. 2015) .......................................... 10,13

*Marya v. Warner/Chappell Music, Inc.*,
131 F.Supp.3d 975 (C.D. Cal., 2015) .......................................... 17

*McGrath v. County of Nev.,*
67 F.3d 248 (9th Cir. 1995) ................................................ 19

*ME2 Prods., Inc. v. Alexander*,
No. C17-1221RSL, 2018 WL 4963247 (W.D. Wash. Oct. 12, 2018) ............... 20

*Medtronic Inc. v. Bos. Scientific Corp.*,
695 F.3d 1266 (Fed. Cir., 2012) ............................................... 9

*Medtronic, Inc. v. Mirowski Family Ventures, LLC.*,
134 S.Ct. 843, 187 L.Ed.2d 703, 82 USLW 4067 (2014) ................................. 9

*Moreno v. City of Sacramento,*
534 F.3d 1106 (9th Cir. 2008) .................................................. 21

*Omega S.A. v. Costco Wholesale Corp.*,
776 F.3d 692 (9th Cir.) ...................................................... 18

*Perdue v. Kenny A. ex rel. Winn*,
559 U.S. 542 (2010)........................................................... 20

MOTION FOR SUMMARY JUDGMENT and ATTORNEY FEES: Page vi

*QOTD Film Inv., Ltd. v. Wilson*
  C16-0371RSL, Order March 3, 2017 (W.D. Wash., 2017) ........................................ 10

*Rentmeester v. Nike, Inc.,*
  883 F.3d 1111 (9th Cir., 2018) ................................................................. 10

*S.V. Gopalratnam v. Hewlett-Packard Co.,*
  877 F.3d 771 (7th Cir., 2017) .................................................................. 11

*Schwarz v. Sec'y of Health & Human Servs.,*
  73 F.3d 895 (9th Cir. 1995) .................................................................... 21

*Skidmore v. Led Zeppelin,*
  905 F.3d 1116 (9th Cir. 2018) .................................................................. 15

*Sorenson v. Mink,*
  239 F.3d 1140 (9th Cir. 2001) .................................................................. 21

*Stephenson v. Citco Grp. Ltd.,*
  700 F. Supp. 2d 599 (S.D.N.Y. 2010).......................................................... 13

*UN4 Prods., Inc. v. Primozich,*
  372 F. Supp. 3d 1129 (W.D. Wash. 2019)...................................................... 20

*United States v. Marine Shale Processors,*
  81 F.3d 1361 (5th Cir. 1996) ................................................................... 12

*United States v. One Heckler-Koch Rifle,*
  629 F.2d 1250 (7th Cir.1980) ................................................................... 15

*Van Skike v. Dir., Office of Workers' Comp. Programs,*
  557 F.3d 1041 (2009)........................................................................... 20

*Ventura Content, Ltd. v. Motherless, Inc.,*
  885 F.3d 597 (9th Cir. 2018) ................................................................... 15

*Wall Data Inc. v. L.A. Cnty. Sheriff's Dep't,*
  447 F.3d 769 (9th Cir. 2006) ................................................................... 19

*Williams v. Bridgeport Music, Inc.,*
  No. CV–13–6004–JAK (AGRx), 2014 WL 7877773 (C.D. Cal. Oct. 30, 2014).......... 18

*Wilson v. Discover Bank,*
  Case No. 3:12-ccv-05209-RBL(W.D. Wash. 2012) .................................... 16

**FEDERAL STATUTES**

17 U.S.C. § 505 ................................................................................................ 2,17

28 U.S.C. § 1920 .............................................................................................. 22,23

**FEDERAL RULES**

Fed. R. Civ. P. 54(d) ........................................................................................ 22

Fed. R. Civ. P. 56(a) ........................................................................................ 9

Fed. R. Civ. P. 56(e) ........................................................................................ 9

LCR 54(d)(3) .................................................................................................... 22

**OTHER AUTHORITIES**

Melville B. Nimmer and David Nimmer, <u>Nimmer on Copyright</u>
    (Matthew Bender, Rev. Ed. 2014) ............................................................. 13

Pursuant to the Court's July 8, 2019 order (ECF 167), Defendant, JOHN DOE, subscriber assigned IP address 73.225.38.130, ("John Doe" or "Defendant"), moves for summary judgment against Plaintiff Strike 3 Holdings, LLC d/b/a Blacked.Com, Tushy.com, and Vixen.com ("Strike 3" or "Plaintiff"), pursuant to FRCP 56 and as a matter of law, and contingent on the Court's determination of summary judgment in Doe's favor, moves for a discretionary award of attorneys' fees and costs in the amount of $ 48,773.13 as the prevailing party under the Copyright Act.

## STATEMENT REGARDING COURT'S ORDER ON JULY 8, 2019 REGARDING THE CONSENT JUDGMENT

Counsel for Strike 3 and John Doe met and conferred on July 15, 2019.    Strike 3 was unwilling to agree to enter a stipulated consent judgment of non-infringement, which would have allowed Doe to brief the issue of attorneys' fees only.  As a consequence, John Doe addresses both the issues of non-infringement and attorney fees.

## INTRODUCTION

John Doe was—and still is—faced with potential liability of $13,050,000.00, the maximum amount of statutory damages available under the Copyright Act (87 works x 150K in statutory damages) for copyright infringement, because Strike 3 has refused to dismiss its allegations against Doe with prejudice.  Strike 3 speculates someone else did it, maybe John Doe Jr.

As a result, John Doe seeks summary judgment on his counterclaim for declaration of non-infringement, for which Strike 3 alone bears the burden of proof. As explained below, Strike 3 cannot meet its burden because Strike 3's evidence supporting infringement, the "IPP System," is unreliable, and contrary to Tobias Fieser's statement that John Doe downloaded the entire movie from IP address 73.225.38.130, Strike 3 has admitted the IPP System cannot prove that anyone using Doe's IP address downloaded complete copies of Strike 3's works.  Also, Comcast returned business records that show the IP address connected to the alleged infringement was assigned to John Doe for a period of just 12 days, during which IPP captured hash values related to only six of the 87 works at issue. Also, Strike 3 cannot explain why the IPP system did not record PCAP data for the 10 of the 87 works.  In short, John Doe has clearly negated the elements Strike 3 needs to prove infringement.

Strike 3 had an opportunity to exit from this case early on.  They could have accepted declarations of non-infringement in February, 2018 and walked away unscathed by entering a dismissal with prejudice. Strike 3 declined to do so.  Presumably, Strike 3 thought it could follow it's standard sue-then-settle model to extract a settlement from John Doe. But John Doe, an ex-cop, is one tough cookie.  John Doe is one of principled few who will not "pay off" Strike 3.

## SUMMARY

Copyright infringement requires proof of three elements: (1) Does Strike 3 own the works; (2) did the allege infringer copy the works; and (3) was there damage. *Feist Publications v. Rural Telephone Service Co.*, 499 U.S. 340, 361 (1991).  Strike 3 has the burden of proof on these three elements even on a declaratory relief of non-infringement.

Discovery is closed.  Even with pending motions, there are no triable issue of fact of John Doe's infringement.  John Doe's expert reports state this: the IPP System is unreliable and Strike 3 should not be depend on the IPP System and that the unreliable data produced was *de minimus*. Strike 3 did not rebut this evidence because their expert Patrick Paige, did not take the time to read John Doe's expert reports.

