# EXHIBIT 17

**PALM BEACH COUNTY**
# SHERIFF'S OFFICE

3228 Gun Club Road • West Palm Beach, Fl 33406-3001 • (561) 688-3000 • http://www.pbso.org

PROFESSIONALISM · INTEGRITY · RESPECT · FAIRNESS

## DRUG TESTING CONSENT FORM

### I/A - 5610

CONTROL NUMBER: _____

☐ RANDOM
☐ PRE-EMPLOYMENT
☑ INVESTIGATIONS
☐ NARCOTICS AGENT
☐ M.A.N. UNIT
☐ OTHER_____

(Name): __Patrick Paige_____ is authorized to provide a 50 ML. urine
sample for testing for controlled substances.

### IMPORTANT

If you have taken any medication and/or drugs of any kind in the past fourteen (14) days indicate on the following lines:

Advil, Hydos, Tylenol
11/3/10    12/1/10    12/1/10    11/3/10

Date /Time of Last Dose: _____

Failure to accurately and truthfully complete this form will result in rejection of your application/sample. Be prepared to furnish valid prescription verification form from a physician if requested.

Sgt. Tom Gendren  6884
Print Witness/Proctor Name          I.D.#

P. Paige   4276
Print Applicant/Donor Name          I.D.#

Witness/Proctor Signature    12·1·10
                              Date

Applicant/Donor Signature    12/1/10
                              Date

☐ Applicant Refused to Sign:  Time _____   ☐ A.M. ☐ P.M.   Date: _____

*WHITE* - APPLICANT MEDICAL FILE    *YELLOW* - LAB/RETURN MEDICAL FILE   *PINK* - LAB
PBSO #0083 Rev 01/05

Reference: Pre-disciplinary Hearing                                        March 25, 2011

To: Captain Gregg

I first want to express how sorry I am for the embarrassment I caused for the Sheriff's Office and its members. I also want to thank the Sheriff's Office for the support I have been receiving. As you know on December 2, 2010 I checked myself into ▮▮▮▮ (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮) for treatment. For the month of December I worked with a team of therapists and doctors to get better. I discussed the problems I have been dealing with and they soon realized the main problem I was experiencing was ▮▮▮▮ (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). After years of being able to "deal" with child pornography images and movies I saw daily, that soon changed. The poison I was seeing daily at work began to seep into my personal life in way I was not prepared for or understood at the time. I began having intrusive thoughts while at home with my small children. As the intrusive thoughts became more consistent I began having nightmares which affected my sleep. Soon I couldn't enjoy an intimate moment with my small children without the thoughts of the same child rape videos playing in my mind. As these problems got worse I was unaware that ▮▮▮▮▮▮ was setting in. It affected my belief in God, I thought how can there be a God when I was seeing what people were doing to small innocent children. At the time I was prescribed pain pills for a back injury and realized the pills also took away the ▮▮▮▮▮▮ and ▮▮▮▮▮▮ I was experiencing. There were many times I tried to stop using pain pills, but could not. In my mind I could never give up on the job I was doing. I would take one look at faces of the child being raped on video and said to myself... your problems are nothing compared to what these children are going through so suck it up. Giving up on these kids was not an option in my mind. I somehow began to relate to the children I saw in the videos on a level that my own father was never there for me in my life.

While at ▮▮▮▮▮▮ I underwent ▮▮▮▮▮▮ (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). On the first of January I was released ▮▮▮▮▮▮ after successfully completing their ▮▮▮▮▮▮▮▮▮▮. Since my release I have been working with therapists and a doctor on ways for cope with ▮▮▮▮▮▮

The thought of losing my benefits and pay during this time of my life would be devastating to me, my wife and 4 children. My wife works part-time in order to deal with all the medical needs for my 7 year old son Brendan who has ▮▮▮▮▮▮ Brendan needs weekly physical and occupational therapy and should not have to pay for the mistakes of his father or the ▮▮▮▮▮▮ I'm is dealing with. I am still experiencing the symptoms ▮▮ and I'm working with therapists to heal. I have not been on any type of pain medication since I checked into ▮▮▮▮ December 2nd 2010. I am learning new ways of confronting and living with ▮▮▮▮ I hope and pray that the Sheriff's Office continues to support me while I get better. I also hope the Sheriff's Office takes into consideration the 21 years of dedicated service to the agency and community.

Respectfully Submitted,

Detective Patrick Paige

ROBYN FEIBUSCH, ESQUIRE
Powers, McNalis, Torres & Teebagy
1601 Belvedere Rd., Suite 500S
West Palm Beach, Florida 33406

April 11, 2011

Scott Suskauer, Esquire
The Suskauer Law Firm
1601 Forum Place
West Palm Beach, Florida

To Whom It May Concern:

As an Assistant State Attorney in the Palm Beach County State Attorney's Office from 1988 through January 2009, I had a number of opportunities to work with Deputy Sheriff Patrick Paige. Over the years I found Patrick Paige to be intelligent, articulate, well versed in investigative techniques, and among the finest, and most dedicated officers at the Palm Beach County Sheriff's Office.

I was so impressed by Patrick Paige and his knowledge of computer crimes and online safety that I invited him to participate in law related education classes I taught through the years at the Meyer Academy in West Palm Beach. I still hear from parents and students who participated about the value of those classes and the efforts of Patrick Paige.

It was so distressing then when I learned of Pat's unfortunate addiction to prescription drugs ███████████████████████████ I can only imagine how desperate he must have become as a result of his addiction.

As a former prosecutor who was cognizant of the obligation to mete out justice firmly but fairly, I write seeking a fair sentence for a man who devoted his life to law enforcement, to making this community safer and who apparently fell prey to the pressures of his job and the insidious effects of prescription drugs.

Respectfully,

*Robyn Feibusch*

Robyn Feibusch, Esquire

RBF/rbf

  

**PALM BEACH COUNTY**
# SHERIFF'S OFFICE
RIC L. BRADSHAW, SHERIFF

## INTER-OFFICE MEMORANDUM
### Strategic Operations Bureau

TO:  Colonel James Stormes                    DATE.  07/25/11

FROM:  Major Frank DeMario

SUBJECT:  Disciplinary Recommendation – Detective Patrick Paige

---

After review of Captain Gregg's disciplinary recommendation. I do not concur with her findings, nor the reasons given that would otherwise excuse or relieve Detective Paige of his responsibility for the criminal acts he has committed.  While I do believe dependable years of exceptional service should have a role in determining discipline, the gravity of this offense must outweigh any leniency concerns. Being contrite and accepting responsibility for one's actions does not negate said actions.

The following are my reasons for disagreement:

- Detective Paige committed a Felony when he purchased and used an illegal substance
- By his actions, Detective Paige has violated the trust of the agency, his colleagues, and the public he serves
- By his actions, Detective Paige has violated his oath of office and the law enforcement Code of Ethics

In view of the aforementioned, I recommend Termination as the only option for Detective Paige's action.

I concur
Col. Jon E. ____
7-29-11

Concur
8-12-11
Chief Deputy
M. Gauger

RECEIVED
AUG 1 5 2011
INTERNAL AFFAIRS



**PALM BEACH COUNTY**
# SHERIFF'S OFFICE

*RIC L. BRADSHAW, SHERIFF*





## INTER-OFFICE MEMORANDUM
Special Investigations Division

TO: Sheriff Ric Bradshaw                    DATE: July 18, 2011

FROM: Captain Carol Gregg

SUBJECT: Disciplinary Recommendation: IA #10-166

On 07/12/11, I received the completed Internal Affairs investigation on Detective Patrick Paige #4278 in which he was sustained regarding:

**IX (33) Misuse of Public Position**
**V (1) Standard of Conduct**

Upon review of the investigation and taking other factors into consideration, I recommend the following discipline:

- **30-day suspension without pay**
- **Last Chance Agreement**
- **Drug testing, frequency and duration to be determined**

At first blush, termination of employment could certainly be justified due to the severity of the policy violations committed by Det. Paige. However, policy of the Palm Beach County Sheriff's Office in administering and recommending discipline allows for treating misconduct on an individual basis without creating precedent for other similar cases and numerous factors may be considered in determining the appropriate level of discipline. In making this recommendation, I considered the following:

1) Det. Paige's previously unblemished 22-year career with the Palm Beach County Sheriff's Office, details of which were noted in my March 28th memorandum in recommending that Det. Paige continue to receive pay while on Administrative Leave (memo attached).

2) Det. Paige's dedication to the Computer Crimes Unit and, in particular, his commitment to child exploitation investigations, whether completing the digital forensics critical to a successful prosecution or engaging a predator on-line in an effort to preclude the victimization of a child (also detailed in 03/28/11 memo). Det. Paige is so respected in the digital forensics field that three current & former

prosecutors from the ███ S. Attorney's Office and the State ███ rney's Office wrote letters of support for the judge hearing the criminal case against him.

3) 

4) The fact that Det. Paige was prescribed ███████ on three occasions in 2010 by his doctor. This is important because it shows that Det. Paige did not just decide to abuse hydrocodone; he was first legally prescribed ███████ for work-related injuries. It's now known that certain narcotics prescribed to relieve pain can be highly addictive, especially if someone is dealing with other stressors as well (Det. Paige has two children with special medical needs). Prescription drug abuse has become a pervasive, insidious problem and knows no socioeconomic or professional boundaries.

5) Det. Paige's revelation of the negative effect of regularly viewing pornography, and specifically child pornography, as a part of his job responsibility should be given much consideration. There is growing acknowledgement and literature being written about the effects of viewing child pornography on those responsible for the detection and investigation of child exploitation. With the advent of the internet and file sharing, purveyors of child pornography no longer possess small collections of photographs and magazines. It is not unusual for a person ████████████████████████████ to have hundreds of images; and, not just photographs, but often videos of the sexual abuse of children and babies. As part of the charging process, the prosecuting attorneys want to know how many images are in possession and descriptions of each. So, it's not enough to view one or two images; the forensic examiner must search the entire hard drive and any accompanying flash drives or DVD's, to obtain an accurate count and description. In a letter of support that Assistant U.S. Attorney A. Marie Villafana provided to Det. Paige's attorney, she writes about the impact the viewing of child pornography has had on her and yet she has only viewed "1/100[th] of the number of images that Detective Paige has seen." Ms. Villafana also described how the images have stayed with her for months and years and reappear to her at the most unexpected times. Det. Paige has seen several doctors and therapists ████████████████ and an assertion of what effect the routine viewing of child pornography has had on him is best explained by them; his therapist did submit a letter on his behalf for predetermination prior to being transitioned to administrative leave without pay.

I have met with Det. Paige several times ████████████ He has always been nothing but contrite and takes full responsibility for his actions. Det. Paige communicated to me that he felt an enormous sense of relief ████████████ because he did not believe he could stop on his own. Det. Paige also explained that, although he knew he was having difficulties in coping with work, he felt powerless to speak up because of the importance and meaningfulness of his job responsibilities. In an article

for April 2011's <u>FBI Law Enforcement Bulletin</u>, Dr. Nicole Cruz (FBI's Undercover Safeguard Unit) discusses the various coping styles she discovered after assessing officers exposed to child exploitation material. Officers who use one of the styles described, the "believer", are able to cope because they are highly motivated with a sense of duty, are hard workers, and believe that their work has great purpose. The negatives of this coping style, though, is that they may not stop when they should, may not invest in support to the degree of what they need, and are most vulnerable to burnout.

