The Honorable Thomas S. Zilly

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STRIKE 3 HOLDINGS, LLC, a
Delaware corporation,

              Plaintiff,

    v.

JOHN DOE, subscriber assigned IP
address 73.225.38.130,

            Defendant.

No. 2:17-cv-01731-TSZ

**PLAINTIFF/COUNTER-
DEFENDANT'S OPPOSITION TO
DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
OF NON-INFRINGEMENT OF
COPYRIGHT AND ATTORNEYS'
FEES AND COSTS**

NOTED ON MOTION CALENDAR:
August 23, 2019

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
No. 2:17-cv-01731-TSZ

Arête
LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

1    Plaintiff/Counter-Defendant, Strike 3 Holdings, LLC ("Plaintiff" or "Strike 3"),

2    respectfully requests entry of an order denying Defendant/Counter-Plaintiff's ("Defendant

3    or "Father") Motion for Partial Summary Judgment of Non-Infringement of Copyright and

4    Attorneys' Fees and Costs.

5    **I.      INTRODUCTION**

6        Defendant is an admitted BitTorrent user.  At approximately the same time that

7    Defendant received notice of this lawsuit, the infringement stopped.  Defendant has

8    steadfastly refused to produce the hard drive from the computer on which he admitted using

9    BitTorrent to download various works.  Moreover, Defendant's Son admitted specifically to

10   using BitTorrent to download adult films.  That hard drive, which Defendant's Son

11   admitted he turned over to Defendant, has also not been produced.  Yet, with these facts,

12   Defendant seeks summary judgment that (a) he is not an infringer and (b) he should be

13   awarded attorney's fees to boot.  This is the exact opposite of when summary judgment is

14   appropriate.  Defendant's Motion must be denied.

15   **II.     STATEMENT OF FACTS**

16       Strike 3's investigator determined that someone was using the Defendant's ISP to

17   infringe Strike 3's works on a large scale.  Based on this investigation, Strike 3 brought a

18   John Doe lawsuit and was allowed to subpoena Defendant's ISP.  Defendant received

19   notice of this lawsuit in December 2017.  Def's Depo. 199:13–21.  *All BitTorrent*

20   *downloads from Defendant's IP address stopped the very same month*.  *See* Declaration of

21   Jessica Fernandez ("Fernandez Decl.") ¶¶ 7-8.  In fact, Defendant's Son ultimately admitted

22   to using BitTorrent to download and view numerous adult motion pictures, but he does not

23   remember which ones (likely because the volume of his downloads was so substantial).  *See*

24   Declaration of Lincoln Bandlow ("Bandlow Decl.") ¶ 4, 78:2-23.  He stopped in December

25   2017.  Fernandez Decl. ¶¶ 7-8.  Both Defendant and Defendant's Son admitted to using the

26   exact same BitTorrent software program that Plaintiff's investigator recorded infringing

---

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
No. 2:17-cv-01731-TSZ – Page 1

Plaintiff's works.  Bandlow Decl. ¶¶ 4-5 (Son's Deposition 79:1-5; Defendant's Deposition 80:17-24); Fernandez Decl. ¶ 7.

Unlike a typical copyright infringement case, Strike 3 only knew Defendant by an IP address when it filed suit.  Dkt. # 8, ¶ 1(a).  Strike 3 did not learn Defendant's identity until more than six months after it filed its initial complaint.[1]  Strike 3 then conducted its customary good faith further investigation and discovered an unusual circumstance – that the subscriber's alleged first, middle, *and* last name belong to two individuals living at the *exact same* residence in Auburn, Washington – father and a son.  Dkt. # 73, at ¶ 14.

Plaintiff attempted to determine two critical facts: (1) whether the father or the son was the infringer; and (2) whether the father or the son was even the *actual subscriber* (and thus, the "Defendant") in this case.[2]  *See* Fernandez Decl. ¶ 9.  Unfortunately, it appeared virtually impossible to distinguish the Father and Son's names/identities in any produced documents, computers, and any other evidence.[3]  In short, the existence of two individuals in the same residence with the exact same name frustrated Plaintiff's direct infringement claim to the point where Plaintiff could not effectively proceed.  *See* Fernandez Decl. ¶ 11.

Accordingly, on August 24, 2018, Plaintiff dismissed its claim without prejudice because it knew a coordinated effort by the Father and Son (consisting of true or false testimony) could rebut any legal theory Plaintiff set forth.  *See* Fernandez Decl. ¶ 12.

---

[1] Strike 3 asked for Defendant's name as early as February, 2018, when Defendant's counsel appeared, but Defendant's counsel refused to provide it to Strike 3. Defendant also withheld this crucial information in his initial disclosure on April 27. *Cf.* Dkt. # 31.  It was not until July 20 – several months into litigation – that Plaintiff learned Defendant's name. *See* Dkt. # 47.

[2] Plaintiff's investigation also uncovered that an online username consisting of the subscriber's alleged first initial and last name was linked to several posts on a website that was a forum for uTorrent users.  Dkt. # 73, at ¶ 14.  One such post stated that the user was running 'uT 2.2 beta,' the *exact same* BitTorrent client the infringer used in this case.  Dkt. #73, at ¶ 14.  In another post, the user stated that he was "hooked up to Comcast as [his] ISP," the same ISP in this case. Dkt. #73, at ¶ 14.  Finally, Plaintiff observed an online Twitter username consisting of the subscriber's alleged first initial and last name tweeting a hashtag associated with adult content, and that this account had at least one follower who markets adult content. Dkt. #73, at ¶ 14.

[3] Discovery in this case eventually established this as true.  Indeed, Comcast's letter to the subscriber does not distinguish between the Father or the Son by using the "Sr." or "Jr." abbreviation. *See* Fernandez Decl. ¶ 10.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
No. 2:17-cv-01731-TSZ – Page 2

Arête
LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

Plaintiff knew the infringer resided in Defendant's home, both Father and Son were BitTorrent users, and despite having been served for over six months, Defendant never filed an answer. *See* Fernandez Decl. ¶ 13. Plaintiff's only satisfaction was knowing that at least one of the purposes of the Copyright Act – deterrence – had been achieved because the downloading stopped immediately upon Defendant getting notice of the lawsuit.[4] *See* Fernandez Decl. ¶ 12. Despite Plaintiff's dismissal, Defendant has continued to litigate its case in an attempt to recover attorneys' fees that he never paid,[5] and which he otherwise would not be entitled to receive.

Discovery has been unusual to say the least. Namely: (1) Defendant disclosed over 130 hard drives;[6] (2) Defendant admitted he gifted his son a new computer in February of 2018;[7] (3) Defendant (and his attorneys) refused to accept service on behalf of his Son, and Defendant chased down the process server to return the subpoena Defendant had already accepted;[8] (4) despite Defendant's testimony that he supposedly had no idea what his Son was up to Defendant and his Son invoked a "common defense" privilege;[9] (5) the Son admitted that he downloaded adult movies with the uTorrent software on his hard drive and

---

[4] IP Address 73.225.38.130 ceased all infringement activity on 12/3/2017. *See* Fernandez Decl. ¶¶ 7-8. Based on this evidence, a highly reasonable inference can be raised that either Defendant stopped downloading or Defendant's Son, who admitted to seeing the notice of the filing of the lawsuit (Bandlow Decl. ¶ 5 (Son's Deposition 31:1-17)), immediately stopped downloading when he learned that *once again* entities were concerned about illegal downloading of their content (Defendant admitted that twice in the past he had received notices of illegal downloading and he immediately confronted his son about being the culprit, which his Son never denied) (Bandlow Decl. ¶ 5 (Defendant's Deposition 100:3-13 and 101:1-7)).

