The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC, a Delaware corporation, | No. 2:17-cv-01731-TSZ |
| Plaintiff, | **PLAINTIFF'S SUPPLEMENT IN RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| JOHN DOE, subscriber assigned IP address 73.225.38.130, | Noted on Motion Calendar: **November 1, 2019** |
| Defendant. | |

## I.     Introduction

On September 19, 2019, the Court entered an order stating that "Plaintiff may designate one expert to examine [Defendant's] 'imaged' hard drive," but ordered that the examination was to be "limited to searching for existing and/or deleted files *matching the hash values set forth in Exhibit A to the Complaint, docket no. 1.*" Dkt. No. 182 ("Court's Order" or "Order") (emphasis added).  The Court's Order also instructed that Plaintiff's expert "may not search for or view any other materials on the 'imaged' hard drive, including any items protected by attorney-client or work-product privilege." *Id.*

After carefully reviewing the Order, consulting with experts, and attempting to meet and confer with Defendant's counsel, Plaintiff determined it was unable to search for the

Arête
LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

hash files on Exhibit A without violating the Court's Order. This is because the hash values are contained inside of each torrent file in such a way that each torrent file would need to be individually viewed, resulting in the possibility of viewing other BitTorrent activity on Defendant's hard drive in violation of the Court's Order. Moreover, under the parameters of the Court's Order, Plaintiff would be unable to confirm that the hard drive belonged to Defendant or whether it was wiped clean with file destruction software. For these reasons, Plaintiff believed the expert time, counsel's time and any travel cost associated with expert examination would no longer serve the goals of Fed. R. Civ. P. 1, nor be objectively reasonable under the circumstances. Indeed, the Parties are actively litigating the issue of whether Defendant should be owed attorneys' fees. Plaintiff did not believe it was reasonable to conduct an examination that would cause each party to incur significantly more fees, along with expert costs and travel, under circumstances where its expert has made it clear that such an examination could not produce any conclusive results without violating the Court's Order.

## II.      Any Examination of Defendant's Hard Drive to Search for the Hash Values on Exhibit A Would Violate the Court's Order

Plaintiff's forensic expert was unable to craft an examination protocol that would confirm the presence or absence of Plaintiff's Works while simultaneously complying with the Order's limitations. *See* concurrently-filed Declaration of Patrick Paige, ¶ 7.

The Order permits Plaintiff to only search for the hash values listed in Exhibit A to Plaintiff's Complaint ("Exhibit A Hashes"). However, the Exhibit A Hashes are simply "Info Hashes." *Id*. at ¶ 10. An Info Hash is a hash value of specific data contained within a .torrent file.[1] *Id*. The "Info Hash" is the data that the BitTorrent protocol uses to identify

---

[1] Importantly, an Info Hash is the hash that identifies the infringing file in a Google search. Plaintiff opted to include these hashes in its Exhibits to complaints, rather than the titles of its films, to avoid any unnecessary correlation between the Defendant and adult activity. These hashes enable Defendant to readily identify the Works at issue through Google. This is why Plaintiff stated in its complaint "that the file hash *correlating* to each file matched the file hash downloaded by Defendant." *See* Dkt. No. 1, at ¶¶ 23–26 (emphasis added).

PLAINTIFF'S SUPPLEMENT IN RESPONSE
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
No. 2:17-cv-01731-TSZ – Page 2

Arête
LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

1   and locate the desired file (in this case, the desired file is the respective file for the

2   infringing motion pictures that were the subject of the action) across the BitTorrent

3   network.  *Id.*

4        Since each Info Hash is made of up of specific information inside of a .torrent file,

5   searching for the Exhibit A Hashes necessarily entails a specific process:  it requires

6   searching *within* all .torrent files on a computer.  *Id.* at ¶ 11.  Thus, for Plaintiff's expert to

7   properly search for the Exhibit A Hashes on Defendant's hard drive, he would need to take

8   the following steps:

9        • First, he would use AXIOM forensic software to locate all the .torrent files

10          on the hard drive.

11       • Second, he would export the located .torrent files out of the hard drive

12          image.  Exporting entails taking the .torrent files and copying them onto a

13          third-party computer.

14       • Third, he would run the exported .torrent files through an open source

15          software called Torrent Hash Extractor[2] (or, in the alternative, any other

16          software designed to extract the hashes within a .torrent file), which allows

17          him to obtain and view the Info Hash for each .torrent file.

