UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC,<br>Plaintiff,<br>v.<br>JOHN DOE (73.225.38.130),<br>Defendant. | C17-1731 TSZ<br>ORDER |

THIS MATTER comes before the Court on defendant John Doe's motion for summary judgment, docket no. 174. Having reviewed all papers filed in support of, and in opposition to, the motion, including plaintiff's supplemental response, docket no. 183, and defendant's supplemental reply, docket no. 185, which were permitted by Minute Order entered September 19, 2019, docket no. 182, the Court enters the following order.

**Background**

Plaintiff Strike 3 Holdings, LLC ("Strike 3"), a purveyor of pornographic motion pictures, which are distributed through the websites *Blacked*, *Tushy*, and *Vixen* and on digital versatile discs ("DVDs"), commenced this copyright infringement action against defendant John Doe in November 2017. *See* Compl. (docket no. 1). Strike 3 sought leave to serve a subpoena duces tecum on an Internet Service Provider ("ISP") for purposes of obtaining John Doe's identity as the subscriber associated with Internet Protocol ("IP") address 73.225.38.130. *See* Pla.'s Mot. (docket no. 4). In support of this

request, Strike 3 submitted four declarations, two of which are relevant to the issues raised in John Doe's pending motion for summary judgment, namely (i) the declaration of Tobias Fieser, an employee of IPP International UG ("IPP"), a German company that provides forensic investigation services to copyright owners, *see* Fieser Decl. at ¶¶ 3-4 (docket no. 4-3), and (ii) the declaration of Susan Stalzer, an individual who works for Strike 3, *see* Stalzer Decl. at ¶ 3 (docket no. 4-5).

In his declaration dated November 21, 2017, Fieser indicated that he had reviewed "IPP's forensic activity records" and had "determined that IPP's forensic servers [had] connected to an electronic device using IP Address 73.225.38.130." *See* Fieser Decl. at ¶ 7 (docket no. 4-3). According to Fieser, this IP address was "documented distributing to IPP's servers multiple pieces of Strike 3's copyrighted movies listed on Exhibit A to Strike 3's Complaint." *Id.* Exhibit A to the Complaint lists 80 items in a spreadsheet format with columns labeled "Work," "Hash," "Site," "UTC," "Published," "CRO App. File Date," and "CRO Number." Ex. A to Compl. (docket no. 1 at 9-13). The Complaint does not define UTC or CRO, but these acronyms appear to mean, respectively, coordinated universal time and Copyright Office, and the term "App." seems to be an abbreviation for application. The first five rows of the spreadsheet are reproduced in Figure 1.

| Work | Hash | Site | UTC | Published | CRO App. File Date | CRO Number |
|---|---|---|---|---|---|---|
| 1 | 1BC8C1ADCAA75C3EC9408C8CCBF5147863205E6C | Tushy | 09/05/2017 10:40:33 | 09/03/2017 | 09/10/2017 | PA0002052851 |
| 2 | 0326E8923C58852725F5A7857833A4CD3E715289 | Tushy | 05/15/2017 04:40:00 | 05/06/2017 | 06/15/2017 | 15389210313 |
| 3 | 039F4779148D3E374D990283A83AC46A0219DAE9 | Vixen | 05/12/2017 06:25:29 | 04/19/2017 | 06/15/2017 | 15389210409 |
| 4 | 0CDEB18021838E8E2A694A7D16D9A45366CFABB6 | Blacked | 08/08/2017 21:54:29 | 08/08/2017 | 08/17/2017 | 15732904191 |
| 5 | 1487A26EAAAD70318258AB9F506506A8F293533A | Blacked | 05/21/2017 18:02:17 | 05/05/2017 | 06/15/2017 | PA0002037591 |

Fig. 1: Excerpt of Exhibit A to Complaint (docket no. 1 at 9).

The Complaint alleges that the "cryptographic hash value" of a **piece** of a file (or "piece hash") serves as that piece's "unique digital fingerprint." Compl. at ¶ 21 (docket no. 1); *see also* Am. Compl. at ¶ 22 (docket no. 43). The Complaint further states that an entire digital media **file** also has a unique "cryptographic hash value" (or "file hash") that identifies the file (or movie); after all pieces comprising a digital file are downloaded, the software at issue, known as BitTorrent,[1] uses the "file hash" to confirm that the file is "complete and accurate." Compl. at ¶ 22 (docket no. 1); *see also* Am. Compl. at ¶ 23 (docket no. 43). Neither the Complaint nor the Amended Complaint make clear whether the sequence of letters and numbers appearing under the column in Exhibit A labeled "Hash" are "piece hash" or "file hash" values.