This case began with Strike 3's reliance on the IPP System, an uncertified and incompletely tested computer system that results in an unacceptably high false positive rate. Emilie Kennedy admitted this in the District of New Jersey.  Still, Strike 3 has sued thousands of persons, imposing improper litigation on 2 out of every 3 defendants.  John Doe is one of the thousands of persons that have been improperly sued.

This case would have ended in February, 2018 if Strike 3 had accepted declarations of non-infringement by John Doe and his wife.  This case could also have ended in August, 2018, if Strike 3 had dismissed their claim with prejudice.  Instead Strike 3 persisted. Even in April 2019, Jessica Fernandez, Strike 3's in-house counsel, would not affirm that John Doe was off the hook. Just two weeks ago, Strike 3, threatened to revive the claim against John Doe under alternate theories of infringement.  Strike 3's "dismissal with prejudice" was just as illusory as IPP's ability to detect the infringements.

Copyright infringement allows for statutory attorney fees to the prevailing party in the Court's discretion.  (ECF 167, pg. 6) ; 17 USC 505;  *Glacier Films (USA), Inc. v. Turchin,* 896 F.3d 1033 (9th Cir., 2018); *Kirtsaeng v. John Wiley & Sons, Inc.,* 136 S. Ct. 1979, 195 L.Ed.2d 368, 118 U.S.P.Q.2d 1770 (2016). Recognizing the Court's discretion in this matter and recent

precedent from *Glacier Films*, John Doe respectfully requests an award $ 48,773.13 in fees and costs. Strike 3 may have an interest in protecting its copyrights, but that interest should be counterweighed against the high false positive rate and the fact the software used to detect the infringements is not "forensic software". Further, as shown in the deposition of Patrick Paige, Strike 3's expert, Strike 3 has no actual knowledge that the IPP System "works".

This is the first case that has investigated the technical underpinnings of Strike 3's dubious claims of infringement that have been replicated nationwide. The balance of interests under *Kirtsaeng* and *Glacier* recognize that meritorious defenses are just as important as vindicating infringements.

## FACTUAL BACKGROND

### A. STRIKE 3'S ALLEGATIONS OF INFRINGEMENT AND THEIR MULTIMILLION DOLLAR CLAIM AGAINST JOHN DOE

On November 16, 2017, Strike 3 sued John Doe, subscriber IP Address 73.225.38.130, for copyright infringement, alleging that Doe infringed 80 pornographic movies (ECF 1). Strike 3 claimed they had been monitoring John Doe's IP address, *Id*. at ¶ 23-24, using a system made by "IPP." Plaintiff also claimed "Plaintiff knows of no way to effectively prevent Defendant from infringing Plaintiff's motion pictures." *Id*. at ¶30. Strike 3's prayed for statutory damages and attorney fees. *Id.* Strike 3 claimed that John Doe was liable for statutory fees that ranged from a minimum of $60,000.00 to a maximum of $12,000,000.00.

On November 29, 2017, Strike 3 moved for permission to engage in early discovery of John Doe's identity from Comcast. Strike 3's motion (ECF 4) was based on Strike 3's representation that it hired an investigator, IPP, to monitor and detect the infringement of Strike 3's content. According to Strike 3, the IPP System discovered that Defendant's IP address was illegally distributing several of Strike 3's motion pictures (Works). Strike 3 stated that an "independent forensic expert", John S. Pasquale, examined one of the PCAPs sent by IPP. (ECF 4, pg 6). As it turns out, Mr. Pasquale is no expert. (See Initial Disclosures, Ex. 20). Strike 3 never designated John S. Pasquale as one of its experts. Mr. Pasquale never filed an expert report. And during Mr. Pasquale's deposition, he admitted that contrary to Strike 3's representations, that he never communicated with IPP. Specifically:

> **10 A I know of them, but do I know them?**
> **11 No. Have I had a conversation with them? No.**
> **12 Q Do you use email communications**

**13 with anybody at IPP?**
**14 A No.**
**15 Q Who sends you the PCAP?**
**16 A Paul does.**
**17 Q Your nephew?**
**18 A My son. Philip is my nephew.**
**19 Write it down.**                    *(Ex. 3,*Pasquale Depo 22:3-23:18)

Later, when Mr. Pasquale was in front of a Federal Judge in New Jersey he further confirmed that he receives the data not from IPP, or directly from the IPP System, but after it has been handled and possibly manipulated by Strike 3 personnel.

**THE COURT: The information that you received, did**
**you receive it directly from IPP or from Strike 3?**
**MR. PASQUALE: From Strike 3.**          (ECF 150-7, pg. 90)

Strike 3 also filed declarations to support its motion by: Greg Lansky, Susan Stalzer, John Pasquale, and Tobias Fieser as evidence to support their claim for infringement. (ECF 4-1 to 4-4). These declarations contained either material misstatements of fact or outright false statements.

Tobias Fieser falsely claimed that IPP had accessed John Doe's computer and downloaded an entire copy of the movie from the IP address.  (ECF 4-3 ¶ 9 "IPP's software additionally analyzed each Bittorrent "piece" distributed by Defendant's IP Address.  It verified that reassembling the pieces using a specialized BitTorrent client results in a fully playable movie.")

Strike 3's in-house attorney, Emilie Kennedy, recently contradicted Tobias Fieser's form declaration in open court that the allegation that John Doe downloaded complete copies of the works was inaccurate.  Instead, Strike 3 relies on bit field value evidence of only "between 50 and 70 percent…" for each movie. (ECF 150-7 at 99:25-103:8.) And while Strike 3 has been working with IPP to "figure out if there's a way to get that full copy of the movie from the subscriber," IPP's software currently cannot "download[] a hundred percent of the movie from the subscriber." *Id*.

Mr. Fieser also declared under penalty of perjury that "IPP [] confirmed through its ancilliary BitTorrent surveillance program that IP address 73.225.38.130 is associated with significant long term BitTorrent use." (ECF 4-3, ¶12.)  Mr. Fieser also gave the misimpression that the IPP system used at the Bellwether trial in 2013 is somehow the same used in this case (ECF 4-3,¶6.)  Yet, in his deposition, Mr. Fieser testified that the software used now is different than in 2013 (Ex. 7, 147:12-148:16) and that he did not know the IP addresses of the IPP Servers

(Ex 7, 154: 22-155:5)  despite working there for 10 years (Ex. 7, 24:8-14).  Mr. Fieser's declaration is pro-forma and nearly identical to thousands of other declarations filed in thousands of actions across the country. In reality, the IPP System downloaded, at the most, 0.015% from an unidentified computer at that IP address.  (See Garcia-Paeth Expert Report, Ex. 8.)  Nowhere in Mr. Fieser's declaration does he explain why the IPP System could not record PCAPS for 10 out of the 87 works. (*Id*.).

Susan Stalzer, the real estate agent/copyright "comparer", relied on a "verification system" which was undisclosed in her declaration.  Ms .Stalzer also communicated with "Sud" (aka "Sid")  an individual who was not identified on Strike 3's initial disclosures. (Ex. 2, Stalzer Depo 37:10-38:5; 128:16-21; 149:24-150:30)  Stalzer's connection to Strike 3 is not based on her experience as a "comparer", a titled given to her by Fox Rothschild (*Id*. 61:12-16),  in her prior job, she worked for Malibu Media proofreading emails for Emilie Kennedy. (*Id.,* 11:15-14:5).