I am confident that Det. Paige can still contribute to the goals of the Sheriff's Office in some capacity as he did prior to the incident in question. What transpired is not a character reflection of the Det. Paige I have known over the years and was not done out of greed or malice. Ultimately, Det. Paige caused the most pain to himself and his family and he has since worked very hard to conquer his addiction and regain the trust he lost.



**PALM BEACH COUNTY**
# SHERIFF'S OFFICE
RIC L. BRADSHAW, SHERIFF





### INTER-OFFICE MEMORANDUM
**Strategic Operations Bureau**

TO:  Colonel James Stormes                    DATE:   07/25/11

FROM:  Major Frank DeMario

SUBJECT   Disciplinary Recommendation – Detective Patrick Paige

---

After review of Captain Gregg's disciplinary recommendation, I do not concur with her findings, nor the reasons given that would otherwise excuse or relieve Detective Paige of his responsibility for the criminal acts he has committed.   While I do believe dependable years of exceptional service should have a role in determining discipline, the gravity of this offense must outweigh any leniency concerns. Being contrite and accepting responsibility for one's actions does not negate said actions.

The following are my reasons for disagreement

- Detective Paige committed a Felony when he purchased and used an illegal substance
- By his actions, Detective Paige has violated the trust of the agency, his colleagues, and the public he serves
- By his actions, Detective Paige has violated his oath of office and the law enforcement Code of Ethics

In view of the aforementioned, I recommend Termination as the only option for Detective Paige's action.

7-29-11

RECEIVED
AUG 1 5 2011
INTERNAL AFFAIRS



**PALM BEACH COUNTY**
## SHERIFF'S OFFICE
*RIC L. BRADSHAW, SHERIFF*



## PALM BEACH COUNTY SHERIFF'S OFFICE
## NOTICE OF TERMINATION OF EMPLOYMENT

Detective Patrick Paige:

This letter shall act as formal notice that your appointment/employment with the Palm Beach County Sheriff's Office is ***terminated***, effective **09/09/2011 at 0900 hours.**

You are being noticed of this disciplinary action pursuant to F.S.S. 112.532 (4).

This action is based upon the issues contained within the Division of Internal Affairs **Case# IA 10-116** where charges were investigated and sustained administratively.

Effective immediately, you may not take any actions in any manner that would represent the Sheriff or the Sheriff's Office of Palm Beach County. You are also noticed that you cannot possess any item owned or in the inventory control of Palm Beach County Sheriff's Office.

Your signature below indicates you agree to comply with the above stipulations. You will be provided with a copy of this letter.

Respectfully,

*Lt. Mark Alexander, 4723*
Lieutenant Mark Alexander
Officer In Charge
Domestic Violence/Victim Witness

_____
(Employee)

_____9-9-11_____
(Date)

cc: Case

Affidavit of Separation: CJST Form #61                                           Page 1 of 2

**FDLE**
Florida Department of
Law Enforcement

## AFFIDAVIT OF SEPARATION

Incorporated by Reference in Rule
11B-20.001(3)(a)5.a., and 11B-27.002(3)(a)15., F.A.C.



CJSTC
61

1. Social Security Number: ▓▓▓▓▓
2. Name: Paige, Patrick L
3. Agency name: Palm Beach County Sheriff's Office
4. Agency ORI: FL0500000
5. Date employed: 9/28/1989        6. Separation Date: 9/9/2011

| Employment Class & Type |
|---|
| Full-Time Law Enforcement |

7. Separation Reasons

| 7A. ADMINISTRATIVE - ROUTINE | 7B. ADMINISTRATIVE - NON-ROUTINE | 7E. UNFAVORABLE - MISCONDUCT |
|---|---|---|
| ☐ Voluntary separation not involving misconduct | ☐ Failure to complete basic recruit training | ☐ Voluntary separation or retirement while being investigated for violation of agency or training school policy not involving a moral character violation defined in Rule 11B-27.0011, F.A.C. |
| ☐ Transfer within agency. No break in service | ☐ Failure to pass the State Officer Certification Examination | |
| ☐ Retired. Not involving misconduct | **7C. ADMINISTRATIVE - SUBSTANDARD PERFORMANCE** | ☐ Voluntary separation or retirement in lieu of termination for violation of agency or training school policy not involving a moral character violation defined in Rule 11B-27.0011, F.A.C. |
| ☐ Deceased | | |
| ☐ Budgetary Constraints. Local and Federal grants not renewed. | ☐ Failure to satisfactorily complete agency field training program (training performance issues) | |
| ☐ Extended leave of absence Type: _____ Periods of Time: _____ | ☐ Failure to perform assigned tasks satisfactorily | ☐ Terminated for violation of agency or training school policy (Not involving a moral character violation defined in Rule 11B-27.0011, F.A.C.) |
| ☐ Military leave of absence Periods of Time: _____ | **7D. OTHER - EXAMPLE** | |
| ☐ Suspension Periods of Time: _____ | ☐ Excessive absenteeism; failure to report for duty and sleeping on duty, and etc. | **7F.** Form CJSTC-61A must be completed and submitted with form CJSTC-61 for any of the following: |
| ☐ Administrative termination not involving misconduct. | | ☐ Voluntary separation or retirement while being investigated for violation of Section 943.13(4), F.S., or violation of moral character standards defined in Rule 11B-27.0011, F.A.C. |
| ☐ Special elected or appointed Position: _____ Anticipated term: _____ | | ☐ Voluntary separation or retirement in lieu of termination for violation of Section 943.13(4), F.S., or violation of moral character standards defined in Rule 11B-27.0011, F.A.C. |
| ☐ Instructor request for change of affiliation | | ☑ Terminated for violation of Section 943.13(4), F.S., or violation of moral character standards as defined by Rule 11B-27.0011, F.A.C. |

NOTICE: Section 943.139(2), F.S., requires the execution of an Affidavit of Separation by the employing agency in a case of officer separation. If the officer is separated, whether voluntary or involuntarily, for failure to comply with provisions of Section 943.13, F.S., the agency is required to so specify when completing the Affidavit of Separation Supplement form CJSTC-61A. WARNING: Intentional false execution of this Affidavit of Separation constitutes a misdemeanor of the second degree.

8. Agency Administrator or Designee's Signature    9. Agency Administrator or Designee's Printed Name: *James Phillips*    10. Date signed: 9-23-11

11. Agency Administrator or Designee's Title: *Supervisor*

**AFFIDAVIT**

12. STATE OF FLORIDA, COUNTY OF *Palm Beach* the foregoing instrument was acknowledged before me this date

*9-23-11*   by *James Phillips* who is personally known _____ or who has

produced identification. Type of identification: _____

## PALM BEACH COUNTY SHERIFF'S OFFICE
### PERSONNEL ACTION FORM

| Name | ID# | Social Security # *(New Hires Only)* |
|---|---|---|
| Patrick L. Paige | 4278 | ___ · ___ · ___ |

**Action:**

| | | |
|---|---|---|
| ☐ New Hire | Posting #: _____ *(New Hires only)* | |
| ☐ Rehire | ☐ Salary Change: Reason - _____ | |
| ☐ Promotion | ☐ Specialty Pay: Type - _____ | ☐ Add   ☐ Remove |
| ☐ Reclassification | ☐ Leave Type - _____ | ☐ With Pay  ☐ Without Pay |
| ☒ Demotion | ☒ Separation: Reason - Dismissal | |
| ☐ Transfer | ☒ Other   See Remarks | |
| | *Use the "Other" field for actions not specified above.* | |

**FROM:**

| Job Title: | Protective Service LE | Flex Field Title: | |
|---|---|---|---|
| Section # / Name | 5070/Special Investigations | | |
| Position Name: | Detective, Speizl INVEStigations Jtl 9l9lu | | |
| Pay (Grade/Step/Point) | 290   10   510   $ 6396 | Anniversary Date 7/27 | |

**TO:**

New Supervisor _____   Effective Date: 09/09/2011

| Job Title: | N/C | Flex Field Title: | |
|---|---|---|---|
| Section # / Name | N/C | | |
| Position Name: | N/C | | |
| Pay (Grade/Step/Point) | N/C   N/C   N/C   $ N/C | Anniversary Date  N/C | |

**Remarks** *(Characters limited to this box, please limit to a maximum of 7 lines / 1 paragraph to keep the form on one page)*:

Effective Date & Time   09/09/11 @ 0900 hours

Reference: I.A. Case # 10-116

Check out procedure to be completed.

ended Unpaid Administrative
Leave of absence 9/9/11.
entered 9/9/11 ✓

Prepared by:  Kelly Eberhart      Date: 09/09/2011   ID#:  4178

Signature indicates review and approval:

| | Date: | ID#: |
|---|---|---|
| Employee: | 9.9.11 | 4278 |
| Supervisor: Lt. Mark Miranda  4223 | 9-9-11 | 4727 |
| Capt/Division Commander: Lt. Mark Alexander  OIC | 9-9-11 | 4723 |
| Major/Asst. Director/CFO: _____ | _____ | _____ |
| Colonel/Director: _____ | _____ | _____ |
| Sheriff/Designee: _____ | _____ | _____ |
| Reviewed By Human Resources: Tanyara Clay | 9/9/11 | 2970 |

PBSO #0117 REV. 12/08

Administrative Investigation     IA No: IA10-116    Received: Dec 01, 2010

Case No:

Officers Involved:

Patrick L Paige [4278]

Officer current info:

Departments:
Assignments:
Complaint Type:

Snapshot - officer information at time of incident:

Badge/ID no: 4278
Departments:  Law Enforcement
Assignments:  5070-Special Invest
Complaint Type:
Rank/title: Detective
Age: 46   Years of employment: 21   Years with unit: 2
Off duty: Unk   Off duty employed: Unk

Allegations:

VIII Unlawful Conduct Offenses - Commission Of Felony - Sustained - Jul 01, 2011
IX Improper Conduct Offenses - Misuse Of Public Position - Sustained - Jul 01, 2011
V Code of Conduct - Standard Of Conduct - Sustained - Jul 01, 2011

Actions taken:

Sep 07, 2011 - TERMINATION  Days/hrs suspended/assessed:  - [Action/discipline completed]

Officer complainants:

I A Commander []

Officer current info:

Departments:
Assignments:
Complaint Type:

Summary:

It is alleged Det. Paige received an illegal, un prescribed shipment of Hydrocodone, which was
delivered to a PBSO sanctioned Post Office Box, located in West Palm Beach, and under the alias
of "Kevin Michael Reid."

Investigative tasks:

Due dt      Done dt       Type

Affidavit of Separation: CJST Form #61

Page 1 of 1

**FDLE**
Florida Department of
Law Enforcement

**AFFIDAVIT OF SEPARATION SUPPLEMENT**

Incorporated by Reference in Rule
11B-20.001(3)(a)5.b., and 11B-35.001(6)(b), F.A.C.



CJSTC
61A

Form CJSTC-61A must be completed and submitted with form CJSTC-61 for any of the following:

- Voluntary separation or retirement while being investigated for violation of Section 943.13(4), F.S., or violation of moral character standards defined in Rule 11B-27.0011, F.A.C.

- Voluntary separation or retirement in lieu of termination for violation of Section 943.13(4), F.S., or violation of moral character standards defined in Rule 11B-27.0011, F.A.C.