[5] During discovery, not only did Strike 3 uncover that Defendant's counsel had given Defendant a reduced rate of $50 an hour, but during his deposition, Defendant *admitted that he had not paid one cent in attorney's costs or fees to Mr. Edmondson*. *See* Dkt. # 126-1, at 3 (Def's Depo 33:17–21). Defendant has made no effort to correct the record. This is a critical issue since Defendant's only damages in this case are his attorney's fees. *See id.* (Def's Depo 265:4–12)

[6] *See* Dkt. # 125-1, at 26–35.

[7] *See* Bandlow Decl. ¶ 5 (Defendant's Deposition 61:3-13).

[8] Dkt. # 89 at 2. Plaintiff's initial concerns regarding confusion between the Father and the Son were again on full display as the Father inadvertently accepted service of a subpoena which he believed was intended for him.

[9] Dkt. # 171.

---

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
No. 2:17-cv-01731-TSZ – Page 3

Arête
LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

that he knew the name of talent associated with Strike 3 films;[10] (6) Defendant admitted to using BitTorrent;[11] and (7) the Son admitted that he wiped his hard drive that was filled with BitTorrent and adult content and that this hard drive still exists in Defendant's stack of hard drives.[12]  For as much as this evidence supports that Plaintiff had the correct household, it also confirmed Plaintiff's concerns that led to the voluntary dismissal – that determining the infringer in this particular case would prove to be virtually impossible. That is why Plaintiff dismissed its direct infringement claim in the first instance, and it is why Plaintiff would never refile its claim against Defendant.  *See* Fernandez Decl. ¶ 14.

Since dismissing its claim, Plaintiff has offered to convert its dismissal to a dismissal "with prejudice," or agree to a consented judgment in Defendant's favor for his declaratory judgment claim *if* Defendant would agree that all parties would bear their own attorney fees and costs.[13]  And each time Defendant rejected such an offer, it became more and more apparent that resolution was *not* about addressing the purported injury caused by any sort of "certainly impending" revival of Plaintiff's claim.  Rather, resolution was contingent on solely on Defendant's *attorneys* recovering attorney fees.  All along in this case there was a side running the meter – and it was not Strike 3.

## II.   STANDARD

"Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a

---

[10] Dkt. # 136, at 24–27. *See* Bandlow Decl. ¶ 4, (Son's Deposition 68:3-14); Fernandez Decl. ¶ 20.

[11] *See* Bandlow Decl. ¶ 5, (Defendant's Deposition 80:17-25 and 81:1-22)

[12] Dkt. # 136, at 23.

[13] On September 5, 2018, Plaintiff sent Defense counsel a letter offering to dismiss its copyright infringement claim with prejudice in exchange for dismissal of Defendant's meritless abuse of process claim with prejudice and that each party bear its own attorney fees and costs. *See* Bandlow Decl. ¶ 6.  Defendant rejected this offer. *See* Bandlow Decl. ¶ 6.  On July 29, 2019, Plaintiff even agreed to entry of a consented judgment of Defendant's declaratory judgment of non-infringement claim in Defendant's favor, so long as each party bore their own attorney fees and costs.  *See* Bandlow Decl. ¶ 7.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
No. 2:17-cv-01731-TSZ – Page 4

Arête
LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

matter of law." *Standard Ins. Co. v. LaBree*, No. C06-5113RJB, 2006 WL 2289238, at *3 (W.D. Wash. Aug. 8, 2006).  The Court "must view the evidence in the light most favorable to the nonmoving party: if direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987).

## III.    ARGUMENTS

### A.    <u>Defendant Has Not Met His Burden to Show a Case or Controversy</u>

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157(2014) (citing U.S. Const., Art. III, § 2).  This requirement has been expressly incorporated into the Declaratory Judgment Act.  *See* 28 U.S.C. § 2201(a) (limiting applicability to "a case of actual controversy within [a court's] jurisdiction").  A party's standing to bring a claim is an "'essential component' of the case or controversy requirement of Article III . . . ." *Am. Civil Liberties Union of Nevada v. Lomax*, 471 F.3d 1010, 1015 (9th Cir. 2006) (citation omitted).  "The 'irreducible constitutional minimum of standing' contains three parts: (1) injury in fact; (2) causation; and (3) likelihood that the injury will be redressed by a favorable decision." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Since "the Declaratory Judgment Act does not itself confer federal subject-matter jurisdiction[,] a [party] seeking declaratory relief must independently establish that it has standing to seek relief."[14] *Cty. of Santa Clara v. Trump*, 267 F. Supp. 3d 1201, 1216 (N.D. Cal. 2017), *appeal dismissed as moot sub nom. City & Cty. of San Francisco v. Trump*, No.

---

[14] "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 185 (2000).  "Thus, a plaintiff who has standing to seek damages for a past injury, or injunctive relief for an ongoing injury, does not necessarily have standing to seek prospective relief such as a declaratory judgment." *Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir. 2010) (citing *Laidlaw Envtl. Serv., Inc.*, 528 U.S. at 185-86; *City of Los Angeles v. Lyons*, 461 U.S. 95, 111, (1983)).

---

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
No. 2:17-cv-01731-TSZ – Page 5

Arête
LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

17-16886, 2018 WL 1401847 (9th Cir. Jan. 4, 2018).  "To determine whether a declaratory judgment action presents a justiciable case or controversy, the Court considers whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).  *Spokane Valley Fire Dep't v. Int'l Ass'n of Fire Fighters AFL-CIO Local 3701*, No. 17-00250, 2019 WL 1748515, at *3–4 (E.D. Wash. Apr. 18, 2019) (citations and internal quotations omitted).  Additionally, "[s]pecial standing considerations apply to a declaratory judgment action," because a "[d]eclaratory judgment is not a corrective remedy and should not be used to remedy past wrongs . . . ."  *Microsoft Corp. v. U.S. Dep't of Justice*, 233 F. Supp. 3d 887, 897-98 (W.D. Wash. 2017).  Rather, "'there is a further requirement that the [party] show a *very significant possibility of future harm*' in addition to the three Article III standing elements."  *Id.* at 898 (citation omitted).

  "The party invoking federal jurisdiction bears the burden of establishing standing— and, at the summary judgment stage, such a party can no longer rest on mere allegations, but must set forth by affidavit or other evidence specific facts."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411–12 (2013) (internal quotation marks omitted).  The party seeking a declaratory judgment, therefore, bears the burden of establishing "that such jurisdiction existed at the time the claim for declaratory relief was filed and that it has continued since."  *Binetic Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007).

### 1. *Defendant Has Not Suffered an Injury In Fact*

  "The bugaboo here is the first standing element: injury in fact."  *Bass v. Facebook, Inc.*, No. 18-05982, 2019 WL 2568799, at *5 (N.D. Cal. June 21, 2019).  The Supreme Court has "repeatedly reiterated that threatened injury must be certainly impending to constitute injury in fact."  *Clapper*, 568 U.S. at 409 (2013).  Defendant has failed to

Arête
LAW GROUP
1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

produce any evidence of such an injury because Plaintiff had never taken any action which

established that a re-filing of its direct infringement claim was "certainly impending."

### a. The Patent Cases that Defendant Analogizes to Are Irrelevant

In light of the fact that declaratory relief is prospective only, Defendant's (second

amended) counterclaim has borrowed concepts from patent case-law[15] to assert that he not

only has not infringed on Strike 3's works, but that he is entitled to a declaration of non-

infringement based on his "objectively reasonable apprehension of becoming the target of

another lawsuit on the claims alleged here, or similar claims by this Plaintiff." Dkt. # 64, at

¶ 33.  However, it is clear Defendant cannot meet his burden to establish that he possessed

an objectively reasonable apprehension of suit.