18       • Finally, he would manually compare the Info Hashes to the Exhibit A

19          Hashes to see if any matched.

20  *Id.* at ¶ 12.

21       This is the only method known which would allow for a search for the Info Hashes

22  listed in Exhibit A.  *Id.* at ¶ 13.  However, performing this examination protocol – the only

23  way to search Defendant's hard drive for the Exhibit A Hashes – would violate the Court's

24  _____

25  The Info Hash is able to easily enable a defendant or defense counsel to readily identify the
    infringing file through a simple Google search.

26  [2] https://www.softpedia.com/get/Internet/Other-Internet-Related/Torrent-Hash-
    Extractor.shtml.

PLAINTIFF'S SUPPLEMENT IN RESPONSE
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
No. 2:17-cv-01731-TSZ – Page 3

Arête
LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

Order.  *Id*. at ¶ 14.  Indeed, searching for .torrent files, exporting the .torrent files, and running a program designed to search the contents of the .torrent files is prohibited by the Court's instruction, which states that Plaintiff "may not search for or view any other materials on the 'imaged' hard drive, including any items protected by attorney-client or work-product privilege."  *Id*. at ¶ 15 (citing Dkt. No. 182).  This is because the search would require Plaintiff's expert to view every .torrent file on Defendant's hard drive to determine if it matched the Exhibit A hashes, enabling him to view other BitTorrent content that may exist on Defendant's hard drive, which is specifically prohibited by the Court's Order.  *Id*.

Plaintiff raised its concerns with defense counsel.  Specifically, on October 2, Plaintiff explained that the Exhibit A Hashes "are the internal hashes within the produced .torrent files for the movies in this case," and that it was working with its expert to find a way to lawfully search Defendant's hard drive.  *See* Exhibit 1.  In response, defense counsel stated: "It is unclear what 'protocol' you reference, *but the examination we'll agree to is the one the Court ordered*." *Id.* (emphasis added).  At this point, Plaintiff realized that the Parties would be unable to reach an agreement on a new search protocol to present to the Court.  Aware that the search authorized by the Order could not possibly produce any information relevant to the lawsuit, and to avoid wasting both Parties' time and resources, Plaintiff opted to forego the examination.[3]

## III.   **Defendant's Search of the Hard Drive Would Also Not Have Produced Relevant Information**

Defendant relies on Mr. Michael Yasumoto's Expert Report for his conclusion "that the Strike 3 files did not exist on the ASUS hard drive."  *See* Dkt. No. 174, at 17.  But the

---

[3] Given the disfavored nature of motions for reconsideration in this District, the highly contentious positions between the parties and the already extensive briefing in this case and on this issue, Plaintiff did not believe filing a motion for reconsideration would be productive at this stage in the case.

Arête
LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

methodology utilized by Defendant's expert does not support that conclusion.  Specifically,
in his Report, Mr. Yasumoto "compared the SHAl hash […] and none of the videos
examined on defendant's computer were a hash match for the videos listed in Exhibit [A]."
*See* Dkt. No. 175-10, at 5.  As set forth above, however, this examination method is flawed
and would not have yielded evidence that the .torrent files were on the hard drive, even if
they in fact were on there.  Plaintiff produced all of the .torrent files which correlate to the
infringing movies at issue.[4]  And, therefore, Defendant's expert would have been in a
position to confirm that the Exhibit A Hashes are the Info Hashes within each .torrent file.
But nothing in Mr. Yasumoto's report indicates that he actually reviewed the .torrent files
on Defendant's hard drive to determine if the Info Hash was contained in any of those
.torrent files.  Thus, the purported search for internal Info Hashes as described in Mr.
Yasumoto's Expert Report would *never* yield any matches even if the .torrent files
themselves were located on the hard drive.  His conclusion, therefore, supports neither
party's position in this matter.

## IV.   Two Additional Factors Weighed Against An Examination

### 1.   Plaintiff Cannot Confirm the Hard Drive Belongs to Defendant

To conduct a computer forensic examination of a device in a BitTorrent copyright
infringement case, Plaintiff's expert would first attempt to confirm the user/owner of the
hard drive in question.  Paige Decl. ¶ 16.  This is done so that the discovery of evidence (or
lack of evidence) is attributed to the correct party.  *Id.*  Here, even if Plaintiff's expert
examined the hard drive in question using the methodology outlined above, and the device
contained no evidence of infringement or destruction of evidence, Plaintiff would still not
be able to conclude that *Defendant's* hard drive did not contain such evidence.  *Id.*  This is

---

[4] Plaintiff produced all of these .torrent files in discovery to Defendant, and they were
examined by Defendant's expert, Mr. Brandon Garcia-Paeth. Dkt. No. 175-11.