Based on Fieser's declaration, however, the reasonable inference to be drawn is that the "Hash" sequences listed in Exhibit A to the Complaint are "file hash," and not "piece hash," values. In his declaration, Fieser reported that IPP's software "analyzed each BitTorrent 'piece' distributed by Defendant's IP Address" and "verified that reassembling the pieces using a specialized BitTorrent client results in a fully playable digital movie." Fieser Decl. at ¶ 9 (docket no. 4-3). Fieser further asserted that IPP's software "determined that the **files** being distributed by Defendant's IP Address have a unique identifier of the Cryptographic Hash outlined on Exhibit A." *Id.* at ¶ 10 (emphasis

[1] BitTorrent is a peer-to-peer file-sharing program. *See Patrick Collins, Inc. v. Does 1-28*, 2013 WL 359759 at *1 (E.D. Mich. Jan. 29, 2013). BitTorrent users (or peers) access the Internet through ISPs and request particular files. *See id.* at *3. Peers who are members of a "swarm" engage with each other through the BitTorrent system, simultaneously downloading and uploading pieces of a desired file. *See id.* at *1 & *3.

added). In other words, each of the values listed under "Hash" in Exhibit A is a "file hash."

This conclusion is consistent with the averments in Stalzer's declaration dated November 20, 2017. According to Stalzer, to perform her task of verifying that copyright infringement had occurred, she was provided with "the infringing motion picture file for each of the **file** hashes listed on Exhibit A to Strike 3's Complaint," and she "viewed each of the unauthorized motion pictures corresponding to the **file** hashes side by side with Strike 3's motion pictures, as published on the *Blacked*, *Tushy*, and/or *Vixen* websites and enumerated on Exhibit A by their United States Copyright Office identification numbers." Stalzer Decl. at ¶¶ 7-9 (docket no. 4-5) (emphasis added).

Strike 3's success in obtaining permission to serve a Rule 45 subpoena on the ISP, which eventually supplied the information necessary to effect service on John Doe, was due primarily to Fieser's and Stalzer's declarations. *See* Order (docket no. 5). Strike 3 later dismissed its copyright infringement claim against John Doe, but by then, John Doe had asserted counterclaims, one of which remains pending, namely for a declaration of non-infringement. *See* Order (docket no. 167). John Doe now seeks summary judgment on his declaratory judgment counterclaim, as well as attorney's fees and costs pursuant to 17 U.S.C. § 505, which vests the Court with discretion to award attorney's fees and costs to the prevailing party in an action brought under the Copyright Act.

At the time John Doe filed his dispositive motion, four discovery motions were pending. In one of these motions, docket no. 125, Strike 3 sought to compel John Doe to produce two computer hard drives. In light of the issues raised in John Doe's dispositive

motion, the Court partially granted Strike 3's motion to compel and, with respect to one of the hard drives (Serial No. 9VP05TWX), allowed Strike 3's expert to examine, with certain restrictions, the copy that had been made for forensic purposes (the "imaged" hard drive). *See* Minute Order at ¶ 1 & n.1 (docket no. 182). The scope of Strike 3's expert's review was limited to searching the "imaged" hard drive for existing and deleted files matching the hash values set forth in Exhibit A to the Complaint. *Id.* If such files were discovered, Strike 3's expert was authorized to copy and/or otherwise make a record concerning the presence of those materials. *Id.* at ¶ 1. Strike 3 never asked the Court to broaden or modify the terms of the Minute Order entered on September 19, 2019, docket no. 182, which dealt with *inter alia* Strike 3's motion to compel production of John Doe's hard drives.

Instead, in its supplemental response to John Doe's summary judgment motion, Strike 3 complains that its expert could not conduct a meaningful examination of the "imaged" hard drive without violating the provisions of the September 2019 Minute Order, and he therefore did not perform any analysis. Strike 3 now repudiates Fieser's and Stalzer's declarations and asserts that the "Hash" sequences listed in Exhibit A are "Info Hashes," which are merely "the data that the BitTorrent protocol uses to identify and locate the desired file . . . across the BitTorrent network." Pla.'s Supp. Resp. at 2-3 (docket no. 183). Strike 3 contends that "the only way to search Defendant's hard drive for the Exhibit A Hashes" would be "to view every .torrent file on Defendant's hard drive to determine if it matched the Exhibit A hashes." *Id.* at 3-4. Rather than seek any relief

from the restrictions imposed by the Court, Strike 3 has chosen to forego examination of the "imaged" hard drive.