**B.** **THE COURT ISSUES A PROTECTIVE ORDER STATING THAT JOHN DOE'S IDENTITY SHOULD NOT BE REVEALED BY THE ISP.**

On January 25, 2018 this Court issued a protective order that the Does' name should not be revealed by the ISP to the Plaintiffs.  (ECF 8.)  On March  5, 2018, this Court issued broader protective order requiring Plaintiff's to keep Doe's identity confidential.  (ECF 20.)

**C.** **JOHN DOE RETAINS COUNSEL AFTER TRYING TO LOCATE SEVERAL LAWYERS IN THE SEATTLE AREA.**

On February 10, 2018, John Doe's counsel responded to Strike 3's lawyer stating:

**….My client and his wife are willing to provide declarations that they did not download the films as alleged in your complaint. If that is acceptable, then I would like to provide your client with the opportunity to dismiss this action with prejudice and my client will waive costs…. (Ex. 1).**

On February 14, 2018, John Doe's counsel informed Bryan Case of Fox Rothschild that the IPP software had false positives. (Ex. 4.)   Fox Rothschild and Bryan Case later withdrew from representation.

On March 8, 2018, John Doe filed a declaration with this Court stating he did not infringe. (ECF. 25-21.).  John Doe brought a counterclaim for declaratory relief of non-infringement. (ECF 22.)

Strike 3 filed an amended complaint alleging infringement of 87 works. (ECF 43).

John Doe answered and counterclaimed. (ECF 32.)    Strike 3 dismissed their claim of infringement without prejudice. (ECF 53.)

Strike 3 challenged this counterclaim by a motion to dismiss which was partially granted and denied by this Court as to the counter-claim of copyright misuse. ECF  58.)

### D.  STRIKE 3'S PRODUCES A PAUCITY OF EVIDENCE SUPPORTING THEIR INFRINGEMENT CLAIMS

On August 9, 2018, John Doe requested documents from Strike 3 in support of their infringement claims. (ECF 53).  Rather than turn over those documents, Strike 3 opposed the motion. (ECF 54).

Five months later, in January, 2019, Strike 3 produced the following documents supporting their claims for infringement:

- Control Copies of the Movie;
- Alleged Infringed Works'
- PCAP's (Packet Captures) of the IPP monitoring system
- Torrent Files
- Copyright Certificates  (Edmondson Decl., ¶39 )

Doe hired an expert to analyze this data. (Ex. 11, Garcia-Paeth Expert Report.). Far from proving Strike 3's claim that Doe had downloaded complete copies of Strike 3's works, Expert Garcia-Paeth reported that the sum of the raw data of the PCAP's equaled approximately % 0.0015 of the raw data. *Id.*

### E.  KEY WITNESSES ARE DEPOSED

As John Doe was still faced with the possibility of further claims for infringement, John Doe deposed Stalzer, Pasquale, Lansky, and Fieser.  Strike 3 also deposed John Doe, who in no uncertain terms, denied having downloaded Strike 3's works. (Deposition of John Doe, Ex. 29, 210:1-10). Strike 3 also deposed John Doe's son who stated he had no knowledge of Strike 3's works. (Deposition of John Doe, Jr, Ex. 30, 30:10-22, 46:2-47:23.)

### F.  EXPERT REPORTS ARE FILED

On March 15, 2019, John Doe filed four expert reports.  (Ex. 8-11) Strike 3 filed two expert reports on March 15, 2019. (Ex. 12-13)  John Doe filed a rebuttal export report and an amended expert report on April 15, 2019.  (Exhibits 14-15).

Dr. Toth, explained in the summary of his expert report regarding the validity, reliability, and correctness of the IPP software with regard to it being "forensic software":

> **In my experience, creating a software system without technical specifications or testing may be suitable to implement a web site for one's book club, but is not nearly good enough to build forensics software that can harm the heal and safety of innocent bystanders**  (Ex. 8, page 1).

> **In other words, the IPP software is unproven and should not be trusted for the forensic purposes as contemplated.** (*Id.*)

Brandon Garcia-Paeth explained in the summary of his expert report about his analysis of the PCAP data, for which Strike 3 started this copyright infringement lawsuit:

> **My analysis of the data shows that in each pcap only a very small percentage of the file was downloaded. One or two torrent pieces (16kb each) was downloaded in most cases. In a few of the pcaps no piece download was shown.**  (Ex. 11,  page 3).

Michael Yasumoto explained in the summary of his expert report of his analysis of the ASUS hard drive used by the retiree,  John Doe:

> **None of the video files reviewed from the Defendant's hard drive are the Plaintiff's movies based on the video subject matter or the SHA1 hash.** (Ex. 10,  page 4).

### G.  STRIKE 3'S EXPERT PATRICK PAIGE IS DEPOSED

Patrick Paige, who Strike 3's designated as an expert on verification of the IPP System was deposed on June 27, 2019. (Ex. 16.)   The deadline for expert reports was March 15, 2019 and two documents were submitted on behalf of Patrick Paige by Strike 3.  (Ex 13.)

At the deposition Mr. Paige testified he was never asked to prepare an expert report for this case:

> **22 Q. I'm talking about an expert report for this**
> **23 specific case. Were you ever asked to prepare an**
> **24 expert report specifically for this case?**
> **25 A. No.**  (Paige Depo, 5:22-25)

Patrick Paige also testified that he did not reference any known methodology to construct a test. (*Id.* 78:14-79:8.)

Patrick Paige's report extensively references using computer systems for child pornography investigations to draw an analog to his investigations in this case. (Ex. 16).  When asked why Patrick Paige was no longer working at the Palm Beach Police department, he states he left for a "work comp" claim

> **…I left the sheriff's office for -- in reference**
> **20 to PTSD, child pornography related; a workers' comp**
> **21 complaint was involve in it also.** (Ex 16,Paige Depo, 67:12-21.)

This was not completely accurate. Mr. Paige left due to circumstances of his felony arrest for drug possession using police property. (Ex 17.)

Strike 3's designated another expert, Stephen Bunting.  Buntings' qualifications are similar to Patrick Paige's. Patrick Paige testified that he has known Mr. Bunting for many years and has used Bunting on his expert reports but never mentioned that in his expert report.  (Paige Depo, 47:23-49:5.)


### H. COMCAST TURNS DOCUMENTS TO LINK THE IP ADDRESS TO THE SUBSCRIBER FOR A PERIOD OF 12 DAYS.

Strike 3 then issued a Rule 45 Subpoena to Comcast. In response, Comcast produced documents that could only correlate John Doe's IP address for a period of 14 days from August 30, 2019 to September 12, 2019. (Ex. 18.) These dates, which correlate with six works described in the attachment to Strike 3's amended complaint (See entries #1, 13, 32, 60, 64, 87; ECF 43-1), are far less than the 87 works Strike 3 alleges were infringed.


### I. ANALYSIS OF JOHN DOE'S ASUS HARD DRIVE

Most importantly, Doe's expert, Yasumoto, analyzed his computer on March 6, 2018. Yasumoto's methodology was not objected to by either Paige or Bunting by way of a rebuttal expert report.    Strike 3 did not notice Yasumoto's deposition.