- Terminated for violation of Section 943.13(4), F.S., or violation of moral character standards as defined in Rule 11B-27.0011, F.A.C.

1. Officer or Instructor's Name: Paige, Patrick L

2. Officer or Instructor's Address: ▓▓▓▓▓▓▓

   City: Lake Worth             State: FL             Zip Code: 33467

3. Officer or Instructor's Telephone Number: ▓▓▓▓▓▓

4. Agency or training school contact person. (For more information):     **Supervisor James Phillips**

5. Contact Telephone Number:     561-688-3035

6. **Detailed Description of Misconduct:** Do not use generic terminology in this section such as conduct unbecoming, failed to meet agency standards, violation of agency operating procedures, etc. Detailed information describing the act of misconduct is needed for efficient processing.

Patrick Paige is alleged to have received an illegal, un-prescribed shipment of Hydrocodone, which was delivered to a Palm Beach County Sheriff's Office sanctioned Post Office Box, located in West Palm Beach, and under the alias of Kevin Michael Reid.



Effective 10/16/1992

Form Effective 6/9/2008

Affidavit of Separation: CJST Form #61                                    Page 2 of 2

Notary Seal: _Kelly Anne Eberhart_

Effective 10/16/1997

NOTARY PUBLIC-STATE OF FLORIDA
Kelly Anne Eberhart
Commission # DD857844
Expires:   MAY 23, 2013
BONDED THRU ATLANTIC BONDING CO., INC.

Print, type, or stamp Commissioned Name of Notary

Upon witnessing the agency administrator or designee's signing of this
affidavit, the notary public shall complete the notary block.

Form Effective Date 6/9/2008

PALM BEACH COUNTY SHERIFF'S OFFICE
CENTRAL RECORDS
FSS EXEMPTIONS/CONFIDENTIAL

| | |
|---|---|
| ☐ 119.071(2)(c) Active criminal intelligence/active criminal investigative Information | ☐ 119.071(5)(g)1 Biometric Identification Information (Fingerprints, palm prints, and footprints) |
| ☐ 119.071(2)(e) Confession | ☐ 119.071(2)(f) Confidential Informants |
| ☐ 365.171(15) Identity of 911 caller or person requesting emergency service | ☐ 316.066(5)(a) Crash reports are confidential for period of 60 days after the report is filed |
| ☐ 119.071(2)(d) Surveillance techniques, procedures, and personnel; inventory of law enforcement resources, policies or plans pertaining to mobilization, deployment or tactical operations | ☐ 119.071(2)(h)(1) Identity of victim of sexual battery, lewd and lascivious offense upon a person less than 16 years old, child abuse, sexual offense |
| ☐ 119.071(2)(l) Assets of crime victim | ☐ 985.04(1) Juvenile offender records |
| ☑ 119.071(5)(a)(5) Social security numbers held by agency | ☐ 119.0712(2) Personal information contained in a motor vehicle record |
| ☐ 119.071(5)(b) Bank account #, debit, charge and credit card numbers held by an agency | ☐ 119.071(2)(b) Criminal intelligence/investigative information from a non-Florida criminal justice agency |
| ☑ 395.3025(7)(a) and/or 456.057(7)(a) Medical information | ☑ 394.4615(7) Mental health information |
| ☐ 943.053/943.0525 NCIC/FCIC/FBI and in-state FDLE/DOC | ☑ 119.071(4)(c) Undercover personnel |
| ☐ 119.07(4)(d) Extra fee if request is voluminous or requires extensive personnel, technology | ☑ 119.071(4)(d)(1) Home address, telephone, soc. security #, date of birth, photos of active/former LE personnel, spouses and children |

☐ Other:

| Case No: | Tracking No.: 14-08-0244 | Clerk Name/ID: T. Hunt/8105 | Date: 09/23/2014 |
|---|---|---|---|

Revised 02/08/2013



*NO OPEN IA CASES*

# PALM BEACH COUNTY SHERIFF'S OFFICE
# HUMAN RESOURCES
# CHECK OUT FORM

Name _Patrick L. Paige_                                    ID# _4278_

Forwarding Address ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Telephone # ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓    Separation Date _09/09/11 @ 0900 hours_

Dist./Bureau/Section/Unit _Special Investigations/5070_ Separation Reason _Dismissed while on Administrative Leave without pay/Ref: IA 10-116_

Relative/Phone # _____    Paycheck Distribution _____

New Employer Name, Address & Telephone # _____

When a PBSO employee separates employment by resignation, retirement, termination, or is on an approved Personal Leave of Absence, it will be that individual's responsibility to have this form completed and signed by the respective departments.

When the form is complete, it must be hand-carried to the Accounting Office located on the 1st floor of Headquarters. Final paychecks will be issued on the next regularly scheduled pay date after this form has been accepted by the Accounting Office. If an employee is unable to return any PBSO issued equipment, the employee agrees that the cost of the equipment will be deducted from their final paycheck. Paychecks will be issued on the regular pay date.

I have read and understood the above _____  _4278_  _9/9/11_
                                    Signature                ID#        Date

| LOCATION | RESPONSIBLE FOR EQUIPMENT LISTED BELOW | DATE TURNED IN | DEPARTMENT HEAD OR DESIGNEE SIGNATURE & I.D. # |
|---|---|---|---|
| Airport | PBIA ID Card/Security Clearance | N/A | Lt. Thompson 4278 (Pringle) |
| Armory | Department-Owned Weapons & Issued Ammo | 9/8/11 | 6683 |
| Central Records | Assigned Case Reports | 9/8/11 | Mychelle Fields 3421 |
| Information Systems | Computer Equipment  '50593' | 9/8/11 | L. Hand 4182 |
| Internal Affairs | Photo Access I.D. Card & I/A Issued Keys | 9/8/11 | S. Quitero 3671 |
| Training | Outstanding Tuition Reimbursement Issues | 9-8-11 | Lt. Alexander 4723 (Smith) |
| Purchasing | Uniforms, Equipment, Handcuffs, Accessories, Badges, Purchasing Card, etc. | 9-9-11  9-9-11 | C.B. Clark 391F  Kliebert 8349 |
| Bicycle Operations | Bicycle/Racks/Equipment | N/A | U. Alexander 4723 (Clark) |
| Vehicle Maintenance | Assigned Vehicles, Keys, Gas Cards | 9/8/11 | Michael McCoy 8669 |
| Accounting | Gas Credit Card/Visa Credit Card, Turnpike Card(s) [Revenue, Non-revenue] Petty Cash Box, Outstanding Cell Phone Pmts. Loans, etc. | 9/9/11 | Nadia Hazout |
| Benefits | Obtain Cobra and Retirement Information | 9-8-11 | B.K. Kelley |
| Sub-Station Assignment/Dept. | Submit Letter of Resignation, Division Issued Keys (Dept. initiates Separation PAF) | n/a | Lt. Alexander 4723 |
| Telecommunications | Cellular Phone(s), PDA Device, Air Card, any other assigned phone equipment  Air Card | 9-8-11 | David Palewick 2461 |
| Human Resources | Exit Interview Bridging of Time Form P.S. 00.045 | 9/8/11 | Vanessa Clay |
| Radio Services | Portable Radio, Mobile Radio and Other Radio Equipment | 9/8/11 | Eric COPY |
| Communications | Uniforms, Headset, Lock | N/A | Lt. Alexander 4723 (McCoy) |

*If not applicable ~ SUPERVISOR MUST SIGN EACH SECTION

ORIGINAL – ACCOUNTING/PAYROLL  CANARY – HUMAN RESOURCES      PINK – EMPLOYEE      GOLD – CT. LIAISON

PBSO #0091 Rev.06/10

## Eberhart, Kelly A

| | |
|---|---|
| **From:** | Eberhart, Kelly A on behalf of Easton, Jeffery L |
| **Sent:** | Friday, September 09, 2011 9:59 AM |
| **To:** | Demario, Frank; Gregg, Carol A; Alexander, Mark B; Adams, Curtis D; Ramirez, Sandra P; Adriance, Catherine F.; Austin, Thomas M.; Bradshaw, Ric L.; Buckley, Mary C; Cardenas, Mery L; Caris, Tanya Hall; Cintron, Sonia Alexandra; Clay, Sanjena V; Cunningham, Thomas E; Easton, Jeffery L; Eberhart, Kelly A; Feeney, Terence P.; Fonger, Melissa Courtney; Furtado, Sherry Y; Gauger, Michael E; Gish, Mark A; Gonzalez, Hilda A.; Gunderson, Sigrid B; Hail, Angela N.; Hewitt, Debra Faye; Jones, Linda P; Josef, Sally A; Justo, Jeanette J; Keeley, Bonnie J; Kohl, Herbert H; Lane, Clovis L; Love, Latonya J; Lowry, Patti A; Lueghausen, Andrea M; Luty, Nicole Elizabeth; McCants, Michael R; McCants-Hubers, Sheri A; McFarlin, Kimberlie V.; Milligan, Susan M; Murray, Mark R; Ott, Michael E.; Phillips, James R; Schmidt, K. Robin; Skultety, Stephan; Smith, Shandeka N; Stelling, Joyce J; Stormes, James E; Taylor, Elizabeth A; Thibodeau, Steven M; Tritsch, Sally G.; VanReeth, Robert A.; Wayland, Janice M; Williams, Lisa |
| **Cc:** | King, Matthew A |
| **Subject:** | Termination/Paige |

D/S Patrick L. Paige, I.D. #4278, was terminated effective 09/09/11 @ 0900 hours.

Reference: I.A. Case #10-116.

PAF to follow.



 

**PALM BEACH COUNTY**
**SHERIFF'S OFFICE**
RIC L. BRADSHAW, SHERIFF



### INTER-OFFICE MEMORANDUM
**Strategic Operations Bureau**

TO:  Colonel James Stormes                    DATE:   07/25/11

FROM:  Major Frank DeMario

SUBJECT: Disciplinary Recommendation – Detective Patrick Paige

---

After review of Captain Gregg's disciplinary recommendation, I do not concur with her findings, nor the reasons given that would otherwise excuse or relieve Detective Paige of his responsibility for the criminal acts he has committed.   While I do believe dependable years of exceptional service should have a role in determining discipline, the gravity of this offense must outweigh any leniency concerns. Being contrite and accepting responsibility for one's actions does not negate said actions.

The following are my reasons for disagreement:

- Detective Paige committed a Felony when he purchased and used an illegal substance
- By his actions, Detective Paige has violated the trust of the agency, his colleagues, and the public he serves
- By his actions, Detective Paige has violated his oath of office and the law enforcement Code of Ethics

In view of the aforementioned, I recommend Termination as the only option for Detective Paige's action.

I concur
Col. Jim E. [signature]
7-29-11

concur
8-12-11
Chief Deputy
M. Gauger

[signature]
8/12/1

R E C E I V E D
AUG 1 5 2011
INTERNAL AFFAIRS

# *PALM BEACH COUNTY SHERIFF'S OFFICE DIVISION OF INTERNAL AFFAIRS*



## *ADMINISTRATIVE INVESTIGATION*

*CASE NUMBER:*            *IA10-116*
*INVESTIGATOR:*           *Sergeant Matthew King #5572*
*REFERENCE EMPLOYEE(S):*  *Detective Patrick Paige #4278*
*DATE INITIATED:*         *December 1, 2010*

## ALLEGATION

Detective Patrick Paige is alleged to have received an illegal, un-prescribed shipment of Hydrocodone, which was delivered to a Palm Beach County Sheriff's Office sanctioned Post Office Box, located in West Palm Beach, and under the alias of "Kevin Michael Reid."