> A plaintiff may establish an objective reasonable apprehension of suit
> through evidence of a defendant's express charge of infringement or through
> a totality of the circumstances. To invoke the court's declaratory judgment
> jurisdiction, a plaintiff must show more than the nervous state of mind of a
> possible infringer, but does not have to show that the patentee is poised on
> the courthouse steps. Finally, even if there is an actual controversy, a court
> still retains discretion to decline jurisdiction.

*MasterCard Int'l, Inc. v. Lexcel Sols., Inc.*, No. 03-7157, 2004 WL 1368299, at *3

(S.D.N.Y. June 16, 2004) (citations and internal quotation marks omitted).  In other words,

although a threat of litigation need not be explicit, *see Millipore Corp. v. Univ. Patents,*

*Inc.*, 682 F. Supp. 227, 232 (D. Del. 1987), whether explicit or implicit, the threat of

litigation must still actually exist for standing to exist under this disavowed standard.

---

[15] Some courts have questioned whether this test can even be applied to copyright infringement.  *See Aga Correa & Son v. Nautical Gold Creations*, 05-624, 2005 WL 823927, at *2 (S.D.N.Y. Apr. 6, 2005). However, even assuming Defendant should be allowed to jerry-rig this legal concept for their purposes here, the first prong of this test – the only prong aped in Defendant's counterclaim – has been expressly disavowed. *See SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380 (Fed. Cir. 2007).  Instead, a party seeking a declaratory judgment of non-infringement in the patent-context need only show that the patentee "asserts rights under a patent based on certain identified ongoing or planned activity of another party" and the other party "contends that it has the right to engage in the accused activity without license," and the party no longer needs to do anything to "risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights."  *Id.*  In other words, whether Defendant has an objectively reasonable apprehension of suit for infringement is irrelevant for standing to seek a declaration for non-infringement – all that matters is whether they can assert they have, or plan to, engage in activity that they have a right to engage in without a license.  This Defendant unequivocally cannot do.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
No. 2:17-cv-01731-TSZ – Page 7

Arête
LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

Plaintiff has repeatedly offered to convert its prior dismissal to one with prejudice and even agreed to a consented judgment in Defendant's favor so long as each party would bear its own attorney fees and costs, which Defendant continues to reject to maintain the illusion of a controversy. *Cf. Paramount Pictures Corp. v. Replay TV*, 298 F. Supp. 2d 921, 928 (C.D. Cal. 2004) ("The relevant standard is whether there is a substantial controversy . . . of sufficient immediacy and reality" which "is simply not met by virtue of the Copyright Owners' refusal to promise never to sue.").[16]

### b. *Defendant Mischaracterizes Strike 3's Testimony*

Defendant's Motion incorrectly states that "Jessica Fernandez, [Plaintiff's] in-house counsel, would not affirm that [Defendant] was off the hook." Dkt. # 17, at 11.  She said no such thing.  Instead, she testified that Plaintiff dismissed its claim for direct infringement without prejudice because Plaintiff discovered that two individuals with the exact same name resided in the exact same Washington residence and it was unable to confirm that "the subscriber really was the father and not the son." Dkt. # 175-6, at 3.  Here, the "mere possibility that something might happen is too remote to keep alive a case as an active controversy." *Foster v. Carson*, 347 F.3d 742, 748 (9th Cir. 2003) (emphasis added).  Thus, any claim that Ms. Fernandez would not affirm that Defendant was "off the hook," even if it were true, is insufficient to keep this case alive as an active controversy.

Defendant also falsely asserts that "two weeks ago, [Plaintiff], threatened to revive the claim against [Defendant] under alternate theories of infringement." Dkt. # 174, at 11.  That was never said either.  Rather, Plaintiff merely restated its position that it believed a contributory copyright infringement legal theory could be made in defense of Defendant's Declaratory Judgment of Non-Infringement (and thus it could not withdraw its Motions to

---

[16] The lack of any "certainly impending" injury is further established by Defendant's own acknowledgement that throughout this litigation, Plaintiff has primarily sought evidence that the Son was the infringer.  Dkt. #174, at 24–25.  Indeed, evidence that the Son is the infringer actually rebuts any direct infringement claim against Defendant.  Thus, even if standing existed at the time of the second amended counterclaim – which it did not – Defendant cannot establish that he currently has a "reasonable apprehension" since Strike 3 dismissed its claim.  *Binetic Australia, Ltd.*, 495 F.3d at 1344.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
No. 2:17-cv-01731-TSZ – Page 8

Arête
LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

Compel).[17]  Defense counsel's response establishes that Plaintiff's contributory liability legal theory still did not substantiate a "certainly impending" injury.  Indeed, defense counsel stated that Plaintiff could not set forth such a theory because its "initial complaint did not plead contributory copyright infringement."  *See* Bandlow Decl. ¶ 8.  In so doing, his statement concedes that his declaratory judgment claim is merely a denial of Plaintiff's initial claim that did not even contemplate contributory infringement.  Thus, even if Plaintiff's statements were threats (and they are not), such threats cannot form the "injury" to base his claim.  Importantly, a purported "threat" made a year after the filing of his claim cannot provide a basis for standing.

Even so, a reasonable apprehension of suit is not enough to satisfy standing.  *See Bland v. Edward D. Jones & Co., L.P.*, 375 F. Supp. 3d 962, 974 (N.D. Ill. 2019) ("[T]he threat of suit, however immediate, is not by itself sufficient for the invocation of the federal power to issue a declaratory judgment.").  Rather, Defendant must identify the *concrete* harm or injury that such a threat imposes, "putting [Defendant] to the choice between abandoning his rights or risking prosecution . . . ."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129, 127 S. Ct. 764, 773, 166 L. Ed. 2d 604 (2007) (internal quotation marks omitted).  Here, Defendant does not seek a declaration that his use of BitTorrent was "non-infringing" conduct and he has *a right* to continue this activity.  Nor does Defendant allege he lost *his right* to download Plaintiff's works because Plaintiff threatened suit.  Thus, there exists no actual concrete injury to Defendant that would force him to "abandon[] his right."

---

[17] The e-mail expressly stated, "If Defendant persists in his Declaratory Judgment claim, Plaintiff's Motion to Compel Production of the Son's Hard Drive (Dkt. # 136) cannot be withdrawn since any evidence of Plaintiff's works or BitTorrent is relevant to the remaining claim – including the possibility of pursuing Defendant for contributory copyright infringement and/or for pursing any motions regarding spoliation of evidence." Dkt. # 175-22, at 2.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
No. 2:17-cv-01731-TSZ – Page 9

Arête
LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

Crucially, incurring attorneys' fees, the *only* damages Defendant has claimed in this lawsuit,[18] alone cannot confer Article III standing. A case's justiciability cannot be established on account of a party's potential entitlement of attorney fees, because "Art[icle] III standing requires an injury with a nexus to the substantive character of the statute . . . ." *Diamond v. Charles*, 476 U.S. 54, 70 (1986) (emphasis supplied). Defendant's "entitlement to fees [is] an ancillary issue that would not preserve the copyright-related claims." *Amaretto Ranch Breedables v. Ozimals Inc.*, 907 F. Supp. 2d 1080, 1085 (N.D. Cal. 2012). "The existence of [Defendant's] attorneys' fees claim thus does not resuscitate an otherwise moot controversy." *Cammermeyer v. Perry*, 97 F.3d 1235, 1238 (9th Cir. 1996). "Where on the face of the record it appears that the only concrete interest in the controversy has terminated, reasonable caution is needed to be sure that mooted litigation is not pressed forward, and unnecessary judicial pronouncements . . . obtained, solely in order to obtain reimbursement of sunk costs." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990). Defendant's damages - fees and costs[19]- are insufficient to satisfy the requirement of an injury in fact. *See id.* ("[I]nterest in attorney's fees is . . . insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim . . . .").[20]

---

[18] Defendant has previously claimed that his past and ongoing "damage" or injury is his attorney fees. Specifically, at his deposition, when asked what Defendant wanted from his Counterclaim, he testified, "I want attorney fees covered." Bandlow Decl. ¶ 5; (Defendant's Deposition Transcript, 265:4-6). Notably, he did not ask for any assurance that Plaintiff would not re-file its infringement claim. Additionally, in declining to respond to Plaintiff's Requests for Production Nos. 31-36, Defendant stated: "John Doe's evidence of damages is that he has incurred substantial attorneys' fees. He reiterated that his damages consist of attorneys' fees during his deposition[.]" Dkt. #142, at 14. During a telephonic conferral concerning Defendant's failure to provide responsive documents, Defense counsel stated, that Defendant has "made it abundantly clear" that he is "only seeking attorney fees" and that "Defendant is not seeking any other damages." Bandlow Decl. ¶ 9. Thus, Defendant's only 'damages' and 'relief' requested are his attorney fees and costs.