PLAINTIFF'S SUPPLEMENT IN RESPONSE
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
No. 2:17-cv-01731-TSZ – Page 5

Arête
LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

1    because Plaintiff was not permitted to locate evidence confirming Defendant's ownership of

2    the device.  *Id.*

### 2.    Plaintiff Cannot Confirm Whether Defendant Wiped His Hard Drive Clean

5    Plaintiff would be unable to determine if anti-forensic software was employed to

6    avoid detection of the infringing files on Defendant's hard drive.  *See* Paige Decl. ¶ 17.

7    This includes the use of wiping software.  *Id.*  To explain, the Order states that the

8    examination "shall be limited to searching for existing and/or deleted files matching the

9    hash values[.]"  *Id.* (citing Dkt. No. 182).  The existence of remnants of deleted files

10   containing the hash values, however, is not the only method of establishing file deletion.

11   *Id.*  Indeed, file deletion is also established by determining if the hard drive has been wiped.

12   *Id.*  When a defendant wipes his hard drive, there are likely no remnants of deleted files.  *Id.*

13   Plaintiff's expert would be able to determine, however, that data destruction took place by

14   searching the hard drive's registry for dates of significant events such as an operating

15   system's installation date, Windows event logs, software installation dates, or files

16   evidencing the use of (and running) software designed to wipe a hard drive.  *Id.*  From

17   Plaintiff's expert's experience examining hard drives in file sharing cases, one of the most

18   common forms of data destruction is when a defendant wipes his hard drive.  *Id.*  Plaintiff

19   was precluded from conducting such a search.

### V.    Foregoing the Examination Was Objectively Reasonable

21   In the Parties' July 29, 2019 Joint Status Report (Dkt. No. 173), Plaintiff stated that

22   it could not withdraw its Motion to Compel Production of Defendant's Hard Drives (Dkt.

23   No. 125) for two reasons.  First, because the hard drive may contain evidence related to

24   contributory infringement and second, because evidence of spoliation can affect the

25   attorney fees issue.  Dkt. No. 173 at 4.  In light of the reasons set forth above, Plaintiff

26   determined that conducting an examination of the hard drive was not reasonable and would

PLAINTIFF'S SUPPLEMENT IN RESPONSE
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
No. 2:17-cv-01731-TSZ – Page 6

Arête LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

needlessly cause each party to incur unnecessary costs.  *See e.g. Countryman Nevada, LLC*

*v. DOE*, 193 F. Supp. 3d 1174, 1183 (D. Or. 2016) ("Litigation conduct that needlessly

increases the expense of resolving copyright disputes neither encourages innovation nor

appropriately rewards an author's creation.")

**VI.   Conclusion**

 Plaintiff had evidence of substantial and long-term infringement of its works coming

from Defendant's IP address.  To confirm the person responsible for that activity, Plaintiff

sought the name and address of the ISP subscriber.  Defendant refused to provide that

information for months, but once it was provided, Plaintiff conducted a further investigation

and determined that the likely infringer was Defendant's adult-aged live at home son and

Plaintiff dismissed the action.

 But the action continued for one reason:  Defendant's attorneys wanted to try to

recover attorneys' fees, so they continued their declaration of non-infringement

counterclaim for months, forcing the Parties to incur countless motions, depositions, and

discovery related expenses.[5]  Plaintiff's case was objectively reasonable, terminated after

limited activity, and Plaintiff (like here with this motion to compel) has continually tried to

stem the flow of time and expense by the parties and the Court in concluding this matter.  In

this instance, Plaintiff ultimately determined that because the search could not conclusively

produce results without violating the Order, it was not in the Parties' best interest to incur

further costs and fees.