In support of its decision, Strike 3 offers the declaration of Patrick Paige, a member of Computer Forensic, LLC, who has been retained by Strike 3 as a computer forensics expert. *See* Paige Decl. at ¶ 1 (docket no. 184).[2] Paige explains that an "Info Hash" is a "value of specific data contained within a .torrent file," which "the BitTorrent protocol uses to identify and locate the desired file." *Id.* at ¶ 10. In other words, the "Info Hash" is not the actual motion picture that John Doe is accused of infringing, but merely the means by which the BitTorrent program can find the motion picture among the files of all of the computers connected to the BitTorrent network. Thus, even if Paige were allowed to look within each .torrent file on the "imaged" hard drive for the "Hash" sequences listed in Exhibit A to the Complaint, he would not discover any actual motion pictures, but rather just the information needed for the BitTorrent system to find the pornographic films, perhaps on other individuals' devices. Given this clarification from Strike 3, the Court is satisfied that no purpose would be served by permitting Strike 3 to engage in any further discovery in this matter.

In support of his summary judgment motion, John Doe has provided the report of his expert Michael Yasumoto, who holds a Master of Science degree in computer science from the George Washington University. *See* Yasumoto Report at § II, Ex. 10 to

---

[2] John Doe's motion, *see* Supp. Reply at 3-4 (docket no. 185), to strike Paige's declaration, as well as Strike 3's supplemental response, is DENIED.

Edmondson Decl. (docket no. 175-10). In his report, Yasumoto summarized his analysis as follows:

> I created a forensically sound image of the hard drive listed in Table 1 [*i.e.*, Seagate Model ST3750528AS, Serial No. 9VP05TWX] . . . . Using XWF [X-Ways Forensics Version 19.8 SR3], I searched for all video files including deleted files recovered from unallocated space. I conducted file carving, which looks for signatures of certain file types to detect data that may be hidden inside another file or located in unallocated space such as deleted files. The smallest video file referenced in Exhibit A of the [Amended C]omplaint is approximately 187 MBs in size. . . . [Plaintiff's videos] appear to have an introduction and concluding animation featuring the name of either Tushy, Vixen, or Blacked. I reviewed all recovered and existing video files over 100 MBs in size to determine if any of the video files were Plaintiff's copyrighted works. None of the videos examined appear to be Plaintiff's work based on content and the lack of any Tushy, Vixen, or Blacked animated titles. I also compared the SHA1 hash, which acts as a fingerprint for computer files, and none of the videos examined on defendant's computer were a hash match for the videos listed in [Exhibit A to the Amended Complaint].[3]

Yasumoto Report at § IV (docket no. 175-10).[4] Yasumoto's opinion to a "reasonable degree of scientific certainty" that the motion pictures listed in Exhibit A to the Amended Complaint are not on the "imaged" hard drive, *see id.* at § V, is strong circumstantial evidence that John Doe did not download (or upload) Strike 3's copyrighted works.

---

[3] Exhibit A to the Amended Complaint is similar to, but differs slightly from, Exhibit A to the Complaint. Exhibit A to the Amended Complaint, docket no. 43-1, contains 87 rows of "Hash" values and accompanying data, 80 of which appear to overlap with the information in Exhibit A to the Complaint, docket no. 1. For purposes of this Order, unless otherwise indicated, reference to "Exhibit A to the Complaint" means both versions of Exhibit A.

[4] Strike 3 challenged Yasumoto's approach because the hard drive at issue contains undisclosed data and Strike 3 had not had an opportunity to examine such data or cross-examine Yasumoto. *See* Pla.'s Resp. at 11-12 (docket no. 178). Strike 3 waived such objections by failing to take advantage of the discovery permitted by the Court or propose any alternatives to the restrictions imposed by the Court with regard to Strike 3's expert's analysis of the "imaged" hard drive.

**Discussion**

**A. Summary Judgment Standard**

The Court shall grant summary judgment if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the adverse party must present "affirmative evidence," which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn. *Id.* at 255, 257. When the record, taken as a whole, could not, however, lead a rational trier of fact to find for the non-moving party on matters as to which such party will bear the burden of proof at trial, summary judgment is warranted. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Celotex*, 477 U.S. at 322.