Yasumoto used string search and file reconstruction techniques on the hard drive in the ASUS computer which included looking for deleted and undeleted files.  Yasumoto concluded that the Strike 3 files did not exist on the ASUS hard drive. (Yasumoto Expert Report, Ex. 10).

**J.   PROCEDURAL STATUS**

On July 8, 2019, this Court issued partial judgment on the pleadings on abuse of process. (ECF 168). The Court ordered the parties to meet and confer as to a stipulated entry of judgment of non infringement and attorney fees.  *Id.*

On July 15, 2019 the parties met and conferred and could reach a resolution. On July 16, 2019, Strike 3's counsel sent an email contending that Strike 3 could still bring John Doe back into the case under a theory of contributory infringement.  (Ex. 4.)

**ARGUMENT**

**A. SUMMARY JUDGMENT STANDARD**

Summary judgment is proper where the pleadings and discovery demonstrate that there is "no genuine dispute as to any material fact[,] . . . the movant is entitled to judgment as a matter of law." FRCP 56(a); *see Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). The judgment sought shall be rendered if the pleadings, discovery and affidavits demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).
Strike 3 bears the burden of proof in a declaratory relief action for non-infringement. *Medtronic Inc. v. Bos. Scientific Corp.*, 695 F.3d 1266,1272 (Fed. Cir., 2012); *Medtronic, Inc. v. Mirowski Family Ventures, LLC.*, 134 S.Ct. 843, 187 L.Ed.2d 703, 82 USLW 4067 (2014). On an issue for which the opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. FRCP 56(e). *In re Napster, Inc. Copyright Litigation*  377 F.Supp.2d 796, 800 (N.D. Cal., 2005).

**B. JOHN DOE IS ENTITLED TO PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE 87 WORKS BECAUSE THERE ARE NO TRIABLE ISSUES OF FACT OF INFRINGEMENT AND  UNDER THE DOCTRINE OF JUDICIAL ESTOPPEL AND AS A MATTER OF LAW**

Proof of copyright infringement requires two general elements: one, ownership of a valid copyright; and two, copying of constituent elements of the work that are original. *Feist Pubs., Inc. v. Rural Tel. Serv. Co., Inc*. 499 US 340, 361 (1991).

Strike 3 must also prove that Doe volitionally created a copy of its works, *Malibu Media, LLC. v. Bui*, 1:13-cv-00162 (W.D. Mich. 2014) ("As long as Defendant engaged in a volitional act that led to creation of the unauthorized copy, he is responsible for it despite a lack of detailed understanding"), and that the copy created is substantially similar to the original copyrighted work. *Mlalibu Media LLC. v. Doe*, 2:14-cv-01280 (E.D. Pa. 2015) ("Here we determine as a matter of law that there was no improper appropriation because no reasonable jury, properly instructed, could find that the data snippet bears a "substantial similarity" to Strike 3's copyrighted work.").

Strike 3 still needs to show that John Doe infringed. This evidence can be demonstrated by either finding the actual files on John Doe's computer or indirectly by showing that the IPP System was accurate, stable, and reliable enough to determine that John Doe downloaded the 87 works at issue.

## 1. STRIKE 3 DOES NOT HAVE AN ADMISSION FROM JOHN DOE THAT HE INFRINGED THE WORKS

One way to prove that infringement is to have the Defendant admit that he or she downloaded the works. See *QOTD Film Inv., Ltd. v. Wilson* C16-0371RSL, Order March 3, 2017 (W.D. Wash., 2017). Discovery is closed and John Doe's deposition was taken. John Doe expressly denied downloading the works at issue. (Deposition of John Doe, Ex. 28, 210:1-10)). So has John Doe's son. (Deposition of John Doe, Ex. 29, 46:2-47:23; 30:10-22).

While Strike 3 and Greg Lansky may think their films are widely known, they are, in fact, not well known or widely visit by the general public A recent article entitled "Characterizering Web Pornography consumption from passive measurements" quantified the top ten porn websites and none of Strike 3's brands are identified. (Ex. 26, page 11).

## 2. STRIKE 3 HAS NO DIRECT EVIDENCE THAT DOE INFRINGED THE WORKS FROM THE HARD DRIVE

Evidence of infringement can be proven either directly or indirectly. *Rentmeester v. Nike, Inc.,* 883 F.3d 1111, 1117 (9th Cir., 2018). In this case there is no direct evidence of infringement.

John Doe identified a single computer, ASUS, that he used on a daily basis for internet surfing. Immediately after notice of this suit, the drive was preserved by Doe's hard drive expert, Michael Yasumoto. (Ex. 10, Yasumoto Report).

Michael Yasumoto is a forensics expert who examined the ASUS hard drive.  His search methodology is documented in his timely filed report.  His conclusion was that there were no Strike 3 movies on the hard drive.

Strike 3 employed two hard drive experts, Paige and Bunting, who are presumptively competent at the methodology used by Mr. Yasumoto for Hard Drive inspections.  Neither Paige nor Bunting objected to the methodology used by Yasumoto in generating his report. (Edmondson Decl, ¶33.)

3. **STRIKE3 HAS NO INDIRECT EVIDENCE THAT JOHN DOE INFRINGED AS THE DATA FROM STRIKE 3'S IPP SYSTEM CANNOT BE RELIED UPON TO PROVE INFRINGEMENT**

The law requires proof of copying – namely, a copy.  *JCW Invs., Inc. v. Novelty, Inc.* 482 F.3d 910, 914 (7th Cir. 2007).  Strike 3 has zero evidence of copying, and can point to no full copy that was made.  Circumstantial evidence that IP address 73.225.38.130 may have been involved in copying is not the same as the copy itself.

Strike 3's complete failure is that it has no admissible, relevant evidence to prove an essential element of its case.  As a result, John Doe is entitled to summary judgment of non-infringement.  *Celotex Corp*, 477 U.S. at 322.

To demonstrate infringement by inference, Strike 3 must show: 1) the IPP System is accurate, 2) IPP System gathered sufficient data from the IP address to reconstruct the work, and 3) evidence that John Doe was the one operating the computer system from which the data was collected. Because Strike 3 cannot carry its burden as to any of these elements, Doe is entitled to summary judgment on his counterclaim for declaration of non-infringement.

**3.1 THE IPP SYSTEM IS NOT ACCURATE SOFTWARE THAT AN EXPERT CAN RELY UPON UNDER *DAUBERT.***

To determine if the data from the IPP System can be relied by the trier of fact to infer that infringement occurred at this IP address, one must analyze each step linking the data from the collection of swarm data on the internet to the potential infringer.

The IPP Software used to monitor the internet must operate reliably and generate data that an expert witness can rely upon.  Under principles of *Daubert*:

- Has the IPP software that is generally accepted in the scientific community?
- Is IPP software been subjected to peer review and publication?
- Can and was the IPP Software tested?

- Does IPP Software's know the potential rate of error and is it acceptable?
- Was the testing of the IPP software conducted independent of the particular litigation or dependent on an intention to provide the proposed testimony?
  *See Daubert v. Merrel Dow Pharmaceuticals, Inc.* 43 F.3d 1311 (9th Cir. 1995); *S.V. Gopalratnam v. Hewlett-Packard Co*., 877 F.3d 771, 789 (7th Cir., 2017) .