## PERSONS INTERVIEWED

- Mr. Wilson Sanon
- Detective Patrick Paige

## DOCUMENTARY EVIDENCE

1. PBSO Employee Notification - Paige
2. PBSO Case Tolled Notification - Paige
3. PBA Notice of Representation - Paige
4. PBSO Offense Report #10-1080
5. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
6. UPS label with tracking number
7. PBSO Property receipts
8. Facsimile from Dr. Raja re: Paige's prescription.
9. PBSO Drug testing signed consent form
10. PBSO Authorization to release evidence
11. Signed Miranda Rights Card (copy) - Paige
12. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
13. Electronic mail from PBSO Sergeant Melody Gamage
14. Facsimile from ▮▮▮▮▮▮▮
15. Captain Carol Gregg's recommendation memorandum
16. Division of Internal Affairs notice of status change
17. Electronic mail from PBSO Sergeant Curtis Adams
18. Dell Quotation
19. Palm Beach County Sheriff's Office Personnel Action Form
20. Palm Beach County Sheriff's Office Employee System Inquire
21. Broward County Sheriff's Office report (case # MR2011-7 / PBSO IA-10-0116)

## INVESTIGATIVE REPORT

On December 1, 2010, Palm Beach Sheriff's Office (PBSO) Detective Patrick Paige drove to The UPS Store▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Palm Springs, Florida to pick up a package scheduled for delivery. When Detective Paige arrived he entered to mailbox ▮▮▮▮, a PBSO rented mailbox. Detective Paige used a key to open the mailbox and retrieved a package addressed to "Kevin Reid." Detective Paige re-secured the mailbox and walked out of the business. Detective Paige returned to his unmarked

PBSO assigned vehicle, opened the driver's side front door, and placed the package on the passenger seat as he entered the vehicle.

PBSO Narcotics Division personnel, who were conducting covert surveillance of Detective Paige's actions, surrounded Detective Paige while he was seated in his vehicle and blocked it from escape with unmarked police vehicles. PBSO Narcotics ████████████████████ immediately met with Detective Paige, detained him and removed the package from Detective Paige's unmarked PBSO assigned vehicle. The package was known by the Narcotics personnel to contain 70 suspected Hydrocodone tablets.

Detective Paige was taken to the PBSO Narcotics Unit for an audio/video recorded interview conducted by PBSO ████████████████████████
The following is a brief synopsis:

> Detective Paige was read his Miranda Rights by ████████████████. Detective Paige signed the Miranda Rights card, indicating he understood his rights. Detective Paige provided general information to include address, his personal cellular phone number; ████████████ registered to ████████████, and other miscellaneous information.

> Detective Paige said he did not personally have a mailbox at the UPS store, but explained PBSO has an undercover mailbox (mailbox number ███) for business purposes and all personnel in the Computer Crimes Unit have access to the mailbox. Detective Paige said the name "Kevin Reid" is a fictitious name that was assigned to the P.O. Box. Agents revealed Detective Paige's date of birth ███████████████) is listed on the registration under the fictitious name of Kevin Reid; however, Detective Paige did not divulge any information why his date of birth, his wife's name or his personal cellular phone were located on the UPS store's registration paperwork for the P.O. Box. Detective Paige said the type of mail typically received at the mailbox were credit card bills for PBSO.

> Detective Paige said he knows Mr. Wilson Sanon who works at the Palm Springs UPS on South Congress Avenue, in Palm Springs.

> When asked if he has personally received packages at the UPS store, Detective Paige replied, "I'm not going to answer any more questions."

After the interview was conducted, PBSO Division of Internal Affairs (IA) Sergeant Thomas Gendreau collected a mandatory urine sample from Detective Paige to be analyzed by the PBSO Crime Lab.

On December 13, 2010, Toxicologist Xiaoqin Shan completed her toxicology report, ███████████████████████ Subsequently, Detective Paige was asked to provide a prescription to verify the authorized medical use of the medication.

Detective Paige provided a letter from Dr. Suresh Raja, verifying he prescribed Detective Paige ████████, which is a combination of ████████████████████ on at least three occasions in 2010.

████████████ prepared a detailed report regarding this incident under case number 10-1080. The following is a brief synopsis:

> On November 30, 2010, ████████████████████████ met at the UPS warehouse at 2000 Avenue P, Riviera Beach, Florida. ████████████ was directed to a package by UPS security personnel believed to be suspicious based on a previous case with the name ████████████ " ████████ and ████████ engaged their PBSO canines (trained and certified in detecting controlled substances) to conduct a search for controlled substances. The canines alerted the Agents to the presence of controlled substances within the package.

> The white package had a UPS tracking number of ████████████████ and was delivered from 591 Telegraph Road, Chula Vista, California, a UPS store. The package was sent by Mr. Alejandro Camacho on November 29, 2010, by next day air and addressed to ████████████████████████████

According to their report, ████████████████████████ opened the "envelope" and found packaging in:

> *A manner consistent with illegal narcotics parcels. Inside the envelope was a UPS cardboard envelope encased in brown bubble wrap packaging, which held a smaller envelope that contained two plastic wrapped packages. The two smaller plastic wrapped packages also contained carbon paper wrapped yellow pills. The carbon paper is utilized to hide the contents of the packages from x-ray machines. Inside the smaller of the two packages contained 20 yellow oblong pills identification name of Watson 853 stamped on the individual pills. The larger of the two packages wrapped in the carbon paper contained 50 yellow oblong pills with the name of Watson 853 stamped on each pill.*

████████████ identified the pills as Hydrocodone, a Schedule III controlled substance. The evidence was packaged and placed into evidence at the Palm Beach County Sheriff's Office. I confirmed the identity of the pills as "acetaminophen/hydrocodone 325 mg / 10 mg" based on the imprinted name and number (drugs.com, 2000, p. W).

████████████ met with Mr. Wilson Sanon, the manager of the UPS Store located in Palm Springs, Florida, and questioned him about mailbox ████ and the identity

of ▊▊▊▊▊ The interview was not recorded, but Mr. Sanon explained the box belonged to PBSO and ▊▊▊▊▊▊ was using the box.

While ▊▊▊▊▊ was conducting his investigation at the UPS store, ▊▊▊▊▊ contacted the UPS store, via telephone, and spoke with Mr. Sanon inquiring if his package had arrived. ▊▊▊▊▊▊ indicated in a separate report that ▊▊▊▊▊ had "called the store and inquired about the delivery status of the UPS package since it was already a day late."

PBSO Narcotics Agents began conducting surveillance and watched as ▊▊▊▊▊▊ arrived at the UPS store. On December 14, 2010, ▊▊▊▊▊ met with PBSO Sergeant Curtis Adams of the Computer Crimes Unit. Sergeant Adams acknowledged he was aware of the undercover mailbox at the UPS store located at ▊▊▊▊▊▊▊▊ explaining the mailbox was used by PBSO Computer Crimes detectives to receive bills for "internet accounts and credit card bills." Sergeant Adams was unaware how the box was being paid for and indicated ▊▊▊▊▊▊ took it upon himself to deal with all issues related to the box. It was found there were a spare set of keys to the P.O. Box in the Computer Crimes office at PBSO, and according to ▊▊▊▊▊ they were "stored openly on a cork board just inside Sergeant Adams' office." ▊▊▊▊▊▊ also interviewed Detective Paul Indovina, Detective Debbie Phillips, and Detective Tina Bolton of the Computer Crimes Unit. Each of the detectives either did not know of the box's existence or have never accessed the box.

▊▊▊▊▊▊▊▊ completed a supplemental report, which is consistent with ▊▊▊▊▊ investigation. In addition to ▊▊▊▊▊▊ interview with Mr. Sanon, ▊▊▊▊▊ also met with Mr. Sanon for a sworn digitally recorded statement on December 3, 2010. The following is a synopsis:

*Mr. Sanon was the manager at the UPS store and knew* ▊▊▊▊▊ *was a fictitious name and the real name of the person utilizing the box was* ▊▊▊▊▊▊ *has been a customer of the UPS store for approximately eight years and has had many casual conversations with him. Mr. Sanon has known* ▊▊▊▊▊ *since 2002. Mr. Sanon said* ▊▊▊▊▊ *picks up his mail when he is in uniform with his firearm and driving a police unmarked Dodge Charger.* ▊▊▊▊▊▊ *informed Mr. Sanon he was in charge of investigating child pornography and told him packages arrive for the* ▊▊▊▊▊ *and that if payment is required, it is always done by check. Mr. Sanon explained the P.O. Box account was opened in 1999 at a different store. Once the UPS store on Congress Avenue opened, the account was transferred.*

▊▊▊▊▊▊ *has contacted the UPS store and Mr. Sanon was able to prove via caller identification the number* ▊▊▊▊▊ *an*

inbound call from ▮▮▮▮▮▮, was made on several occasions.  Mr. Sanon was asked about the service agreement regarding ▮▮▮▮▮ and under the fictitious name of ▮▮▮▮▮  He responded by saying "there were two photocopies of two (2) different driver's licenses that had the same name (▮▮▮▮▮▮▮) and same address (▮▮▮▮▮▮▮.  On the first license, the subject's date of birth was ▮▮▮▮▮ and had the picture of an unidentified white male.  On the second license, the subject's date of birth was ▮▮▮▮ and it had ▮▮▮▮▮▮ photograph. Sanon signed photograph, further confirming a positive identification of ▮▮▮▮ Mr. Sanon also mentioned that the only person he knows that has access to ▮▮▮▮▮▮ was ▮▮▮▮▮▮ and that ▮▮▮▮▮▮▮ had no additional boxes.

During the eight years of working at the store Mr. Sanon has only seen ▮▮▮▮▮ accessing the P.O. Box and when he does see ▮▮▮▮ at the store he is always alone.  Mr. Sanon receives a check in the amount of $168.00 annually by PBSO.

When ▮▮▮▮▮▮ was speaking with Mr. Sanon about ▮▮▮▮▮ and its recipient, ▮▮▮▮▮▮ was calling him (Sanon) and inquiring about the delivery of a package.  Mr. Sanon said that ▮▮▮▮▮▮ had been tracking the package and that ▮▮▮▮▮ was aware of the package's delivery status.  Mr. Sanon divulged that most deliveries to ▮▮▮▮ were overnight envelope/ letter packages.  Further, Mr. Sanon stated that ▮▮▮▮▮▮ had warned him that he may receive suspicious packages and not to be alarmed as the contents of the packages were for investigation purposes.

Detective Paige's PBSO issued computers were seized and forensically examined by Detective Jeanne Burtnett of the Broward County Sheriff's Office Computer Crimes Unit. The following is a brief synopsis of several entries or correspondences Detective Paige was involved in:

On November 2, 2010, Detective Paige utilized a PBSO computer to e-mail "Marcos Escalante." The emails continue throughout the day and communications between both parties involve the order of multiple Vicoden pills ranging in price, but not exceeding three hundred and thirty dollars. "Marcos Escalante" even asks Detective Paige if he wants the envelope addressed to "Mr. Patrick or Mr. Kevin (Kevin Reid)." Detective Paige advises "Marcos Escalante" to address the envelope to Kevin Reid at ████████ ████████████████████████ which is a PBSO Post Office Box.