[19] And, ironically, contrary to the purpose of the Declaratory Judgment Act, Defendant uses his counterclaim as a weapon to obtain reimbursement for "sunk costs." He set forth this claim not to minimize the danger of avoidable loss and avoid the unnecessary accrual of damages caused by Plaintiff's purported "threats," but rather to maximize his manufactured self-inflicted "damages" of attorney fees.

[20] Even if the Court were to determine that Defendant has standing, the Court may still exercise its discretion to decline to exercise jurisdiction over Defendant's claims. Declaratory relief "is discretionary, for the Declaratory Judgment Act is 'deliberately cast in terms of permissive, rather than mandatory, authority.'" *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998) (citation omitted); *see Malibu Media,*

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
No. 2:17-cv-01731-TSZ – Page 10

Arête LAW GROUP   1218 THIRD AVENUE SUITE 2100 SEATTLE WA 98101 (206) 428-3250

**B.   Plaintiff's Technology Correctly Identified the Right IP Address**

*1.   Mr. Yasumoto's Expert Report is Based on Inadmissible Hearsay*

Defendant attempts to "point out the absence of evidence" by arguing there is no direct evidence on his hard drive of infringement.  Dkt. # 174, at 19–20.  Defendant's contention that his expert cannot find evidence of infringement rings hollow.[21]  "An affidavit or declaration used to support or oppose a motion must . . . set out facts that would be admissible in evidence[.]"  Fed. R. Civ. P. 56 (c)(4).[22]  Here, Defendant's Asus Hard Drive contains undisclosed data.  Since Plaintiff has not had the opportunity to examine this data or cross-examine Mr. Yasumoto, the Court should not consider his expert report in adjudication of Defendant's Motion.  *See Colony Holdings, Inc. v. Texaco Ref. & Mktg., Inc.*, No. CV 00217 (DOC)(MLGx), 2001 WL 1398403, at *6 (C.D. Cal. Oct. 29, 2001) (holding that since an opposing party "did not have the opportunity to depose and examine [the expert] regarding the reliability of his opinions" that testimony was "inadmissible and his declaration may not be considered in this motion for summary judgment" pursuant to Fed. R. Civ. P 26(a)(2)); *Nungaray v. Rowe*, No. CV 09-1768 (LHK)(PR), 2011 WL

---

*LLC v. Ricupero*, 705 F. App'x 402 (6th Cir. 2017). Defendant's counterclaim is essentially asking the Court to issue a tautological and pointless declaration:  that individuals who do not engage in infringing conduct are not infringers.  Such a decision would be a waste of time and resources (a hallmark of Defendant's abusive litigation to date) and would serve no useful purpose in clarifying legal issues.  *See SRS Distribution Inc.*, 2014 WL 12579804, at *6.

[21] Defendant's nutshell version of the facts ignores the ongoing hard drive production discovery issues.  In this case, Defendant disclosed the existence of approximately 130 hard drives.  *See* Dkt. # 125-1, at 26–35. Defendant then demanded entry of an unreasonable ESI Protocol imposing a limit on Plaintiff's hard drive examination which was not imposed on his own expert.  *See* Dkt. # 125-1, at 37–43.  Since Defendant refused to produce the data his expert relied upon, Plaintiff was forced to file a Motion to Compel.  Dkt. # 125.  Thus, Defendant's motion is the equivalent of there being a dispute over whether there is a car in a garage with Defendant producing a declaration by someone saying "I looked in the garage and there is no car there, but you can't cross-examine me and you can't look in the garage."

[22] While an expert's opinion may be admissible even if based on inadmissible evidence, an expert's testimony is only permitted when the retaining party complies with Fed. R. Civ. P. 26(a)(2).  A testifying expert's opinion may not be admissible if the opinions are based on undisclosed data.  *See S.E.C. v. Reyes*, No. 06-04435 CRB, 2007 WL 963422, at *1 (N.D. Cal. Mar. 30, 2007) ("When experts serve as testifying witnesses, the discovery rules generally require the materials reviewed or generated by them to be disclosed, regardless of whether the experts actually rely on those materials as a basis for their opinions.")

---

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
No. 2:17-cv-01731-TSZ – Page 11

Arête LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

3862093, at *4 (N.D. Cal. Aug. 30, 2011) (holding that without production of the medical records, "the facts upon which [the expert] relied to form his opinion . . . are inadmissible hearsay," and thus "irrelevant" to this Court's analysis of Defendants' motion for summary judgment").

Finally, Defendant's Motion misleadingly states that Plaintiff's experts did not "object[] to the methodology used by Yasumoto[.]" Dkt. # 174, at 20 (citing Edmondson Decl, ¶ 33).[23]  However, Plaintiff's expert's silence is not an endorsement of Mr. Yasumoto's report.[24]  And, in Plaintiff's Motion to Compel, it *did* object to Mr. Yasumoto's limited scope.  *See* Dkt. # 125.

### 2.  *Defendant Has Not Established the Absence of Evidence*

Defendant next argues that there is no evidence of copying,[25] citing to nothing for his assertion.  *See* Dkt. 174, at 20.  He cannot willfully ignore evidence, fail to cite anything, and then claim this establishes the "absence of evidence."  Plaintiff produced evidence of copying in the form of *over 400 PCAPs* which establish that Defendant's IP address, in over 400 BitTorrent transactions, distributed to IPP a portion of Plaintiff's works.  *See* Fernandez Decl. ¶ 15.

Defendant states that "[c]ircumstantial evidence that IP address 73.225.38.130 may have been involved in copying is not the same as the copy itself." Dkt. # 174, at 20.  But, this misstates the law.  "Proof of copyright infringement is often highly circumstantial." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000).  Copying is usually circumstantially "proved by a combination of access and substantial similarity." *Williams*

---

[23] The Motion misrepresents defense counsel's own declaration.  Defense counsel states, "I did not receive *rebuttal expert reports* from either Patrick Paige or Stephen Bunting." Dkt. # 175, ¶ 35.  Not submitting a rebuttal report is not synonymous with reviewing and affirmatively supporting Mr. Yasumoto's report and methodology.

[24] Plaintiff's experts have not submitted reports regarding Defendant's Asus Hard Drive for a very obvious reason:  they have not had the opportunity to examine it.  Indeed, Plaintiff's motions to compel both Defendant's and the Son's hard drives are still pending.

[25] Defendant does not contest Plaintiff's ownership of the copyrights. *See generally* Dkt. # 174.