---

[5] Indeed, although Defendant filed a counterclaim early in the litigation, he unexplainably
failed to file an answer.  When Plaintiff determined it was no longer going to sue Defendant
or pursue litigation, it dismissed without prejudice.  Defendant's only avenue for attorneys'
fees was this prolonged litigation, despite the knowledge that he had never been publicly
identified, so he did not need to clear his name, and Plaintiff had no desire to pursue its
claims against him, as evidenced by its dismissal.

PLAINTIFF'S SUPPLEMENT IN RESPONSE
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
No. 2:17-cv-01731-TSZ – Page 7

Arête
LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

1

2      DATED this 28th day of October, 2019

3                                              LAW OFFICES OF
                                               LINCOLN BANDLOW, PC
4                                              By: /s/ Lincoln Bandlow
                                               Lincoln D. Bandlow, Admitted *Pro Hac*
5                                              *Vice*
                                               1801 Century Park East
6                                              Suite 2400
                                               Los Angeles, CA 90067
7                                              Telephone: 310-556-9680
                                               Facsimile: 310-861-5550
8                                              Email: lincoln@bandlowlaw.com
                                               *Attorneys for Plaintiff*
9

10                                             THE ATKIN FIRM, LLC
                                               By: /s/ John C. Atkin
11                                             John C. Atkin, Admitted *Pro Hac Vice*
                                               55 Madison Avenue, Suite 400
12                                             Morristown, New Jersey 07960
                                               Telephone: (973) 285-3239
13                                             Email: jatkin@atkinfirm.com
                                               *Attorneys for Plaintiff*
14

15                                             ARETE LAW GROUP PLLC
                                               By: /s/ Jeremy E. Roller
16                                             Jeremy E. Roller, WSBA #32021
                                               1218 Third Avenue, Suite 2100
17                                             Seattle, Washington 98101
                                               Telephone: (206) 428-3250
18                                             Facsimile: (206) 428-3251
                                               Email: jroller@aretelaw.com
19                                             *Attorneys for Plaintiff*

20

21

22

23

24

25

26

Arête
LAW GROUP
1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

# EXHIBIT 1

**Jeremy Roller**

---

| | |
|---|---|
| **From:** | Adrienne McEntee <amcentee@terrellmarshall.com> |
| **Sent:** | Thursday, October 3, 2019 10:45 AM |
| **To:** | Lincoln Bandlow; J. Curtis Edmondson |
| **Cc:** | John Atkin; Jeremy Roller |
| **Subject:** | RE: Strike 3 v Doe - wdwa - discovery order |

Lincoln,

Thank you for your response. We are a week out from the deadline for Strike 3 to perform the examination the Court authorized. The examination "shall be limited to searching for existing and/or deleted files matching the hash values set forth in Exhibit A to the Complaint, docket no. 1." Dkt. No. 182. Strike 3 represented in its Complaint that Exhibit A was proof "that the file hash correlating to each file matched the file hash downloaded by Defendant." *See* Dkt. No. 1 at paras. 23 to 26. Tobias Fieser reiterated this point in his declaration when he testified that "IPP's software determined that the files being distributed by Defendant's IP Address have a unique identifier of the Cryptographic Hash outlined on Exhibit A." Dkt. No. 4-3. And, in Response to RFP 11's request for all torrent files accessed by the infringement detection software corresponding to the Works, Strike 3 confirmed: "The only relevant .torrent files are those which Plaintiff alleged that Defendant infringed in this case." Those files are listed on Exhibit A. It is unclear what "protocol" you reference, but the examination we'll agree to is the one the Court ordered. Please let us know by end of day tomorrow which of these dates work: 10/7, 10/8, 10/9, or 10/10.

Adrienne D. McEntee
**Terrell | Marshall Law Group PLLC**
936 N 34th Street, Suite 300 | Seattle, WA 98103
T 206.816.6603 | F 206.319.5450

---

**From:** Lincoln Bandlow <lincoln@bandlowlaw.com>
**Sent:** Wednesday, October 02, 2019 4:53 PM
**To:** Adrienne McEntee <amcentee@terrellmarshall.com>; J. Curtis Edmondson <jcedmondson@edmolaw.com>
**Subject:** [External] RE: Strike 3 v Doe - wdwa - discovery order

Adrienne,

We apologize for the delay in responding.  We originally had an expert agree to complete the examination but he recently cancelled due to a personal family emergency.  We were able to secure a new expert to conduct the examination and have started working with him on a proper protocol.  However, as you may be aware, the hash values listed in Exhibit A to the Complaint (Dkt. 1) are not hashes for the movie files themselves.  Rather, they are the internal hashes within the produced .torrent files for the movies in this case.  This small wrinkle, however, significantly complicates how any search for these hashes is performed.  We are working with our expert to determine a proper protocol that is efficient, reasonable, and complies with Judge Zilly's order.  We hope to have an update soon.