**B. Jurisdiction Over Declaratory Judgment Counterclaim**

In opposing John Doe's motion for summary judgment, which seeks a declaration of non-infringement, Strike 3 contends that the Court lacks jurisdiction to grant the requested relief. Strike 3's argument is without merit. This case does not involve the type of preemptive litigation that frequently raises concerns about the existence of an actual case or controversy. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007); *see also* U.S. CONST. art. III, § 2. In such actions, which are often premised on a cease-and-desist letter or similar threat received by the plaintiff from the defendant, the

question is whether, "under all of the circumstances," a "substantial controversy" exists "between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *See MedImmune*, 549 U.S. at 127.

Unlike in *MedImmune*, in this matter, Strike 3 did not merely threaten John Doe, or render him reasonably apprehensive, about the prospect of a lawsuit. *See MedImmune*, 549 U.S. at 121-22; *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555-56 (9th Cir. 1989) (a declaratory judgment action presents a case or controversy "if the plaintiff has a real and reasonable apprehension that he will be subject to liability if he continues" his allegedly infringing actions). Instead, Strike 3 took the very "real" steps of commencing this proceeding and seeking expedited discovery so that John Doe could be served with summons and a copy of the Complaint. When John Doe asserted his declaratory judgment counterclaim on March 8, 2018, docket no. 22, and when he filed an amended version of his counterclaim on May 1, 2018, docket no. 32, Strike 3's copyright infringement claim was still pending, and the Court had Article III jurisdiction.

Strike 3's subsequent dismissal of its copyright infringement claim did not render moot John Doe's request for declaratory relief. The case or controversy requirement persists through all stages of litigation, *LHF Prods., Inc. v. Kabala*, 2018 WL 4053324 at *1 (D. Nev. Aug. 24, 2018); *Crossbow Tech., Inc. v. YH Tech.*, 531 F. Supp. 2d 1117, 1120 (N.D. Cal. 2007), but this action is not one in which jurisdiction was lost after the Complaint was filed. Unlike in *LHF Productions*, in which an alleged BitTorrent user's counterclaim for a declaration of non-infringement was dismissed as moot in light of the plaintiff's dismissal **with** prejudice of the underlying copyright infringement claim, in

this matter, Strike 3's voluntary dismissal was **without** prejudice, *see* Notice (docket no. 53), and in contrast to the plaintiff in *Crossbow*, Strike 3 has not provided any covenant not to sue. Indeed, not only has Strike 3 preserved its ability to pursue further litigation against John Doe, it has indicated that it will not consent to a declaration of non-infringement unless John Doe is precluded from receiving attorney's fees and costs and Strike 3 is explicitly permitted to bring copyright infringement claims against John Doe's son. *See* Order at 2 n.3 (docket no. 167).

In essence, Strike 3 is attempting to thwart John Doe's efforts to obtain attorney's fees and costs by, on the one hand, refusing to dismiss its Copyright Act claim with prejudice and thereby denying John Doe "prevailing party" status, while on the other hand, deploying its dismissal without prejudice as a jurisdictional shield against John Doe's declaratory judgment claim. The Court will not permit Strike 3 to use such "gimmick designed to allow it an easy exit . . . [now that] discovery [has] reveal[ed] its claims are meritless." *See Malibu Media, LLC v. John Doe Subscriber Assigned IP Address 76.126.99.126*, 2016 WL 3383758 at *2 (N.D. Cal. June 20, 2016) (denying a copyright owner's motion to dismiss a counterclaim for declaration of non-infringement, observing that "[a]bsent defendant's counterclaim, if events reveal that this case is meritless, Malibu Media could voluntarily dismiss its affirmative claims without prejudice under Rule 41(a)(2), seeking to avoid an award of attorney's fees").

**C. Declaration of Non-Infringement**

Strike 3, not John Doe, bears the burden of proof with respect to infringement. *See Marya v. Warner/Chappell Music, Inc.*, 131 F. Supp. 3d 975, 984 (C.D. Cal. 2015)

("there is no reason to relieve the alleged [copyright] owners . . . of the usual burden of proof just because they are nominally the defendants in this declaratory judgment action" (citing *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191 (2014))). A core element of copyright infringement is a "copying" of the protected components of the work. *See Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 984 (9th Cir. 2017); *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 442 (9th Cir. 1991). Strike 3 has provided no evidence that John Doe copied any of Strike 3's copyrighted motion pictures. At most, Strike 3 has shown that an entity with access to the IP address 73.225.38.130 downloaded certain materials identified by the "Hash" sequences listed in Exhibit A to the Complaint. Strike 3 cannot link John Doe to the activity associated with the IP address, *see Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142 (9th Cir. 2018),[5] and it has now abandoned any assertion that the items allegedly transferred over the BitTorrent system were themselves copyrighted motion pictures or viewable pieces thereof, as opposed to simply non-copyrightable data that may be used to find certain motion