Evidence gathered by a computer system is subject to the same *Daubert* limitations as testimony provided by a live expert. (*Ex. 21*; *Software on the Witness Stand: What should it Take for Us to Trust It* (2010) TRUST 10 Proceedings of the 3rd International Conference on Trust and Trustworthy Computing, pgs. 396-416.) This article describes the technology and the resulting forensic investigation surrounding the music filesharing case of *UMG Recordings, et. al vs. Roy* (D.N.H. 2008) 08-cv-00090, hereinafter "*Roy*".

In *Roy,* the defendant was accused of downloading songs based on an IP address with the "behind the scenes" investigation of the forensic system that led to the complaint of the infringement. What defendant *Roy*'s investigator found when they looked at the computer data was:

> …Yet, at least in the case of the document that apparently purported to contain the traced route to the IP in the subpoena, the software obviously failed to operate correctly, as can be seen in Figure 7. The reason for this could have been either internal code faults or network configuration faults. *Software* at 4.

Central to Strike 3's copyright enforcement model is the use of the IPP software. In fact, IPP has been used to initiate all of Strike 3's 3000+ lawsuits. The problem with IPP's position is that is impossible to build a complex system using one designer to direct programmers to write "bug free" code. (See Ex. 15, Expert Report of Dr. Kalman Toth.) This conclusion was based on the fact that IPP has never had formal specifications, walkthroughs, formal testing, inspections, third-party validations, or documentation of failure modes. *Id.* There has never been a third-party paper written about the IPP technology.

Ultimately, the problem is that Mr. Fieser's livelihood is inextricably bound up in the operation of the IPP software. (Ex. 7, Fieser Depo, 24:8-14). Likewise, Patrick Paige's testimony was even more bizarre in that his declarations are filed in hundreds of Malibu cases without compensation or knowledge. (Ex. 16 Paige Depo) Neither Fieser nor Paige's testimony can be given any credibility as their livelihood is bound up on the operation of the IPP software. *United Sates v. Marine Shale Processors* (5th Cir. 1996) 81 F.3d 1361, 1370.

Neither Strike 3 nor IPP did not respond to the expert critique of IPP by Dr. Toth by way of rebuttal report.

This Court does not have to accept fantastic claims that are not grounded in scientific principles. In 2010, it was discovered that a respected investor, Bernie Madoff, delivered consistent results year after year only via a Ponzi Scheme. See *Stephenson v. Citco Grp. Ltd.,* (S.D.N.Y., 2010) 700 F.Supp.2d 599, 607. In 2015, it was discovered that Volkswagen used software to cheat on emissions tests. See generally *In re Volkswagen "Clean Diesel" Marketing, Sales, Practices, and Products Liability Litigation* (N.D. Cal. 2015) 16-cv-295. It is clear that software that is claimed to be "perfect" should raise greater questions than when it is shown to have a certain number of false positives with supporting test data.

### 3.2 STRIKE 3'S IPP SYSTEM ONLY DOWNLOADS A "DE MINIMUS" FILE FRAGMENT WHICH CANNOT SUPPORT INFRINGEMENT.

To infringe, an infringer must create a copy that is "substantially similar" to the original. *Malibu Media. v. Doe,* 2:14-cv-01280 (E.D. Pa. 2015); *see also* Melville B. Nimmer and David Nimmer, Nimmer on Copyright (Matthew Bender, Rev. Ed. 2014) §13.03 [A], 38.1. A small fraction is not enough. *Ingenuity 13, LLC v. Doe,* 12-cv-08333 (C.D. Cal. Feb. 7, 2013). As Hon. Otis Wright stated in his order:

> "This snapshot allegedly shows that the Defendants were downloading the copyrighted work—at least at that moment in time. But downloading a large file like a video takes time . . . To allege copyright infringement based on an IP snapshot is akin to alleging theft based on a single surveillance camera shot: a photo of a child reaching for candy from a display does not automatically mean he stole it." *Id.*

The tiny portion of a file that could be downloaded in one second is too small to be substantially similar to the original. Even if the hash value captured in the PCAP corresponds to a portion of a digital file that is "identical, strikingly similar or substantially similar to" [Plaintiff's] copyrighted work, there is nothing before the court that describes the audio/visual material that is represented by that hash value. Is it the entire movie or is it some portion so small that it would not be identifiable as part of the movie?"); *see also Malibu Media LLC. v. Doe,* 2:14-cv-01280 (E.D. Pa. 2015).

The only evidence Plaintiff has presented to support its claim that a copy was created at all at the instant IP address are PCAP files. These files purport to show one second of connection

between John Doe's IP address and Plaintiff's investigation service. (Expert Report or Garcia-Paeth, Ex. 11).

### 3.3     JOHN DOE SHOULD BE GRANTED SUMMARY JUDGMENT AS THE IP ADDRESS DATA IN THE PCAP'S IS NOT ASSOCIATED WITH IPP COMPUTER AND THERE IS NO EVIDENCE LINKING AN IPP COMPUTER TO THE PCAP DATA

Central to Strike 3's assertions of infringement is that the PCAP data is monitored by the IPP system and it can be affirmatively linked to an IP address.

When the Strike 3 PCAP's are inspected, the evidence is that this assertion is demonstrably false.   A dump from Wireshark shows this data:

```
1 0.000000 192.168.0.13 73.225.38.130 TCP 66 64430→17966 [SYN] Seq=0 Win=8192 Len=0
MSS=1460 WS=4 SACK_PERM=1
Frame 1: 66 bytes on wire (528 bits), 66 bytes captured (528 bits)
Ethernet II, Src: fa:f7:05:6b:3e:b9 (fa:f7:05:6b:3e:b9), Dst: de:4e:0a:1a:08:11
(de:4e:0a:1a:08:11)
Internet Protocol Version 4, Src: 192.168.0.13, Dst: 73.225.38.130
        Transmission Control Protocol, Src Port: 64430, Dst Port: 17966, Seq: 0, Len: 0
```

(PCAP Printout from Wireshark, Ex. 13).

The two IP addresses are 192.168.0.13 and 73.225.30.130.    The first IP address, 192.168.0.13, is supposedly the IP address allocated to an IPP Computer.

The problem is IP address 192.168.0.13 is a non-routable IP address used for local communications within a <u>private network</u>.   There is no data showing the IP address of the IPP computer.    Therefore,  PCAP data provided by IPP has no forensic value as there are no contemporaneous PCAP's or other chain of title documents linking IP address in the PCAP data to an IP address for the IPP computer.

John Doe requests entry of summary judgment of non-infringement because Strike 3 cannot use the IPP PCAP data because it does not link the IP address to a computer used by IPP.

### 3.4     JOHN DOE SHOULD BE GRANTED SUMMARY JUDGMENT ON 81 OF THE 87 WORKS AS THEY CANNOT SHOW THAT THE IP ADDRESS WAS ALLOCATED TO JOHN DOE FOR THE PERIODS OUTSIDE OF 8/30/2017 TO 9/12/2017

Comcast only returned evidence that John Doe was allocated the IP address from 8/30.2017 to 9/12.2017.   During this time period only six works were reported infringed out of the eighty-seven.

Despite the fact that there is little to no evidence recorded by the IPP system for each individual work, Strike 3 may argue that this *de minimus* evidence alone is a enough to "finger" John Doe.