On November 30, 2010, Detective Paige communicates with UPS customer service via the computer and inquires about an expected package. Detective Paige provides tracking number ████████████████████ in order for UPS to provide assistance to him. UPS responds to Detective Paige by advising him the package is in "transit" and will be delivered on December 1, 2010, which is the same day Detective Paige was apprehended at the UPS store. For more detailed information regarding communication between Detective Paige and "Marcos Escalante," please refer to the more in-depth report prepared by Detective Jeanne Burtnett, which has been placed in this investigations documentary evidence.

On June 15, 2011, Detective Patrick responded to the Division of Internal Affairs with Palm Beach Benevolent Association (PBA) attorney Mr. Gary Lipmann, Esq., and criminal defense attorney Mr. Scott I. Suskauer, Esq., to review evidence gathered during the course of this investigation. Detective Paige was advised the Division of Internal Affairs would not be compelling him to provide a statement upon completion of his review of the evidence. While being recorded and at the advice of his attorney's, Detective Paige declined to provide a statement.

Attorney Lipmann turned over to me a packet, which contained 7 letters of reference and a published article called *Picture Poison; Viewing Pornography for a Living Can Be Deadly*.

## INVESTIGATIVE SUMMARY

On November 30, 2010, Narcotics Agents were contacted by UPS employees regarding a package believed to contain illegal narcotics. ███████████████████████ met with UPS employees and retrieved the package. ████████████████████████ utilized their canine to conduct a search of the package to determine whether the presence of illegal narcotics existed. Both Agents' canines indicated a positive hit for a narcotic, so ████████████ took possession of the package and revealed its contents. Found inside the package were seventy hydrocodone pills, "it was packaged in a manner consistent with illegal narcotics parcels."

The package contained an identifiable tracking number, which was found to have an overnight delivery status from Chula Vista, California, from another UPS store. The package was addressed to Mr. Kevin Reid, at ███████████ ███████████ and ███████████ began an investigation into "Kevin Reid" and the address listed on the UPS package was ultimately found to be a PBSO P.O. Box. ███████████████ met with the UPS store manager, Mr. Sanon, who provided them with detailed information regarding the ownership and custodial care of the PBSO P.O. Box, which was being used by Detective Paige as an undercover mailbox. While being interviewed by PBSO Agents, Mr. Sanon received a phone call from Detective Paige inquiring about the status of a package he was expecting. Armed with this information Agents began surveillance on Detective Paige and the UPS store.

On the following day, Detective Patrick Paige went to ███████████████████ Palm Springs, Florida, to pick up a package that was being delivered to him under the alias Kevin Reid. When Detective Paige entered the UPS store he utilized a key to access the PBSO mailbox ████ and retrieve an envelope contained within. Once Detective Paige exited the store, he entered his PBSO unmarked police vehicle with the package, and it was at that moment when Narcotics Agents blocked his vehicle, approached Detective Paige's vehicle to detain him, and retrieve the package. Detective Paige was in possession of a package that contained 70 Hydrocodone pills, which were package in a manner consistent to hide or deceive authorities. Detective Paige made no attempts to verify the contents of the package prior to leaving the store or while in his vehicle.

During a follow-up investigation, Mr. Sanon was also able to provide documentation to Agents revealing how Detective Paige utilized personal information, personal cellular phone numbers, and his wife's information on registration forms in order to maintain custody of the P.O. Box from the UPS store. It was also revealed Detective Paige was the sole person who utilized the P.O. Box. Additionally, Detective Paige expressed to Mr. Sanon that he would be receiving suspicious packages and not to be alarmed as the contents of the packages were for investigative purposes.

Upon request, Detective Paige delivered a prescription from Dr. Suresha Raja, which stated he was prescribed "three ████████ prescriptions in 2010;" however, there was not a prescription provided under the alias "Kevin Reid," which is the fictitious name associated with PBSO's P.O. Box, and the name in which the package was addressed.

There are at least two known purchases made within the month of November of 2010, where Detective Paige utilized his PBSO laptops to engage in inappropriate and illegal activity. Detective Paige also utilized his assigned computer to check on the status of his UPS delivery and used the tracking number that matched that of the recovered envelope at the time it was seized by undercover agents, which further validates his knowledge and intent with the package.

Detective Paige was in fact the sole person to contact Mr. Sanon with the use of his own private cellular phone to check on the status of his expected envelope, and the only person who responded to pick up the package addressed to "Kevin Reid". Furthermore, there has been no evidence uncovered during the course of this investigation that would suggest Detective Paige received the envelope of pills for investigative purposes.

## RECOMMENDED FINDINGS

1. A preponderance of evidence **does exist** to show Detective Paige violated Palm Beach County Sheriff's Office Unlawful Conduct Offenses; VIII (6) Commission of Felony, to wit; Florida State Statute 893.13 (6)(a)(3)(f); Possession of Schedule II Substance; by knowingly ordering, collecting and possessing approximately seventy Hydrocodone pills illegally through UPS. Detective Paige was witnessed to possess the Hydrocodone pills while under surveillance by PBSO agents.

2. A preponderance of evidence **does exist** to show Detective Paige violated Palm Beach County Sheriff's Office Rule & Regulation; IX (33); Misuse of Public Position; by knowingly introducing himself to Mr. Wilson Sanon as a PBSO Detective, assuming responsibility of the P.O. Box utilized exclusively for criminal investigations, and informing Mr. Sanon that he would be receiving packages relative to such investigations.

3. A preponderance of evidence **does exist** to show Detective Paige violated Palm Beach County Sheriff's Office Rule & Regulation; V (I) Standard of Conduct. Mr. Sanon's confidence and trust in Detective Paige and PBSO was destroyed when the illegal activity of Detective Paige was made public. Additionally, Detective Paige's illegal activity caused embarrassment of the agency and in the public eye.

## References

Drugs.com, (2000). Unknown. Retrieved from;

> http://www.drugs.com/search.php?searchterm=Watson%20853

PALM BEACH SHERIFF'S OFFICE | 10
DIVISION OF INTERNAL AFFAIRS
**CASE #IA10-116**

## INVESTIGATOR AFFIDAVIT FOR CASE #: IA10-116

Under penalty of perjury, I the undersigned, declare that I have read the foregoing investigative report, and its contents are true and accurate to the best of my personal knowledge, information, and belief.

I, the undersigned, do hereby swear or affirm, under penalty of perjury, that to the best of my personal knowledge, information, and belief, I have not knowingly or willfully deprived, or allowed another to deprive, the subject of the investigation of any of the rights contained in ss. 112.532 and 112.533, Florida Statutes.

Rank, Name & ID#: _____

Signature: _____

**COUNTY OF PALM BEACH**
**STATE OF FLORIDA**

Sworn to or affirmed and subscribed before me, this ___ day of _____, 20 ___ , by the above named officer, who is personally known to me.

Rank, Name, & ID#: _____

Signature* _____

*Notarized signature preferred, but not required

NOTARY PUBLIC-STATE OF FLORIDA
Kelly Anne Eberhart
Commission # DD857844
Expires:   MAY 23, 2013
BONDED THRU ATLANTIC BONDING CO. INC.

---

## REVIEW AND APPROVAL

Reviewed By:                                    Reviewed By:

_____    _____
Lieutenant J. Swank #4280                  Lieutenant M. R. Murray #2151

_____    _____
Date Reviewed                                  Date Reviewed

Approved By:

_____    _____
Capt. L. Easton #2555                         Date Approved
Commander – Division of Internal Affairs

COLUMN ::: //Hazmats_with Judith Reisman/

# Picture **Poison**

## Viewing Pornography for a Living Can Be Deadly



I**n Cries in the Desert (2007),** John Glatt reported the tragic suicide of FBI Agent Patty Rust. In 1999, Rust was tasked with preparing "detailed drawings and diagrams of every item inside" the torture collection of David Ray, a pornography-addicted killer. Officer Rust was a "former Captain in the U.S. Army [and] an experienced FBI agent with a degree in criminology."

After spending five days in a trailer viewing the sado-sexual evidence, Agent Rust "walked out of the TOY BOX and shot herself in the head with her service revolver, dying instantly." A state official involved in the investigation stated, "She most probably couldn't handle what she had seen and was exposed to in that trailer." The FBI, however, officially ruled that her suicide was unconnected to her isolated week of viewing and re-drawing the grisly scenes.

The FBI disclaimer was hasty and ignored the impact that images have on the mind. Art historian David Freedberg has documented people being "sexually aroused by pictures and sculptures"; they "mutilate them, kiss them, cry before them," he writes. Sir Kenneth Clark notes that all nudes arouse "some vestige of erotic feeling" in viewers. Neurologist Richard Restak points out that "the more bizarre the visual image, the more likely we are to see and remember it."

Perhaps the FBI forgot my presentation to its Quantico behavioral science unit in 1983. After my briefing on the child pornography, crime, and violence depicted in *Playboy* and *Penthouse,* the agency purged both magazines from its commissary—the FBI behavioral science director had grasped the *causal role of sexual images on behavior.*

Aristotle likened mental images to "tracing with a signet ring on wax." Neuroscientists now define this brain-body response as "mirroring." Could Patty Rust sleep at night with those bizarre images of torture cruising through her brain, her body, and her memory?

## Viewers at Risk

Although the FBI may now claim that there is no causal link between pornographic images and behavior, the National Center for Missing and Exploited Children (NCMEC) has faced reality. It has established a "Safeguard" program to alleviate job trauma resulting from visual exposure to sado-sexual materials. NCMEC's Director of Family Advocacy Services, Marsha Gilmer-Tullis, said, "Law enforcement and the legal profession have come to understand the importance of ensuring that staff involved in this work must be taken care of emotionally and psychologically." "This work" refers to pornography, especially, but not only, child pornography.

NCMEC's Child Victim Identification Program (CVIP) is the US clearinghouse "for child-pornography cases and also serves as the main point of contact to international agencies for victim identification," Gilmer-Tullis explained. For a long time, she noted, people in law enforcement, the military, social work, and similar professions whose job included viewing images of child pornography *were afraid to admit they needed emotional help,* lest this reveal "an inability to perform one's job or prevent one from advancing in their career."

Fortunately, that fear has been diminishing, she said, as "level minded professionals understand that this work . . . could create incredible psychological challenges for the viewer at present and possibly in the future."

In other words, viewing pornographic images, especially of abused children, is toxic, what is termed an "erototoxin." Such images distress even "level-headed professionals," including FBI agents. NCMEC now has a psychologist on duty to help staff who must view this material. The April 23, 2009 edition of the *NCMEC Quarterly Progress Report* noted that most agencies now offer or even mandate counseling for their affected staff members rather than moving them to other jobs. In detail:

> The CyberTipline Safeguard Project is a multi-focused program . . . designed to provide job-specific training and consultation to ECD [Exploited Children Division] staff

members to minimize potential harm *as a result of viewing objectionable material.*

This quarter 88 hours of direct psychological consultation were provided through individual and group sessions with a cumulative total of 971 hours during this 27-month OJJDP [Office of Juvenile Justice and Delinquency Prevention] grant period.