Arête
LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

*v. Gaye*, 895 F.3d 1106, 1123 (9th Cir. 2018).  Defendant's access to the work is established by his own admission that he uses BitTorrent.  Bandlow Decl. ¶ 5 (Defendant's Depo 80:3–81:22).  Both Defendant and his Son also admitted to using The Pirate Bay to find and download .torrent files.  Bandlow Decl. ¶¶ 4-5 (Defendant's Depo 211:24–212:10; Son's Depo 78:3–6).  And, around the relevant time of the subpoena, many of Strike 3's motion pictures were in the "Top 100 [Adult] Downloads" of that website.  *See* Fernandez Decl. ¶ 16; 3 Patry on Copyright § 9:26 (noting that widespread access can be shown by "[a] work's ranking in Internet downloads").  Finally, there is no doubt that the files distributed by IP address 73.225.38.130 are strikingly similar to Strike 3's.[26]  Dkt. # 4-5.  Thus, there is evidence of infringement.

Defendant's contention that Plaintiff's expert cannot rely on IPP's technology entirely misunderstands the gatekeeping function of *Daubert*.[27]  The *Daubert* factors examine whether the theory or technique *employed by the expert* is generally accepted in the scientific community, has been subjected to peer review and publication, it can be and has been tested, and the known or potential rate of error is acceptable.  *See Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995).  In determining expert testimony reliability, the focus of the *Daubert* standard "must be solely on principles and methodology, not on the conclusions that they generate."  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595, 113 S. Ct. 2786, 2797, 125 L. Ed. 2d 469 (1993).  Thus, belief that an expert's conclusion is inaccurate, is insufficient for exclusion.  Defendant focuses exclusively on the conclusion that IPP's system is flawed and the purposed unreliability of

---

[26] Plaintiff produced all the deposit legal copies of the works, and the infringing copies of the works that correspond to the hash values in Plaintiff's Complaint.  *See* Fernandez Decl. ¶¶ 5-6.  Defendant has had the opportunity to review these works side-by-side, and has not pointed to anything specifically that would support the fact that the works are not strikingly similar to one another.

[27] Defendant argues that under *Daubert* Plaintiff's experts cannot rely upon IPP's system, but its reliability is self-evident.  Both Defendant and his Son admitted to using BitTorrent, *supra*, and both admitted to using uTorrent (the exact same client IPP recorded as being used) with Defendant's son admitting to using it during the relevant time period to download adult content.  Son's Depo 78:24–79:3.  Therefore, Defendant cannot in good faith argue that these findings were false positives.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
No. 2:17-cv-01731-TSZ – Page 13

Arête
LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

IPP's system. But he sets forth no facts establishing that Plaintiff's experts' *tests or methodologies* were unreliable.[28] Plaintiff's evidence does not simply amount to a one second connection between Defendant's IP Address and IPP. *See* Dkt. # 174, at 22. Plaintiff produced a total of 484 PCAPs in this case, each which establishes a separate infringing transaction completed by Defendant's IP address. Fernandez Decl. ¶ 17. Thus, the PCAPs collectively establish the progression of infringement over the course of eight months. Finally, the infringing movie files are identical, strikingly similar or substantially similar to the non-infringing copyrighted movie files.[29] *Id.* Dkt. # 4-5, at ¶¶ 9–10.

Defendant asserts that Plaintiff "cannot use the IPP PCAP data because it does not link the IP address to a computer used by IPP." But Mr. Feiser has confirmed that each PCAP evidences a BitTorrent transaction between Defendant's IP address and an internal IP address belonging to IPP's servers. *See* Dkt. # 4-3, ¶¶ 7–8. Defendant contends that summary judgment should be granted for at least 81 of the 87 works because only six works were purportedly infringed between 8/30/2019 and 9/12/2017- the time that Comcast confirmed that IP address 73.225.30.130 was assigned to Defendant. However, a review of the PCAPs or the Infringement Log File[30] establishes in every single transaction between 7/9/2017 to 12/3/2017, an individual using IP address 73.225.38.130 used uTorrent version 2.2.1 to obtain Plaintiff's works. Fernandez Decl. ¶ 19. And, on 7/21/2017, 7/24/2017,

---

[28] With respect to Mr. Fieser, Defendant attempts to create the appearance of bias by stating that his "livelihood is inextricably bound up in the operation of the IPP software." Dkt. # 174, at 21. But the cited portions of the transcript only confirm that Mr. Fieser has been working for IPP for ten years. Defendant also argues that Mr. Paige "[cannot] be given any credibility as [his] livelihood is bound up on the operation of the IPP software." Dkt. # 174, at 21. But Defendant cites to nothing in support. And even if he had, "[t]hat an expert testifies for money does not necessarily cast doubt on the reliability of his testimony[.]" *Daubert v. Merrell Dow Pharm.*, Inc., 43 F.3d 1311, 1317 (9th Cir. 1995). In truth, Mr. Paige owns his own computer forensics business and Plaintiff is not Mr. Paige's only client. *See* Fernandez Decl. ¶ 18. Defendant does not explain how Mr. Paige's test of IPP's system falls below the *Daubert* standard. Finally, Defendant does not mention Mr. Bunting's test of IPP system or how his methodology does not meet the *Daubert* standard. *See* Dkt. # 175-12.

[29] Since Defendant disputes this basic and easily determined fact (Dkt. # 174, at 22.), prior to trial, Plaintiff will file a Motion for Judicial Notice of this simple fact. Plaintiff will also produce the files to the Court.

[30] Plaintiff's Infringement Log File is merely a summary of the basic contents within all the PCAPs in this case.

Arête
LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

8/12/2017, 8/15/2017, 8/16/2017, 9/3/2017, and 9/14/2017, an individual using the IP address 73.225.38.130 used uTorrent version 2.2.1 to obtain an infringing copy of Plaintiff's work with hash value "14CDAF2BCE5F84F54931A794E9A4A6A57B8B0808". Defendant has a hard time facing the facts – that the same individual committed each infringement that occurred between July 9, 2017 to December 3, 2017.[31]

### C. Defendant Is Not Entitled to Attorneys' Fees

#### 1. The Fogerty Factors Weigh Against An Award of Fees

Defendant's bizarre grab for attorneys' fees (that he has not incurred) as an element to his declaratory relief claim is symptomatic of Defendant's motivation throughout this litigation. *See* Dkt. 32, at 8 ¶ 32. "In *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994), the Supreme Court laid out factors to guide discretion in whether to award fees." *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1035 (9th Cir. 2018). The Supreme Court has "noted with approval 'several nonexclusive factors' to inform a court's fee-shifting decisions: 'frivolousness, motivation, objective unreasonableness[,] and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Id.* The Ninth Circuit also considers ancillary factors, including, "the degree of success obtained in the litigation, the purposes of the Copyright Act, and 'whether the chilling effect of attorney's fees may be too great or impose an inequitable burden on an impecunious [litigant].'" *Id.* Even if one party "ultimately prevail[s]," awarding fees may be inappropriate because it "would be more likely to stifle

---

[31] Defendants res judicata argument is also inapplicable. "*Res judicata*, or claim preclusion, prohibits lawsuits on any claims that were raised or could have been raised in a prior action." *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002) (internal quotation marks omitted). Defendant asserts that Plaintiff has waived it infringement claim and the doctrine of *res judicata* bars a future claim. Dkt. # 174, at 26. However, since there is no final judgment on the merits of Plaintiff's infringement claim, it cannot be barred by the doctrine of *res judicata*. *See Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002). Defendant also confusingly contends that since Plaintiff failed to assert a compulsory claim, by virtue of the fact that Strike 3 dismissed its original claim, Plaintiff cannot "meet the minimum standards under *Twombly* or *Iqbal*." This argument might make sense to support a motion to dismiss Plaintiff's claim, but Plaintiff dismissed its own claim and thus there is nothing on which the Court could apply the *Twombly* or *Iqbal* standard.

Arête LAW GROUP
1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

1  legitimate copyright claims than deter frivolous litigation." *See Modular Arts, Inc. v.*

2  *Interlam Corp.*, No. C07-382Z, 2009 WL 151336, at *3 (W.D. Wash. Jan. 20, 2009).