*Lincoln Bandlow*



1801 Century Park East, Suite 2400
Los Angeles, CA  90067

1

P: (310) 556-9680  |  F: (310) 861-5550
Lincoln@BandlowLaw.com
www.BandlowLaw.com

---

**From:** Adrienne McEntee <amcentee@terrellmarshall.com>
**Sent:** Wednesday, October 2, 2019 11:07 AM
**To:** Lincoln Bandlow <lincoln@bandlowlaw.com>; J. Curtis Edmondson <jcedmondson@edmolaw.com>
**Cc:** Jessica Fernandez <jessica@strike3holdings.com>; Emilie Kennedy <emilie.kennedy@genmediasys.com>
**Subject:** RE: Strike 3 v Doe - wdwa - discovery order

Lincoln,

We have not heard back from you regarding scheduling the examination. We offered six dates to complete the examination prior to the 10/10 deadline, two of which have now passed. Please respond.

Adrienne D. McEntee
**Terrell | Marshall Law Group PLLC**
936 N 34th Street, Suite 300 | Seattle, WA 98103
T 206.816.6603 | F 206.319.5450

**From:** Lincoln Bandlow <lincoln@bandlowlaw.com>
**Sent:** Monday, September 23, 2019 6:01 PM
**To:** J. Curtis Edmondson <jcedmondson@edmolaw.com>; Adrienne McEntee <amcentee@terrellmarshall.com>
**Cc:** Jessica Fernandez <jessica@strike3holdings.com>; Emilie Kennedy <emilie.kennedy@genmediasys.com>
**Subject:** [External] RE: Strike 3 v Doe - wdwa - discovery order

Curt,

I have reached out to our expert and am waiting for some proposed dates on his end.  But I wanted to let you know that our expert needs at least two days blocked out.  We do not know how long it will take the forensic software to process the hard drive. Although we hope that the processing will take only 6-12 hour, that is an optimistic guess and I would rather give the expert some room in case it's needed.  Also, we prefer to have the examination occur at a neutral third party's office.  I propose at the Veritext office located at 1200 Fifth Avenue, Suite 1820, Seattle, WA  98101.  We think these are reasonable requests but let me know if you disagree. Finally, nearly half of your proposed dates are outside the period required under the Court's Order.  Our expert is looking into the dates you proposed that are within the court's time frame.  If our expert's schedule does not align with Mr. Yasumoto's, we can discuss seeking an extension from the Court.  But we can cross that bridge when we get to it.

Thank you,

Lincoln Bandlow



1801 Century Park East, Suite 2400
Los Angeles, CA  90067
P: (310) 556-9680  |  F: (310) 861-5550
Lincoln@BandlowLaw.com
www.BandlowLaw.com

**From:** J. Curtis Edmondson <jcedmondson@edmolaw.com>
**Sent:** Monday, September 23, 2019 2:28 PM
**To:** Lincoln Bandlow <lincoln@bandlowlaw.com>; Adrienne McEntee <amcentee@terrellmarshall.com>; jcedmondson@edmolaw.com
**Subject:** Strike 3 v Doe - wdwa - discovery order

Hi Lincoln:

I have the dates for Michael Yasumoto:

9/24
9/27
10/4
10/7 - 10/11
10/14
10/18
10/28 - 10/31

Michael needs to have hard dates soon.   My 10/4 is not great as I will be in LA for my daughters x-country meet the following day.  On 10/14, I will be in the Seattle area.

As for the hard drive.  The chain of custody is easiest if Michael takes it to my office (his office is about 1mile away) in Hillsboro, where your expert can inspect.

I think it should take from 6-12 hours to process the drive which I believe is in an .EO1 format (Encase).  Then the hash searching after that should take less than a 1/2 hour.   So we can set it up in my office, let it run for a day, then your hard drive guy can come back.

I am open to your suggestions.  Call me and we can discuss.