---

[5] As observed by the Honorable Royce C. Lamberth, the method of identifying copyright infringers by IP address is "famously flawed" for a variety of reasons, including IP address spoofing, the existence of unsecured routers, the ability of malware to crack passwords or open backdoors, the sharing of IP addresses among family members, roommates, guests, neighbors, and others, and the random assignment of IP addresses to a general location if a more specific one cannot be identified by geolocation services. *See Strike 3 Holdings, LLC v. Doe*, 351 F. Supp. 3d 160, 162 (D.D.C. 2018). Moreover, dynamic IP addresses might be reassigned to many different individuals during a short timeframe, and these frequent changes create a significant chance of misidentification. *See Strike 3 Holdings, LLC v. Doe*, 2019 WL 5446239 at *11 (D.N.J. Oct. 24, 2019). In this matter, Exhibit A to the Complaint lists dates of BitTorrent activity spanning from May 10, 2017, through December 1, 2017, *see* docket no. 43-1, but the only time for which the ISP provided subscriber information in response to Strike 3's expedited discovery request was September 5, 2017, at 10:40:33 GMT. *See* Comcast Letter (docket no. 11). Strike 3's assertion that John Doe was the subscriber for IP address 73.225.38.130 at any other moment is entirely unsupported by the record.

pictures and/or their constituent parts within the BitTorrent network. Consistent with Strike 3's lack of proof of copying, John Doe's expert has indicated that John Doe's computer does not contain any of the motion pictures described in Exhibit A to the Complaint. No genuine dispute of material fact exists, and John Doe is entitled to judgment as a matter of law. John Doe's motion for summary judgment is GRANTED, and a declaratory judgment of non-infringement will be entered.

**D. Attorney's Fees and Costs**

Under the Copyright Act, attorney's fees are not awarded to the prevailing party automatically or as a matter of course. *See Killer Joe Nevada, LLC v. Does 1-20*, 807 F.3d 908, 911 (8th Cir. 2015). Rather, the Court must exercise its discretion in equity, considering various non-exclusive factors, including whether the losing party's position was frivolous or objectively unreasonable, the losing party's motivations, the need in particular circumstances to compensate or deter, and the purposes of the Copyright Act. *See id.*; *see also Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994); *Palladium Music, Inc. v. EatSleepMusic, Inc.*, 398 F.3d 1193, 1200-01 (10th Cir. 2005). These guideposts indicate that attorney's fees are warranted in this matter.

A different result might have been appropriate if, back in August 2018, Strike 3 had dismissed its copyright infringement claim **with** prejudice and shortly thereafter sought dismissal of John Doe's declaratory judgment counterclaim as moot. Instead, Strike 3 attempted to preserve its ability to pursue further litigation against John Doe while aggressively seeking evidence against him and his son in the guise of defending against John Doe's now defunct abuse-of-process counterclaim. Months after the

abuse-of-process counterclaim had been dismissed by the Court, *see* Order (docket no. 167), and over 14 months after dismissing its own copyright infringement claim **without** prejudice, Strike 3 revealed a level of uncertainty about the factual allegations of its Complaint and Amended Complaint that should have inhibited it from filing this lawsuit in the first place. *Cf. Strike 3 Holdings*, 2019 WL 5446239 at *10 (observing that Strike 3 "resort[ed] to making unequivocal statement of alleged facts that it does not know to be true in order to obtain expedited discovery" and describing such behavior as "troublesome"). This new information weighs in favor of awarding attorney's fees to John Doe.