Strike 3's argument fails because Strike 3 cannot cite to any admissible evidence, via business records or otherwise, demonstrating that the IP Address was allocated to John Doe for the entire period of alleged infringement.

Without admissible evidence linking infringement to Doe's IP address, the trier of fact is left to speculate what the IP address is during those periods of infringement. *Cafasso v. Gen. Dynamics C4 Sys. Inc.,* 637 F.3d 1047, 1061 (9th Cir., 2011) "To find liability on this evidence would require undue speculation. To survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations..") As such, the Court should grant summary judgment to Doe as to 81 of the 87 works. *Ventura Content, Ltd. v. Motherless, Inc.,* 885 F.3d 597, 607 (9th Cir. 2018) (…no factual dispute in the record cannot lead to reversal of MSJ due to speculation of appellants…); *see also Skidmore v. Led Zeppelin*, 905 F.3d 1116, 1130 (9th Cir. 2018) (…court will not apply speculation when evidence at issue is dispositive…)..

Therefore, John Doe respectfully requests summary judgment on all works except the six works found with the window from 8/30/2017 to 9/12/2017.

### 4.0   JOHN DOE SHOULD BE GRANTED SUMMARY JUDGMENT UNDER THE DOCTRINES OF JUDICIAL ESTOPPEL AS STRIKE 3 CONTENDS JOHN DOE  IS NOT THE INFRINGER.

Factual assertions made in pleadings and briefs can be taken as judicial admissions. See *American Title Ins. Co. v. Lacelaw Corp*., 861 F.2d 224,226 (9th Cir., 1988) stating " For purposes of summary judgment, the courts have treated representations of counsel in a brief as admissions even though not contained in a pleading or affidavit. *United States v. One Heckler-Koch Rifle*, 629 F.2d 1250, 1253 (7th Cir.1980); 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure Sec. 2723, pp. 64-66 (1983) (admissions in opponent's brief can be used to determine there is no genuine issue of fact, since they are functionally equivalent to "admissions on file").

Strike 3's focus on this case, since as early as August, 2018, has been on John Doe's son as the alleged infringer. (ECF 73, page 5 "..highly likely that Doe Jr. is the culprit."

On February 2, 2019, Strike 3 made this following admission in its motion for partial summary judgment:

Strike 3 conducted a further investigation and then immediately dismissed its claims without prejudice once Strike 3 discovered that Defendant's adult son—who has the same name as Defendant—is most likely the infringer, not Defendant. (ECF 71, page 2)

But on April 12, 2019, Strike 3's counsel, Jessica Fernandez equivocated on the John Doe Jr's liability. (Ex. 6:245:1-247:25). This Court also noted in its order that Strike 3 indicated that it wanted to pursue John Doe's son (ECF 167, fn 3).

Absent evidence that John Doe and John Doe Jr. were working in concert (there is none), Strike 3 cannot simultaneously claim that John Doe and John Doe Jr. are the alleged infringers.

### 5.0   STRIKE 3'S CLAIM OF INFRINGEMENT FAILS AS A MATTER OF LAW AS THEY FAILED TO MAINTAIN A CLAIM OF INFRINGEMENT

The Western District of Washington has stated that "a counterclaim 'arises out of the same transaction or occurrence' as the underlying claim if the counterclaim meets the Ninth Circuit's 'logical relationship test'." *Wilson v. Discover Bank*, Case No. 3:12-ccv-05209-RBL (W.D. Wash. 2012) quoting *In re Lazar*, 237 F.3d 967 (9th Cir. 2001). Under the logical relationship test, "A logical relationship exists when the counterclaim arises from the same aggregate set of operative facts as the initial claim, in that the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant." *In re Pinkstaff*, 974 F.2d 113 (C.A.9 (OR) 1992). DOE has sought a declaratory judgment that it has not violated S3H's copyrighted material under the Federal Copyright Act.  Strike 3 has dismissed their claims and has not filed a reply to the counterclaims. Strike 3's claims, now dismissed, arise from the same aggregate set of operative facts as DOE's request for declaratory relief that DOE did not infringe the 87 copyrights at issue in this case. (Dkt 43).

The Western District of Washington has held that a compulsory counterclaim arising under Fed. R. Civ. P. 13(a) must be asserted. *Carpenters Health and Security Trust of W.Wa, et al. v. Paramount Scaffold, Inc.*, *et al.*, Case No. 12-1252-RSM (WDWA). Moreover, the Ninth Circuit has held that a party failing to plead its compulsory counterclaim is considered to have "waived such claim" and is estopped under the doctrine of *res judicata* from bringing such claim again.  *Dragor Shipping Corp. v. Union Tanks Car Company*, 378 F.2d 241 (9th Cir. 1967). Further, the doctrine of judicial estoppel prevents a party from taking one position and then later

taking a second position.  The objective of judicial estoppel is to preserve the integrity of the judicial process.  In short, it is to avoid parties "playing fast and loose" with the judicial system. See *Helfand v. Gerson*, 105 F.3d 530, 534 (9th Cir 1997).

As held in *Carpenters Health supra*, a party is required to assert its compulsory counterclaim. Otherwise, a party waives such a claim under *Dragor*.  Alternately, Strike 3 could have maintained their action for copyright infringement, filed a reply to the SACC even after dismissing their complaint.

Here Strike 3 has done neither.  Strike 3 has waived its right to bring such a claim and is estopped under the doctrine of res judicata.

John Doe seeks declaratory relief that it has not violated any of Strike 3's alleged copyrights. In response, Thus, even if all the allegations in the complaint are taken as true, Strike 3 has failed to assert a Federal Copyright Claim in response to John Doe's request for declaratory relief. Moreover, as a result of failing to even allege a claim for Copyright infringement in the FACC, Strike 3 has not meet the minimum standards under *Twombly* or *Iqbal*. Put simply, Strike 3 has not asserted a claim that it is entitled to relief, let alone any facts in support thereof, that DOE violated its infringed it copyright(s). Therefore, John Doe's motion for declaratory relief should be granted as a matter of law.

John Doe respectfully requests that his Court entered judgment of non-infringement of the 87 works as a matter of law for Strike 3's failure to maintain a compulsory claim of infringement.

## ATTORNEY FEES

The Copyright Act contemplates an award of attorney fees and costs:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505. Prevailing defendants as well as prevailing plaintiffs may be awarded attorney fees at the court's discretion. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994). "[A] successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright." *Id*. at 527.

Whether it is a direct action for copyright infringement, or declaratory relief action of non-infringement by a defendant, the owner of the copyright always has the burden of proof in an action for a declaratory judgment involving infringement of the copyright. *Marya v. Warner/Chappell Music, Inc*., 131 F.Supp.3d 975, 983-984 (C.D. Cal., 2015) (citing *Medtronic, Inc. v. Mirowski Family Ventures, LLC,* 571 U.S. 191, 198-201 (2014) ("[t]he burden of persuasion is with the patentee, just as it would be had the patentee brought an infringement suit")); *see also Williams v. Bridgeport Music, Inc*., No. CV–13–6004–JAK (AGRx), 2014 WL 7877773, at *10 (C.D. Cal. Oct. 30, 2014) (applying *Medtronic* to a declaratory judgment copyright case and concluding the defendants have the burden of proof).