Through these sessions 91% of all ECD staff members and 100% of staff members with less than 1 year of experience in the division reported they were able to identify and manage potential negative issues that could



# Porn **Buzz**

"**W**hen it comes to lust,** neuroimaging confirms that the prurient urge is all-encompassing. Watching pornography calls upon brain regions associated with reward, sensory interpretation, and visual processing. It enlists the amygdala and the hypothalamus, [two structures in the brain] which deal with emotional information; it also stimulates the reward-processing ventral striatum, probably due to the satisfying nature of watching erotic stimuli. All said, the most notable thing about lust is that it sets nearly the whole brain buzzing, [Adam] Safron says." Safron is a research consultant at Northwestern University who has conducted neuroimaging studies focusing on sexual behavior.

"These responses are so unique and distinctive that, in the context of an experiment, it is possible to determine whether a man is aroused just by looking at an fMRI brain scan. 'These are huge effects,' Safron says. 'You're looking at the difference between something that elicits intense desire and something that does not.'"

—from Kathleen McGowan,
"Seven Deadly Sins," *Discover,*
September 2009, p. 50

SEX 

arise *as a result of viewing objectionable materials on the job.* . . .

These goals are accomplished through the use of in-house professional social workers in the Family Advocacy Division and *weekly visits by a private psychologist.* This quarter the project team continued holding individual sessions with new staff members . . . in an effort to provide necessary support to help them manage possible concerns that may arise. [Emphasis added]

The NCMEC study recommends interventions for child-exploitation investigators who must view objectionable material. "Monitoring employees' well-being" should be proactive, the report states, to prevent "severe secondary traumatization." Further, analysts need "support resources . . . safeguard programs, counseling, [and] peer support" to create "awareness of secondary trauma and compassion fatigue" and to mitigate their effects.

In 2007, Juliet Francis, an NCMEC psychologist, published "Helping the Helpers: Minimizing the Psychological Impact of Investigators Viewing Objectionable Material." This analysis defines "objectionable materials" as the toxic form of eros, or erototoxins. The report concluded that, although "investigators of exploited children often experience satisfaction in their work to prevent child victimization . . . viewing child pornography may increase one's risk of exposure to the effects of secondary trauma." Exposure to pornography fits the definition of "secondary traumatic stress disorder" given in *Medical News Today* as "repeated and unwanted memories of the event, avoidance responses such as emotional numbness, and so-called

arousal responses such as hypervigilance or difficulty concentrating" (www.medicalnewstoday.com/articles/60266.php).

## Dangerous Denial

Dr. Francis warns that "if denied or ignored," this trauma can so change a person's perspective that it "may impede professional judgment and interfere with one's personal life." It could well be argued that executive, judiciary, and legislative denials of the toxic effects of pornography have not only put the immature brains of juveniles at risk, but also those of adults, including public servants. Vernon J. Geberth, former Commanding Officer of the Bronx Homicide Task Force, which handles over 400 murder investigations a year, stated, "This proliferation and access to pornography via the Internet in the privacy of one's home is a catalyst for copy-cat crimes and disaster. We are in a sad state and it will get worse." During one recent week, an FBI agent, a sheriff's deputy, and a mayor were all arrested for child sexual abuse and/or child pornography.

The elephant in the middle of the room that no one wants to acknowledge is that viewing "objectionable materials," once diagnosed as a form of "peeping," is deviant conduct; and that viewing such materials has actually led some investigators into perpetrating copycat sexual crimes against the very children they pledged, and planned, to protect. How

many jury members, judges, police officers, and social scientists have been and are now being traumatized in the line of duty, their brains neuro-chemically restructured by erototoxins unleashed by the viewing of pornography?

If NCMEC staff had not experienced emotional and psychological harm from seeing porno-

graphic images, there would have been no justification for the costly investment of time, money, and resources used to put the Safeguards program in place. But inquiries NCMEC has received from other protective organizations about their own traumatized staffs demonstrate the far-reaching impact of these stimuli among professionals.

I am often asked about the children and teenagers, women and men who are consuming "objectionable material" at home, in the office, or at school, or in prisons, hospitals, and other institutions. Do they all have a full-time psychologist available with whom they can share their "so-called arousal responses," sexual trauma, lust, fear, and shame?

If the NCMEC needs to safeguard *its trained adult staff* from the *known toxic effects* of pornography, how much more vulnerable are ordinary citizens, and especially children, to these materials? If an experienced FBI agent like Patty Rust couldn't handle her exposure to this poison, isn't it time to provide public protection from this modern deluge of erototoxic pollution? ●

> It could well be argued that **executive, judiciary, and legislative denials** of the **toxic effects of pornography** have not only put the immature brains of **juveniles at risk,** but also those of adults, including public servants.

Citizen Contact      IA No: CC10-1735    Received: Dec 03, 2010

Case No:

Officers Involved:

Patrick L Paige [4278]

Officer current info:

Departments:
Assignments:
Complaint Type:

Snapshot - officer information at time of incident:

Badge/ID no: 4278
Departments:  Law Enforcement
Assignments:  5070-Special Invest
Complaint Type:
Rank/title: Detective
Age: 46   Years of employment: 21   Years with unit:
Off duty:    Off duty employed:

Allegations:

Information Only -  - Citizen Inquiry - Dec 07, 2010

Summary:

Det. Keith Medrios (Palm Beach P.D.) was assisting with a search warrant in Belle Glade. Det.
Medrios and another detective were interviewing the owner of the house, Keith Combass. Det.
Patrick Paige and two other officers with the T.L.O. unit were inside the residence conducting the
search warrant while Det. Medrios was outside interviewing Combass. Two days later, Det.
Medrios received a telephone call from Combass. Combass told him he was missing 27
prescription pills. Captain Frig from Palm Beach P.D. is passing this information over to us.
Captain Frig from Palm Beach P.D. relayed this information and can be reached at 561-227-6365.

When/where:

Date/time occurred: Oct 13 2010

County:  IAR

Status/assignment information:

Status: Completed

Opened: 12/03/2010  Assigned:      Due: 12/17/2010       Completed: 12/07/2010

Disposition: Citizen Inquiry

Unit assigned: Un-assigned
Handled at field/unit level: No
Investigator assign: Un-assigned
Supervisor assign: Un-assigned

Source of Information: Citizen Contact

**Organizational component(s):**

Departments: Law Enforcement
Assignments: 5070-Special Invest

BlueTeam chain routings

**Dec 03, 2010  16:33: Sent from Sergeant LE David N Bradford [3886] to Sergeant LE Matthew A King [5572]**

Instructions:

For Your Information.  Advised by Lt. Swank to forward to you...

Reviewed by Sergeant LE Matthew A King [5572] on Dec 06, 2010 at 06:52

Decision: Approved

Reviewer comment:

Information received and follow-up on-going.

**Dec 06, 2010  06:52: Sent from Sergeant LE Matthew A King [5572] to Lieutenant LE Jeffrey D Swank [4280]**

Instructions:

Information received and follow-up is ongoing.  FYR.

Reviewed by Lieutenant LE Jeffrey D Swank [4280] on Dec 07, 2010 at 08:11

Decision: Approved

Reviewer comment:

AAW

**Dec 07, 2010  08:11: Sent from Lieutenant LE Jeffrey D Swank [4280] to Mark R Murray [2151]**

Instructions:

FYR

Reviewed by  Mark R Murray [2151] on Dec 07, 2010 at 15:08

Decision: Approved

Entered via BlueTeam by: Sergeant LE David N Bradford [3886] on Dec 03, 2010 at 16:21



**SHERIFF'S OFFICE**

RIC L. BRADSHAW, SHERIFF

## PERSONNEL COMPLAINT REPORT

Date of Complaint: December 1, 2010    Case #: IA 10-116    How Received: Internal Memo

Complainant's Name: IA Commander
Address: Division of Internal Affairs, West Palm Beach, FL

Allegation(s):

It is alleged Detective Patrick Paige received an illegal, un-prescribed shipment of Hydrocodone, which was delivered to a PBSO sanctioned Post Office Box, located in West Palm Beach, and under the alias of "Kevin Michael Reid."

Authorizing Investigation: SHERIFF RIC L. BRADSHAW, PALM BEACH COUNTY SHERIFF'S OFFICE

How Assigned:
Internal Affairs Investigation (IA)

DATE / TIME OF INCIDENT: | LOCATION OF INCIDENT:
December 1, 2010 | Palm Beach County

Employee(s) Involved: | Assignment at Time of Incident:
Detective Patrick PAIGE    (I.D. 4278) | Special Investigations (5070)

Investigator Assigned:
Sergeant Matthew King  (IA)

Palm Beach County Sheriff's Office Rule & Regulation Violation(s)

| 1 | | |
|---|---|---|
| 2 | IX (33) Misuse of Public Position | |
| 3 | V (1) Standard of Conduct | |
| | | |

FINAL DISPOSITION OF INVESTIGATION:

| Incident Review (Information Only): | |
|---|---|
| Exonerated Regarding: | |
| Unsubstantiated Regarding: | |
| Unfounded Regarding: | |
| X Sustained Regarding: | |

Signature of Approving Authority (Sheriff Designee)                    Date

FINAL DISCIPLINARY ACTION TAKEN BY AGENCY:

| Termination: | Resignation: | Demotion: | Suspension / # of Hours Sus. |
|---|---|---|---|
| Written Reprimand: | Verbal Reprimand: | Training Counseling: | Verbal Counseling: |
| No Action: | Information Only: | Other: | |

Signature of Approving Authority (Sheriff Designee)                    Date

Administrative Investigation      IA No: IA10-116   Received: Dec 01, 2010

Case No:

Officers Involved:

Patrick L Paige [4278]

Officer current info:

Departments:
Assignments:
Complaint Type:

Snapshot - officer information at time of incident:

Badge/ID no: 4278
Departments:  Law Enforcement
Assignments:  5070-Special Invest
Complaint Type:
Rank/title: Detective
Age: 46   Years of employment: 21   Years with unit: 2
Off duty: Unk   Off duty employed: Unk

Allegations:

VIII Unlawful Conduct Offenses - Commission Of Felony - Sustained - Jul 01, 2011
IX Improper Conduct Offenses - Misuse Of Public Position - Sustained - Jul 01, 2011
V Code of Conduct - Standard Of Conduct - Sustained - Jul 01, 2011

Actions taken:

Sep 07, 2011 - TERMINATION  Days/hrs suspended/assessed:  - [Action/discipline completed]

Officer complainants:

I A Commander []

Officer current info:

Departments:
Assignments:
Complaint Type:

Summary:

It is alleged Det. Paige received an illegal, un prescribed shipment of Hydrocodone, which was delivered to a PBSO sanctioned Post Office Box, located in West Palm Beach, and under the alias of "Kevin Michael Reid."