3  When applying the fee-shifting provision of the Copyright Act, the Court "must make a . . .

4  particularized, case-by-case assessment." *Kirtsaeng v. John Wiley & Sons, Inc.*, __ U.S. __,

5  136 S. Ct. 1979, 1985 (2016).

6       The balance of the *Fogerty* factors militate against granting Defendant's fee request.

7  Tellingly, Defendant's *Fogerty* analysis contains virtually no citations of law or record, *see*

8  Dkt 174, at 28:9–19, relying on unsupported and sweeping allegations, and crude analysis

9  with only a passing reference to *Glacier Films*.  In that case, "the Ninth Circuit—at least

10 tacitly—approved of a subpoena of an ISP, under strikingly similar circumstances to those

11 before the court," and held that the Copyright Act encourages cases that deter BitTorrent

12 piracy.  *Strike 3 Holdings, LLC v. Doe*, No. 18-02637, 2019 WL 935390, at *5 (E.D. Cal.

13 Feb. 26, 2019) (citations omitted).  Indeed, "[t]he holder of a copyright that has obviously

14 been infringed has good reason to bring and maintain a suit even if the damages at stake are

15 small." *Glacier Films*, 896 F.3d at 1043 (citing *Kirtsaeng*, 136 S.Ct. at 1986).

16              a. Defendant's Claim Borders On Frivolous; Plaintiff's Claim Was

17                 Reasonable

18       "A copyright claim is frivolous if it is 'so meritless that there is little chance of

19 success" but is not "if it is brought in good faith . . . with a reasonable likelihood of

20 success." *YS Built, LLC v. Huang*, No. CV 15-1411-BJR, 2017 WL 1093207, at *2 (W.D.

21 Wash. Mar. 23, 2017).  A parties' reasonableness is an objective consideration which

22 should not be "confuse[ed with] the issue of liability with that of reasonableness,"

23 *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1988, 195 L. Ed. 2d 368 (2016)

24 (finding this is a reversable error), since even "a legal argument that loses is not necessarily

25 unreasonable." *Shame On You Prods., Inc. v. Banks*, 893 F.3d 661, 666 (9th Cir. 2018).

26 "[I]t generally does not promote the purposes of the Copyright Act to award attorney fees to

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
No. 2:17-cv-01731-TSZ – Page 16

Arête
LAW GROUP   1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

a prevailing defendant when the plaintiff has advanced a reasonable, yet unsuccessful

claim." *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 628 (6th Cir.

2004).

Defendant has spent over a year litigating a "declaration of non-infringement claim"

even though he (1) was never publicly named in the lawsuit; (2) his own counsel has argued

in papers submitted to a court that "there is about a 0*% chance that Strike 3 will refile*," *see*

*Strike 3 Holdings, LLC v. Doe*, No. 19-00158, ECF 22, at *4 (N.D. Cal. Jun. 18, 2019); and

(3) he and his son are admitted infringers. *Supra.* There has been no purpose for

Defendant's claim other than to create and try to collect fees.

> b. <u>Strike 3's Motivation was Just; Defendant's Was Not</u>

Despite Defendant's incessant suggestion that Strike 3 is a bad actor, "there is no

evidence of any improper motive in bringing suit or motive other than a desire to seek

compensation and deter future infringement."[32] *Curtis v. Illumination Arts, Inc.*, No. 12-

0991, 2013 WL 6173799, at *20 (W.D. Wash. Nov. 21, 2013). "Plaintiff's motivation was

to enforce their copyright registration to maintain a competitive business advantage. This is

a proper motivation." *Modular Arts, Inc. v. Interlam Corp.*, No. C07-382Z, 2009 WL

151336, at *2 (W.D. Wash. Jan. 20, 2009); *cf.* Dkt. # 4-2, ¶ 22 ("[Strike 3] cannot compete

when [its] content is stolen"). Defendant still contends that Strike 3 is trying to embarrass

---

[32] Defendant has dedicated a lot of bandwidth (and innuendo) to trying to label Strike 3 as a copyright troll.
*See* Dkt. # 46, ¶ 22; *see also Strike 3 Holdings, LLC v. Doe*, No. 18-02637, 2019 WL 935390, at *5 (E.D. Cal.
Feb. 26, 2019) (rejecting motion for reconsideration of early discovery filed by Attorney Edmondson that
argued Plaintiff is a copyright troll). Courts have repeatedly rejected this contention. "Defendant has
provided no support for the conclusory statement that Strike 3 is a 'copyright troll,' that is, 'a non-producer
[of the copyrighted work at issue] who merely has acquired the right to bring lawsuits against alleged
infringers.'" *Strike 3 Holdings, LLC v. Doe*, 370 F. Supp. 3d 478, 481–82 (E.D. Pa. 2019) (citation omitted).
Rather, "Strike 3 is part of a group of corporate entities that actually produces the motion pictures at issue and
which owns valid copyrights to those works." *Strike 3 Holdings, LLC v. Doe*, 370 F. Supp. 3d 478, 481–82
(E.D. Pa. 2019) (citation omitted). "[T]here is no evidence that Plaintiff has engaged in any of the abusive
practices used by similar plaintiff's, such as exploiting Defendant's identifying information as leverage for
settlement, or filing one lawsuit against numerous John Does as a way to circumvent filing fees . . . ." *Strike 3
Holdings, LLC v. Doe*, 337 F. Supp. 3d 246, 257 (W.D.N.Y. 2018) (internal citations omitted). To be sure,
Strike 3 does not deny filing suits against many infringers, but "[t]he sheer volume of suits should not
preordain a court's fee determination in any one suit." *Glacier Films*, 896 F.3d at 1038.

Arête
LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

Defendant into settling, *see* Dkt. 174, at 11, but at no point was Defendant or his Son's identity ever publicly disclosed (indeed, those identities have been vigorously protected from day one), nor did Strike 3 *ever* ask Defendant to pay it a settlement.

Defendant, on the other hand, has been less concerned with succeeding on the merits, and more concerned about frustrating discovery and increasing the parties' expenses.  "A finding of bad faith is warranted where [a party] knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent."  *Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1180 (9th Cir. 2019) (quoting *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997)).

c.  Strike 3's Claim was Objectively Reasonable; Defendant's Was Not

The *Fogerty* analysis gives "substantial weight to the reasonableness of [Plaintiff]'s litigating position," *Kirtsaeng*, 136 S. Ct. at 1989, especially when Strike 3's claims and defenses were well-grounded in "legal and factual arguments."  *See Glacier Films*, 896 F.3d at 1037 (collecting cases).  Here, this Court has already found lacking Defendant's argument that "Strike 3's copyright infringement claim was frivolous and asserted for . . . improper purposes," and instead found that "Strike 3 was *entitled to pursue* a theory of defense that another member of defendant's household . . . had infringed one or more of Strike 3's motion pictures via the BitTorrent network."[33]  *See* Dkt. #167. (emphasis supplied).  Strike 3's initial suit and its defense have been at all times reasonable.  Strike 3 obeyed the Court's protective orders and *stipulated* to shielding Defendant's identity.  *See*

---

[33] Strike 3 alleged a "potentially meritorious" claim for copyright infringement, and awarding fees to Defendant "could reasonably be seen as causing a chilling effect" on future meritorious actions by rightsholders.  *See Williams v. Bridgeport Music, Inc.*, No. 13-06004, 2016 WL 6822309, at *4 (C.D. Cal. Apr. 12, 2016), a*ff'd sub nom.*, 885 F.3d 1150 (9th Cir. 2018), *and aff'd sub nom.*, 895 F.3d 1106 (9th Cir. 2018).  And, no corrective measures are needed to protect "impecunious" parties here.  *See Glacier Films*, 896 F.3d at 1037.  "Plaintiff has an internal policy to not proceed with cases against parties who are indigent [or] elderly," *Strike 3 Holdings, LLC v. Doe*, No. 18-01490, 2019 WL 1529339, at *5 (W.D.N.Y. Apr. 8, 2019) (internal quotations omitted) and promptly dismissed its claim when it learned Defendant's identity.  Of course, even if Defendant were "impecunious" it has no relevance here where he has admitted he has not had to pay a penny in this litigation.