B. Regards,

Curt Edmondson   503-701-9719

> **From:** Lincoln Bandlow <lincoln@bandlowlaw.com>
> **Sent:** Friday, September 20, 2019 3:29 PM
> **To:** Curt Edmondson <edmolaw@gmail.com>; Adrienne McEntee <amcentee@terrellmarshall.com>
> **Cc:** John Atkin <JAtkin@atkinfirm.com>; Jeremy Roller <jroller@aretelaw.com>
> **Subject:** [External] WAWD1003
>
> Dear Curt and Adrienne,
>
> Pursuant to the Court's Order that was issued yesterday, we want to proceed with the examination of your client's hard drive.  Our expert is generally available to do so in the next 21 days.  Please provide me with dates and times in the next two weeks when this examination can take place.  Please also provide me with a proposed location in Washington.  We anticipate needing approximately two days for this exam to be conducted.
>
> I look forward to hearing from you.

*Lincoln Bandlow*



1801 Century Park East, Suite 2400

Los Angeles, CA  90067

P: (310) 556-9680  |  F: (310) 861-5550

Lincoln@BandlowLaw.com

www.BandlowLaw.com

---

This email has been scanned for spam and viruses by Proofpoint Essentials. Click here to report this email as spam.

J. Curtis Edmondson, Patent Attorney, Edmondson IP Law
Venture Commerce Center, 3699 NE John Olsen Ave, Hillsboro OR 97124
ph: (503) 336-3749 | fax: (503) 482-7418 | jcedmondson@edmolaw.com | www.edmolaw.com
Licenses: CA SBN 236105 | WA SBN 43795 | DC BAR NO 998407 | OR SBN 190356 | USPTO 57027 | CA PE 13377 | WA PE 43728



---

This email has been scanned for spam and viruses by Proofpoint Essentials. Click here to report this email as spam.

---

This email has been scanned for spam and viruses by Proofpoint Essentials. Click here to report this email as spam.

## **CERTIFICATE OF SERVICE**

I, Annabel Barnes, hereby certify that on October 28, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of filing to the following parties:

Joshua L. Turnham, WSBA #49926
E-mail: joshua@turnhamlaw.com
THE LAW OFFICE OF JOSHUA L. TURNHAM PLLC
1001 4th Avenue, Suite 3200
Seattle, Washington 98154
Telephone: (206) 395-9267
Facsimile: (206) 905-2996

*Attorneys for Non-Party Defendant's Son*

F. Christopher Austin, Admitted Pro Hac Vice
Email: caustin@weidemiller.com
Allen Gregory Gibbs, Admitted Pro Hac Vice
Email: ggibbs@weidemiller.com
WEIDE & MILLER, LTD.
10655 Park Run Drive, Suite 100
Las Vegas, Nevada 89144
Telephone: (702) 382-4804

Derek A. Newman, WSBA #26967
Email: dn@newmanlaw.com
Rachel Horvitz, WSBA #52987
Email: rachel@newmanlaw.com
NEWMAN DU WORS LLP
2101 4th Avenue, Suite 1500
Seattle, Washington 98121
Telephone: (206) 274-2800
Facsimile: (206) 274-2801

*Attorneys for Third-Party Witnesses Tobias Fieser, IPP International UG,*
*Bunting Digital Forensics, LLC, Stephen M. Bunting*

Adrienne D. McEntee, WSBA #34061
Beth E. Terrell, WSBA #26759
Email: bterrell@terrellmarshall.com
amcentee@terrellmarshall.com
936 North 34th Street, Suite 300

PLAINTIFF'S SUPPLEMENT IN RESPONSE
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
No. 2:17-cv-01731-TSZ

Arête
LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250

1

Seattle, Washington 98103-8869
Telephone: (206) 816-6603

2

Facsimile: (206) 319-5450

3

J. Curtis Edmondson, WSBA #43795

4

Email: jcedmondson@edmolaw.com
EDMONDSON IP LAW

5

399 NE John Olsen Avenue Hillsboro

6

Oregon 97124
Telephone: (503) 336-3749

7

*Attorneys for Defendant*

8

9

DATED this 28th day of October 2019 at Seattle, Washington.

10

11

*/s/ Annabel Barnes*

12

Annabel Barnes

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S SUPPLEMENT IN RESPONSE
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
No. 2:17-cv-01731-TSZ

Arête
LAW GROUP

1218 THIRD AVENUE
SUITE 2100
SEATTLE WA 98101
(206) 428-3250