Many courts have articulated concerns about the motivations involved in pursuing these types of cases, which appear to be extortive, forcing individuals, who would be embarrassed by allegations that they have been visiting pornographic websites, to pay nuisance-value amounts to keep their names out of publicly-available documents. *See Malibu Media*, 2016 WL 3383758 at *2-*3. The pattern of filing numerous suits, and then dismissing those in which the defendant does not quickly agree to settle, manifests a lack of intent to bring these matters to trial, and reinforces the sense that the plaintiffs are simply in the "shakedown" business. *Id.* In the nine actions filed by Strike 3 in this district during a two-day period, this case is the only one that advanced past the pleading stage; all other matters were voluntarily dismissed by Strike 3. *See* Order at 2 n.2 (docket no. 167) (indicating that five of the suits settled, one was dismissed for unknown reasons, and two others were not pursued because service could not be effected or default could

not be secured). To deny John Doe's request for attorney's fees, as Strike 3 proposes, would improperly reward Strike 3 for adhering to its suspicious litigation script.[6]

The Ninth Circuit's decision in *Cobbler Nevada* appears to have stemmed the tide of BitTorrent litigation, and the Court does not view deterrence as a basis for awarding attorney's fees in this matter. Compensation, however, is a relevant factor, as is the policy underlying the Copyright Act of encouraging defendants to advance and litigate meritorious copyright defenses. *See Fogerty*, 510 U.S. at 527. In outlining the services for which John Doe is requesting attorney's fees, his lawyers have carefully segregated between the successful and unsuccessful defenses, counterclaims, and motions, and the amount sought is narrowly tailored to the matters on which John Doe prevailed.

For example, Adrienne D. McEntee of Terrell Marshall Law Group PLLC has not included in her computations any time spent on the failed abuse-of-process counterclaim, *see* McEntee Decl. at ¶ 10 (docket no. 176-2), and she has even excluded the billings related to John Doe's current motion for summary judgment, *see id.* at ¶ 11. Likewise, J. Curtis Edmondson of Edmondson IP Law has significantly curtailed the amount

---

[6] Strike 3 has been described as a "copyright troll." *Strike 3 Holdings*, 351 F. Supp. 3d at 161. A copyright troll's success derives "not from the Copyright Act, but from the law of large numbers." *Id.* at 162. Nationwide, during the thirteen months from October 2017 through November 2018, Strike 3 filed 1,849 cases similar to this one. *See id.* In 2015, copyright trolls accounted for 58% of the federal copyright docket. *Id.* The copyright troll's playbook outlines the following strategy: "file a deluge of complaints; ask the court to compel disclosure of the account holders; settle as many claims as possible; abandon the rest." *See id.* (citing Matthew Sag & Jake Haskell, *Defense Against the Dark Arts of Copyright Trolling*, 103 IOWA L. REV. 571, 575-80 (2018)). It teaches that cases should be dropped "at the first sign of resistance" to stay "one step ahead of any coordinated defense" or, metaphorically speaking, that when "a Billy Goat Gruff moves to confront a copyright troll in court, the troll [should] cut[] and run[] back under its bridge." *See id.*

requested on behalf of John Doe by not including any time billed after August 23, 2018, when Strike 3 dismissed its copyright infringement claim, and by applying a 50% reduction to all other fees. *See* Edmondson Decl. at ¶¶ 19 & 21. Having reviewed the materials submitted by John Doe, the Court concludes that the requested hourly rates are commensurate with the amounts charged by lawyers of similar skill in the local legal community for comparable work, and that the following attorney's fees are reasonable under all of the circumstances:

| Attorney's Fees | | |
|---|---|---|
| Terrell Marshall Law Group PLLC | | $ 13,615.00 |
| Edmondson IP Law | | $ 26,886.63 |
| | TOTAL: | $ 40,501.63 |

With respect to costs, the Terrell Marshall Law Group PLLC seeks $300 in court reporter fees and $2,358.20 for transcripts, for a total of $2,658.20. These costs are consistent with 28 U.S.C. § 1920 and will be awarded. Edmondson IP Law has itemized costs totaling $11,226.60, but asks for only 50% of that sum. Strike 3 objects to inclusion of costs for DVDs, expert-related fees, and videographer expenses. Excluding those items results in costs of $9,234.85, half of which will be awarded, or $4,617.43. The total amount of costs to be taxed is $7,275.63.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) Defendant's motion for summary judgment, docket no. 174, is GRANTED;

(2) Defendant is entitled to judgment on his first counterclaim under 28 U.S.C. § 2201 for a declaration of non-infringement, *see* docket no. 64; and

(3)   The Clerk is directed to enter judgment consistent with this Order, as well as with the Minute Order entered October 24, 2018, docket no. 58, the Order entered July 8, 2019, docket no. 167, and Strike 3's Notice of Voluntary Dismissal, docket no. 53, to send a copy of the Judgment and this Order to all counsel of record, and to CLOSE this case.

IT IS SO ORDERED.

Dated this 31st day of January, 2020.

Thomas S. Zilly
United States District Judge