Here, Strike 3 had the burden of proof regarding Doe's claim for declaratory judgment of non-infringement. To meet its burden, Strike 3 was required to establish that Doe copied Strike 3's works, *Feist Publications, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 361 (1991), which Strike 3 readily admits it cannot do. *See* ECF 43 ¶ 42 (Strike 3 is "unable to capture the full, or a playable portion of its motion picture"). Strike 3's failure to establish that Doe copied its works is consistent with Dr. Kal Toth's opinion that the software Strike 3 used in its investigation of alleged infringement is unreliable. As a result, Doe is the prevailing party.

## A.   DOE REQUESTS AN AWARD OF ATTORNEYS' FEES

Courts routinely award prevailing defendants costs and fees under the Copyright Act. *See generally Omega S.A. v. Costco Wholesale Corp*., 776 F.3d 692, 696 (9th Cir.), *cert. dismissed*, 136 S. Ct. 445 (2015) (affirming district court's award of $396,844.17 to defendant in a first sale copyright dispute); *Elf-man, LLC v. Lamberson*, No. 13-CV-0395-TOR, 2014 WL 11513119, at *3 (E.D. Wash. Oct. 31, 2014) (awarding attorneys' fees where defendant was forced to incur attorneys' fees to defend against plaintiff's claim); *Johnson v. Storix, Inc*., No. 3:14-CV-1873-H-BLM, 2016 WL 4399317, at *7 (S.D. Cal. Aug. 17, 2016) (awarding defendant fees even when plaintiff's copyright case was non-frivolous); *City of Inglewood v. Teixeira*, No. CV1501815MWFMRWX, 2015 WL 6146269, at *1 (C.D. Cal. Oct. 8, 2015) (awarding prevailing defendant's pro bono counsel $117,741 for defending an objectively unreasonable claim); *Lewis v. Activision Blizzard, Inc.*, No. C 12-1096 CW, 2014 WL 4953770, at *4 (N.D. Cal. Sept. 25, 2014) (finding $152,104.50 reasonably expended by defendant on an objectively unreasonable copyright claim, but reducing the award in view of plaintiff's relative poverty); *Atl.*

*Recording Corp. v. Andersen*, No. CV 05-933 AC, 2008 WL 2536834, at *3 (D. Or. June 24, 2008) (awarding $103,175 to a prevailing defendant in an Internet file sharing copyright case).

In determining whether fees should be awarded, courts may consider a nonexclusive list of factors, including degree of success obtained, frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case), the need in particular circumstances to advance considerations of compensation and deterrence, and whether the chilling effect of attorney fees may be too great or impose an inequitable burden on an impecunious party. *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003) (citing *Fogerty*, 510 U.S. at 534, n. 19); *see also Wall Data Inc. v. L.A. Cnty. Sheriff's Dep't*, 447 F.3d 769, 787 (9th Cir. 2006). On balance, these factors support an award of fees to Doe.

First, Strike 3 dismissed its copyright claim against Doe, and failed to meet its burden on Doe's counterclaim for declaration for non-infringement. It was not successful under the Copyright Act. Second, Strike 3's claim was frivolous. Using unmistakable language, Strike 3 accused Doe, and Doe alone, of having infringed its works, all the while knowing that its investigator could never gather evidence to prove that Doe copied Strike 3's complete works. Third, Strike 3's motivation in bringing the lawsuit is part of its sue-and-settle model, which courts have increasingly criticized. Strike 3 has admitted that its lawsuits don't deter infringement. As a result, the ultimate purpose of the lawsuit was to extract money from Doe. Fourth, Strike 3 has acknowledged that after it obtains a subscriber's identity through early discovery, Strike 3 decides "not to move forward" "roughly about 35 to 40 percent of the time…." (ECF 150-7 at 58:25-59:8.) It is unreasonable for Strike 3 to force innocent people like Doe to incur the unjustified expense of having to hire attorneys to defend unfounded allegations based on these odds.

Plaintiff requested statutory damages available under the Copyright Act for Doe's alleged infringement, but in the end, Plaintiff received nothing from Doe. "Because Plaintiff elected to cease its action short of proving its entitlement to relief, this factor weighs heavily in favor of awarding Defendant fees as the prevailing party." *Elf-man, LLC*, 2014 WL 11513119, at *3. Finally, awarding fees to Defendant will not have a chilling effect on Plaintiff's other copyright claims. Plaintiff can pursue valid and well-founded copyright claims where warranted. "But Plaintiff cannot exact a pound of flesh simply by making defendants caught in its wide net expend

attorney fees to defend themselves, perhaps unjustifiably. This factor weighs in favor of an award of attorney fees." *Elf-man, LLC*, 2014 WL 11513119, at *3.

**B.      Doe requests only reasonable attorneys' fees incurred in defending Plaintiff's claim and prosecuting Doe's counterclaim for a declaration of non-infringement.**

**1.      The Lodestar Establishes a Presumptively Reasonable Fee**

"In determining a reasonable attorney's fee, the district court's first step is to calculate a 'lodestar' by multiplying the number of hours it finds the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *McGrath v. County of Nev.*, 67 F.3d 248, 252 (9th Cir. 1995); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). There is a "strong presumption" that the lodestar amount constitutes a "reasonable" fee. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553-54 (2010). Thus, "it should only be enhanced or reduced in 'rare and exceptional cases.'" *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 n.4 (9th Cir. 2000) (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)); *see also Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) (factors).

**2.      Defendants' Counsel's Hourly Rates Are Reasonable**

For purposes of the lodestar determination, reasonable fees are "calculated according to the prevailing market rates in the relevant community, regardless of whether the plaintiff is represented by private or nonprofit counsel." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). "The relevant community is generally defined as the forum in which the district court sits." *Van Skike v. Dir., Office of Workers' Comp. Programs*, 557 F.3d 1041, 1046 (2009) (quotation marks and citation omitted). Thus, in assessing the rates requested by John Doe's attorneys, the Court should look to market rates in the Western District of Washington.

"[A]ffidavits of the plaintiffs' attorneys and other attorneys regarding prevailing fees in the community and rate determinations in other cases are satisfactory evidence of the prevailing market rate." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (internal marks omitted; quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)). The $350 per hour rate upon which Mr. Edmondson seeks a fee award is consistent with rates charged by other lawyers in this community of similar skill and experience in similar cases. *See UN4 Prods., Inc. v. Primozich*, 372 F. Supp. 3d 1129, 1137 (W.D. Wash. 2019) (finding $350 per hour "is generally within the norm for BitTorrent cases in this district"); *ME2 Prods., Inc. v. Alexander*, No. C17-1221RSL, 2018 WL 4963247, at *5 (W.D. Wash. Oct. 12, 2018) (same);

*BWP Media USA, Inc. v. Rich Kids Clothing Co., LLC*, No. 103 F. Supp. 3d 1242, 1250 (W.D. Wash. 2015) (finding $350 hourly rate reasonable). *Getty Images (US) v. Virtual Clinics,* No. C13–0626JLR, 2014 WL 1744522, at *3 (W.D. Wash. Apr. 29, 2014) (approving rates between $275–$385 per hour for attorneys in Seattle and $180 per hour for paralegals).