Investigative tasks:

Due dt     Done dt        Type

Page: 2

Mar 1, 2011  Jun 29, 2011 90 Day - Report Update

Assigned To: Sergeant Matt King

    Automatically generated

Mar 31, 2011 Jun 29, 2011 120 Day - Report Update

Assigned To: Sergeant Matt King

    Automatically generated

Apr 30, 2011 Jun 29, 2011 150 Day - Final Report Due

Assigned To: Sergeant Matt King

    Automatically generated

< N/A >  Jun 27, 2011 Tolled Investigation

Assigned To: Sergeant Matt King

    Investigation TOLLED on 12/01/10 cll

    Investigation RESUMED on 06/15/11 cll

< N/A >  Jul 8, 2011  Face Sheet Completed

Assigned To:   Clovis Lane

    06/29/11 pending sheriff's signature. cll

Jul 22, 2011 Aug 16, 2011    Disciplinary Recommendation

Assigned To:   Clovis Lane

    07/08/11 recommendation hand delivered to Major DeMario (Capt. Gregg). cll

Sep 6, 2011 Sep 9, 2011 Pre-Disciplinary Hearing

Assigned To:   Clovis Lane

    08/16/11 predisciplinary packet hand delivered to Major DeMario (Capt. Gregg)

< N/A >  Sep 9, 2011  Disciplinary Action

Assigned To:   Clovis Lane

    terminated on 09/09/11. cll

When/where:

Date/time occurred: Dec 01 2010

Incident Location: 0000-0000   Palm Springs FL

**Status/assignment information:**

Status: Completed

Opened: 12/02/2010   Assigned:   Due: 06/11/2011   Completed: 09/07/2011

Disposition: Sustained

Unit assigned: Internal Affairs
Handled at field/unit level: No
Investigator assign: Sergeant Matt King
Supervisor assign: Un-assigned
Source of information: Supervision

**Organizational component(s):**

Departments: Law Enforcement
Assignments: 5070-Special Invest
Complaint Type: Internal Complaint

Entered by:   Clovis Lano on Dec 02, 2010 at 07:38

## PALM BEACH COUNTY SHERIFF'S OFFICE
### PERSONNEL ACTION FORM

| Name | ID# | Social Security # (New Hires Only) |
|---|---|---|
| Patrick L. Paige | 4278 | _ _ - _ _ - _ _ _ _ |

**Action:**

| | |
|---|---|
| ☐ New Hire | Posting #: _____ (New Hires only) |
| ☐ Rehire | ☐ Salary Change: Reason - _____ |
| ☐ Promotion | ☐ Specialty Pay: Type - _____   ☒ Add   ☐ Remove |
| ☐ Reclassification | ☒ Leave: Type - Administrative   ☐ With Pay ☒ Without Pay |
| ☐ Demotion | ☐ Separation: Reason - _____ |
| ☐ Transfer | ☐ Other: _____ |
| | Use the "Other:" field for actions not specified above. |

**FROM:**

| | | | | | |
|---|---|---|---|---|---|
| Job Title: | Protective Service LE | | Flex Field Title: | | |
| Section # / Name: | 5070/Special Investigations | | | | |
| Position Name: | Detective | | | | |
| Pay (Grade/Step/Point): | 290   10   510 | $ 6396 | Anniversary Date: 7/27 | | |

**TO:**

New Supervisor: _____     **Effective Date: 03/31/2011**

| | | | | | |
|---|---|---|---|---|---|
| Job Title: | N/C | | Flex Field Title: | | |
| Section # / Name: | N/C | | | | |
| Position Name: | | | | | |
| Pay (Grade/Step/Point): | N/C   N/C | $ N/C | Anniversary Date: N/C | | |

**Remarks** *(Characters limited to this box, please limit to a maximum of 7 lines / 1 paragraph to keep the form on one page):*

Effective Date & Time: 3/31/11 @ 1600 hours

Reference: I.A. Case # 10-116

NOTE: CHANGED TO ADMINISTRATIVE LEAVE WITHOUT PAY WHILE ON ADMINISTRATIVE LEAVE WITH PAY STATUS

---

Prepared by: Kelly Eberhart                    Date: 03/31/2011   ID#: 4178

Signature indicates review and approval:

| | | | | |
|---|---|---|---|---|
| Employee: *via tekplar* | Date: 3-31-11 | ID#: 4278 |
| Supervisor: | Date: 3-31-11 | ID#: 3392 |
| Capt/Division Commander: | Date: 3-31-11 | ID#: 2025 |
| Major/Asst. Director/CFO: | Date: | ID#: |
| Colonel/Director: | Date: | ID#: |
| Sheriff/Designee: | Date: | ID#: |
| Reviewed By Human Resources: | Date: | ID#: |

PBSO #0117 REV. 12/08

**Eberhart, Kelly A.**

| | |
|---|---|
| From: | Eberhart, Kelly A. on behalf of Easton, Larry |
| Sent: | Thursday, March 31, 2011 1:16 PM |
| To: | DeMario, Frank; Gregg, Carol A.; Alexander, Mark B.; Adams, Curtis D.; Ramirez, Sandra P.; Adriance, Catherine F.; Austin, Thomas M.; Bradshaw, Ric; Buckley, Mary C; Cardenas, Mery L.; Cintron, Sonia A.; Easton, Larry; Eberhart, Kelly A.; Feeney, Terence P.; Furtado, Sherry Y.; Gauger, Michael E.; Gish, Mark A.; Gonzalez, Hilda A.; Gunderson, Sigrid; Hall, Angela N.; Hewitt, Debra F.; Jones, Linda P.; Josef, Sally A.; Justo, Jeanette J.; Keeley, Bonnie J.; Kohl, Herbert H.; Lane, Clovis; Love, Latonya; Lowry, Patti A.; Lueghausen, Andrea M.; Luty, Nicole E.; McCants, Michael R.; McCants-Hubers, Sheri A.; McFarlin, Kimberlie; Milligan, Susan M.; Murray, Mark; Ott, Michael E.; Peerson, Joyce M.; Phillips, James R.; Schmidt, K. Robin; Skultety, Stephan; Smith, Shandeka; Stelling, Joyce J.; Stormes, James E.; Swank, Jeffrey; Taylor, Elizabeth A.; Thibodeau, Steven M.; Tritsch, Sally G.; VanReeth, Robert; Wayland, Janice M.; Williams, Lisa; Wood, Theola E. |
| Cc: | King, Matthew A. |
| Subject: | Administrative Leave Without Pay/Paige |

Det. Patrick L. Paige, I.D. #4279, has been placed on Administrative Leave without Pay, effective 3/31/11 @ 1600 hours.

Reference: I.A. Case #10-116.

PAF to follow.

NOO          NOO          **Administrative Leave Without Pay**

1

## PALM BEACH COUNTY SHERIFF'S OFFICE
### PERSONNEL ACTION FORM

| Name | | ID# | Social Security # *(New Hires Only)* |
|---|---|---|---|
| Patrick L. Paige | | 4278 | |

**Action:**

| | | |
|---|---|---|
| ☐ New Hire | Posting #: _____ *(New Hires only)* | |
| ☐ Rehire | ☐ Salary Change: Reason - _____ | |
| ☐ Promotion | ☐ Specialty Pay: Type - _____ | ☐ Add  ☐ Remove |
| ☐ Reclassification | ☒ Leave: Type - Administrative _____ | ☒ With Pay  ☐ Without Pay |
| ☐ Demotion | ☐ Separation: Reason - _____ | |
| ☐ Transfer | ☐ Other: _____ | |

*Use the "Other" field for actions not specified above.*

**FROM:**

| Job Title | Detective | Flex Field Title | |
|---|---|---|---|
| Section # / Name: | Special Investigations (5070) | | |
| Position Name | | | |
| Pay (Grade/Step/Point) | 290   10   $ 8398 | Anniversary Date: 7/27 | |

**TO:**

New Supervisor: _____   **Effective Date: 01/05/2011**

| Job Title: | N/C | Flex Field Title: | |
|---|---|---|---|
| Section # / Name: | N/C | | |
| Position Name: | | | |
| Pay (Grade/Step/Point) | N/C   N/C   $ N/C | Anniversary Date: N/C | |

**Remarks** *(Characters limited to this box, please limit to a maximum of 7 lines / 1 paragraph to keep the form on one page):*

Effective Date & Time: 1/05/11 @ 0800 hours

Reference: I.A. Case # 10-116

---

Prepared by: Kelly Eberhart     Date: 1/05/2011   ID#: 4178

Signature indicates review and approval:

| | Date: | ID#: |
|---|---|---|
| Employee: | X 1/5/10 | X 4278 |
| Supervisor: | 1-5-11 | |
| Capt/Division Commander: | 1-5-11 | 2385 |
| Major/Asst. Director/CFO: | | |
| Colonel/Director: | | |
| Sheriff/Designee: | | |
| Reviewed By Human Resources: Tanyena V Clay | 1/5/11 | 2426 |

PBSO #0117 REV  12/08

No **PAID** EN CASSS

## PALM BEACH COUNTY SHERIFF'S OFFICE
## HUMAN RESOURCES
## CHECK OUT FORM

Name___Patrick L. Paige_____   ID#__4278___

Forwarding Address_____

Telephone #_____   Separation Date__09/09/11 @ 0900 hours__

Dist./Bureau/Section/Unit _Special Investigations/5070_ Separation Reason Dismissed while on Administrative Leave without pay/Ref: IA 10-116

Relative/Phone #_____   Paycheck Distribution_____

New Employer Name, Address & Telephone #_____

When a PBSO employee separates employment by resignation, retirement, termination, or is on an approved Personal Leave of Absence, it will be that individual's responsibility to have this form completed and signed by the respective departments.

When the form is complete, it must be hand-carried to the Accounting Office located on the 1st floor of Headquarters. Final paychecks will be issued on the next regularly scheduled pay date after this form has been accepted by the Accounting Office. If an employee is unable to return any PBSO issued equipment, the employee agrees that the cost of the equipment will be deducted from their final paycheck. Paychecks will be issued on the regular pay date.

I have read and understood the above _____   4278   9/9/11
                                        Signature            ID#     Date

| LOCATION | RESPONSIBLE FOR EQUIPMENT LISTED BELOW | DATE TURNED IN | DEPARTMENT HEAD OR DESIGNEE SIGNATURE & I.D. # |
|---|---|---|---|
| Airport | PBIA ID Card/Security Clearance | N/A | Lt. Alexander 4723 (Biciela) |
| Armory | Department-Owned Weapons & Issued Ammo | 9/8/11 | 8643 |
| Central Records | Assigned Case Reports | 9/8/11 | 3421 |
| Information Systems | Computer Equipment  (5059 3) | 9/8/11 | F. Hoyt 4182 |
| Internal Affairs | Photo Access I.D. Card & I/A Issued Keys | 9/8/11 | S. Hutech 367 |
| Training | Outstanding Tuition Reimbursement Issues | 9-8-11 | Lt. Alexander 4723 (Snake) |
| Purchasing | Uniforms, Equipment, Handcuffs, Accessories, Badges, Purchasing Card, etc. | 9-9-11 | 5349 |
| Bicycle Operations | Bicycle/Racks/Equipment | N/A | Lt. Alexander 4723 (Biciela) |
| Vehicle Maintenance | Assigned Vehicles, Keys, Gas Cards | 9/8/11 | 8609 |
| Accounting | Gas Credit Card/Visa Credit Card, Turnpike Card(s) [Revenue, Non-revenue] Petty Cash Box, Outstanding Cell Phone Pmts. Loans, etc. | 9/9/11 | Pedro Heuort |
| Benefits | Obtain Cobra and Retirement Information | 9-8-11 | B. Keeley |
| Sub-Station Assignment/Dept. | Submit Letter of Resignation, Division Issued Keys (Dept. initiates Separation PAF) | N/A | Lt. Alexander 4723 |
| Telecommunications | Cellular Phone(s), PDA Device, Air Card, any other assigned phone equipment  Air Card | 9-8-11 | Lucia Ciolino 3451 |
| Human Resources | Exit Interview | | |
| | Bridging of Time Form P.S. 00.045 | 9/8/11 | Verynid Clay |
| Radio Services | Portable Radio, Mobile Radio and Other Radio Equipment | 9/8/11 | Evans 534 |
| Communications | Uniforms, Headset, Lock | N/A | Lt. Alexander 4723 (Biciela) |