Arête
LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

1   Dkts. # 8, 17.  Once counsel disclosed Defendant's identity and Strike 3 determined his son

2   was likely the infringer, it promptly dismissed its claim.[34]  Dkt. # 53.

3          Defendant has raised several frivolous arguments and motions designed to increase

4   the burdens and expenses of this matter.  *See Glacier Films*, 896 F.3d at 1043 (noting it was

5   "problematic" for the district court not to analyze defendant's "conduct in the litigation

6   . . . because his actions added to [plaintiff]'s attorney's fees").  "[T]he court must [also]

7   assess whether the other side's position was (un)reasonable."  *Kirtsaeng*, 136 S. Ct. at1988.

8   Defendant threw multiple theories at the wall to see what would stick to dismiss Strike 3's

9   claim, all of which failed, and has counterclaimed on various tort theories, all of which have

10  also failed.  *Infra.*  These motions were "directed at bombarding Plaintiff[] and the Court

11  with objections for the sake of objections, not asserting a reasonable theory."  *Paramount*

12  *Pictures Corp. v. Int'l Media Films Inc.*, No. 11-09112, 2015 WL 12745843, at *7 (C.D.

13  Cal. Feb. 18, 2015).  Defendant's copyright misuse counter claim was also dismissed with

14  prejudice.[35]  Dkt. # 58.

15

16  [34] Defendant's contention that "[t]his case would have ended in February, 2018 if Strike 3 had accepted
    declarations of non-infringement by John Doe and his wife" rings hollow because neither Defendant, nor
17  counsel, ever supported those declarations.  Dkt. # 174, at 11.  Strike 3 "could not have been expected simply
    to take his word for the fact that he had not infringed [Plaintiff]'s copyrights, given the substantial evidence
18  implicating [Defendant]."  *See Malibu Media, LLC v. Pelizzo*, 604 F. App'x 879, 881 (11th Cir. 2015)
    (declining to award defendant fees after claim was dismissed against him).

19  [35] Defendant also filed multiple motions for a more definite statement, decrying a lack of basic "notice of the
    substance of the claim," Dkt. # 21, at 7, yet after Strike 3 amended its complaint to include the requested
20  information, Defendant never again discussed those points, vitiating the thrust of those motions.  Defendant
    even filed a motion to compel discovery while his motion for a more definite statement was *still pending*, *see*
21  Dkt. # 51, which the Court dismissed.  Dkt. # 58.  Defendant's bad faith conduct in discovery has also
    betrayed his meritless position.  *See Hall v. Cole*, 412 U.S. 1, 15 (1973).  Defendant (or Defendant's Son)
22  likely knowingly destroyed evidence on the hard drive, or knew the evidence was unavailable early on in this
    litigation, frustrating either party's ability to resolve this claim, yet hid that fact from Plaintiff and the Court
23  until it was revealed during discovery.  Dkt. #136.  And, Defendant continues to litigate in bad faith.  Among
    several baseless assertions and innuendos unbecoming of a summary judgment motion, Defendant suggests
24  (without evidence) that Strike 3 may have "manipulated" data produced during discovery, Dkt. 174, at 13,
    while blatantly misrepresenting facts of the case.  *Supra.*  Finally, Defendant's counsel stated under penalty of
25  perjury that he charged his client $350 an hour in this case when, in fact, his rate was $50 an hour (and used
    that as a basis for an award against Plaintiff).
26

1

d.    Defendant's Conduct Should be Deterred

2    In considering compensation and deterrence, Defendant should not be compensated

3    for he is an admitted BitTorrent user, and his Son admittedly used BitTorrent to download

4    adult content during the time of infringement.  It is important to deter Defendant "from

5    bringing unreasonable claims based on a cost/benefit analysis that tells such [defendants

6    and defense counsel] that they can score big if they win and that there will be no adverse

7    consequences if they lose." *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 359

8    (S.D.N.Y. 2006), *aff'd*, 249 F. App'x 845 (2d Cir. 2007); *Societe Civile Succession Richard*

9    *Guiono v. Beseder Inc.*, No.03-1310, 2007 WL 3238703, at *16 (D. Ariz. Oct. 31, 2007)

10    ("[Plaintiff] was forced to expend a significant amount of resources to defend against

11    claims that were either unsupported or simply abandoned. It would be unfair for [Strike 3]

12    to bear the brunt of such fees."); *see also Hanson v. Cty. of Kitsap, Wash.*, No. 13-5388 ,

13    2015 WL 3965829, at *6 (W.D. Wash. June 30, 2015).  Here, Defendant's goal of

14    increasing litigation to unjustly profit should be deterred; indeed the unique situation of this

15    father-and-son BitTorrent duo presents the concern that they will now feel free to pirate

16    mainstream and adult content with impunity, trusting in their identical names and similar

17    BitTorrent activity, along with having counsel willing to engage in frivolous litigation, to

18    not only shield them from liability, but to turn their piracy into a tidy profit.

19

e.    Defendant Has Not Been Successful in the Case

20    Plaintiff's degree of success in this case has been striking.  It has prevailed on every

21    claim Defendant brought against it except for the one still pending before this Court.  As set

22    forth above, Defendant, by contrast, has fared poorly.  Even if Defendant were to prevail on

23    his claim for declaratory relief, the weight of the *Fogerty* factors would still favor Strike 3

24    because "there is a lack of evidence about Plaintiff's unreasonableness, frivolousness, and

25    improper motivation in pursuing his case against Defendant[, and]  [t]here is no evidence

26    that Plaintiff was attempting to do anything but successfully defend [its] copyright."  *See*

Arête
LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

1   *Jordan v. Star Trak Ent., Inc.*, No. 9-5123, 2010 WL 11523638, at *1 (C.D. Cal. May 13,

2   2010).

3          Defendant mainly only seeks fees for work prior to Plaintiff's dismissal but he did

4   not prevail on that claim.  "Under Rule 41(a)(1), a plaintiff has an absolute right to

5   voluntarily dismiss [its] action prior to service by the defendant of an answer or a motion

6   for summary judgment."  *Wilson v. City of San Jose*, 111 F.3d 688, 692 (9th Cir. 1997)

7   (colleting cases).  Defendant failed to file an answer, and none of his motions deprived

8   Plaintiff of this absolute right.  Since "a dismissal leaves the parties as though no action had

9   been brought," *id.*, there is no claim on which Defendant can prevail.  Indeed, as a sister

10  court recently held in a matter addressing a similar fee request by Defendant's counsel,

11  Defendant "is not the prevailing party," and the request for fees "borders on frivolous."

12  *Strike 3 Holdings, LLC v, Doe*, No. 19-00158, ECF 26, at *1–2 (N.D. Cal. Aug. 12, 2019).

13  Bandlow Decl. ¶10.

14          f. Strike 3 Furthered the Purpose of the Copyright Act

15          "The most important factor in determining whether to award fees under the

16  Copyright Act, is whether an award will further the purposes of the Act [which is to]

17  'encourage the production of original literary, artistic, and musical expression for the good

18  of the public.'"  *Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*, 925 F.3d 1140,

19  1149 (9th Cir. 2019) (quoting *SOFA Entm't, Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273,

20  1280 (9th Cir. 2013)).  This factor weighs heavily in Strike 3's favor.