Doe anticipates that Strike 3 will ask the Court to base any fee award on the reduced rate of $50 an hour counsel charged Doe, rather than counsel's typical hourly rate in copyright matters of $350 an hour. However, the determination of a reasonable hourly rate "is not made by reference to rates actually charged the prevailing party." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). The Ninth Circuit has admonished district courts who determine the reasonableness of an hourly rate with reference to the rate actually charged. *See e.g., Schwarz v. Sec'y of Health & Human Servs*., 73 F.3d 895, 908 (9th Cir. 1995) ("This determination is not made by reference to rates actually charged the prevailing party. Rather, the Court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.") (internal quotation marks and citation omitted); *see also Elf-Man, LLC v. Lamberson*, No. 13-CV-0395-TOR, 2015 WL 11112498, at *7 (E.D. Wash. Jan. 9, 2015) (awarding fees based on standard billing rates which reflect counsel's respective experience and skill even though defendant's counsel charged a reduced rate).

3.   **The Time Counsel Spent Defending Against Strike 3's Claim and Prosecuting the Declaration of Non-Infringement Counterclaim was Reasonable**

Counsel has filed detailed documentation of the time he spent on the copyright issues. Declaration of J. Curtis Edmondson re: Attorney Fees.  With respect to work performed on the case up until August 2018, when Strike 3 dismissed its copyright infringement claim against Doe, depositions that took place between February and June 2019, and work performed since July 8, 2019 in preparing Doe's motion for summary judgment, counsel respectfully seek payment of $ 40,501.63 in fees.

Counsel's fee request does not include duplicative time incurred by other attorneys. A court may reduce the overall number of hours only when it makes specific findings that the work performed was "<u>unnecessarily</u> duplicative." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1113 (9th Cir. 2008) (emphasis in original). "One certainly expects <u>some</u> degree of duplication as an inherent part of the process. There is no reason why the lawyer should perform this necessary work for free."  *Id*. at 1112 (emphasis in original). Nonetheless, counsel have exercised billing

judgment and reduced their fees appropriately to exclude time by more than one attorney for the same task. For example, while two of Doe's attorneys attended most depositions, Doe only seeks an award of fees relating to the hours incurred by one of Doe's attorneys.

Likewise, counsel has excluded time spent on unsuccessful claims. *Sorenson v. Mink,* 239 F.3d 1140, 1147 (9th Cir. 2001) ("The first step is to consider whether the [party] failed to prevail on claims that were unrelated to the claims on which he succeeded ... Hours expended on unrelated, unsuccessful claims should not be included in an award of fees.") (internal quotation marks and citation omitted); *Lahiri v. Universal Music & Video Distrib. Corp.,* 606 F.3d 1216, 1222 (9th Cir. 2010) (noting that the fee award is limited to fees incurred in defending against a copyright infringement claim and excludes expenses for dismissed Lanham Act and unfair competition claims). For example, the fee requested excludes all time spent on summary judgment briefing related to Doe's counterclaim for abuse of process. Doe does not seek fees related to drafting or responding to written discovery. As to the depositions Doe took or defended, in addition to requesting fees for just one attorney, Doe seeks just 50% of the time expended by his attorney because the depositions were relevant to both of Doe's counterclaims.

In all, counsel's fee request is a very conservative lodestar based on work that was reasonably and necessarily expended to defend against Strike 3's copyright claim and prosecution Doe's counterclaim for declaration of noninfringement.

**D.    Counsel Request Reimbursement of Taxable Costs**

Rule 54 provides that costs "should be allowed to the prevailing party."  Fed. R. Civ. P. 54(d)(1).  The corresponding local rule provides that the following applicable procedures are to be observed in taxing costs:

- The attendance, travel, and subsistence fees of witnesses, for actual and proper attendance, shall be allowed in accordance with 28 U.S.C. § 1821, whether such attendance was procured by subpoena or was voluntary; and

- All other costs shall be taxed in accordance with 28 U.S.C. §§ 1920, 1921, 1923, 1927, and 2412.  LCR 54(d)(3).

For purposes of this case, the relevant authority in the last bullet point is 28 U.S.C. § 1920. Under that statute, a judge or clerk of any court of the United States may tax as costs the following:

Fees of the clerk and marshall;

(1) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(2) Fees and disbursements for printing and witnesses;
(3) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(4) Docket fees under section 1923 of this title;
    Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

"[T]he Ninth Circuit has specifically held that explicit enumeration in § 1920 is not a prerequisite to allowance of a cost, reasoning that 'courts are free to interpret what constitutes taxable costs' under the statute." *Lahrichi v. Lumera Corp.*, No. C04-2124C, 2007 WL 1521222, *8 (W.D. Wash. May 22, 2007) (quoting *Alflex Corp. v. Underwriters Labs., Inc.*, 914 F.2d 175, 177 (9th Cir. 1990)). Plaintiffs move for an award of taxable costs incurred in litigating this case in the amount of $ 68,236.

### 1.   Filing Fees

Pursuant to Section 1920(1), Doe seeks $ 0.00 for filing fees.

### 2.   Deposition Costs

The costs associated with depositions, including depositions taken by the opposing party, are encompassed by section 1920(2). *See Alflex*, 914 F.2d at 177-78; *Indep. Iron Works, Inc. v. United States Steel Corp.*, 322 F.2d 656, 678-79 (9th Cir. 1963).

Doe seeks a total of $ 8,271.50 in deposition costs. *See* Summary of Fees and Costs. This amount includes 50% of costs paid for original transcripts or copies, court reporter fees, and handling and delivery charges.

The deposition transcripts of the following individuals were necessarily obtained by Doe in order to prepare their case and prepare for examination or cross-examination of these witnesses at trial: Jessica Fernandez (as Rule 30(b)(6) witness for Strike 3), Greg Lansky, Susan Stalzer, Tobias Fieser, John Pasquale, and Patrick Paige.

### 3.   Copy Costs

The costs associated with making copies of the ASUS hard drives were necessary for the subsequent analysis.

**CONCLUSION**

An attractive dropout from Stanford sells an incredible blood testing machine to Silicon Valley investors.  For 12 years she is lauded as the next Steve Jobs.  No one asks to double check whether Elizabeth Holme's machines work. There are no published scientific articles or validation studies on the Theranos machines. When investigators or insiders ask questions about the machine's accuracy, they are threatened by David Boies and his legal team.   Everyone knows about the Theranos scandal and the scientific fraud the Edison machines were.

This is the first case where a "John Doe" has had to exposed the *Potemkin village* known as the "IPP Software.".  Like Theranos, there has been no independent validation studies and no evidence that the IPP Software is "forensic software".   Quite the opposite, the PCAP data generated by the IPP Software is insufficient and missing, which calls into question why any Bittorrent litigant would use this flawed product.

To get to the point of determining if the IPP software was generating accurate data to refute Strike 3's claim of copyright infringement and foreclose future lawsuits took time and money. John Doe's counsel have pro-rated their time and costs, and have picked an appropriate lodestar and have cut the time allocated to the infringement actions significantly.

Doe respectfully requests that this Court grant this motion for summary judgment of non-infringement of copyrights and award attorney fees and costs in the amount of $ 48,773.13.

Respectfully submitted,

Dated: July 29, 2019                                     /s/ J. Curtis Edmondson
                                                         J. Curtis Edmondson (WA# 43795)
                                                         Attorney for Defendant John Doe

MOTION FOR SUMMARY JUDGMENT and ATTORNEY FEES: Page 24