*If not applicable – SUPERVISOR MUST SIGN EACH SECTION

ORIGINAL – ACCOUNTING/PAYROLL   CANARY – HUMAN RESOURCES   PINK – EMPLOYEE   GOLD – CT. LIAISON

PBSO #0091  Rev 06/10

## PALM BEACH COUNTY SHERIFF'S OFFICE
## PERSONNEL ACTION FORM

| Name | ID# | Social Security # *(New Hires Only)* |
|---|---|---|
| Patrick L. Paige | 4278 | -   -   - |

**Action:**

| | | |
|---|---|---|
| ☐ New Hire | Posting #: _____ *(New Hires only)* | |
| ☐ Rehire | ☐ Salary Change: Reason - _____ | |
| ☐ Promotion | ☐ Specialty Pay: Type - _____ | ☐ Add   ☐ Remove |
| ☐ Reclassification | ☐ Leave: Type - _____ | ☐ With Pay   ☐ Without Pay |
| ☐ Demotion | ☒ Separation: Reason - Dismissal | |
| ☐ Transfer | ☒ Other: See Remarks | |
| | *Use the "Other" field for actions not specified above* | |

**FROM:**

| Job Title: | Protective Service I.F. | Flex Field Title: | |
|---|---|---|---|
| Section # / Name: | 6070/Special Investigations | | |
| Position Name: | Detective, Special Investigations | | |
| Pay (Grade/Step/Point): | 290   10   510   $ 6396 | Anniversary Date: 7/27 | |

**TO:**

New Supervisor: _____                              Effective Date: 09/09/2011

| Job Title: | N/C | Flex Field Title: | |
|---|---|---|---|
| Section # / Name: | N/C | | |
| Position Name: | N/C | | |
| Pay (Grade/Step/Point): | N/C   N/C   N/C   $ N/C | Anniversary Date: N/C | |

**Remarks** *(Characters limited to this box, please limit to a maximum of 7 lines / 1 paragraph to keep the form on one page):*

Effective Date & Time: 09/09/11 @ 0900 hours

Reference: I.A. Case # 10-116

Check out procedure to be completed.

*(handwritten)* ended Unpaid Administrative
Lm of absence 9/9/11.
entered 9/9/11

---

| Prepared by: Kelly Eberhart | Date: 09/09/2011 | ID#: 4178 |
|---|---|---|

**Signature indicates review and approval:**

| | Date: | ID#: |
|---|---|---|
| Employee: *(signature)* | 9-9-11 | 4278 |
| Supervisor: Lt. Mark Alexander  4723 | 9-9-11 | 4723 |
| Capt/Division Commander: Lt. Mark Alexander  OIC | 9-9-11 | 4723 |
| Major/Asst. Director/CFO: _____ | _____ | _____ |
| Colonel/Director: _____ | _____ | _____ |
| Sheriff/Designee: _____ | _____ | _____ |
| Reviewed By Human Resources: *(signature)* Tanisima Clay | 9/9/11 | 2970 |

PBSO #0117 REV. 12/08

**Eberhart, Kelly A**

| | |
|---|---|
| **From:** | Eberhart, Kelly A on behalf of Easton, Jeffery L |
| **Sent:** | Friday, September 09, 2011 9:59 AM |
| **To:** | Demario, Frank; Gregg, Carol A; Alexander, Mark B; Adams, Curtis D; Ramirez, Sandra P; Adriance, Catherine F.; Austin, Thomas M.; Bradshaw, Ric L; Buckley, Mary C; Cardenas, Mery L; Caris, Tanya Hall; Cintron, Sonia Alexandra; Clay, Sanjena V; Cunningham, Thomas E; Easton, Jeffery L; Eberhart, Kelly A; Feeney, Terence P.; Fonger, Melissa Courtney; Furtado, Sherry Y; Gauger, Michael E; Gish, Mark A; Gonzalez, Hilda A.; Gunderson, Sigrid B; Hall, Angela N.; Hewitt, Debra Faye; Jones, Linda P; Josef, Sally A; Justo, Jeanette J; Keeley, Bonnie J; Kohl, Herbert H; Lane, Clovis L; Love, Latonya J; Lowry, Patti A; Lueghausen, Andrea M; Luty, Nicole Elizabeth; McCants, Michael R; McCants-Hubers, Sheri A; McFarlin, Kimberlie V.; Milligan, Susan M; Murray, Mark R; Ott, Michael E.; Phillips, James R; Schmidt, K. Robin; Skultety, Stephan; Smith, Shandeka N; Stelling, Joyce J; Stormes, James E; Taylor, Elizabeth A; Thibodeau, Steven M; Tritsch, Sally G.; VanReeth, Robert A.; Wayland, Janice M; Williams, Lisa |
| **Cc:** | King, Matthew A |
| **Subject:** | Termination/Paige |

D/S Patrick L. Paige, I.D. #4278, was terminated effective 09/09/11 @ 0900 hours.

Reference:  I.A. Case #10-116.

PAF to follow.

1

Affidavit of Separation: CJST Form #61                                    Page 1 of 2

## AFFIDAVIT OF SEPARATION

**FDLE**
Florida Department of
Law Enforcement

Incorporated by Reference in Rule
11B-20.001(3)(a)5.a., and 11B-27.002(3)(a)15., F.A.C.


CJSTC
61

1. Social Security Number: ▓▓▓▓
2. Name: Paige, Patrick L
3. Agency name: Palm Beach County Sheriff's Office
4. Agency ORI: FL0500000
5. Date employed: 9/28/1989      6. Separation Date: 9/9/2011

Employment Class & Type
Full-Time Law Enforcement

7. Separation Reasons

| 7A. ADMINISTRATIVE - ROUTINE | 7B. ADMINISTRATIVE - NON-ROUTINE | 7E. UNFAVORABLE - MISCONDUCT |
|---|---|---|
| ☐ Voluntary separation not involving misconduct | ☐ Failure to complete basic recruit training | ☐ Voluntary separation or retirement while being investigated for violation of agency or training school policy not involving a moral character violation defined in Rule 11B-27.0011, F.A.C. |
| ☐ Transfer within agency. No break in service | ☐ Failure to pass the State Officer Certification Examination | ☐ Voluntary separation or retirement in lieu of termination for violation of agency or training school policy not involving a moral character violation defined in Rule 11B-27.0011, F.A.C. |
| ☐ Retired. Not involving misconduct | **7C. ADMINISTRATIVE - SUBSTANDARD PERFORMANCE** | |
| ☐ Deceased | ☐ Failure to satisfactorily complete agency field training program (training performance issues) | ☐ Terminated for violation of agency or training school policy (Not involving a moral character violation defined in Rule 11B-27.0011, F.A.C.) |
| ☐ Budgetary Constraints. Local and Federal grants not renewed. | ☐ Failure to perform assigned tasks satisfactorily | |
| ☐ Extended leave of absence Type: _____ Periods of Time: _____ | | **7F. Form CJSTC-S1A must be completed and submitted with form CJSTC-61 for any of the following:** |
| ☐ Military leave of absence Periods of Time: _____ | **7D. OTHER - EXAMPLE** | |
| ☐ Suspension Periods of Time: _____ | ☐ Excessive absenteeism; failure to report for duty and sleeping on duty, and etc. | ☐ Voluntary separation or retirement while being investigated for violation of Section 943.13(4), F.S., or violation of moral character standards defined in Rule 11B-27.0011, F.A.C. |
| ☐ Administrative termination not involving misconduct. | | ☐ Voluntary separation or retirement in lieu of termination for violation of Section 943.13(4), F.S., or violation of moral character standards defined in Rule 11B-27.0011, F.A.C. |
| ☐ Special elected or appointed Position: _____ Anticipated term: _____ | | ☑ Terminated for violation of Section 943.13(4), F.S., or violation of moral character standards as defined by Rule 11B-27.0011, F.A.C. |
| ☐ Instructor request for change of affiliation | | |

NOTICE: Section 943.139(2), F.S., requires the execution of an Affidavit of Separation by the employing agency in a case of officer separation. If the officer is separated, whether voluntary or involuntarily, for failure to comply with provisions of Section 943.13, F.S., the agency is required to so specify when completing the Affidavit of Separation Supplement form CJSTC-S1A. WARNING: Intentional false execution of this Affidavit of Separation constitutes a misdemeanor of the second degree.

8. Agency Administrator or Designee's Signature     9. Agency Administrator or Designee's Printed Name   *James Phillips*    10. Date signed   9-23-11

11. Agency Administrator or Designee's Title   *Supervisor*

### AFFIDAVIT

12. STATE OF FLORIDA, COUNTY OF *Palm Beach* the foregoing instrument was acknowledged before me this date

*9-23-11* _____ by *James Phillips* who is personally known _____ or who has

produced identification. Type of identification: _____

_____

https://www.fdle.state.fl.us/ATMS2/Forms/CJSTC61.asp?person_nbr=65321&ssn=▓▓▓    9/22/2011

Affidavit of Separation: CJST Form #61                                    Page 2 of 2

Print, type, or stamp Commissioned Name of Notary

Notary Seal: _Kelly Anne Eberhart_

Upon witnessing the agency administrator or designee's signing of this
affidavit, the notary public shall complete the notary block.

Effective 10/16/1997

NOTARY PUBLIC-STATE OF FLORIDA
Kelly Anne Eberhart
Commission # DD857844
Expires:   MAY 23, 2013
BONDED THRU ATLANTIC BONDING CO., INC.

Form Effective Date 6/9/2008

Affidavit of Separation: CJST Form #61

Page 1 of 1

**FDLE**
Florida Department of
Law Enforcement

**AFFIDAVIT OF SEPARATION SUPPLEMENT**

Incorporated by Reference in Rule
11B-20.001(3)(a)5.b., and 11B-35.001(6)(b), F.A.C.



CJSTC
61A

Form CJSTC-61A must be completed and submitted with form CJSTC-61 for any of the following:

- Voluntary separation or retirement while being investigated for violation of Section 943.13(4), F.S., or violation of moral character standards defined in Rule 11B-27.0011, F.A.C.

- Voluntary separation or retirement in lieu of termination for violation of Section 943.13(4), F.S., or violation of moral character standards defined in Rule 11B-27.0011, F.A.C.

- Terminated for violation of Section 943.13(4), F.S., or violation of moral character standards as defined in Rule 11B-27.0011, F.A.C.

1. Officer or Instructor's Name: Paige, Patrick L

2. Officer or Instructor's Address: 

City: Lake Worth          State: FL          Zip Code: 33467

3. Officer or Instructor's Telephone Number

4. Agency or training school contact person: (For more information):          Supervisor James Phillips

5. Contact Telephone Number:          561-688-3035

6. **Detailed Description of Misconduct:** Do not use generic terminology in this section such as conduct unbecoming, failed to meet agency standards, violation of agency operating procedures, etc. Detailed information describing the act of misconduct is needed for efficient processing.

Patrick Paige is alleged to have received an illegal, un-prescribed shipment of Hydrocodone, which was delivered to a Palm Beach County Sheriff's Office sanctioned Post Office Box, located in West Palm Beach, and under the alias of Kevin Michael Reid.



Effective 10/16/1992                                        Form Effective 6/9/2008