21          The Ninth Circuit has held that copyright infringement suits such as this "*fit[]*

22  *squarely within the tradition of copyright enforcement.*"  *Glacier Films*, 896 F.3d at 1041

23  (emphasis supplied).  "Inherent in the Act's purpose is that 'a copyright holder has always

24  had the legal authority to bring a traditional infringement suit against one who wrongfully

25  copies.'"[36]  In the Internet Age, such suits 'have served as a teaching tool, making clear that

26  
---

[36] Deterring "repeated instances of infringement" weighs in Plaintiff's favor.  *See Glacier Films*, 896 F.3d at 1039–40 (noting that defendant "was 'associated with'" hundreds of downloads of other "pirated titles")

Arête LAW GROUP   1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

much file sharing, if done without permission, is unlawful[,] and apparently have had a real and significant deterrent effect.'" *Glacier Films*, 896 F.3d at 1041 (quoting *Grokster*, 545 U.S. at 963).   Indeed, the purpose of the Copyright Act's attorney's fees provision is to "encourage[] private enforcement and deter[] infringements." *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1556 (9th Cir. 1989).   This is the entire purpose of Strike 3's case.  Strike 3's case furthered the purpose of the Copyright Act by causing an admitted serial copyright infringer to stop stealing.

Defendant's counterclaim only advances his own interests, not those of the Copyright Act.[37]  "This is not a case of the infringer creating something new and incorporating a copyrighted element into that new, creative work." *Glacier Films*, 896 F.3d at 1041.  The sole purpose of Defendant's counterclaim is to protract the litigation so that Defendant can try to recover fees he never paid.  "[T]he objective unreasonableness (both in the factual and in the legal components of the case) of a [] party's claim [is] a relevant indicator of whether the Act's primary objective is being served by the litigation." *Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*, 925 F.3d 1140, 1149 (9th Cir. 2019) (quotations omitted).

### g. The Balance of The *Fogerty* Factors Favors Strike 3

Viewing the litigation as a whole, the balance of the equities favors Strike 3.  While Defendant certainly has a right to bring appropriate defenses and counterclaims, he "was

---

(citing *Kirtsaeng*, 136 S.Ct. at 1989).  Not only did both Defendant and Defendant's Son admit to long-term BitTorrent use, but IPP recorded over *1,000* other titles as being downloaded by Defendant's IP address. Fernandez Decl. ¶ 8; *cf. Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1043 (9th Cir. 2018) (finding defendant "admitted to regularly using BitTorrent to download content").

[37] Defendant does not move for attorneys' fees like a party would in a normal fee-shifting scenario, rather, Defendant's *sole claim for damages* on his declaratory judgment claim are for the attorneys' fees "incurred" during this litigation.  Yet, incredibly, Defendant asks the Court to look past this and award him fees as if he had actually accrued them, not just ignoring the reduced fee counsel charged Defendant (substituting in a lodestar rate of $350 when Defendant was only billed at $50), but ignoring that Defendant has not paid counsel a cent in legal fees or costs.  *See* Dkt. # 126-1, at 3 (Def's Depo 33:14–21).  With this, Defendant has speciously tried to turn this litigation on its head, wielding the Declaratory Judgment Act like a hatchet to gain a windfall instead of litigating any actual case or controversy on its merits

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
No. 2:17-cv-01731-TSZ – Page 22

Arête
LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

never guaranteed[] *that attorney's fees generated by h[is] strategy of choice would be compensated.*"  *Killer Joe Nevada, L.L.C. v. Leaverton*, No. 13-4036, 2014 WL 3547766, at *7 (N.D. Iowa July 17, 2014), *aff'd sub nom.*, 807 F.3d 908 (8th Cir. 2015) (denying attorney's fees to a defendant who counterclaimed for a declaratory judgment of non-infringement) (emphasis supplied).  Strike 3 should not be on the hook for Defendant's choice to raise meritless defenses and claims: "The party responsible for creating excessive legal costs must bear them itself in the end."  *Riviera Distributors, Inc. v. Jones*, 517 F.3d 926, 929 (7th Cir. 2008).[38]

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court deny Defendant's Motion.

DATED this 19th day of August, 2019

> LAW OFFICES OF
> LINCOLN BANDLOW, PC
> By: /s/ Lincoln Bandlow
> Lincoln D. Bandlow, Admitted *Pro Hac Vice*
> 1801 Century Park East
> Suite 2400
> Los Angeles, CA 90067
> Telephone: 310-556-9680
> Facsimile: 310-861-5550
> Email: lincoln@bandlowlaw.com
> *Attorneys for Plaintiff*
>
> THE ATKIN FIRM, LLC
> By: /s/ John C. Atkin
> John C. Atkin, Admitted *Pro Hac Vice*

---

[38] In the event the Court does award Defendant costs, the Court should deny any requests for costs that are not within the six categories enumerated in 28 U.S.C. § 1920.  *See Rimini St., Inc. v. Oracle USA, Inc.*, __ U.S. __ 139 S. Ct. 873, 876(2019).  Here, some of Defendant's costs that he seeks are not recoverable (i.e. purchasing DVDs, experts reviewing deposition transcripts, videographer costs).  *See e.g. Stokes v. City of Visalia*, No. 17-01350, 2018 WL 4030732, at *9 (E.D. Cal. Aug. 21, 2018) ("The videographer fees are not reasonable and the costs for video recording depositions will not be taxed to Plaintiff.").

Arête LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

1

55 Madison Avenue, Suite 400
Morristown, New Jersey 07960
Telephone: (973) 285-3239
Email: jatkin@atkinfirm.com
*Attorneys for Plaintiff*

ARETE LAW GROUP PLLC
By: /s/ Jeremy E. Roller
Jeremy E. Roller, WSBA #32021
1218 Third Avenue, Suite 2100
Seattle, Washington 98101
Telephone: (206) 428-3250
Facsimile: (206) 428-3251
Email: jroller@aretelaw.com
*Attorneys for Plaintiff*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
No. 2:17-cv-01731-TSZ – Page 24

Arête
LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

## <u>CERTIFICATE OF SERVICE</u>

I, Jeremy Roller, hereby certify that on August 19, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of filing to the following parties:

Joshua L. Turnham, WSBA #49926
E-mail: joshua@turnhamlaw.com
THE LAW OFFICE OF JOSHUA L. TURNHAM PLLC
1001 4th Avenue, Suite 3200
Seattle, Washington 98154
Telephone: (206) 395-9267
Facsimile: (206) 905-2996

*Attorneys for Non-Party Defendant's Son*

F. Christopher Austin, Admitted Pro Hac Vice
Email: caustin@weidemiller.com
Allen Gregory Gibbs, Admitted Pro Hac Vice
Email: ggibbs@weidemiller.com
WEIDE & MILLER, LTD.
10655 Park Run Drive, Suite 100
Las Vegas, Nevada 89144
Telephone: (702) 382-4804

Derek A. Newman, WSBA #26967
Email: dn@newmanlaw.com
Rachel Horvitz, WSBA #52987
Email: rachel@newmanlaw.com
NEWMAN DU WORS LLP
2101 4th Avenue, Suite 1500
Seattle, Washington 98121
Telephone: (206) 274-2800
Facsimile: (206) 274-2801

*Attorneys for Third-Party Witnesses Tobias Fieser, IPP International UG,*
*Bunting Digital Forensics, LLC, Stephen M. Bunting*

Adrienne D. McEntee, WSBA #34061
Beth E. Terrell, WSBA #26759
Email: bterrell@terrellmarshall.com
amcentee@terrellmarshall.com
936 North 34th Street, Suite 300

Arête
LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

J. Curtis Edmondson, WSBA #43795
Email: jcedmondson@edmolaw.com
EDMONDSON IP LAW
399 NE John Olsen Avenue Hillsboro
Oregon 97124
Telephone: (503) 336-3749

*Attorneys for Defendant*

DATED this 19th day of August 2019 at Seattle, Washington.


*/s/ Jeremy Roller*
Jeremy Roller

Arête
LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250